United States District Court
Northern District of California

| | |
|---|---|
| DIGITAL REG OF TEXAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED, VALVE CORPORATION, ELECTRONIC ARTS INC., UBISOFT, INC., SYMANTEC CORPORATION, AVG TECHNOLOGIES USA, INC., ZYNGA GAME NETWORK INC., ZYNGA, INC., and INTUIT INC.,<br><br>Defendant. | Case No.: CV 12-01971-CW (KAW)<br><br>ORDER RE: PLAINTIFF AND DEFENDANT ZYNGA INC.'S 11/2/2012 JOINT DISCOVERY LETTER |

Plaintiff Digital Reg of Texas, LLC ("Digital Reg") filed this action against several Defendants, including Zynga, Inc. ("Zynga"), for patent infringement in violation of the U.S. Patent Act, 35 U.S.C. § 271. The parties filed a joint discovery letter on November 2, 2012 ("Joint Letter"), in which they outlined several discovery disputes, including the sufficiency of Digital Reg's infringement contentions (ICs) pursuant to Patent Local Rule 3-1, Digital Reg's addition of new apps to the ICs without obtaining leave of court pursuant to Patent Local Rule 3-6, the sufficiency of Zynga's discovery responses, and issues regarding Zynga's source code production.

In light of the Joint Letter and documents submitted by the parties, and the hearing held on January 17, 2013, the Court finds that Digital Reg's infringement contentions are insufficient, and orders amendment consistent with the findings below. The Court also strikes all apps not included in the original infringement contentions filed in the Eastern District of Texas, such that Mafia Wars and Drop7 are the only remaining apps at issue at this time.

///

## I. BACKGROUND

Digital Reg alleges that Defendants directly and indirectly infringe on its U.S. Patent No. 6,751,670 ("'670 Patent"), which protects a method of tracking electronic content that collects notification information and executable instructions that "deny access to electronic content until the notification information is transmitted successfully." (*See* '670 Patent Abstract.)

On October 28, 2011, Digital Reg served its original ICs while this case was venued in the Eastern District of Texas. (Angel Mitchell Decl., Dkt. No. 153-1, ¶ 3.) The original ICs only charted Mafia Wars. (Mitchell Decl., Dkt. No. 153, Exh. C.)

Zynga's motion to compel supplemental ICs was pending when the case was transferred to the Northern District of California. At the July 25, 2012 Case Management Conference, the presiding judge ordered Digital Reg to supplement its ICs to comply with this district's Patent L.R. 3-1(d),(h), which concern allegations of indirect infringement. At the CMC, Zynga put on the record that the original ICs remained deficient under the Eastern District of Texas' Patent Rule 3-1—which virtually mirrors our district's Patent L.R. 3-1— and Judge Wilken terminated the pending motion and asked Digital Reg to "take into account [counsel's] objections when you do your infringement contentions and see if you can't obviate that motion [to compel] being refiled." (7/25/2012 Transcript, at 12:6-21.)

Digital Reg served its supplemental ICs on all Defendants on August 30, 2012. On October 11, 2012, Zynga renewed its motion to compel, claiming that the supplemental ICs are still deficient as to Zynga and should be amended, and also seeking to strike the ten Zynga apps not included in the original ICs. (*See* Dkt. No. 246.)

On October 16, 2012, this action was referred to the undersigned for all discovery purposes. This Court terminated the pending motion and ordered the parties to meet and confer and to file a joint letter consistent with the Standing Order should those efforts prove futile. (*See* Dkt. No. 248.)

On November 2, 2012 the parties filed the joint discovery letter currently at issue. (Dkt. No. 252.) The letter addressed three areas of dispute: (1) the sufficiency of Digital Reg's infringement contentions and the validity of adding new apps without obtaining

leave of court; (2) the sufficiency of Zynga's discovery responses; and (3) issues regarding Zynga's source code production.

## II. LEGAL STANDARD

Patent Local Rule 3-1 requires a party claiming patent infringement to serve on all parties a disclosure of asserted claims and infringement contentions. Pursuant to Local Rule, the ICs must contain (a) each claim of each patent that is allegedly infringed by each party, (b) all accused instrumentalities for each asserted claim, (c) a chart identifying specifically where each limitation of each asserted claim is located within each accused instrumentality, (d) a description of the acts of the alleged indirect infringer that induced the direct infringement by a third party, (e) whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the accused instrumentality, (f) the priority date to which each asserted claim allegedly is entitled if applicable, (g) an identification of each apparatus that practices the claimed invention if applicable, and (h) the basis for the party's allegation of willful infringement if applicable. *See* Patent L.R. 3-1.

