# Exhibit P2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DIGITAL REG OF TEXAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED, et al.,<br><br>Defendants. | Case No.: 12-CV-01971 CW<br><br>**PLAINTIFF DIGITAL REG'S FIRST SET OF COMMON INTERROGATORIES TO ALL DEFENDANTS** |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules for the Northern District of California, Plaintiff Digital Reg of Texas, LLC, ("Digital"), by and through its attorneys, requests that the following Interrogatories be answered under oath by each defendant, and that responses be served upon counsel for Plaintiff within thirty (30) days of service hereof.

Dated: August 9, 2012

Respectfully submitted,

/s/ Adam G. Price

W. Paul Schuck
California State Bar No. 203717
Thomas Whitelaw LLP
Three Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:    (415) 820-0400
Facsimile:     (415) 820-0405

Adam G. Price
Texas State Bar No. 24027750
Andrew G. DiNovo
Texas State Bar No. 00790594
James W. Coutu
Texas State Bar No. 24078376
DiNovo Price Ellwanger & Hardy LLP
7000 N. MoPac Expressway, Suite 350

1

Austin, Texas  78731
Telephone:	(512) 539-2626
Facsimile:	(512) 539-2627

*Attorneys for Plaintiff*
*Digital Reg of Texas, LLC*

## CERTIFICATE OF SERVICE

I certify that on the 9th day of August, 2012, a true and correct copy of the foregoing document was served *via electronic mail* on counsel of record in this case.

/s/ Adam G. Price
Adam G. Price

The following definitions and instructions supplement those contained in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California, which are incorporated herein by reference. In addition to those definitions and instructions, the following apply to these Interrogatories.

# I.
# INSTRUCTIONS

1. The singular form of a word shall be interpreted in the plural and vice versa. All words and phrases shall be construed as masculine, feminine, or neuter gender, according to the context. "And" as well as "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories any information which might otherwise be construed to be outside of their scope.

2. All words in the conjunctive include the disjunctive and vice versa; words in the singular include the plural and vice versa. Such words should be interpreted to bring within the scope of the discovery request information which might otherwise be construed to be outside its scope.

3. If, in answering any Interrogatory, you encounter any ambiguity concerning either the Interrogatory or the definition or instruction relevant to the inquiry contained within the Interrogatory, set forth the matter deemed ambiguous and the construction selected for use in answering the Interrogatory.

4. If you cannot answer any of these Interrogatories in full, answer to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information, knowledge or belief you do have concerning the unanswered portion.

5. If you contend that you are entitled to withhold any information or the identity of any document responsive to these Interrogatories on the basis of any privilege or other ground, you are requested to provide a list that: (a) describes the nature of the document (*e.g.*, letter or memorandum) or information; (b) states the date of the document or information; (c) identifies the persons who sent or authored the document and all recipients, or the persons who are the source of and/or communicated the information; (d) describes the type of document or information; and (e) states the basis upon which you contend that you are entitled to withhold the document or information from production. You are instructed to disclose any and all non-privileged, non-exempt portions of any document or other information that you contend is otherwise privileged or exempt from discovery.

6. These Interrogatories are continuing in nature and timely supplementation is required pursuant to Rule 26 of the Federal Rules of Civil Procedure.

## II.
## DEFINITIONS

As used in these interrogatories:

1. The term "communications" as used herein means all written, non-verbal or verbal communications, and includes any transfer of information, regardless of the means used, including, without limitation, any utterance heard, whether in person or by telephone, letters, email, text, instant message, computerized file sharing and other electronic communications, correspondence, telecopies, telefaxes, notes of conversations and memos or any document-based information transfer.

2. The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure, and specifically includes documents which may exist only in electronic form. A draft or non-identical copy is a separate document within the meaning of this term.

3. The terms "Defendant," "You" or "Your" refer to the responding Defendant, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

4. The terms "Plaintiff," and/or "Digital" shall refer to Digital Reg of Texas, LLC and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

5. The term "person" shall be broadly construed to include natural persons or individuals, corporations, partnerships, unincorporated associations, joint ventures, sole proprietorships, or any organization of individuals or other entities.

