United States District Court
Northern District of California

DIGITAL REG OF TEXAS, LLC,

Plaintiff,

v.

ADOBE SYSTEMS INCORPORATED, VALVE CORPORATION, ELECTRONIC ARTS INC., UBISOFT, INC., SYMANTEC CORPORATION, AVG TECHNOLOGIES USA, INC., ZYNGA GAME NETWORK INC., ZYNGA, INC., and INTUIT INC.,

Defendant.

Case No.: CV 12-01971-CW (KAW)

ORDER RE: PLAINTIFF AND DEFENDANT ELECTRONIC ARTS INC.'S 3/13/2013 JOINT DISCOVERY LETTER

Plaintiff Digital Reg of Texas, LLC ("Digital Reg") filed this action against several defendants, including Electronic Arts Inc. ("EA"), for patent infringement in violation of the U.S. Patent Act, 35 U.S.C. § 271. The parties filed a joint discovery letter on March 13, 2013 ("Joint Letter"), in which Digital Reg contends that EA has provided incomplete responses to some of its First Set of Common Interrogatories to All Defendants, which were served on August 9, 2012. (*See* Dkt. No. 303, Exh. 3.) In the Joint Letter, Digital Reg seeks additional financial information pertaining to sales through third-party distribution channels, and further interrogatory responses regarding the operation of the accused instrumentalities.

In accordance with Civil L.R. 7-1(b), this matter is deemed suitable for disposition without hearing. In light of the Joint Letter and documents submitted by the parties, the Court GRANTS in part Digital Reg's request for further financial information, DENIES Digital Reg's request to supplement Interrogatory No. 1, and GRANTS in part Digital Reg's request for further responses to Interrogatory Nos. 2-4 for the reasons set forth below.

///

## I. DISCUSSION

Digital Reg contends that EA's Origin product, which allows EA's customers to login and purchase computer games or play games previously purchased, violates its '541 Patent, '670 Patent, '059 Patent, '150 Patent, '515 Patent, and '655 Patent. (Joint Letter, at 2-3.) The parties agree that it is only the Origin download product, rather than EA's games, that allegedly infringe on Digital Reg's patents. Origin is a free program that allows customers to immediately download computer games purchased online.

In the joint letter, Digital Reg states that "EA has failed to provide fundamental discovery in three areas," but only lists two areas of alleged deficiency—namely, the production of financial information pertaining to sales through third-parties, and interrogatory responses regarding the operation of the accused instrumentalities—so those are the only disputes properly before the Court.

### A. Production of Financial Information

In Request for Production No. 1 and the corresponding Interrogatory No. 6, Digital Reg seeks financial disclosures to determine the amount of royalties resulting from the use of the Origin product. EA previously produced financial information, including documents, that were in its possession. On March 1, 2013, Digital Reg requested information from third-party distributers, including Best Buy and GameStop, which utilize Origin, presumably by allowing for the instant download from EA's server after the purchase is made through the third-party. (*See* Joint Letter, at 5-6.) Digital Reg alleges that the majority of sales are made through these vendors. (*Id.* at 5.)

In response to Digital Reg's March 1 inquiry, EA sought to determine whether it maintained the type of third-party financial information now sought by Digital Reg. In doing so, EA found that the sales information for the digital distribution of computer games through third-party channels was not readily available and informed Digital Reg of this on March 11, 2013, but provided that they would continue to investigate. This letter was filed two days later on March 13, 2013. EA contends that this dispute is not ripe for adjudication, because the parties did not sufficiently meet and confer before filing the Joint Letter. The parties attested that they last met and conferred on March 5, 2013, but EA provides that it informed Digital Reg on March 11, 2103

1   that it did not have access to the information, but would continue to investigate what information
2   was available. This illustrates that there were more communications than was provided in
3   counsels' attestation. Given that the parties' meet and confer process spanned ten days, and that
4   they were nearing the deadline to complete fact discovery, which limits the Court's ability to
5   compel supplemental responses, the Court finds that sufficient meet and confer efforts occurred to
6   allow Digital Reg to seek court intervention.

    The financial information for third parties is not under EA's control. The parties did not explain exactly how Origin works, but Origin appears to only confirm that a legitimate purchase was made, either directly from EA or from a third-party distributer, and then allows the customer to download the product. Digital Reg provides that "the numbers of downloads and associated revenue are directly related to the exploitation of the patent by EA." (Joint Letter, at 5.) As such, EA must respond to the interrogatory and request for production with any responsive information in its possession. Even if EA does not have access to third-party financial documents, it should be able to provide the number of first-time downloads attributable to each third-party vendor.[1] EA contracts with its vendors, and should know how much revenue is generated from each digital sale. This information should be readily available to EA, and can serve as a starting point for any financial analysis of the alleged infringement.[2] This information, which undoubtedly varies depending on the specific vending contract and is therefore highly confidential, appears to be covered by the stipulated protective order that is currently in effect. (*See* Stipulated Protective Order, Dkt. No. 242.)

