UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **DIGITAL REG OF TEXAS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ADOBE SYSTEMS INCORPORATED, VALVE CORPORATION, ELECTRONIC ARTS INC., UBISOFT, INC., SYMANTEC COROPRATION, AVG TECHNOLOGIES USA, INC., UBISOFT GAME NETWORK INC., UBISOFT, INC., and INTUIT INC.**<br><br>Defendants. | Case No. 4:12-CV-01971-CW |

## ATTESTATION OF MEET AND CONFER

The parties met and conferred most recently on November 5, 2013.

    Dated: November 8, 2013.

| | |
|---|---|
| */s/ Andrew G. DiNovo* | /s/ *Michelle L. Marriott* |
| Andrew G. DiNovo | Michelle Marriott |
| ATTORNEY FOR PLAINTIFF DIGITAL REG OF TEXAS, LLC | ATTORNEY FOR DEFENDANT UBISOFT, INC. |

The Honorable Kandis A. Westmore, United States Magistrate Judge
United States District Court for the Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

      Re:    *Digital Reg of Texas, LLC v. Adobe Systems Incorporated, et al.*
            Case No. CV 12-01971-CW (KAW)

Dear Judge Westmore:

      Pursuant to the Court's Order dated October 22, 2012 (Dkt. 248) and the Court's Standing Order, Defendant Ubisoft, Inc. and Plaintiff Digital Reg of Texas, LLC submit the following joint letter seeking the Court's intervention. Attached are copies of the Amended Infringement Contentions at issue. (Exhibits D1-D6).

## I.    Overview of Parties' Positions

      *Ubisoft's Position*: Digital Reg's Amended Infringement Contentions ("Amended ICs") should be stricken in their entirety. On July 3, 2013, this Court held that Digital Reg's Original Infringement Contentions ("Original ICs") to Ubisoft were deficient, and ordered Digital Reg to "amend its infringement contentions to conform with Patent L.R. 3-1." (Dkt. 405 at 6). In short, Digital Reg was ordered to fix its deficient contentions to comply with Patent L.R. 3-1, and no more. Digital Reg, however, took the Court's Order not as a reprimand, but as an open invitation to change both the products it was accusing as well as its infringement theory. This Court's Order did not authorize Digital Reg to add new products or to entirely rewrite its infringement theory. Digital Reg is taking advantage of the Court's Order to circumvent the Patent Local Rules, which provide that this type of substantive amendment may be made "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. Digital Reg has not even attempted to show "good cause" for its addition of new products or the presentation of new infringement theories. Accordingly, the Amended ICs should be stricken.

      Digital Reg should know better, having attempted this failed tactic previously in this case. Specifically, in August 2012, the Court ordered Digital Reg to supplement its infringement contentions to comply with local rules after this case was transferred from the Eastern District of Texas. (Dkt. 243). In response, Digital Reg tried to seize the opportunity to add new products to its contentions against Defendant Zynga, Inc. (Dkt. 277 at 5-6). This Court thereafter struck the amended infringement contentions insofar as they added new products, explaining that "Judge Wilken only gave Digital Reg permission to supplement its infringement contentions to comply with Patent L.R. 3-1(d), (h). Digital Reg did not obtain leave to amend pursuant to Patent L.R. 3-6, which requires a timely showing of good cause." Dkt. 277 at 6. In an ill-fated replay, Digital Reg attempts the same tactic here, and the result should be the same.

      *Digital Reg's Position*: Contary to Ubisoft's contention, Digital Reg's Amended IC's do not add new products or constitute an entire rewrite of Digital Reg's infringement theory. Instead, the Amended ICs narrow the issues before this Court, accuse a technology accused in Digital Reg's Original ICs, and set forth Digital Reg's original infringement theory with the

1

additional specificity ordered by this Court in its July 13, 2013 Order (Dkt. 405, the "July Order"). Accordingly, Ubisoft's Motion should be denied.

