Eric A. Buresh (*Admitted Pro Hac Vice*)
eric.buresh@eriseip.com
Michelle L. Marriott (*Admitted Pro Hac Vice*)
michelle.marriott@eriseip.com
Mark C. Lang (*Admitted Pro Hac Vice*)
mark.lang@eriseip.com
**ERISE IP, P.A.**
6201 College Boulevard
Suite 300
Overland Park, Kansas 66211
Phone:      (913) 777-5600
Facsimile:  (913) 777-5601

Julie Turner (SBN 191146)
turner@turnerboyd.com
**Turner Boyd LLP**
702 Marshall Street
Suite 640
Redwood City, CA 94063
(650) 521-5930

Attorneys for Defendant
UBISOFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DIGITAL REG OF TEXAS, LLC, | CASE NO.:  12-CV-01971 CW |
| Plaintiff, | **DEFENDANT UBISOFT, INC.'S CLAIM CONSTRUCTION BRIEF AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND LICENSE** |
| v. | |
| ADOBE SYSTEMS INCORPORATED, VALVE CORPORATION, ELECTRONIC ARTS, INC., UBISOFT, INC., SYMANTEC CORPORATION, INTUIT INC., ZYNGA GAME NETWORK INC., AND ZYNGA, INC., | Judge:  The Honorable Claudia Wilken Courtroom: 2, 4th Floor Date:  May 15, 2014 Time: 2:00 p.m. |
| Defendants. | |

## NOTICE

PLEASE TAKE NOTICE that on May 15, 2014, Defendant Ubisoft, Inc. ("Ubisoft") will and hereby does respectfully move for summary judgment of noninfringement on all claims asserted against it by Plaintiff Digital Reg of Texas ("Digital Reg"):  U.S. Patent No. 6,751,670 ('670 patent) claims 32, 45; U.S. Patent No. 7,272,655 ('655 patent) claims 1, 5, and 16; U.S. Patent No. 7,562,150 ('150 patent) claims 1, 2; and U.S. Patent No. 7,673,059 ('059 patent) claims 16, 17, 19.[1]  Ubisoft further moves for summary judgment that Digital Reg's claims against Ubisoft that implicate and seek damages on products or services provided by Valve Corporation ("Valve") are barred and/or exhausted by a license entered into between Digital Reg and Valve.

Ubisoft's motion for summary judgment is made pursuant to Federal Rule of Civil Procedure 56, and seeks a judgment of non-infringement of all asserted claims of the patents-in-suit against Ubisoft.  Ubisoft's opening claim construction brief and motion for summary judgment are supported by the Declaration of Stephen Wicker ("Wicker Dec.") and the exhibits attached thereto, and the Declaration of Mark Lang ("Lang Dec.") and exhibits attached thereto. Pursuant to the Court's request that the defendants avoid duplication or repetitive arguments, Ubisoft specifically expressly joins and hereby incorporates by reference the factual background, description of the patents-in-suit, and claim construction-related arguments and evidence submitted by Defendants Symantec Corporation and Adobe Systems Incorporated, which are being filed contemporaneously.  As referenced herein, the Claim Construction Brief and Motion for Summary Judgment filed by Symantec is referred to as the "Symantec Motion," and the Claim Construction Brief and Motion for Summary Judgment filed by Adobe is referred to as the "Adobe Motion."

---

[1] As the Court directed at the January 22, 2014 case management conference, Plaintiff Digital Reg reduced its asserted claims against Ubisoft to the ten claims referenced above.  Digital Reg's claim elections were contained in Plaintiff Digital Reg's Second Supplemental Claim Election, served February 27, 2014.

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF FACTS ............................................................. 1

        A.      Digital Reg's "Tracking" and "Delivering Patents" ................................. 1

        B.      Ubisoft's Uplay PC Platform ............................................................. 2

II.     LEGAL STANDARDS ............................................................................. 3

        A.      Law Governing Claim Construction ....................................................... 3

        B.      Law Governing Summary Judgment ......................................................... 4

III.    DISPOSITIVE ISSUES ............................................................................ 5

        A.      Ubisoft is Entitled to Summary Judgment Because Digital Reg
                Accuses Method Steps Performed Outside the United States ................................ 5

        B.      Digital Reg Unsupported Conclusions Are No Evidence of Infringement ...................... 8

                1.      Dr. Devanbu Conducted No Analysis Before Reaching
                        His "Conclusions" .......................................................... 8
                2.      Dr. Devanbu Reached Conclusions Without Analyzing
                        The Third Party Technology Accused of Infringement ........................... 14

        C.      Access Is Not Granted "Upon Transmission" of an Authorized
                User Identifier ................................................................................ 17

        D.      Access Is Not Granted or Denied "Based on the Results of  the Attempt
                to Transmit"/"Based on a Result of the Attempted Transmission" ........................ 18

        E.      No "Successive Recipient" or "Successive Computer" ..................................... 19

        F.      No Creating a File ........................................................................ 21

        G.      No Authorized User Identifier ............................................................ 22

        H.      Digital Reg's Claims Against Sales Made By Valve Are Barred ............................ 23

        I.      Ubisoft Does Not Indirectly Infringe Any Asserted Claim ................................ 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307 (Fed. Cir. 2007) ................................... 6

*AquaTex Indus Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed. Cir. 2007)............................. 13

*Aristocrat Techs. Australia Pty Ltd. V. Int'l Game Tech.*,

709 F.3d 1348 (Fed. Cir. 2013) ........................................................................................ 6

*Aro Mfg. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964)  .......................................... 6

*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404 (9th Cir. 1991) ............................................................ 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................................................... 4

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004) .................. 8, 14

*Freescale Semiconductor, Inc. v. ChipMOS Tech., Inc.*, 5:09-CV-3689-JF,

2011 WL 4014466 (N.D. Cal. Sept. 8, 2011)................................................................... 25

*Global-Tech Appliances, Inc. v. SEB*, 131 S.Ct. 2060 (2011)  ..................................................... 25

*Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996) ............................................................ 3, 4

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir. 2000) ................ 5

*NPT, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005)........................................ 5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)....................................................... 3, 4, 20

*Pixion, Inc. v. Citrix Sys., Inc.*, 887 F. Supp. 2d 881 (N.D. Cal. 2012) ...................................... 14

*PNY Technologies, Inc. v. SanDisk Corp.*, C-11-04689 YGR,

2012 WL 1380271 (N.D. Cal. Apr. 20, 2012) ................................................................... 25

*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir 2008)........................................................ 14

*13Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...................................................... 4


## <u>Rules</u>

Fed. R. Civ. P. 56 ............................................................................................................................ 4