The purpose of Patent L.R. 3-1 is "to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *InterTrust Technologies Corp. v. Microsoft Corp.*, No. 01-1640 SBA, 2003 WL 23120174, at *1 (N.D. Cal., Dec. 1, 2003) (citations omitted). When serving infringement contentions under Rule 3-1, a "plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." *Id.*

Patent L.R. 3-1 is a discovery device that "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Technology LLC v. Novell, Inc.*, No. 01-2079, 2002 WL 32126128, *3-4 (N.D. Cal. Aug.13, 2002) (*Network Caching I*).

Patent L.R. 3-6 allows for the amendment of infringement contentions "only by order of the Court upon a timely showing of good cause." A finding of good cause includes "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6(c).

The "good cause" inquiry "considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted." *Acer, Inc. v. Tech. Properties Ltd.*, 5:08-CV-00877 JF/HRL, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (*citing O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366–68 (Fed. Cir. 2006) (concluding that if a party seeking to amend did not demonstrate diligence, there was "no need to consider the question of prejudice")).

## III. DISCUSSION

### A. Digital Reg's Infringement Contentions

The '670 Patent states that "the invention relates to electronic content, for example, content included with or attached to an e-mail message." '670 Patent col. 1 l. 5. The patent addresses technology that allows the original sender to obtain information regarding receipt of a file, including notification if that file is sent on to someone else (a "successive recipient") or if the original recipient deletes, prints, or saves the file. '670 Patent col. 3 l. 15-40.

a. <u>Sufficiency of Infringement Contentions</u>

Zynga contends that Plaintiff's infringement contention charts are vague and "lack the specificity to raise a reasonable inference that the accused products infringe." (Joint Letter at 4.) Patent Local Rule 3-1(c) requires Plaintiff to provide:

> A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

The degree of specificity must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement and raise a reasonable inference that all accused products infringe. *See Shared Memory Graphic LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010). Contentions that fail to provide defendant with fair notice of the plaintiff's infringement theories are insufficient and must be amended. *Id*. at 1025-26.

In the Joint Letter, Digital Reg summarizes the '670 Patent function as "tracking and controlling access to electronic content, such as text, graphics, audio, video, and executable

4

program files." (Joint Letter, at 2.) In its claims chart, however, Digital Reg does not clearly define "electronic content" for each limitation. To the contrary, "electronic content" appears to sometimes refer to the mobile app itself or time-based rewards, high scores, or other game content. In Claim 1, the chart states that "The Accused System and method transmits notification information when the software content is accessed on a mobile device...." (Joint Letter, Exh. 1, Pl.'s Mafia Wars Claim Chart, at 6.) However, as Zynga pointed out, "software content" is a generic term, and Digital Reg fails to clarify what "electronic content" meets this limitation, whether it is the mobile app itself, time-based rewards, high scores, bonuses, etc. (Def.'s Mot. to Compel, Dkt. No. 246, Exh. C, Deficiencies in Infringement Contentions Chart, at 2.) Likewise, in claim 32, Digital Reg does not specify the electronic content applicable to the first limitation, only stating that it includes "game content." (Joint Letter, Exh. 1, Pl.'s Mafia Wars Claim Chart, at 18.)

After reviewing the parties' informal descriptions of the technology in the '670 Patent, the patent itself, and hearing oral argument, the Court finds Plaintiff's infringement contentions are too vague, because Plaintiff has not sufficiently articulated the specific "electronic content" at issue and how that content is being tracked in an infringing manner necessary to put Zynga on reasonable notice as to Digital Reg's theories of infringement. *See Shared Memory Graphic LLC*, 812 F. Supp. 2d at 1025. Digital Reg has had access to Zynga's source code since October 2012. Thus, at this juncture, Digital Reg should be able to amend its ICs to clearly articulate how each of Zynga's apps infringe on the '670 Patent.