6. The term "Patents-in-Suit" means U.S. Patent No. 6,389,541 (the "'541 Patent"), U.S. Patent No. 6,751,670 (the "'670 Patent"), U.S. Patent No. 7,127,515 (the "'515 Patent") and United States Patent No. 7,272,655 (the "'655 Patent"), U.S. Patent No. 7,421,741 (the "'741 Patent"), U.S. Patent No. 7,562,150 (the "'150 Patent"), and U.S. Patent No. 7,673,059 (the "'059 Patent"), collectively.

7. The term "concerning" shall mean identifying, showing, dealing with, embodying, pertaining, concerning, regarding, involving, indicating, constituting, commenting upon, summarizing, analyzing, interpreting, detailing, outlining, defining, comprising, reflecting, discussing, disclosing, evidencing, mentioning, referring to, consisting of, responding to, or having any logical or factual connection whatever with the subject matter in question.

8. The terms "and" and "or" when used herein shall be construed conjunctively or disjunctively as necessary to bring within the scope of the request all responses which that might otherwise be construed to be outside of its scope. The singular form of any word includes the plural, and vice versa.

9. The term "Accused Products" shall apply to and be defined to include, for each product identified as encompassed in the Accused System and Method in Plaintiff's infringement contentions, and further including all other products reasonably similar or that are in the same product line.

10. The term "Digital Rights Management" or "DRM" shall mean the process of granting, denying, or tracking access to electronic content, including the process of notifying a remote computer of the foregoing.

11. The term "Software Activation" shall mean process of transmitting and/or receiving a request for access to software and/or content, transmitting and/or receiving a response to such request, including but not limited to the exchange or transmission of any payment information, token, license file, threat or other definition file, or other file or data structure indicating the success or failure of a license transaction or right or ability of a user or device to access or run software and/or content.

12. The term "Software Licensing" shall mean the automated management, allocation, distribution and/or tracking of software licenses by a server or other centralized system.

13. The term "Code Access Restrictions" shall mean the creation, checking, and enforcement of rights of or restrictions on software to access content, resources, or other software, code, or functionality.

14. The term "Authorization" shall mean the process of establishing, checking, or verifying the rights or permissions of a user or device with respect to software, code, content, or functionality, and granting or denying access to such based at least in part on the results of such process(es).

15. The term "Authentication" shall mean the process of establishing, checking, or verifying the identity of a user or device with respect to software, code, content, or functionality.

16. The term "Software Documentation" shall mean documents concerning API's, object modeling diagrams, component diagrams, class diagrams, composite diagrams, interaction diagrams, sequence diagrams, timing diagrams, package diagrams, activity diagrams, swimlane diagrams, state machine diagrams, use case diagrams/documents, communication diagrams, deployment diagrams, data flow diagrams, function block diagrams, function call diagrams (call/caller graphs), dependency diagrams, other Unified Modeling Language diagrams, wikis or other team documentation repositories, business requirements documents, functional/technical requirements documents, and quality assurance and/or testing documents and plans.

17. The term "Source Code" shall mean shall mean any set of instructions, scripts, directives, commands, abstractions, expressions, or representations capable of being interpreted,

compiled, parsed, or executed by a computer. It shall include but is not limited to any of the foregoing written or expressed in any of the following:

a. Command line interface languages including but not limited to DOS batch language, .bat (Windows batch file language), and shell scripting languages (for any Unix or Linux shell including but not limited to bash, ksh, csh, and zsh);

b. Compiled languages including but not limited to C, C++, Objective-C, COBOL, Delphi, Eiffel, Fortran, Java, Python, PHP, Visual Basic, and any language targeting a Microsoft .NET CLR compiler (including but not limited to VB.NET and C#);

c. Interpreted and scripting languages including but not limited to Perl, Ruby, VBScript, and JavaScript;

d. Data and query languages including but not limited to Structured Query Language and all derivatives, variants, and dialects, whether standard or vendor-specific;

e. Markup languages including but not limited to HTML and XML (including all derivatives and extensions, whether standard or custom, including but not limited to XHTML, XSL, XSLT, XPath, and XQuery);

f. Application-specific programming languages, including but not limited to ABAP, PL/SQL, and PeopleCode; and

g. Domain-specific languages, including but not limited to hardware description languages (e.g., Verilog, VHDL).