    To the extent that it has not already done so, EA is ordered to produce responses and/or documents that provide the number of first-time digital downloads for each of its third-party vendors, along with the revenue EA generates per new sale by vendor. The parties are ordered to

---

[1] The Court is only concerned with first-time downloads, because that is when revenue is generated. Based on the representations of the parties, subsequent downloads do not generate additional revenue, because they are free.

[2] The Court is not making any factual determination that any or all revenue would be directly attributable to Origin, and would not be captured by another source (i.e. in-store sales), but rather seeks to identify a means of obtaining the information sought by Digital Reg— EA's revenue from third-party sales.

3

meet and confer concerning the proper designation of the confidential material under the stipulated protective order.

**B. Technical Description of the Operation of the Accused Systems**

Digital Reg contends that EA's responses to interrogatories 1-4 are insufficient. The Court, however, was not furnished with a copy EA's responses, and so must adjudicate these disputes based upon the representations of the parties.

1. Interrogatory No. 1

Interrogatory No. 1 asks EA to describe every "Accused Product," which is defined as "each product identified as encompassed in the Accused System and Method in Plaintiff's infringement contentions, and further includes all other products reasonably similar or that are in the same product line." (Joint Letter, Exh. 3, at 5.) Digital Reg states that the only Accused Product is Origin, which was previously referred to as the EA Download Manager and EA Store. (Joint Letter, at 3.) Digital Reg, however, did not identify any actual insufficiency in the Joint Letter, so the Court DENIES Digital Reg's request to supplement this answer.

2. Interrogatory Nos. 2-4

As provided above, the parties did not furnish a copy of EA's allegedly insufficient discovery responses. In the Joint Letter, however, Digital Reg characterizes these requests as asking EA to "provide a technical description of the operation of the accused systems." (Joint Letter, at 7.) EA objects stating that it has made its source code available for inspection, and that it is unduly burdensome and unreasonable to essentially require EA to "explain to Digital Reg how EA's Origin product relates to the subject matter of the asserted patents.... If Digital Reg contends there is such a relationship, it is incumbent on Digital Reg to provide its contentions." (Joint Letter, at 8.) EA bases its belief that Digital Reg is trying to get EA to make Digital Reg's case for infringement on Digital Reg's definitions. As an example, "Digital Reg seeks information about the source code's treatment of 'DRM,' which it defines as 'the process of granting, denying, or tracking access to electronic content, including the process of notifying a remote computer of the foregoing.'" (*See* Joint Letter, at 8; Exh. 3, at 5.) EA contends, and the Court agrees, that this is how Digital Reg describes its patents.

4

As stated above, the Court is limited in its ability to adjudicate this dispute, because it was not provided a copy of EA's responses. Since Digital Reg is alleging the insufficiency, the onus was on Digital Reg to attach the applicable responses as an exhibit, especially since it provided the propounded discovery.[3]

As a practical matter, interrogatories 2-4 are very similar in form. Each interrogatory seeks the name of the "Accused Instrumentality," which is Origin and its predecessors. Then for each, Digital Reg seeks "a detailed description" of how the product interacts with Digital Reg's patent, as well as the specific source code that relates to the process, any related software documentation, and the identity of two key individuals responsible for the design of development. (Joint Letter, Exh. 3, at 7.) Of these, again without access to EA's responses, the source code production is sufficient for all but the identification of individuals who may undergo deposition. In fact, EA provides that Plaintiff has spent at least 10 days reviewing source code and has offered to produce the EA engineer that is responsible for EA's source code for deposition. (Joint Letter, at 8.) EA is not required to provide source code citations to Digital Reg to identify where its product allegedly infringes, because it has made its source code available for inspection.

In light of the above, if EA has not already provided this information, it is only ordered to supplement its responses to separately answer subsection (e) for interrogatories 2-4, which seeks "the identity of two key individuals responsible for the design or development of the process, functionality, or feature." EA does not have to supplement its responses to any other subsections.

## II. CONCLUSION

For the reasons set forth above, Digital Reg's request for EA to supplement its responses to provide financial information for revenue generated by third-party vendors is GRANTED as provided above. Digital Reg's request for supplemental responses to Interrogatory No. 1 is DENIED, and its request for supplemental responses to Interrogatory Nos. 2-4 is GRANTED in

---

[3] The Court notes that not only was relevant information omitted from the Joint Letter, but some of the exhibits Plaintiff furnished do not seem to apply to the pending discovery dispute—such as Plaintiff's Rule 26 disclosures. Other exhibits violate the Court's Standing Order—namely Exhibits 4, 6, and 7—which states that the joint letter "may not be accompanied by exhibits or affidavits other than exact copies of interrogatories, requests for production of documents and/or responses, privilege logs, and relevant deposition testimony."

1  part, but only as to subsection (e) and only to the extent that EA has not yet provided that
2  information.
3        EA shall provide its supplemental responses within 21 days of this order.
4        IT IS SO ORDERED.

6  DATE: April 12, 2013

                                            KANDIS A. WESTMORE
                                            United States Magistrate Judge