## II. Ubisoft's Motion to Strike Digital Reg's Amended Infringement Contentions

*Ubisoft's Position*:

**Factual Background.** The full factual background was set forth in detail in Ubisoft's first motion to strike (Dkt. 304), but portions relevant to the instant dispute are summarized here. Digital Reg served its Original ICs in October 2011. The Original ICs generally accused the Ubisoft Online Services Platform ("OSP"), which was utilized with a discrete number of Ubisoft video games from March 2010 to April 2011. Digital Reg specifically accused the OSP's requirement that a PC video game player be permanently connected to the internet to play the game. (*See e.g.,* Ex. P2, '670 Patent Original Contentions, p. 5 *and* Ex. D6, '059 Patent Original Contentions, p.12). Over the next year and a half, Ubisoft repeatedly complained about the sufficiency of Digital Reg's Original ICs and provided detailed descriptions of the deficiencies. (Dkt. 304 at 3-4 and Dkt. 304, Ex. D7, D8, D11). Digital Reg ignored Ubisoft's complaints, and proceeded with the case based on the allegations in the Original ICs. Over this period, Ubisoft litigated critical substantive aspects of this case, including claim construction positions and prior art elections.

Then, on July 3, 2013, the Court determined that Digital Reg's Original ICs were, in fact, deficient, and ordered Digital Reg to fix its contentions to "conform with Patent L.R. 3-1." (Dkt. 405 at 6). Digital Reg served Amended ICs on July 31, 2013, but no longer accused the OSP of infringement. Instead, the Amended ICs accused "Uplay (client software and server-side components)," – i.e., the Uplay PC platform – which was commercially released by Ubisoft a year earlier in July 2012. Unlike the OSP, Digital Reg contends that the Uplay PC platform infringes the asserted claims because it requires a one-time activation to associate a CD key with a Uplay account, and then allows a user to play PC video games from any computer without a constant internet connection. (*See e.g.,* Ex. D2, at 14 ('670 patent) *and* D6 at 12 ('059 patent)). When asked, Digital Reg confirmed that it was abandoning its allegations against the OSP, and was instead accusing the Uplay PC platform. At no point between the release of Uplay PC in July 2012 and service of the Amended ICs in July 2013 did Digital Reg ever indicate it intended to entirely rewrite its infringement theory with a focus on a new system.

**Digital Reg Changed Its Infringement Theory:** The Amended ICs are a fundamental and substantive shift, as shown by a simple "redline" comparison of the "Accused System and Method" in the Original and Amended IC's (deletions from Original IC's in red, additions from Amended IC's in blue):

> "The term 'Accused System and Method' means ~~Ubisoft Online Services Platform~~ UPlay (client software and server-side components), ~~Ubisoft Game Launcher~~ including the associated launcher~~, Ubisoft store (UbiShop),~~ and shop functionality, ~~Uplay,~~ and all associated computer hardware, software and digital content."

Importantly, the term "Uplay" that was included in the Original ICs and deleted from the Amended ICs referred to an entirely different concept than the "Uplay (client software and

2

server-side components)" accused in the Amended ICs.  Specifically, the "Uplay" referenced in Digital Reg's Original IC's concerned the provision of *in-game* content (such as rewards and achievements) (Ex. P2, *'670 Original ICs* at 3), whereas "Uplay (client software and server-side components)" is a PC-specific system for facilitating the purchase, downloading of, and access to a game *at the outset*. (*See e.g.,* Ex. D2, *'670 Amended ICs* at 5).  Digital Reg's suggestion that the common use of the word "Uplay" carries some independent significance is not only overly simplistic, but disingenuous and inaccurate.

Given the shift from the OSP to Uplay PC, it is not surprising that Digital Reg's infringement theory also changed. In fact, the differences in Digital Reg's infringement theory are unmistakable and significant.  The Amended ICs are replete with new assertions, such as the ***first-time*** allegations that "notification information" required by most of the independent asserted patent claims can be an IP address and/or a CD key, that the "instructions" that cause or induce a first computer to dynamically transmit a network address are instructions included in the UPlay client and games, and that a permission locked uniquely to the client is "ownership files."  None of these theories were present in the Original ICs.[1]  Even the screenshots that Digital Reg uses to attempt to show where each limitation of the asserted claim is found within Uplay PC (as required by Patent L.R. 3-1) are, for practical purposes, entirely new:

| Patent | Appendices to Compare | Screenshots in Original ICs | Original IC Screenshots in Amended ICs | New Screenshots in Amended ICs |
|---|---|---|---|---|
| '541 claims 1, 2, 3, 4, 13 | Ex. P1, Ex. D1 | 30 | **0** | 25 |
| '670 claim 32 | Ex. P2, Ex. D2 | 32 | **0** | 17 |
| '670 claim 45 | Ex. P2, Ex. D2 | 17 | **2** (in preamble) | 19 |
| '059 claims 16, 17, 19 | Ex. P6, Ex. D6 | 28 | **2** (in preamble) | 15 |
| '515 claim 33 | Ex. P3, Ex. D3 | 19 | **4** | 9 |
| '655 claims 1, 5, 6, 16 | Ex. P4, Ex. D4 | 24 | **1** (in preamble) | 12 |
| '150 claims 1, 2, 9 | Ex. P5, Ex. D5 | 20 | **1** (in preamble) | 14 |
| '150 claim 16 | Ex. P5, Ex. D5 | 12 | **1** | 14 |