# I.      INTRODUCTION AND SUMMARY OF FACTS

In the three years of litigation against Ubisoft, Digital Reg has failed to put forward a good-faith theory of infringement. At a high level, Digital Reg has advanced a theory that Ubisoft's activities infringe multiple method claims when Ubisoft's activities (as an international company) occur entirely outside the United States.   Ubisoft has waited patiently for an explanation of how Digital Reg's patents have such extra-territorial reach.  Having received none, Ubisoft now moves for summary judgment on this issue.  In addition, Digital Reg's current infringement theory[2] (1) lacks any supportable evidence, (2) is technically at odds with the patent claims, (3) relies upon third-party technology that Digital Reg has not even endeavored to investigate, and (4) seeks double recovery for games sales already subject to a license to the patents-in-suit.  In fact, despite three years of litigation, Digital Reg cannot even offer a triable issue because the sole purported "evidence" of infringement in this case is an expert report that is by its very essence entirely conclusory and entitled to no weight.   Digital Reg's lone infringement expert admitted that he has never seen or used the Ubisoft products accused of infringement; he did not review or otherwise access Ubisoft source code prior to signing his report; he did not talk with anyone who had seen Ubisoft products or source code prior to signing his report; and he signed the report presented to him by the lawyers because he found it "convincing."  Ubisoft does not infringe any of the asserted claims as further detailed below, but at a fundamental level, Digital Reg lacks the territorial reach to accuse Ubisoft and lacks admissible evidence with which to present any case at all.  Summary judgment is warranted.

## A.      Digital Reg's "Tracking" and "Delivering" Patents.

The four patents asserted against Ubisoft (the '670, '059, '655, and '150 patents) disclose outdated and obsolete technology. (Lang Dec., Exs. 1-4).  Filed in 1998 by Patrick Patterson, the '670 and '059 patents describe wrapping together both digital content and executable instructions in an "envelope," and then tracking that "envelope" as it is sent from peer-to-peer through e-mail messages and other similar technology.  (Lang Dec., Ex. 1 ['670 patent] at 1:5-8, 3:65-4:19).

---

[2] As described in Ubisoft's Motion to Strike Amended Infringement Contentions and Associated Expert Reports (Dkt. No. 492), Digital Reg's current infringement theory was first disclosed at the eleventh hour, without leave of court and without good cause.

The executable instructions collect and attempt to send notification information to an address (which could be the address of the envelope creator or of a third party (*id.* at 5:39-45)), and the electronic content is made available to the user ***only*** if the transmission attempt is successful. (*Id.* at Abstract).

The '655 and '150 patents, which are continuations of U.S. Patent 7,127,515 to Patterson filed in 1999, specifically incorporate the '670 and '059 patents. Lang Dec., Ex. 3 ['655 patent] at 3:43-47. The '655 and '150 patents describe and claim a technique for "delivering" the electronic content whereby a web page collects information from the user, and sends the information to a server when the user requests delivery of digital content. *Id.* at '655 patent 5:14-22. The server processes the request, and may send the electronic content to an email address designated in the received information. *Id.* at '655 patent 5:23-33. As Digital Reg acknowledges, the electronic file that is delivered to the user is "further protected using the inventions of the '670 and '059 Patents." Dkt. No. 510 at 4. In other words, the digital content is packaged with executable instructions that attempt to transmit notification information, and grant or deny access to the electronic content based on whether the transmission attempt is successful.

**B.     Ubisoft's Uplay PC Platform**

1 ████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ██████████████████████████████████████████████████

7 ████████████████████████████████████████

8 ██████  ███████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 █████████

13 ████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ████████████████████████████████ Lang Dec., Ex. 6 [UBST000000204]. Games

16 purchased through Steam do not appear in the Uplay PC game library. Lang Dec., Ex. 6

17 [UBST000000204]. The manner by which Valve's Steam Platform operates is not in the record.

18       When a user purchases a Ubisoft video game through other alleged third-party channels,

19 such as Electronic Arts' Origin Platform and websites run by Best Buy and Gamestop, the

20 purchase and distribution of the game is presumably handled by the third party, and Digital Reg

21 has assembled no evidence as to how the third parties operate. There is also no evidence in the

22 record as to whether the third party channels directly interface with Ubisoft's Uplay servers or

23 whether games purchased through the third-party channels are Uplay enabled.

24 **II.**     **LEGAL STANDARDS**

25       **A.**     **Law Governing Claim Construction**

26       The construction of a patent is a matter of law for the Court. *Markman v. Westview*

27 *Instr., Inc.*, 517 U.S. 370, 372 (1996). "It is a 'bedrock principle' of patent law that 'the claims

28 of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v.*

1   *AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).   Accordingly, in construing

2   disputed terms, the Court first looks to the words of the claims.   *Vitronics Corp. v. Conceptronic,*

3   *Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).   Generally, the Court ascribes the words of a claim

4   their ordinary and customary meaning, which the Federal Circuit instructs is "the meaning that

5   the term would have to a person of ordinary skill in the art in question at the time of the

6   invention, *i.e.*, as of the effective filing date of the patent application."   *Phillips*, 415 F.3d at

7   1313.   Other claims of the patent in question can also assist in determining the meaning of a

8   claim term.   *Id.* at 1314.   "Because claim terms are normally used consistently throughout the

9   patent, the usage of a term in one claim can often illuminate the meaning of the same term in

10   other claims."   *Id.*

11       The Federal Circuit also instructs that claims "must be read in view of the specification,

12   of which they are a part."   *Id.* at 1315.   "Usually, [the specification] is dispositive; it is the single

13   best guide to the meaning of a disputed term."   *Vitronics*, 90 F.3d at 1582.   In addition to

14   reviewing the specification, the Court considers the patent's prosecution history.   *Markman*, 52

15   F.3d at 980.   The prosecution history is intrinsic evidence that "can often inform the meaning of

16   the claim language by demonstrating how the inventor understood the invention and whether the

17   inventor limited the invention in the course of prosecution making the claim scope narrower than

18   it would otherwise be."   *Phillips*, 415 F.3d at 1317.   Finally, while emphasizing the importance

19   of intrinsic evidence in claim construction, the Federal Circuit has authorized courts to rely on

20   extrinsic evidence, which consists of "all evidence external to the patent and prosecution history .

21   . . ."   *Id.* at 1317.   Extrinsic evidence is less significant than intrinsic evidence in determining the

22   legally operative meaning of claim language.   *Id.* at 1317-18.

23       **B.       Law Governing Summary Judgment**

24       Summary judgment is properly granted when no genuine and disputed issues of material

25   fact remain, and when, viewing the evidence most favorably to the non-moving party, the

26   movant is clearly entitled to prevail as a matter of law.   Fed. R. Civ. P.4; *Celotex Corp. v.*

27   *Catrett*, 477 U.S. 317, 322-23 (1986).   The moving party bears the burden of showing that there

28   is no material factual dispute.   Where the moving party does not bear the burden of proof on an

issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). When the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues or to support its motion with evidence negating the non-moving party's claim. *Id.* The burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

## III.    DISPOSITIVE ISSUES

### A.    Ubisoft is Entitled to Summary Judgment Because Digital Reg Accuses Method Steps Performed Outside the United States.