Digital Reg is hereby ordered to amend its infringement contentions to conform with Patent L.R. 3-1. In doing so, Plaintiff must specify the particular "electronic content" at issue in each limitation, identify all recipients and senders, as well as the processes that are being tracked in an infringing manner by each accused instrumentality.

b. <u>Addition of New Apps without Obtaining Leave of Court</u>

In its supplemental ICs filed on August 30, 2012, Digital Reg dropped four mobile apps it had previously accused in its original ICs (Farmville, Poker, Vampires, and Word Scramble

Challenge), and added ten newly-accused mobile apps.[1]  As stated above, Judge Wilken only gave Digital Reg permission to supplement its infringement contentions to comply with Patent L.R. 3-1(d), (h).  Digital Reg did not obtain leave to amend pursuant to Patent L.R. 3-6, which requires a timely showing of good cause.  Zynga seeks to have the ten new apps stricken.  Digital Reg was silent on this issue in the Joint Letter, but at the hearing proffered that the original claims chart was representative of all Zynga apps because they share a common platform.  This, however, would not explain why Digital Reg removed four of the apps originally included in its ICs.

Even if the Court were to entertain this theory, Digital Reg bears the burden of explaining why its claim chart is representative of all accused products.  *See Bender v. Maxim Integrated Products, Inc.*, C-09-01152-SI, 2010 WL 1135762, at *3 (N.D. Cal., March 22, 2010) (Plaintiff's nine claim charts to represent 200 infringing products did not comply with Patent L.R. 3-1, because Plaintiff failed to provide "an adequate explanation of why the claim charts are representative of all of the accused products.").  Digital Reg claims that it provided separate claim charts for each mobile app to pacify Zynga in an attempt to obviate the present motion to compel, rather than because they were distinctive.  Digital Reg does not explain why it added ten new apps, and dropped four others from the original ICs filed in the Eastern District of Texas.  Based on the information before the Court, Digital Reg has not met its burden, let alone successfully refuted Zynga's claims that the apps do not share a single software platform, but are "distinct mobile apps," several of which were acquired by third parties and not developed by Zynga. (Joint Letter, at 4 n. 1.)

Following Digital Reg's rationale, any app owned by Zynga, even if not identified by Digital Reg in its ICs (including the four that it dropped), is an accused instrumentality, based on the unsubstantiated claim that they share a common, unspecified platform.  The Court cannot allow this.  Neither Zynga nor the Court can reasonably believe Plaintiff has a reasonable chance of proving infringement or raising a reasonable inference that all accused and unaccused products

---

[1] ForestVille, Cityville Holidaytown, Slots, CityVille, Dream Pethouse, Draw Something, Dream Zoo, Dream Heights, Zombie Swipeout, and Zombie Smash.

infringe. Zynga is entitled to reasonable notice, and alleging a representative platform, without an explanation, is insufficient.

Digital Reg failed to provide an adequate explanation as to why the claim charts are representative of all unspecified, accused products. Further, Digital Reg did not obtain leave to add new products pursuant to Patent L.R. 3-6. For these reasons, the new apps must be stricken, such that—after the removal of Farmville, Poker, Vampires, and Word Scramble Challenge from the original ICs— the only remaining Zynga apps at issue are Mafia Wars and Drop7.

### B. Sufficiency of Zynga's Discovery Responses at this Juncture

Digital Reg seeks to compel supplemental responses to its requests for production of documents and special interrogatories. In lieu of identifying documents and answering interrogatories, Zynga has offered to produce source code for inspection. Zynga has offered to modify or supplement its discovery responses after the infringement contentions issue is resolved.

Courts in this district generally do not order defendants to proceed with discovery in patent cases until the plaintiff provides infringement contentions that comply with Patent L.R. 3-1. *See, e.g., Bender,* 2010 WL 1135762, at *2. For that reason, Digital Reg's request is denied without prejudice and the parties should meet and confer regarding supplemental responses after Plaintiff serves its amended ICs.

### C. Zynga's Source Code Production

The parties have two ongoing disputes regarding source code inspection and the production of source code printouts. The Court recognizes that Zynga has, in good faith, produced source code for inspection, despite not being under an obligation to do so at this juncture, given the insufficiencies of Plaintiff's ICs.

a. <u>Source Code Review Tools</u>

Digital Reg requests the use of compiler software (XCode) as a tool to review the proprietary source code that Zynga has produced for inspection. (Joint Letter, at 8.) Zynga timely objected to using compiler tools, in accordance with the stipulated protective order. (Stipulated Protective Order, Dkt. No. 242, ¶ 20(d), at 12.) Zynga bases its objection on the fact that compilers are not source code review tools, but rather developer tools, and that the creation of the

functional build environment required to utilize a compiler would be unduly burdensome. (Joint Letter, at 8-9.)

According to Zynga, Digital Reg requested three types of software for source code review during their meet and confer process, all of which Zynga is willing to install on its standalone computer: (1) an editor, Notepad++ (which Zynga loaded); (2) a tool to search across the codebase more efficiency (Zynga suggested wingrap); and (3) a tool to build a call graph to trace function calls through code (Zynga suggested Doxygen). (Joint Letter, at 9.) Zynga asserts that any qualified computer engineer could use those tools to review source code quickly and efficiently without the use of a compiler.