## III.
## <u>INTERROGATORIES</u>

1. Describe every Accused Product you have made, sold, offered for sale, used or imported into the United States. For the purposes of this Interrogatory, the term "describe" requires You to state for each product: (a) the designation (i.e., name and model number, if any) of the product; (b) the time period You made and sold such product; (c) every material variation (i.e., version) of the Accused Product by designation and release date; (d) the name of the entity or groups (including by not limited to subsidiaries, parents, affiliates, divisions) that made such product; and (e) the name of the entity or group (including but not limited to subsidiaries, parents, affiliates, divisions, distributors) that imported and/or offered such product for sale.

2. For each Accused Product, describe in detail all DRM processes, functionalities, and features in such Accused Product. For the purposes of this Interrogatory, the term "describe" requires You to state for each: (a) the name of the Accused Product; (b) a detailed description of the DRM process, functionality, or feature; (c) the corresponding Source Code that implements the process, functionality, or feature by module, file, and function; (d) related Software Documentation; and (e) the identity of two key individuals responsible for the design or development of the process, functionality, or feature.

3. For each Accused Product, describe in detail all Software Activation processes, functionalities, and features in such Accused Product. For the purposes of this Interrogatory, the term "describe" requires You to state for each: (a) the name of the Accused Product; (b) a detailed description of the Software Activation process, functionality, or feature; (c) the corresponding Source Code that implements the process, functionality, or feature by module, file, and function; and (d) related Software Documentation; and (e) the identity of two key individuals responsible for the design or development of the process, functionality, or feature.

4. For each Accused Product, describe in detail all Software Licensing processes, functionalities, and features in such Accused Product. For the purposes of this Interrogatory, the term "describe" requires You to state for each: (a) the name of the Accused Product; (b) a detailed description of the Software Licensing process, functionality, or feature; (c) the corresponding Source Code that implements the process, functionality, or feature by module, file, and function; (d) related Software Documentation; and (e) the identity of two key individuals responsible for the design or development of the process, functionality, or feature.

5. Separately for each Accused Product, identify two key individuals responsible for the design or development of DRM features, Software Activation functionality, and Software Licensing functionality of each Accused Product. For the purposes of this Interrogatory, the term "identify" requires you to state for each individual (or group or team) identified: the name and title of individual (or the group or team); the person's current contact information (i.e., address, telephone number, e-mail, etc.) (or the group or team's current location); the nature of the work performed on the of the Accused Product; a detailed description of the feature or functionality for each Accused Product for which the person (or group or team) was responsible; the date(s) of each such person's (or group or team's) involvement; and, if a group or team was identified, the leader of such group or team at the time of involvement in designing or developing each Accused Product.

6. Identify Your U.S. and worldwide revenue and profits on a quarterly and annual basis for each year since January 1, 2005 related to the sales of products that use any Accused Product.  For the purposes of this interrogatory, the term "Identify" requires You to state: (a) Your quarterly and annual revenue derived from products that use any Accused Product; (b) Your quarterly and annual gross profits derived from products that use any Accused Product; (c) Your quarterly and annual net income derived from products that use any Accused Product; and (d) Your quarterly and annual costs attributable to sales derived from products that use any Accused Product.

7. Identify the location of manufacture and use of each Accused Product.  For the purposes of this interrogatory, the term "Identify" requires You to state:  (a) the city and country of manufacture of each Accused Product; (b) the country of each instance of use of each Accused Product; (c) the location(s) of all servers implementing the Accused Products.

8. Identify all license agreements and indemnification agreements for intellectual property between You and any third party concerning any Accused Product or component thereof or any of the Patents-in-Suit.  For the purposes of this Interrogatory, the term "Identify" requires you to state:  (a) the date of each such agreement; (b) the parties to each agreement; (c) if a license agreement, the agreed-upon royalty rate; and (d) the Bates range of each agreement.

9. Describe when and how You first learned of or acquired knowledge of the Patents-in-Suit.  For the purposes of this Interrogatory, the term "Describe" requires you to state: (a) the date You first learned of or acquired knowledge or awareness of the Patents-in-Suit; (b) the name and title of the Your employee(s) that acquired such knowledge; and (c) the manner in which such persons acquired such knowledge.

10. Identify the minimum skills, qualifications, and criteria You contend are applicable to a person of ordinary skill in the art of each of the Patents-in-Suit, and state the factual and legal bases for Your contention.