In the face of this evidence, Digital Reg baldly states that it has accused UPlay "for over two years."  Note that Digital Reg does *not* claim to have been accusing the "UPlay (client

---

[1] As to "notification information," *compare* Ex. P3 at 15 *with* Ex. D3 at 11-12 ('515 patent); Ex. P4 at 13 *with* Ex. D4 ('655 patent); Ex. P5 at 11, 28 *with* Ex. D5 at 6, 20 ('150 patent); Ex. P2 at 4, 7, and 30 *with* Ex. D2 at 8-9 and 27-33 ('670 patent).  As to "instructions," *compare* Ex. P4 at 4 *with* Ex. D4 at 3 ('655 patent); Ex. P5 at 7, 22-25 *with* Ex. D5 at 3,17 ('150 patent).  As to "ownership files," *compare* Ex. P1 at 7-9 *with* Ex. D1 at 18 ('541 patent).

software and server-side components)" at issue in Digital Reg's Amended ICs for over two years, as to do so would have been a physical impossibility given that it did not exist until July 2012. Digital Reg also points to a screen shot from its Original ICs to argue that "Digital Reg's Original Contentions were directed to Uplay on the PC," but neglects to mention that the screenshot was *removed* from the Amended ICs when Digital Reg's infringement theory changed. And ultimately, Digital Reg attempts to paint its Amended ICs as a "narrowed" subset of its Original ICs, but cannot point to any meaningful overlap between the Original ICs and the Amended ICs. In sum, the Amended ICs contain an entirely new theory.

**Digital Reg Added New Distribution Channels:** Not only did Digital Reg accuse the Uplay PC platform for the first time in the Amended ICs, but it also added new allegations against previously-unaccused digital distribution channels. The Original ICs accused UbiShop – Ubisoft's online distribution channel. In its Amended ICs, however, Digital Reg added, in an entirely conclusory manner, multiple third-party distribution channels, including Best Buy, Valve, Origin, Game Stop, and "retail channels." (Ex. D2 at 2, 21, 35-38 ('670 patent); Ex. D6 at 10 ('059 patent); Ex. D1 at 4, 12 ('541 patent)). Digital Reg contends that these third-party digital distribution channels distribute the content that is at issue. (*See, e.g.,* Ex. D2 at 10 (" . . . Steam or UPlay Shop servers, which distribute content"). Thus, *for the first time*, Digital Reg is accusing the sale and distribution of games through these third party channels, and Digital Reg does not argue otherwise.

**No Good Cause to Amend ICs:** Digital Reg should not be permitted to abuse the Court's Order in a way that fundamentally circumvents all of the protections envisioned by the Patent Local Rules, which expressly "require parties to crystallize their theories of the case early in the litigation and to *adhere to those theories once they have been disclosed*." *See* Dkt. 405 at 3 (citing *InterTrust Technologies Corp. v. Microsoft Corp.*, No. 01-1640 SBA, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2002)) (emphasis added). The Patent Rules further prohibit a plaintiff from amending its infringement contentions unless it seeks leave of Court to do so and makes a timely showing of good cause based on, for example, "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6; *see also Duraflame, Inc. v. Hearthmark, LLC*, CV 12-01205 RS KAW, 2012 WL 4097741 (N.D. Cal. Sept. 17, 2012); *Berger v. Rossignol Ski Co., Inc.*, C 05-02523 CRB, 2006 WL 1095914, *2-3 (N.D. Cal. Apr. 25, 2006) *aff'd*, 214 F. App'x 981 (Fed. Cir. 2007) (denying motion to amend contentions for failing to show good cause). The good cause requirement furthers the purpose of the Patent Rules to "avoid 'vexatious shuffling of positions' that could occur if the parties are permitted to freely modify their infringement contentions at any point in the action." *Berger*, 2006 WL 1095914, at *3 (citations omitted).