United States patents, by law, have territorial limits – they are effective to prohibit only activity occurring in the United States with some statutory caveats not at issue here. Digital Reg asserts **only** method claims against Ubisoft, and accuses Ubisoft of infringing the method claims by performing steps outside the United States. Despite black letter law that every method step must be performed in the United States for infringement to occur, Digital Reg's insistence on pursuing claims that fail on such a fundamental level is confusing at best. It is also grounds for resolving this case in its entirety as to Ubisoft at the summary judgment stage.

Method patent claims consist of one or more operative steps, and direct infringement of a method claim requires that a single actor perform each step of the method. *Aristocrat Techs. Australia Pty Ltd. V. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013); *NPT, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005). Importantly, direct infringement also requires that each of the steps to be performed in the United States. *Id.* ("We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country."). And a finding of direct

infringement – *i.e.*, all steps performed in the United States – is a prerequisite for any finding of induced or contributory infringement. *Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (as to inducement); *Aro Mfg. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483 (1964) (as to contributory infringement).

In fact, for claims such as claim 45 of the '670 patent, *all* of the accused Ubisoft activities occur outside the United States:

| Claim Limitation | Accused Ubisoft Action | Location |
|---|---|---|
| A method of tracking access to electronic content, the method comprising; | | |
| creating a file that includes electronic content and causes access to the electronic content to be denied until notification | Two competing theories:<br>1) the "file" being created is game code that is uploaded to a server (Lang Dec., Ex. 12 [Devanbu Report, '670 | |

| | | |
|---|---|---|
| information collected by executable instructions has been successfully transmitted; | Addendum] at 62);<br><br>2) the "file" being created is game code allegedly "linked" to the Uplay Client by including a provided Uplay Header file (*Id*. at 53). | ████████ |
| transmitting the file to at least one address; and | FTP file transfer of game to CDN (Lang Dec., Ex. 12 [Devanbu Report, '670 Addendum] at 61-62); | ████████ |
| receiving notification information from a successive recipient other than that of the immediate sender of the electronic content. | "Server infrastructure related to authentication and product ownership" (Lang Dec., Ex. 12 [Devanbu Report, '670 Addendum] at 71). | ████████ |

The same problem extends to each of the asserted independent claims.[3]  Digital Reg's expert, Dr. Premkumar Devanbu, admits that the "receiving notification information" step of claim 1 of the '150 is performed by "a Ubisoft server."  Lang Dec., Ex. 11 [Devanbu Report '150 Addendum] at 24. ("When a user attempts to play a game, *a Ubisoft server* receives notification information, such as a CD key and account credentials")).  Dr. Devanbu admits that the "based on the results of an attempt to transmit" step contained in claim 1 of the '655 patent, claim 1 of the '150 patent, and claim 32 of the '670 patent is performed by Ubisoft's "authentication server," which is in Canada.   Lang Dec., Ex. 7 [Devanbu Tr.] at 463:20-464:21 ("A: It says a result of the attempted transmission.  . . . Q: And we're talking about the application layer, and I want to make sure I understand where you think that layer is, okay?  A:  Yeah.  Q:  When you refer to the application layer, you're referring to *authentication at a server*; right?  A: Yes.");  *see also id.* 338:3-339:3.  Dr. Devanbu further admits that the Uplay "server side components" perform the "collecting notification information" step of claim 32 of the '670 (*id*. at 340:4-13), as well as the

---

[3] When summary judgment is granted on an independent claim, it should also be granted on any claims that depend from the independent claim.

"upon transmission of an authorized user identifier" step of claim 16 of the '059 patent.  Lang Dec., Ex. 9 [Devanbu Report '059 Addendum] at 26 (" . . . Uplay requires that he first *log in* with a valid account and transmit a CD key and account credentials *to a Ubisoft server*"); *id. at* 30 ("[A]ccess to local game content will be denied until notification information is transmitted via the *login and activation processes*."); *id.* at 33-34 ("Once the authorized user identifier has been transmitted *and processed successfully*, a user is granted access to game content.").

While Dr. Devanbu testified that he "was not concerned" with whether the steps of the asserted claims were performed in the United States, (Lang Dec., Ex. 7 [Devanbu Dep.] at 466:24-468:1), the law pertaining to the fundamental territorial limits on U.S. patents is.  The fact that any and all accused Ubisoft activities are performed entirely outside of the United States precludes any finding of infringement as a matter of law, making summary judgment appropriate.  This resolves the entire case as to Ubisoft.

**B.** **Digital Reg's Unsupported Conclusions Are No Evidence of Infringement.**

Before getting to the fundamental problems with Digital Reg's infringement *theories*, addressed below, Digital Reg has no *legally cognizable evidence* to support any theory of infringement.  The sole evidence proffered by Digital Reg to establish infringement – the putative testimony of Dr. Devanbu reflected in his expert report – is entirely conclusory given that Dr. Devanbu admitted that (1) he conducted no independent analysis before reaching his conclusions (which is the very essence of conclusory), and (2) the infringement theories reflected in his report require actions by third parties that neither he nor anyone else associated with Digital Reg attempted to analyze.  Accordingly, Dr. Devanbu's opinions are unsupported conclusions and entitled to no weight in the summary judgment context.  "It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact . . ."  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004).  Because there is no evidence of infringement, Ubisoft is entitled to summary judgment on all claims.

**1. Dr. Devanbu Conducted No Analysis Before Reaching His "Conclusions."**

1    Dr. Devanbu unashamedly admits that he reached the conclusions contained in his report

2    without conducting any personal analysis or diligence, and without speaking with anyone who

3    had purportedly done some analysis.  The "opinions" reflected in the expert report, therefore, are

4    entirely unsupported and are the very definition of "conclusory," as shown below:

5    **Dr. Devanbu never personally attempted to use the accused Ubisoft products, or to**

6    **download a Ubisoft game.**  Instead, Dr. Devanbu relied exclusively on the alleged work of a

7    consultant named Greg Bosch:

8    Q:  In connection with your work on this case . . . did you download a video game?

9    A: No. . . .

10   Q:  So you never visited the Ubi Shop?

11   A:  No

12   Q:  And did you ever install the Uplay client?

13   A:  No.

14   Q:  Okay.  And did you ever purchase a game through the embedded store in the
     Uplay client?

15

16   A:  No.

17   Q:  Do you – did anyone on your behalf do that?

18   A:  Yes.

19   Q:  Who did that?

20   A:  Greg Bosch.

21   Lang Dec., Ex. 7 [Devanbu Tr.] at 311:7-24.   Dr. Devanbu does not know if Mr. Bosch

22   downloaded the game from the UbiShop or the Uplay Express Shop, and does not know that

23   differences exist between the Ubishop and Uplay Express Shop.  *Id*. at 345:6-18.  Dr. Devanbu

24   also does not know ***when*** Mr. Bosch downloaded the game, and does not know whether it was

25   before or after the release of the accused Uplay PC platform in July 2012.  *Id*. at 323:7-18.