Digital Reg claims that source code review tools are not "a real alternative" to a compiler. (Joint Letter, at 8.) Courts in this district, however, have found that, while compiler tools may make it easier to review source code, because it assesses the program's execution of tasks and functionality, source code analyzer tools are sufficient to compare functionality of particular source code. *See Brookhaven Typesetting Services, Inc. v. Adobe Systems Inc.,* 2007 U.S. Dist. LEXIS 62661, at *25 (N.D. Cal. Aug. 24, 2007).

In *Brookhaven*, the Court found a textual comparison can support an inference of infringement or non-infringement without the use of a compiler within the copyright context. *Id.* at *25 (plaintiff copyrighted its source code, not a particular method or process). This case has been cited in the patent context, wherein the court declined to provide "a complete, functional build environment for the source code" that would allow for compiling source code. *Kelora Sys, LLC v. Target Corp.*, No. C 11-01548-CW (LB), 2011 U.S. Dist. LEXIS 96724, at *9-10 (Aug. 29, 2011). In rejecting the use of a compiler, the court declined to depart from the district's model protective order because "the benefits of making it easier for [Plaintiff] to evaluate the Accused Infringers' source code do not outweigh the burdens associated with the proposal." *Id.* at *9.

Like the defendant in *Brookhaven,* Zynga claims that creating a functional build environment (compiler) would impose an extraordinary burden because it would consume

substantial engineering resources, and it would still be inherently inaccurate on a standalone computer with no internet connection. (Joint Letter, at 9, n. 3.)

In light of the availability of source code analyzer tools and the extraordinary burden that a compiler would impose on Zynga, the Court denies Digital Reg's request for a compiler for source code review. The parties are ordered to further meet and confer regarding the installation of other source code analyzer tools.

b. <u>Requested Source Code Printouts</u>

Digital Reg requests source code printouts of 14 complete files, claiming it needs the complete files so that experts may review them for the purposes permitted by the stipulated protective order, and that limited portions of source code without context are meaningless. The protective order only provides for printouts of "limited portions of source code that are reasonably necessary for the preparations of court filings, pleadings, expert reports, or other papers... but shall not request paper copies for the purposes of reviewing the source code." (Stipulated Protective Order, Dkt. No. 242, ¶ 20(e), at 13.)

Zynga objects based on the belief that the request is for the improper purpose of source code review, because the request is for entire files consisting of 200 pages of source code, encompassing more than 500 functions, almost all of which have nothing to do with Digital Reg's contentions. (Joint Letter, at 9-10.) During the meet and confer process, Zynga offered to provide printouts of limited portions of these 14 files that correspond to specific functions identified by Digital Reg, but Digital Reg refused, demanding the complete files. At the hearing, Zynga suggested that Digital Reg's experts could inspect the complete files on Zynga's standalone computer, and then request limited portions of source code. Digital Reg maintained, without further explanation, that it still required printouts of the complete files.

The Court will not controvert the stipulated protective order, so Digital Reg's request for source code printouts of 14 complete files is denied, and the parties are ordered to further meet and confer regarding which limited portions of Zynga's source code will be produced in hard copy, and arrange to have Digital Reg's experts inspect the complete files to determine the limited portions of the source code needed, if necessary.

## IV. CONCLUSION

For the reasons set forth above, Digital Reg is ORDERED to amend its infringement contentions within 14 days of this order. Based on Digital Reg's failure to obtain leave to substantively amend its infringement contentions to add more products pursuant to Patent L.R. 3-6, and failure to oppose Zynga's request that they be striken, all apps and corresponding claims charts for ForestVille, Cityville Holidaytown, Slots, CityVille, Dream Pethouse, Draw Something, Dream Zoo, Dream Heights, Zombie Swipeout, and Zombie Smash are stricken. The only remaining apps at issue are Mafia Wars and Drop7.

Digital Reg's request for Zynga to supplement its special discovery responses, at this time, is DENIED without prejudice. Digital Reg's request for the use of a compiler is DENIED, and the parties shall meet and confer regarding the use of other source code analyzer tools. Further, Digital Reg's request for source code printouts of complete files is also DENIED.

IT IS SO ORDERED.

DATE: February 20, 2013

_Kandis Westmore_
KANDIS A. WESTMORE
United States Magistrate Judge