Digital Reg is not adhering to its disclosed theories, is vexatiously shuffling its positions, and never sought leave of Court for a substantive amendment. Tellingly, Digital Reg concedes that it abandoned its claim against the OSP because it was "generally discontinued and its use was limited." While factually true (the OSP was discontinued in April 2011, and it was used only in certain games), Digital Reg's perceived lack of revenue is certainly not "good cause" for shifting infringement theories at the eleventh hour and without permission. At all levels, Digital Reg's tactics violate the Patent Local Rules, and are inconsistent with this Court's prior instructions to Digital Reg with respect to the Zynga contentions discussed above.

**Amended ICs Remain Deficient:** Finally, while the Amended ICs should be struck entirely in light of the above, Ubisoft further notes that many of the deficiencies cited by the Court in its Order (Dkt. 405) persist in the Amended IC's. Digital Reg concedes that inconsistencies remain in the Amended ICs, but insists that consistency is not required. In this regard, the Court has previously disagreed. (*See* Dkt. 405 at 5 ("Third, Digital Reg fails to specifically and consistently identify where each claim limitation is found within each instrumentality . . . . As a result of these deficiencies, Digital Reg has not sufficiently articulated its theories of infringement to put Ubisoft on reasonable notice as to Digital Reg's theories of infringement.")). Without belaboring the point and detailing all of the deficiencies here, Ubisoft notes the following:

The Amended ICs never specifically identify "electronic content" or "electronic data" having "executable instructions," as required by most of the independent claims. Instead, Digital Reg confusingly alleges that electronic content including executable instructions is "game content" and/or "UPlay" within the same claim limitation. *See e.g.,* Ex. D3 at 2 ("video games … are electronic content"), 7 ("Games … are executable instructions."), 9 ("Uplay also comprises electronic content including executable instructions.") ('515 patent); *see also* Ex. D2 at 8, 17, 19, 27, and 29 ('670 patent); Ex. D6 at 4, 6 ('059 patent). Moreover, the Amended ICs show that games and UPlay client software are transmitted separately, belying the allegations that games and/or UPlay are *together* electronic content having executable instructions that are transmitted to recipients and/or successive recipients. *See e.g.,* Ex. D2 at 18 and 29 ('670 patent); Ex. D6 at 6 ('059 patent); Ex. D3 at 8 ('515 patent).

The Amended ICs inconsistently/ambiguously chart "notification information" as being user credentials, IP address, a CD key and/or "other information." *See e.g.*, Ex. D3 at 11-12 ('515 patent); Ex. D2 at 8-9 ('670 patent); Ex. D4 at 6 ('655 patent); Ex. D5 at 6, 20 ('150 patent).

The Amended ICs inconsistently chart "successive recipient" as being met when the same user plays a game from a second computer, and separately as being met when a user plays a game from a first computer. *See e.g.,* Ex. D2 at 10, 38 ('670 patent).

The Amended ICs fail to identify "a file" that is created and transmitted and that: (1) includes electronic content, *and* (2) causes access to the electronic content to be denied until notification information is transmitted, as required by the patent claims. Instead, Digital Reg identifies "game files … such as those comprising the games and UPlay." *See, e.g.,* Ex. D2 at 29 ('670 patent). Further, Digital Reg does not show how "UPlay" can both be "the file" that is transmitted and, *at the same time*, the Accused System that transmits "the file." *See, e.g.,* Ex. D2, at 27, 34 ('670 patent).

The Amended ICs fail to identify a "web page link" with any alleged relationship between the link and the remaining required claim elements. *See e.g.,* Ex. D3 at 2 ('515 patent).

The Amended ICs fail to identify a single set of "instructions" that (1) causes or induces a first computer to dynamically transmit a network address *and* (2) collect/attempt to transmit notification information *and* (3) grant or deny access as required by the asserted claims of the '655 and '150 patents.

For all of the reasons explained above, Ubisoft respectfully requests that the Court strike Digital Reg's Amended ICs in their entirety.

## III. Digital Reg's Opposition to Ubisoft's Motion to Strike the Amended ICs

*Digital Reg's Position*:

Ubisoft's Motion should be denied for at least the following reasons.

**The Infringement Theories Set Forth in Digital Reg's Original ICs Encompass the Theories Set Forth in the Amended ICs.** Ubisoft's principal argument in support of its motion is that Digital Reg has changed its infringement theory. It has not. For over two years, Digital Reg has accused Uplay of infringement. *See* Dkt. 405 at 6; Ex. P1–P6 (Digital Reg's "Original Contentions").