26   **Dr. Devanbu did not talk with Mr. Bosch about his alleged downloading prior to**

27   **reaching his conclusion:**

28   Q:  Did you actually talk with Mr. Bosch about his experiences downloading a
     game prior to issuing your October 30th, 2013, report?

1   A:  I don't remember.  I spoke to a lot of people, and I don't remember if I spoke to
    him or not.

2   Q:  Okay.  Sitting here today, you don't have a specific recollection of talking with
    Mr. Bosch prior to issuing your report –

3

4   A:  Yes.

    Q: --correct?
5
    A:  Yes, I don't have a recollection, no.
6

7   *Id.* at 313:2-13; *see also id.* at 272:14-23.

8       **Dr. Devanbu never personally examined Ubisoft's source code prior to reaching his**

9   **conclusions.**  (*Id.* at 256:11-13 ("Q:  Did you ever come look at Ubisoft source code?  A: I did

10  not.")).   Instead, another consultant named Bob Free reviewed Ubisoft's source code.   Dr.

11  Devanbu never spoke with Mr. Free:

12      Q:  And do you know who Bob Free is?

13      A: Yes.  He was the guy who reviewed the Ubisoft code.

14      Q:  Have you ever spoken with Bob Free?

15      A:  No.

16  *Id.* at 257:25-258:4.   According to Dr. Devanbu, Mr. Free selected certain files of code to be

17  printed.   *Id.* at 259:12-19.   Dr. Devanbu does not know what methodology Mr. Free used to

18  select the requested printouts.   *Id.* at 260:25-261:17 ("Q: So you have no idea how he figured out

19  – or what methodology or process he used in determining what he thought was relevant to the

20  case?  A:  Yes.  I'm just assuming he was competent and did it the way any competent person

21  would do it.  Q:  But you have no personal knowledge?  A:  No.").

22      After Ubisoft produced source code printouts, Mr. Bosch allegedly examined them.  *Id.* at

23  259:12-19 ("So my understanding is that Mister – Mr. Free reviewed the Ubisoft source code the

24  same way I reviewed the Adobe and Symantec source codes.   And he selected files that he

25  thought were pertinent to the infringing case, and he provided them – he requested the printouts,

26  and  Ubisoft  provided  the  printouts.    And  those  were  later  analyzed  by  Mr. Bosch.").   Dr.

27  Devanbu never examined any Ubisoft source code printouts prior to reaching his conclusions:

28      Q: But at that time, prior to issuing your report, you hadn't actually seen the source
        code printouts; right?

-10-

Ubisoft's Motion for Summary Judgment

A:  Right, right.

*Id*. at 264:2-5.

**Dr. Devanbu never talked with Mr. Bosch about Ubisoft's source code prior to reaching his conclusions**.

Q:  So, sitting here today. . . do you have any recollection of talking with Mr. Greg Bosch prior to a week or so ago regarding Ubisoft source code printouts?

A:  I may have.  I don't know.

Q:  Okay.  But you don't know, sitting here today?

A:  I don't – I don't know whether I did or not.  I don't know.

Q:  You don't have a specific recollection?

A:  Recollection, no.

*Id*. at 265:12-23.

**Dr. Devanbu did not verify the content of his report, because he trusted Mr. Bosch "implicitly," despite having never spoken with or met him prior to reaching his conclusions.  Instead, Dr. Devanbu read the report and was "convinced."**

Q: Okay.  And it wasn't – also wasn't important to you to independently verify Mr. Bosch's experiences by personally downloading a game?

A:  Yes.

Q:  You did not think that that was important?

A:  I – I didn't think it was important, yes.

Q:  Okay.  Why not?

A:  Because I – I – it – it sounded convincing to me.  It seemed to make sense that this is a reasonable way to design the system, and every part of it made sense.

Q:  What sounded convincing to you?

A:  The report.

*Id*. at 324:4-16; *see also id*. at 325:10-14 ("Q:  . . . [I]s it your testimony that the report that Digital Reg's lawyers wrote was convincing to you?  A:  Yes."). Dr. Devanbu characterized his opinions as Mr. Bosch's opinions.  *Id*. at 385:12:15 ("Q:  Okay.  That's Mr. Bosch's opinion?  A: Yes, and it's mine as well.  Q:  Because what's his opinion is your opinion?  A:  I believe it.  It

1   makes sense to me.").  Dr. Devanbu further testified that he trusted Mr. Bosch – with whom he

2   had never met or even spoken– "implicitly":

3       Q:  Because you trust Mr. Bosch –

4       A:  Yes.

5       Q: -- implicitly?

6       A;  Yes.

7   *Id*. at 428:15-18.

8       Q: Okay.  And just to be clear, you've never met Mr. Bosch in person; right?

9       A:  No.

10      Q:  You've never worked with him as a colleague outside of this case?

11      A:  No.

12      Q:  You don't know him from an academic setting?

13      A:  No.

14      Q:  And you have no reason to know whether he does good work?

15      A:  Based –

16      MR. SHIU: Objection; form.

17      THE WITNESS: Sorry.  Based on the writing and the relationship of this writing
    with the other materials provided to me, I believe that this is a careful and
18      thoroughly – thoroughly researched and carefully written document.

19      Q:  Okay.  And when – in the case of this sentence that we're talking about, in the
    case of retail sales –
20
    A:  Yes.
21
    Q:  -- when there's no evidence below this sentence, what leads you to believe that
22      Mr. Bosch checked this and vetted it?

23      A:  Because of the quality of the rest of the document.

24  *Id*. at 469:5-470:14.

25      On  this  record,  Dr.  Devanbu  did  nothing  more  than  conclude  infringement  existed

26  without  any  personal  analysis  or  diligence,  and  without  speaking  with  anyone  who  had

27  purportedly  done  some  analysis.  Yet despite his "implicit" trust in Mr. Bosch's conclusions, the

28  report contains no factual evidence to support key conclusions of infringement.  For example,

1   although the report concludes that Uplay-enabled video games can be accessed on "subsequent

2   computers" (Lang Dec., Ex. 12 [Devanbu Report '670 Addendum] at 15, 26[4]), the report is

3   devoid of any facts to support the conclusion.  Similarly, the report claims that instructions

4   "cause[] a first computer to dynamically transmit a network address to a second computer in

5   response to a request for data" as required by claim 1 of the '655 and claim 1 of the '150 patents,

6   again without facts to support the conclusion.  Lang Dec., Ex. 10 [Devanbu Report '655

7   Addendum] at 6, 8; Ex. 11 ['150 Addendum] at 6, 8.  Further, although the report claims that the

8   Uplay PC client and purported "soft privileges" constitute "electronic content," "electronic data,"

9   or "requested data," there is no supporting evidence in the report,[5] and Dr. Devanbu testified he

10  had no basis to believe that "soft privileges" are separate content at all.   Lang Dec., Ex. 7

11  [Devanbu Tr.] at 472:18-474:2.