Ubisoft tries to avoid the indisputable fact that Digital Reg accused Uplay in its Original Contentions by arguing, in effect, that Uplay in 2011 is different than Uplay in 2013. More specifically, Ubisoft claims that Uplay in 2011 was merely a marketing term whereas Uplay in 2013 is a technology. Ubisoft's alleged distinction is meritless and illogical and should be rejected. Uplay is the accused content delivery platform for which Ubisoft has now provided technical documents during the course of fact discovery. Indeed, Ubisoft's corporate representative testified that Uplay and Orbit, its predecessor, apply the same user authentication mechanisms. *See* Ex. P7: Deposition Transcript of J. Pfannenstill at 54:12–57:2.

Further, Ubisoft's suggestion that Digital Reg is newly accusing Uplay "PC" is also a red herring. Digital Reg's Original Contentions were directed to Uplay on the PC, as reflected in the examples below:

> A HIGH SPEED INTERNET CONNECTION AND A VALID UPLAY ACCOUNT ARE REQUIRED TO ACTIVATE THE GAME DURING INITIAL INSTALLATION. TO ACCESS ONLINE FEATURES, PLAY ONLINE OR UNLOCK EXCLUSIVE CONTENT, YOU MUST HAVE A VALID UPLAY ACCOUNT AND A HIGH SPEED INTERNET CONNECTION. YOU MUST BE AT LEAST 13 TO CREATE A UPLAY ACCOUNT WITHOUT PARENTAL CONSENT. UBISOFT MAY CANCEL ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES UPON A 30-DAY PRIOR NOTICE PUBLISHED AT www.DRIVER-GAME.com.
>
> http://shop.ubi.com/store/ubina/en_US/pd/ThemeID.8605600/productID.198011500/Driver%C2%AE_San_Francisco.html

Ex. P2 (Original IC) at 4; *see also id.* at 9.

Proper infringement contentions provide a defendant with notice of a plaintiff's infringement theories. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 706 (E.D. Tex. 2008). Digital Reg's Original ICs provided Ubisoft with notice that Uplay was an accused instrumentality and thus Digital Reg's Amended ICs cannot be characterized as adding new products or an entire rewrite of Digital Reg's infringement theories.

6

**Digital Reg Has Fully Complied With the Court's July Order.** In its July Order, the Court found Digital Reg's Original ICs deficient in three respects. *See* Dkt. 405 at 6. As reflected below, Digital Reg in its Amended ICs has fully complied with the Court's July Order and thus with Patent L.R. 3-1.

> A. *Plaintiff has charted the entire claims, including those upon which other claims depend.*

The following chart reflects the claims asserted against Ubisoft in Digital Reg's Amended ICs,[2] with the independent claims highlighted in bold:

| Accused Infringer | Patent | Claims |
|---|---|---|
| **Ubisoft** | '541 | **1** (independent)<br>2 (dependent only on claim 1, fully charted)<br>3 (dependent only on claims 1 & 2, fully charted)<br>4 (dependent only on claim 1, fully charted)<br>13 (dependent only on claim 1, fully charted) |
| | '670 | **32** (independent)<br>**45** (independent) |
| | '515 | **33** (independent) |
| | '655 | **1** (independent)<br>5 (dependent only on claim 1, fully charted)<br>6 (dependent only on claim 1, fully charted)<br>16 (dependent only on claim 1, fully charted) |
| | '150 | **1** (independent)<br>2 (dependent only on claim 1, fully charted)<br>9 (dependent only on claim 1, fully charted)<br>**16** (independent) |
| | '059 | **16** (independent)<br>17 (dependent only on claim 16, fully charted)<br>19 (dependent only on claim 16, fully charted)<br>25 (dependent only on claim 16, fully charted) |

All elements for all asserted claims have been individually charted in a separate cell, including all independent claims from which dependent claims depend. *See generally* D1–D6.

> B. *Plaintiff has identified the Accused Instrumentality for each limitation.*

In its July Order, the Court criticized Digital Reg's Original ICs for addressing several of Ubisoft's technologies together as the Accused System and Method. The Court stated that "[Plaintiff] generally defines the 'Accused System and Method' for all patents as 'the Ubisoft Online Services Platform, Ubisoft Game Launcher, Ubisoft store (UbiShop), *Uplay*, and all

---

[2] Digital Reg has further narrowed its case to the '670, '515, '655, '150 and '059 patents.

associated computer hardware, software and digital content.' (Exs. D1–D6.)" Dkt. 405 at 5 (emphasis added).