12          Further, Dr. Devanbu's naked reliance on Mr. Bosch is fatal to his "opinions" because

13  Mr. Bosch – who earned a bachelor's degree in 2006 and a master's degree in 2009 – is

14  undisputedly not one of ordinary skill in the art of the patents-in-suit, which claim priority to

15  1998 and 1999. Lang Dec., Ex. 8 [Greg Bosch CV]; *see also AquaTex Indus Inc. v. Techniche*

16  *Solutions*, 479 F.3d 1320, 1329 (determination of infringement requires perspective of one of

17  ordinary skill in the art at the time of the invention).  At a minimum, this runs afoul of Federal

18  Rule of Evidence 702, and Ubisoft will be moving to strike the admissibility of Dr. Devanbu's

19  opinions in their entirety.

20          For purposes of summary judgment, these facts render Dr. Devanbu's report entirely

21  conclusory and, therefore, no evidence of infringement.  "It is well settled that an expert's

22

23  [4] As explained in Dr. Wicker's Non-Infringement Report (Wicker Dec., Ex. A) at 49-50, Dr.
    Devanbu's report makes the following blanket statement: "As claimed, a particular user's first
24  computer on which a game within Uplay is accessed is a first recipient, and all subsequent
    computers on which a game within Uplay is accessed is a successive recipient.  Each recipient
25  transmits notification information before access to game content is granted."   No further
    information or evidentiary citations are provided.
26  [5] As explained in Dr. Wicker's Non-Infringement Report (Wicker Dec., Ex. A) at 51-52, Dr.
27  Devanbu's Report fails to provide any evidence to support the conclusory opinion that the Uplay
    PC client is "electronic content" (Lang Dec., Ex. 12 [Devanbu Report '670 Addendum] at 31;
28  Ex. 10 ['655 Addendum D-1] at 8), or that "soft privileges" are "electronic content."  (Ex. 12
    [Devanbu Report '670 Addendum] at 9).

1 unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine

2 issue of material fact." *Dynacore*, 363 F.3d at 1278. Where an expert's opinions are "precisely

3 conclusory assertions, reached using words in ways that contradict their plain meaning that a

4 critical claim limitation is found in the accused device," there is no material factual dispute and

5 summary judgment is "fully warranted." *Id.* Certainly the opinions of one who is not skilled in

6 the art do not raise a material fact issue. *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001

7 (Fed. Cir 2008) (upholding summary judgment when expert offering opinion regarding

8 enablement "admitted to not being skilled in the art"). Where, as here, Dr. Devanbu lacks a

9 basic understanding of the accused products and by his own admission conducted no substantive

10 analysis that led to the purported "opinions" contained in his report, his conclusions are nothing

11 more than that – unsupported conclusions that cannot "establish a material issue of fact essential

12 to the patentee's case" with respect to infringement. *Pixion, Inc. v. Citrix Sys., Inc.*, 887 F. Supp.

13 2d 881, 889 (N.D. Cal. 2012).

14
15         **2. Dr. Devanbu Reached Conclusions Without Analyzing the Third Party Technology Accused of Infringement.**

16      Not only did Dr. Devanbu fail to personally conduct any analysis prior to reaching his

17 conclusions, he admitted that ***no one*** on behalf of Digital Reg endeavored to analyze whether the

18 ultimate opinions contained in his report have any factual basis for games purchased and

19 downloaded through third-party distribution channels – Valve's Steam Platform, Best Buy,

20 GameStop, or EA's Origin – or for actions performed by the third-party web server or content

21 delivery networks ("CDN") when a game is purchased through the Ubishop or Uplay Express

22 Shop.

23      At the outset, it is undisputed that Ubisoft does not provide or operate any "web servers"

24 or "content delivery networks" ("CDN"s) implicated by Dr. Devanbu's conclusions. ██████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████████████████████████████████

For games purchased through Valve's Steam Platform, any web servers or CDN servers would be operated by Steam and its suppliers, although there is no evidence in the record. Lang Dec., Ex. 7 [Devanbu Tr.] at 397:15-398:21. As to games purchased through Best Buy, GameStop, or EA's Origin, Digital Reg has assembled no evidence regarding the existence or operation of web servers and CDN servers. Lang Dec., Ex. 7 [Devanbu Tr.] at 428:25-429:25. Thus, any "web server" or "CDN" required for infringement is operated by an unrelated third-party that Ubisoft does not control, and there is no evidence to suggest otherwise. *See, e.g.,* Lang Dec., Ex. 7 [Devanbu Tr.] at 347:20-352:18. This alone warrants summary judgment.

At his deposition, Dr. Devanbu confirmed that method steps in each of the asserted claims are performed by these third parties. According to Dr. Devanbu, the following steps are performed by third-party CDNs:

- '059 claim 16: "transmitting the received electronic data" (Lang Dec., Ex. 7 [Devanbu Tr.] at 408:18-409:8, 375:3-15).

- '059 claim 16: "receives electronic content" (*Id.* at 372:3-16, 372:17-373:21).

- '655 claim 1: "processing the request" (*Id.* at 406:2-407:9).

- '655 claim 1: "transmitting the requested data" (*Id.* at 407:18-408:1).

- '150 claim 1: "processing the request" (*Id.* at 406:2-407:9 ("The processing request would partly be done by the web server and by the content distribution network.")).

- '150 claim 1: "transmitting the requested data" (Lang Dec., Ex. 7 [Devanbu Tr.] at 409:16-410:6).

Dr. Devanbu concluded that the following method steps are met by a third-party web server:

- '150 claim 1: "providing instructions" (Lang Dec., Ex. 11 [Devanbu Report '150 Add.] at 6, 8).

- '150 claim 1 and '655, claim 1: "processing the request" (Lang Dec., Ex. 7 [Devanbu Tr.] at 406:2-407:9, 406:2-407:9).

Yet in forming his conclusions, Dr. Devanbu did not think it was "important" to determine how these third parties operate. (Lang Dec., Ex. 7 [Devanbu Tr.] at 348:2-351:1 (admitting that he did not review any documentation related to Digital River), 357:17-22 ("Q: You understand that Digital River is not a CDN? A: Digital River is a store. They may also operate a CDN. I don't know."); 361:3-9 ("Q: But I'm asking you: You understand that those

1   particular actions do not result in downloading content?  A:  I don't know that.  Q:  You don't

2   know if they do?  A:  I don't know if they do or not.  I don't know."), 363:18-364:1 ("[W]ithout

3   looking at the CDN code, how do you know how it knows where to send it [content]?  A:

4   Because as a person with normally – normal skill in the arts, I would assume that if I'm receiving

5   some software or content, the distribution network that's sending it to me knows my IP address.