In response to the Court's order, Digital Reg in its Amended ICs has specifically identified the accused instrumentality—Uplay. *See* D1–D6. In doing so, Digital Reg has dropped from its identification of the "Accused System and Method" the Ubisoft Online Services Platform, Ubisoft Game Launcher, Ubisoft store (UbiShop). *See id.* Digital Reg did so not because Ubisoft did not infringe with its prior technology, Orbit, but because Orbit was generally discontinued and its use was limited. Ubisoft attempts to cast this narrowing as a deficiency in some regard, arguing that Digital Reg has offered a new infringement theory. It has not. Digital Reg has focused its infringement theory on Ubisoft's current technology, Uplay, which has stood accused of infringement for years.

### C. *Plaintiff specifically and consistently identifies where each claim limitation is found within each instrumentality.*

In the Amended ICs, Digital Reg identifies where each claim limitation is found in a separate row associated therewith. *See, e.g.* Ex. D1 at 2–8 (addressing the preamble); 8–9 (addressing the "at the client . . . " limitation); 9–17 (addressing the "receiving from the external source a token"), 18–21 (addressing "based on the received token . . . ." ). In doing so, Digital Reg has done more than merely parrot the claim language. *See* Dkt. 405 at 5 (stating that Digital Reg's Original ICs relating to the '541 Patent, claim 13 "parrots the claim language"). Instead, Digital Reg in its Amended ICs specifically and consistently identifies where each claim limitation is found within UPlay, rather than merely parroting claim language. For example, with regard to '541 Patent claim 13, Digital Reg's Amended ICs provides:

> The step of requesting permission from a server and receiving the permission initiates an authorization procedure, and the token as represented by the response received is based on the result of that procedure. For example, if the authorization procedure determines that the CD key entered has been associated with a different account, authorization to use it with the logged in account will not be granted, as shown below [diagram omitted for space considerations].

Ex. D1 at 22–23. In other words, Digital Reg explicitly identifies the CD key as that which is used to assess authorization.

**Ubisoft's Alleged Deficiencies Are Meritless.** Ubisoft makes a host of allegations regarding continued deficiencies in Digital Reg's contentions. As set forth below, each of Ubisoft's complaints is meritless and incorrect.

First, contrary to Ubisoft's complaint, Digital Reg has specifically identified "electronic content" or "electronic data" having "executable instructions," as required by some of the asserted claims. Indeed, even in stating its complaint, Ubisoft includes excerpts from the Amended ICs contradicting Digital Reg's own argument. *See e.g.,* Ex. D3 at 2 ("video games . . . are electronic content"), 7 ("Games . . . are executable instructions."), 9 ("Uplay also comprises electronic content including executable instructions.") ('515 patent); *see also* Ex. D2 at 8, 17, 19, 27, and 29 ('670 patent); Ex. D6 at 4, 6 ('059 patent). There is nothing confusing or

improper with video games being electronic content that satisfies elements of certain claims, as detailed in the Amended ICs, and Uplay being electronic content that satisfies elements of certain claims. Both video games and Uplay are digital data that is distributed by Ubisoft.

"Electronic content" has not been construed by the Court. Should Ubisoft believe that the evidence Digital Reg has presented does not satisfy the elements as properly construed, the appropriate remedy is seeking adjudication following claim construction. Claim construction is the first step of an infringement analysis. *Exigent Tech., Inc. v. Atrana Solutions, Inc*., 442 F.3d 1301, 1307–09 (Fed. Cir. 2006), well explains how courts resolve summary judgment motions where the movant alleges failures of proof of infringement: the movant must "[1] stat[e] that the patentee had no evidence of infringement and [2] point[] to the specific ways in which accused systems did not meet the claim limitations." *Id.* at 1308–09.

Second, Ubisoft's complaint that the Amended ICs inconsistently/ambiguously chart "notification information" as being user credentials, IP address, a CD key and/or "other information" is unjustified. There is no legal requirement that "notification information" satisfying the claim element be the same information for every claim across multiple patents. On the contrary, specific claims call out different types of notification information. *See, e.g.,* '059 Patent, Claims 12 ("The method of claim 1, wherein the notification information includes user information collected by querying a user for personal information") and 13; '150 Patent, Claim 15; '655 Patent, Claim 16; '515 Patent, Claim 28; '670 Patent, Claims 9 ("The method of claim 1, wherein the notification information comprises demographic information"), 11 ("The method of claim 1, wherein the notification information comprises system information"), and 29. Ubisoft's own citations demonstrate that it understands the notification information identified by Digital Reg. Digital Reg has fully complied with Rule 3-1. *See Linex Techs.*, 628 F. Supp. 2d at 706.