6   Q:  So you're just making an assumption based on one of skill in the art?  A:  Yes.), 397:10-

7   399:25 ("A:  From which – exactly who provided the content? . . . In the Steam case, I don't

8   know.  Q:  Not important to you?  A: No.").

9          Further, Dr. Devanbu admitted that he reached his ultimate conclusion that any Uplay-

10  enabled game would infringe the asserted claims based entirely on an "assumption" that games

11  purchased and downloaded from third-party channels "operated in the same way" as games

12  purchased through the Ubishop and Uplay Express Shop.  (*Id.* at 391:6-11, 403:3-9).   He

13  confirmed that neither he nor anyone else associated with Digital Reg attempted to purchase or

14  download a game from Steam, Best Buy, or GameStop (*Id.* at 401:8-403:9, 405:8-14, 425:7-12),

15  and that he did not actually know if "Uplay-enabled games" were available through these

16  channels:

17         Q:  So sitting here today, you don't have any opinions as to whether games
           downloaded from Best Buy infringe the claims?
18
           A:  If the games – claims – games distributed by Best Fly – Best Buy are Uplay-
19         enabled, they will infringe.

20         Q:  Okay.  You don't know if that's happening, though?

21         A:  I'm not sure – . . . .

22  *Id.* at 426:2-12; *see also id.* 426:13-428:18 (same as to games sold by Best Buy); 402:12-403:9.

23  Dr. Devanbu further admitted that although Digital Reg is seeking damages for games

24  downloaded through EA's Origin platform, he had no opinions as to whether those games

25  infringe.  (Devanbu Tr. 430:4-431:6 ("I don't believe we made any statements about that.  And

26  so, to the extent that we did not make any statements about EA's origin, I can't speak to that.").

27         Dr. Devanbu's conclusions, formed without any factual support or investigation, render

28  his putative testimony no evidence of infringement.  Summary judgment is appropriate.

**C.**     **Access Is Not Granted "Upon Transmission" of an Authorized User Identifier.**

Digital Reg's infringement theory is directly contrary to the plain and ordinary language of claim 16 of the '059 patent, which requires the following: "***upon transmission*** of an authorized user identifier … access is granted to at least a portion of the electronic content." Lang Dec., Ex. 2 ['059 patent] at cl. 16 (emphasis added).  Digital Reg claims that logging in to a Ubisoft server meets the "upon transmission" requirement, as is evidenced by the report of Dr. Devanbu: "Once the authorized user identifier has been ***transmitted <u>and</u> processed successfully***, a user is granted access to game content."  Lang Dec., Ex. 9 [Devanbu Report, '059 Addendum] at 34-35; *see* also Lang Dec., Ex. 7 [Devanbu Tr.] at 453:21-454:2 ("upon receiving authorization").

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

But "upon transmission" does not mean "server authorization."  The plain language of the claim is "upon transmission," which is expressly distinguished from "server authorization" in the claims of the '059 patent.  Wicker Dec., Ex. A [Wicker Report] at 14. ██████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████   Moreover, the claims of the '059 patent expressly distinguish between granting access "upon transmission" and server authorization. Dependent claim 26, which depends directly from claim 16 and is not asserted, recites:  "The method of claim 16, <u>further comprising</u> the step of <u>receiving an access granting message</u> at the one or more successive computers."  The '059 specification confirms that a "transmission" is an entirely different concept from "receiving an access granting message":  "If, however, the attempted transmission succeeds (225) <u>or</u> an access granting message 136 is received, the notification instructions 110 can store (230) data indicating successful access."  Lang Dec., Ex. 2 ['059 patent] at 8:52-55; *see also id.* at 7:59-64, 6:13-23.

Because granting access "upon transmission" means exactly what is says – and expressly does not mean granting access after server authorization as is required for Digital Reg's infringement theory – Ubisoft is entitled to summary judgment.

**D.      Access Is Not Granted or Denied "Based on the Results of the Attempt to Transmit"/"Based on a Result of the Attempted Transmission"**

| Claim Term | Ubisoft's Proposed Construction | Digital Reg's Proposed Construction |
|---|---|---|
| "based on the results of the attempt to transmit" ('655 claim 1, '150 claim 1)<br><br>"based on a result of the attempted transmission" ('670 claim 32) | based on whether or not notification information is sent | No construction necessary |

There should be no dispute regarding the meaning of this term – the patentee and Digital Reg's validity expert Dr. Arthur Keller both agree with Ubisoft that these claims require granting or denying access based on the act of trying to transmit notification information, whether successful or not, which is separate and distinct from granting access upon receiving an access granting message (*i.e.*, server authorization).  The patent claims themselves clearly distinguish between granting access "based on the results of an attempt to transmit" (*see, e.g.,* Lang Dec., Ex. 1 ['670 patent] at claim 32), which can be "successful" or "unsuccessful" (*see, e.g. id.* at claim 33), versus the entirely separate concept of "receiving an access granting message."  *Id.* at claim 34; *see also id.* at 8:16-20 (noting that a "network acknowledgment message" may indicate successful transmission).  Indeed, the patentee described an "attempt to transmit" as "the act of trying" (Lang Dec., Ex. 14 ['670 File History December 4, 2003 Response] at 20-21), and further stated that "the invention as claimed grants access immediately upon transmission of the notification, without waiting for a response from the server to grant access.  In other words, the transmission of the notification is the triggering event for granting access, not an authorization from the server."  Lang Dec., Ex. 15 ['515 Patent File History, 3/30/2005 Examiner Interview Summary Record]; Ex. 16 ['515 Patent File History, 4/4/2005 Remarks Made in Amend].

1

2

3

4

5

6

The only person who disagrees is Digital Reg's infringement expert, Dr. Devanbu, who is forced to take an opposite position not because the patents require it, but because his infringement theory is predicated on server log-in authorization, which he admits is an "application layer message being sent."  Lang Dec., Ex. 7 [Devanbu Tr.] at 462:1-464:21 (testifying that "user authentication at a server" meets the "attempting to transmit" limitation). Given that Digital Reg's own experts disagree on what the claim term means, Digital Reg's "no construction" position rings hollow.  In light of the claims, the specification, and the prosecution history of the patents-in-suit, Ubisoft's construction should be adopted.  Digital Reg has offered no opinion and there is no evidence to support a finding of infringement under Ubisoft's proposed construction.  Accordingly, Ubisoft is entitled to summary judgment.