Third, Ubisoft's complaint that the Amended ICs inconsistently chart "successive recipient" as being met when the same user plays a game from a second computer, and separately as being met when a user plays a game from a first computer is also meritless. In support of its argument, Ubisoft directs the Court's attention to ***two different claims*** and insists that the term is allegedly satisfied by different parts of Ubisoft's architecture. There is no requirement in patent law that precludes a "successive recipient" being satisfied by more than one part of Ubisoft's architecture—particularly in different, unrelated claims. Literal infringement "occurs when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *DeMarini Sports v. Worth*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) (quotations omitted).

Fourth, there is no support for Ubisoft's argument that the Amended ICs fail to identify "a file" that is created and transmitted and that: (1) includes electronic content, *and* (2) causes access to the electronic content to be denied until notification information is transmitted, as required by the patent claims. Contrary to Ubisoft's arguments, there is no limitation stating that "Uplay" must be both "the file" that is transmitted and, *at the same time,* the Accused System that transmits "the file." Instead, Digital Reg's Amended ICs accuse, and demonstrate by example, that (1) games (*see,* D2 at 28) and the Uplay Client (*see,* D2 at 29) are files that include electronic content, (2) are transmitted to at least one address (e.g., a Content Distribution Network server) (*see,* D2 at 34–38), (3) cause access to the electronic content to be denied until

9

notification information collected by executable instructions has been successfully transmitted (*see,* D2 at 30–34), and (4) that notification from "user's client computers" (i.e., recipients other than Ubisoft, the immediate sender of the electronic content) is received by Ubisoft (see, D2 at 39–43, specifically, and as cited, UBST-997 to 999).

Fifth, contrary to Ubisoft's contentions, the Amended ICs do not fail to identify a "web page link" with any alleged relationship between the link and the remaining required claim elements. The "web page link" identified in the first element of claim 33 of the '515 Patent (*e.g*., the hypertext "Driver® San Francisco" displayed within the webpage http://shop.ubi.com/store/ubina/en_US/search/plat.pc) is inextricably linked to the electronic content sent from a remote server to a client computer (*e.g.*, the executable Driver.exe) and denial of access to the game Driver® San Francisco (*e.g.*, refer to the "key icon superimposed over a greyed-out image of the box art"). *See* D3 at 3, 8, 14–15. Indeed, the Amended ICs explain, by clear example, the relationship between the link and the remaining required elements.

Finally, Ubisoft incorrectly argues that the Amended ICs fail to identify a single set of "instructions." Digital Reg's Amended ICs, however, clearly accuse the set of instructions included in the Uplay Client as performing the claimed limitations, as reflected in the following excerpts:

> (1) causing or inducing a first computer to dynamically transmit a network address to a second computer (*e.g.,* "The Accused System and Method provides **instructions included in the UPlay client**... **These instructions cause a user's computer to dynamically transmit its address to a Ubisoft server in response to a user's request for data associated with a computer game**." *See* D5 at 3–5; D4 at 3–5);

> (2) collecting/attempting to transmit notification information (*e.g.*, "**The UPlay client includes executable instructions.** When a user attempts to play a game, **these instructions collect notification information**, such as a CD key and account credentials, **and attempt to transmit it to a remote server**." *See* D5 at 10–15; D4 at 6–11); and

> (3) granting or denying access to the requested data (*e.g.,* "**The user must transmit notification information at least once in order to gain any access to game content.** Failure to do so will produce the following message in UPlay, indicating **that access to local game content will be denied until notification information is transmitted via the login and activation processes**." D5 at 10–15; D4 at 6–11).[3]

For all of the reasons explained above, Digital Reg respectfully requests that the Court deny Ubisoft's motion to strike Digital Reg's Amended ICs. This case is in form to proceed to trial on Digital Reg's claims.

---

[3] Even under Defendant's proposed construction of "instructions" (*see* Dkt. 275 at 16), Ubisoft's Uplay Client infringes the '655 and '150 patents.