**E.     No "Successive Recipient" or "Successive Computer"**

| Claim Term | Ubisoft's Proposed Construction | Digital Reg's Proposed Construction |
|---|---|---|
| "recipient"  (claim 32 of the '670 patent) | user that receives the electronic content | No construction necessary |
| "successive recipient" (claims 32 and 45 of the '670 patent) | user that receives electronic content from a previous recipient | No construction necessary |
| "successive computer" (claim 16 of the '059) | user's computer that receives electronic content from a previous user's computer | No construction necessary |

As explained in detail in §§ III.B.1. and III.B.2 of the concurrently-filed Symantec Motion and incorporated here by reference, the patents describe:

- a "recipient" as a user that receives electronic content;

- a "successive recipient" as a user that receives electronic content from a previous recipient – *i.e.*, user A sends to user B, user B sends to user C, and so forth; and

- a "successive computer" as a user's computer that receives electronic content from a previous user's computer – *i.e.*, computer A sends to computer B, computer B sends to computer C, and so forth.

*See also, e.g.,* Lang Dec., Ex. 1 ['670 patent] at 5:18-21 ("[A] recipient 125 can easily re-transmit the received electronic content 105 to one or more new recipients 135 by forwarding the received envelope 100 in a new e-mail message 115b.").

The patent specification distinguishes a "successive recipient" from a "successive computer,"[6] expressly stating that the executable instructions perform a "computer system-based or user-based inquiry" to determine whether a computer or user's previous attempt to transmit was successful so that the instructions can "distinguish between different users of the same computer system." Lang Dec., Ex. 1 ['670 patent] at 7:57-61.  The '670 patent also makes clear that a "recipient" cannot be a distribution server.  In fact, the '670 patent specifically describes multiple digital distribution mechanisms including e-mail, FTP, and HTTP, each of which require an intermediary server through which electronic content is temporarily stored prior to a recipient downloading the content.  *See, e.g.,* Lang Dec., Ex. 1 ['670 patent] at 4:2-6; claim 46.  Yet, throughout the claims, specification, and file history, these intermediary servers are ***never*** identified as a "recipient."  Similarly, the first user's computer to receive the content through an intermediary server is ***never*** identified as a "successive recipient" or "successive computer."

Again, Digital Reg advances a "no construction necessary" approach to this term so that it can simultaneously attempt to pursue multiple conflicting infringement theories.  Digital Reg's expert, Dr. Devanbu, testified that the term "successive recipient" can mean different things in different claims, and further could have a different construction "depending on the context in which you're being asked to offer an opinion on infringement."  Lang Dec., Ex. 7 [Devanbu Tr.] at 459:19-461:21, 175:21-177:24.[7]  For Ubisoft, Digital Reg claims that infringement of claim 32

---

[6] Digital Reg's infringement expert, Dr. Devanbu, testified that he did not draw any distinction between the terms "successive recipient" and "successive computer."  Lang Decl., Ex. 7 [Devanbu Tr.] at 173:21-24.

[7] This approach is contrary to the law of claim construction, as it is well settled that "claim terms are normally used consistently throughout the patent." *Phillips*, 415 F.3d at 1314.

of the '670 patent occurs when a user downloads the same game from a CDN server to two different computers.  Lang Dec., Ex. 12 [Devanbu Report, '670 Addendum] at 15.  Under Digital Reg's theory, the first time the user downloads the game they are the "recipient," and the second time the same user downloads the same game from a different computer they are the "successive recipient."  This theory does not contemplate digital content being sent from one "recipient" to a "successive recipient" – in fact, to the contrary, in both situations the user is downloading the content from the same CDN server.[8]  Wicker Dec., Ex. A [Wicker Report] at 25.

For claim 45 of the '670 patent and claim 16 of the '059 patent, Digital Reg claims that when a game is uploaded by Ubisoft to a CDN distribution server, there is no "first recipient," but every user that receives the game from the distribution server is a "successive recipient" (claim 45 of the '670 patent) or "successive computer" (claim 16 of the '059).  Lang Dec., Ex. 12 [Devanbu Report, '670 Addendum] at 67-68; Ex. 9 [Devanbu Report, '059 Addendum] at 20; Ex. 7 [Devanbu Tr.] at 460:7-19.  This theory is also at odds with the claims, specification, and file history of the '670 patent, as a first user to receive electronic content from a distribution server cannot be the "successive recipient" or "successive computer."  Digital Reg has offered no opinion, and there is no evidence to support a finding of infringement, under Ubisoft's proposed construction.  In fact, Dr. Devanbu admitted that he was not aware of any circumstance in which one user transmitted a Ubisoft video game to another user.  *Id.* at 456:21-457:23 ("I don't play games, so I don't know. . . .").  Accordingly, Ubisoft is entitled to summary judgment.

**F.     No Creating a File.**

| Claim Term | Ubisoft's Proposed Construction | Digital Reg's Proposed Construction |
|---|---|---|
| "creating a file" (claim 45 of the '670 patent) | creating an operational unit containing the electronic content and the executable instructions that remains intact and operational if the unit is retransmitted | No construction necessary |

As discussed in § IV.D. of the concurrently-filed Adobe Motion, which is incorporated here by reference, the "file" being created is a single unit that includes both the electronic

---

[8] For games downloaded through the UbiShop and Uplay Express Shop, the CDN server is a Limelight server; for all other distribution channels there is no evidence in the record.

1   content and the executable instructions, and that can be retransmitted from user to user.  Digital

2   Reg has offered no opinion, and there is no evidence to support a finding of infringement, under

3   Ubisoft's proposed construction – in fact, to the contrary, Dr. Devanbu admitted that Uplay PC

4   (the alleged "executable instructions") is distributed separately from purchased video games.

5   Lang Dec. Ex. 7 [Devanbu Tr.] at 471:1-23., 472:8-13 ("Q: So my question was: Do you have

6   any evidence to believe that the Uplay Client is downloaded at the same time as a . . . game? A:

7   No."); *see also* Wicker Dec., Ex. A [Wicker Non-Infringement Report] at 12-13.  Accordingly,

8   Ubisoft is entitled to summary judgment.

9         **G.**     **No Authorized User Identifier.**

| Claim Term | Ubisoft's Proposed Construction | Digital Reg's Proposed Construction |
|---|---|---|
| "authorized user identifier" (claim 16 of the '059 patent) | information used to verify that the sender is authorized to create electronic data | No construction necessary |

14         Claim 16 of the '059 patent recites, in part, "upon transmission of an authorized user

15   identifier to a network address other than a network address of the sending computer, access is

16   granted to at least a portion of the electronic data."  Digital Reg contends that the claimed

17   "authorized user identifier" is the same as the claimed "notification information."  However, the

18   patent claims distinguish between the two.  Dependent claim 27, which depends directly from

19   claim 16 and is not asserted, recites: "The method of claim 16, wherein the granting access to at

20   least a portion of the electronic data is also based in part on the result of a transmission of

21   notification information."  Given that claim 27 contemplates granting access ***both*** (1) "upon

22   transmission of an authorized user identifier," ***and*** (2) "also based in part on the result of a

23   transmission of notification information," the "authorized user identifier" cannot be synonymous

24   with "notification information" as Digital Reg claims.

25         Instead, the '059 specification explains that an "identifier" of an "authorized user" is

26   information used to verify that the sender is authorized to create electronic data:  "The identifier

27   that identifies a user or computer system included in the notification information may be used to

28   verify that an authorized user produced the file."  Lang Dec., Ex. 2 ['059 patent] at 2:42-45; *see*

*also id.* at 6:26-31 (referring to "identifiers corresponding to authorized envelope creators"). Thus, the term "authorized user identifier" should be construed as "information used to verify that the sender is authorized to create electronic data." Digital Reg has offered no opinion, and there is no evidence to support a finding of infringement, under Ubisoft's proposed construction, and summary judgment is warranted.

**H.    Digital Reg's Claims Against Sales Made By Valve Are Barred.**

If granted, the foregoing grounds for summary judgment will result in a complete resolution of Digital Reg's claims against Ubisoft. However, in the event that any claims remain, sales of Ubisoft games made by Valve through its Steam Platform are expressly licensed pursuant to a Settlement Agreement between Digital Reg and Valve. Ninety percent (90%) of Ubisoft's accused games sales are through the Steam Platform. Summary judgment on this issue, while not complete, will dramatically narrow any remaining issues in the case. Accordingly, as set forth below, summary judgment should be granted on Digital Reg's efforts to seek a double recovery from Ubisoft for claims based on sales through Valve that are already settled, licensed, and released.

In this same set of lawsuits, Digital Reg sued Valve Corporation on the patents-in-suit, culminating in a Settlement Agreement signed on May 16, 2013.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15   Furthermore, from a factual standpoint, the conclusion that

16   sales through the Steam Platform are made "using" the Steam Platform is both tautological and

17   uncontrovertable – a game cannot be sold through the Steam Platform without "using" the Steam

18   Platform.   As a consequence, all such sales through the Steam Platform, including sales of

19   Ubisoft games, are licensed and immune from suit.

20          In addition to the plain application of the Digital Reg/Valve agreement, Digital Reg's

21   effort to recover from both Valve and Ubisoft for the same game sales is fundamentally unfair

22   and, not surprisingly, is foreclosed by the doctrine of patent exhaustion.   Digital Reg has

23   acknowledged that its claim against Valve encompassed all game titles "distributed through

24   Valve's accused Steam distribution network."  Dkt. No. 90 at 4.  Digital Reg represented to the

25   Court that its claim against Valve encompassed "Steam and the games distributed through

26   Steam."  Dkt. No. 354 at 10.

27   Now,

28   Digital Reg is seeking a second recovery for games (specifically, Ubisoft games) that are

1    unquestionably distributed through Valve's Steam distribution network.  Such a double recovery

2    is strictly forbidden.  "A patent holder may not collect a 'double royalty' . . . from both a licensee

3    and a purchaser of the licensee's product under the same patent for the same patented product

4    without violating the patent exhaustion doctrine."  *PNY Technologies, Inc. v. SanDisk Corp.*, C-

5    11-04689 YGR, 2012 WL 1380271, at *5 (N.D. Cal. Apr. 20, 2012); *see also Freescale*

6    *Semiconductor, Inc. v. ChipMOS Tech., Inc.*, 5:09-CV-3689-JF, 2011 WL 4014466, at *3 (N.D.

7    Cal. Sept. 8, 2011).  The Digital Reg/Valve license exhausts Digital Reg's rights with respect to

8    all games sold via Valve's Steam Platform and, accordingly, fully resolves Digital Reg's claims

9    to all games sold through the Steam Platform, including sales of Ubisoft games. Partial summary

10   judgment is warranted on this ground as a matter of law.

11        **I.        Ubisoft Does Not Indirectly Infringe Any Asserted Claim.**

12            Indirect infringement, under either inducement or contributory theories, requires evidence

13   of specific intent to cause the harm of patent infringement and evidence of at least one instance

14   of direct infringement.  *Global-Tech Appliances, Inc. v. SEB*, 131 S.Ct. 2060, 2068 (2011)

15   (requiring knowledge that actions constitute patent infringement).  As demonstrated above, there

16   is no instance of direct infringement.  But even further, Digital Reg has offered no evidence that

17   Ubisoft specifically intended to cause another to infringe any asserted patent claim.[9]  Instead, the

18   only reference at all to indirect infringement is the boiler-plate language found on page 1 of Dr.

19   Devanbu's Expert Report: "Plaintiff further accuses Ubisoft of indirectly infringing the '670

20   Patent through providing, authorizing and instructing … to others, including its customers."  *See*

21   *e.g.,* Lang, Dec., Ex. 12 [Devanbu Report, '670 Addendum] at 1.  Other than this conclusory

22   statement, there is no evidence of specific intent to cause infringement, and Dr. Devanbu

23   testified that he undertook no analysis with respect to indirect infringement.  Lang Dec., Ex. 7

24   [Devanbu Tr.] at 99:8-19, 503:15-510:2, 664:1-3; *Global-Tech*, 131 S.Ct. at 2068.  As Digital

25   Reg has failed to marshal any evidence, Ubisoft is entitled to summary judgment of no indirect

26   infringement.

27
28   [9] Digital Reg is claiming indirect infringement only on the asserted claims of the '670 and '059
     patents.  Lang Dec., Ex.  19 [Plaintiff's Supplemental Disclosure of Asserted Claims and
     Infringement Contentions dated 8/30/2012] at 10-12.

1

2

Dated:  March 13, 14

**ERISE IP**

3

By: */s/ Michelle L. Marriott*
        Michelle L. Marriott

4

5

Eric A. Buresh (*Admitted Pro Hac Vice*)
eric.buresh@eriseip.com
Michelle L. Marriott (*Admitted Pro Hac Vice*)
michelle.marriott@eriseip.com
Mark C. Lang (*Admitted Pro Hac Vice*)
mark.lang@eriseip.com
**ERISE IP, P.A.**
6201 College Boulevard
Suite 300
Overland Park, Kansas 66211
Phone:     (913) 777-5600
Facsimile:       (913) 777-5601

6

7

8

9

10

11

Julie Turner (SBN 191146)
turner@turnerboyd.com
**Turner Boyd LLP**
702 Marshall Street
Suite 640
Redwood City, CA 94063
(650) 521-5930

12

13

14

15

Attorneys for Defendant
UBISOFT, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

Ubisoft's Motion for Summary Judgment