STEFANI E. SHANBERG (State Bar No. 206717)
ROBIN L. BREWER (State Bar No. 253686)
EUGENE MARDER (State Bar No. 275762)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone:    (415) 947-2000
Facsimile:    (415) 947-2099
E-Mail:       sshanberg@wsgr.com
              rbrewer@wsgr.com
              emarder@wsgr.com

RYAN R. SMITH (State Bar No. 229323)
ROBERT R. CLEARY, JR. (State Bar No. 282113)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone:    (650) 493-9300
Facsimile:    (650) 493-6811
E-Mail:       rsmith@wsgr.com
              rcleary@wsgr.com

Attorneys for Defendant
SYMANTEC CORPORATION

EDWARD R. REINES (State Bar No. 135960)
SONAL N. MEHTA (State Bar No. 222086)
BYRON C. BEEBE (State Bar No. 235179
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone:    (650) 802-3000
Facsimile:    (650) 802-3100
E-Mail:       edward.reines@weil.com
              sonal.mehta@weil.com
              byron.beebe@weil.com

Attorneys for Defendant
ADOBE SYSTEMS INCORPORATED

ERIC A. BURESH (*Pro Hac Vice*)
MICHELLE L. MARRIOTT (*Pro Hac Vice*)
MARK C. LANG (*Pro Hac Vice*)
ERISE IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, Kansas 66211
Telephone:    (913) 777-5600
Facsimile:    (913) 777-5601
E-Mail:       eric.buresh@eriseip.com
              michelle.marriott@eriseip.com
              mark.lang@eriseip.com

JULIE TURNER (State Bar No. 191146)
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone:    (650) 521-5930
E-Mail:       turner@turnerboyd.com

Attorneys for Defendant
UBISOFT, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DIGITAL REG OF TEXAS, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>ADOBE SYSTEMS INC., et al.,<br><br>                    Defendants. | Case No. 4:12-cv-01971-CW<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Date:    May 15, 2014<br>Time:    2:00 p.m.<br>Place:   Courtroom 2<br>Judge:   Honorable Claudia Wilken |

# REDACTED VERSION OF DOCUMENT

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

3

      PLEASE TAKE NOTICE that on May 15, 2014, at 2:00 p.m., or as soon thereafter as the

4

matter may be heard, in the courtroom of the Honorable Claudia Wilken, located at Courtroom 2

5

of the United States Courthouse, 1301 Clay Street, Oakland, California 94612, Defendants will

6

and hereby do move this Court for an order granting summary judgment of no infringement as to

7

the Asserted Claims.

8

      This motion is made pursuant to Federal Rule of Civil Procedure 56.  This motion is based

9

on this notice of motion and motion, the supporting memorandum of points and authorities, the

10

accompanying declarations, filed concurrently herewith, including exhibits, and such additional

11

evidence and arguments as may hereinafter be presented.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3   NOTICE OF MOTION AND MOTION

4   TABLE OF CONTENTS .................................................................................................. i

5   TABLE OF AUTHORITIES ......................................................................................... iv

6   TABLE OF ABBREVIATIONS ..................................................................................... vi

7   SUMMARY OF ACCUSED PRODUCTS ...................................................................... vii

8   SUMMARY OF GROUNDS FOR SUMMARY JUDGMENT – ADOBE ............................... viii

9   SUMMARY OF GROUNDS FOR SUMMARY JUDGMENT – SYMANTEC ......................... ix

10  SUMMARY OF GROUNDS FOR SUMMARY JUDGMENT – UBISOFT ............................... x

11  MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

12  I.      INTRODUCTION ................................................................................................ 1

13  II.     FACTUAL BACKGROUND ................................................................................ 2

14          A.      Adobe Accused Products ....................................................................... 2

15          B.      Symantec Accused Products .................................................................. 2

16          C.      Ubisoft Accused Products ...................................................................... 2

17  III.    DIGITAL REG HAS NO EVIDENCE OF INFRINGEMENT. ............................... 3

18          A.      Digital Reg Offered No Expert Opinion for the '059 Patent
                    as to Symantec. ...................................................................................... 3
19

20  IV.     DEFENDANTS DO NOT DIRECTLY INFRINGE THE ASSERTED CLAIMS. ........... 4

21          A.      Defendants Do Not Perform Each Step of the Asserted
                    Claims. .................................................................................................... 4

22          B.      Ubisoft Is Entitled to Summary Judgment Because Digital
                    Reg Accuses Method Steps Performed Outside the United
23                  States. ...................................................................................................... 5

24          C.      To the Extent Digital Reg Relies on Third Party Activities in
                    Accusing Ubisoft of Infringement, It Has Assembled No
25                  Evidence. ................................................................................................. 7

26  V.      DIGITAL REG HAS NO EVIDENCE OF INDIRECT INFRINGEMENT. ................... 8

27  VI.     U.S. PATENT NO. 6,389,541 ............................................................................ 10

28

DEFENDANTS' MOT. FOR SUMMARY J. &
RESPONSIVE CLAIM CONSTRUCTION BRIEF          - i -
Case No. 4:12-cv-01971-CW

**TABLE OF CONTENTS**
*(continued)*

Page

A.     Adobe Is Entitled to Summary Judgment of Noninfringement of all Asserted Claims of the '541 Patent Under the <u>Agreed</u> Upon Construction. ................................................................. 10

       1.     Digital Reg Relies on a Permission Generated at a Remote Server. ...................................................... 11

       2.     Digital Reg's Validity Analysis Excludes a Permission Generated at a Remote Server. ..................... 11

B.     Adobe Is Entitled to Summary Judgment of Noninfringement of All Asserted '541 Claims Under Its Proposed Construction of "token." ...................................................... 12

       1.     Adobe Is Entitled to Summary Judgment Under Its Construction. ..................................................... 13

C.     "(an) authorization procedure" ...................................... 13

D.     Adobe's Accused Products Are Licensed When Used in a Windows Environment .............................................. 13

VII.   U.S. PATENT NO. 7,421,741 ................................................ 14

A.     Adobe Is Entitled to Summary Judgment of Noninfringement or, in the Alternative, Invalidity Based on Digital Reg's Irreconcilable Positions. ...................................................... 14

B.     Adobe Is Entitled to Summary Judgment of Noninfringement of All Asserted 741 Claims Under Its Construction of "encrypting a header." ...................................................... 15

       1.     Adobe Is Entitled to Summary Judgment Under Its Construction. ..................................................... 16

C.     Adobe Is Entitled to Summary Judgment of Noninfringement of All Asserted 741 Claims Under Its Proposed Construction of "re-keying the header." ...................................................... 16

       1.     Adobe Is Entitled to Summary Judgment Under Its Construction. ..................................................... 17

D.     "header associated with a first data block of the electronic content" ...................................................... 17

VIII.  U.S. PATENT NOS. 6,751,670 and 7,673,059 .............................. 17

A.     Defendants Are Entitled to Summary Judgment of Noninfringement Based on the "based on a result of the attempted transmission" Limitation. ................................... 17

**TABLE OF CONTENTS**
*(continued)*

Page

      1.      Ubisoft Is Entitled to Summary Judgment of Noninfringement Based on the Opinions of Digital Reg's Experts. ............................................................................... 18

      2.      Adobe Is Entitled to Summary Judgment of Noninfringement Based on the Opinions of Digital Reg's Experts. ............................................................................... 19

  B.    "selectively grants or denies access" .................................................... 19

  C.    Dr. Keller's Opinion on the Meaning of "notification information" Warrants Partial Summary Judgment for Adobe. ......................................................................................... 20

  D.    The Symantec CLT Products Do Not Deny Access to the Electronic Content Until Notification Information is Transmitted. ................................................................................ 20

  E.    "recipient" ............................................................................................ 21

  F.    Symantec and Ubisoft Are Entitled to Summary Judgment Based Upon Defendants' Construction of "successive recipient" / "successive computer." ............................................. 23

      1.      Symantec Does Not Infringe Under Defendants' Proposed Construction. .................................................. 25

      2.      Ubisoft Does Not Infringe Under Defendants' Proposed Construction. .................................................. 26

  G.    The Ubisoft Products Do Not Infringe the '059 Patent as Access Is Not Granted "Upon Transmission" of an Authorized User Identifier. ...................................................... 27

IX.    U.S. PATENT NOS. 7,127,515, 7,272,655, and 7,562,150 .......................... 29

  A.    "based on the results of the attempt to transmit" ................................. 29

X.    DIGITAL REG'S CLAIMS AGAINST UBISOFT FOR SALES MADE BY VALVE ARE BARRED. ................................................................................ 29

XI.    CONCLUSION ...................................................................................... 30

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4
*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.,*
   501 F.3d 1307 (Fed. Cir. 2007) ........................................................................ 9

5

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
6    692 F.3d 1301 (Fed. Cir. 2012) .................................................................. 8, 9

7
*Centricut, LLC v. Esab Group, Inc.,*
   390 F.3d 1361 (Fed. Cir. 2004) ...................................................................... 26

8

*CLS Bank Int'l v. Alice Corp.,*
9    717 F.3d 1269 (Fed. Cir. 2013) ........................................................................ 4

10
*Commill USA, LLC v. Cisco Systems, Inc.,*
   720 F.3d 1361 (Fed. Cir. 2013) ...................................................................... 10

11

*Desper Prods., Inc. v. QSound Labs., Inc.,*
12    157 F.3d 1325 (Fed. Cir. 1998) ........................................................................ 4

13
*DSU Med. Corp. v. JMS Co., Ltd.,*
   471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ................................................... 8, 9

14

*Dynacore Holdings Corp. v. U.S. Phillips Corp.,*
15    363 F.3d 1263 (Fed. Cir. 2004) ........................................................................ 8

16
*E-Pass Techs., Inc. v. 3Com Corp.,*
   473 F.3d 1213 (Fed. Cir. 2007) ........................................................................ 9

17

*Freescale Semiconductor, Inc. v. ChipMOS Tech., Inc.,*
18    5:09-CV-3689-JF, 2011 WL 4014466 (N.D. Cal. Sept. 8, 2011) ............................................. 30

19
*Global-Tech Appliances, Inc. v. SEB S.A.,*
   131 S. Ct. 2060 (2011) ................................................................................... 10

20

*Golden Blount, Inc. v. Robert H. Peterson Co.,*
21    365 F.3d 1054 (Fed. Cir. 2004) ........................................................................ 8

22
*Joy Techs., Inc. v. Flakt, Inc.,*
   6 F.3d 770 (Fed. Cir. 1993) ........................................................................ 5, 8

23

*Mirror Worlds, LLC v. Apple Inc.,*
24    692 F.3d 1351 (Fed. Cir. 2012) .................................................................. 8, 10

25
*NTP, Inc. v. Research in Motion, Ltd.,*
   418 F.3d 1282 (Fed. Cir. 2005),
26    *cert. denied*, 546 U.S. 1157 (2006)............................................................... 4, 5

27
*Omega Eng'g, Inc. v. Raytek Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003) ................................................................ 16, 25

28

1

**TABLE OF AUTHORITIES**
*(continued)*

2

**Page(s)**

3

*PNY Technologies, Inc. v. SanDisk Corp.,*
   C-11-04689 YGR, 2012 WL 1380271 (N.D. Cal. Apr. 20, 2012) ........................................... 30

4

*Source Search Techs., LLC v. LendingTree, LLC,*
   588 F.3d 1063 (Fed. Cir. 2009) ................................................................................................. 11

5

6

*Under Sea Indus. v. Dacor Corp.,*
   833 F.2d 1551 (Fed. Cir. 1987) ................................................................................................... 4

7

*Verizon Servs. Corp. v. Vonage Holdings Corp.,*
   503 F.3d 1295 (Fed. Cir. 2007) ................................................................................................. 16

8

9

**STATUTES**

10

35 U.S.C.
   § 101 ........................................................................................................................................... 20

11

**RULES**

12

Fed. R. Civ. P.
   Rule 56(c) ..................................................................................................................................... 4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Declaration of Ryan R. Smith in Support of Defendant Symantec Corporation's Motion for Summary Judgment and Responsive Claim Construction Brief (Dkt. Nos. 524-05 through 524-08, and 525) | Smith Decl. |
| Declaration of Byron C. Beebe in Support of Adobe's Responsive Claim Construction Brief and Motions for Summary Judgment (Dkt. Nos. 520 and 523-3 through 523-44) | Beebe Decl. |
| Declaration of Mark C. Lang in Support of Ubisoft, Inc.'s Claim Construction Brief and Motion for Summary Judgment of Non-Infringement and License (Dkt. Nos. 521-2, 521-4 through 521-22, and 522-2 through 522-16) | Lang Decl. |
| Adobe Systems, Inc. | Adobe |
| Symantec Corporation | Symantec |
| Ubisoft Entertainment, Inc. | Ubisoft |
| Digital Reg of Texas, LLC | Digital Reg |
| U.S. Patent No. 6,389,541 | '541 patent |
| U.S. Patent No. 6,751,670 | '670 patent |
| U.S. Patent No. 7,673,059 | '059 patent |
| U.S. Patent No. 7,127,515 | '515 patent |
| U.S. Patent No. 7,272,655 | '655 patent |
| U.S. Patent No. 7,562,150 | '150 patent |
| U.S. Patent No. 7,421,741 | '741 patent |
| Claims 1, 2, 4, and 13 of the '541 patent as to Adobe<br>Claims 1, 7, and 12 of the '741 patent as to Adobe<br>Claims 32, 45, and 52 of the '670 patent as to Adobe<br>Claims 32 and 45 of the '670 patent as to Symantec and Ubisoft<br>Claims 16, 17, and 19, of the '059 patent as to Symantec and Ubisoft<br>Claims 1, 5, and 16 of the '655 patent as to Ubisoft<br>Claims 1 and 2 of the '150 patent as to Ubisoft | Asserted Claims[1] |
| content delivery network | CDN |
| U.S. Patent No. 5,509,070 | Schull |

---

[1] Digital Reg is not asserting the doctrine of equivalence.

**SUMMARY OF ACCUSED PRODUCTS**

| Patent | Claims | Products |
|---|---|---|
| **Adobe** | | |
| U.S. Patent No. 6,389,541 | **1**, 2, 4 and 13 | Adobe Flash Platform<br>Adobe LiveCycle<br>Adobe Software Delivery, Licensing, and Activation |
| U.S. Patent No. 7,421,741 | **1**, **7**, and 12 | Adobe Flash Platform<br>Adobe Digital Publishing Tools |
| U.S. Patent No. 6,751,670 | **32**, **45**, and **52** | Adobe Flash Platform (Claim 32)<br>Adobe Digital Publishing Tools (Claims 45 and 52)<br>Adobe LiveCycle<br>Adobe Software Delivery, Licensing, and Activation (Claims 32 and 45) |
| **Symantec** | | |
| U.S. Patent No. 6,751,670 | **32** and **45** | Symantec CLT Products |
| U.S. Patent No. 7,673,059 | **16**, 17, and 19 | |
| **Ubisoft** | | |
| U.S. Patent No. 6,751,670 | **32** and **45** | UPlay (client software and server-side components) |
| U.S. Patent No. 7,673,059 | **16**, 17, and 19 | |
| U.S. Patent No. 7,272,655 | **1**, 5, and 16 | |
| U.S. Patent No. 7,562,150 | **1** and 2 | |

**SUMMARY OF GROUNDS FOR SUMMARY JUDGMENT – ADOBE**

| Summary Judgment Grounds | Claims |
|---|---|
| Digital Reg has failed to prove direct infringement on the asserted method claims.  Digital Reg admits that Adobe could not perform each step of the asserted claims because each claim requires multiple actors.  *See* Section IV.A. | All Asserted Claims[1] for direct infringement. |
| Digital Reg cannot prove indirect infringement because it has not provided evidence of the requisite underlying direct infringement and has no evidence of specific intent to cause infringement.  *See* Section IV.C. | All Asserted Claims for indirect infringement. |
| Adobe is entitled to summary judgment of noninfringement based upon the agreed upon construction of "executing an installation process that generates at the client a permission that is locked uniquely to the client and that may be found by a later execution of the access checking process." *See* Section VI.A. | All claims of the '541 patent |
| Adobe is entitled to summary judgment of noninfringement based upon Adobe's construction of "token." *See* Section VI.B. | All claims of the '541 patent |
| Adobe is entitled to partial summary judgment because all products are licensed when used in a Windows environment pursuant to an agreement between Digital Reg and Microsoft. *See* Section VI.D. | All claims of the '541 patent |
| Adobe is entitled to summary judgment of noninfringement or, in the alternative, invalidity based upon irreconcilable positions taken by Digital Reg's experts on the term "container identifier." *See* Section VII.A. | All claims of the '741 patent |
| Adobe is entitled to summary judgment of noninfringement based upon Adobe's construction of "encrypting a header." *See* Section VII.B. | All claims of the '741 patent |
| Adobe is entitled to summary judgment of noninfringement based upon Adobe's construction of "re-keying the header." *See* Section VII.C. | All claims of the '741 patent |
| Adobe is entitled to summary judgment of noninfringement based upon the limitation "based on the result of the attempted transmission." *See* Section VIII.A. | All claims of the '670 patent |
| Adobe is entitled to partial summary judgment of noninfringement based upon irreconcilable positions by Digital Reg's experts on "notification information." *See* Section VIII.C. | All claims of the '670 patent |

---

[1] Claim 7 of the '741 patent is a Beauregard claim.  Infringement requires proof that a single product performs the claimed method, which Digital Reg admits does not occur.  Beebe Decl. Ex. 13 at 676:4-20.  Claim 12 of the '741 patent is dependent upon claim 10, which was not asserted and was not analyzed by Digital Reg.  Digital Reg has failed to provide evidence of direct infringement of this claim as well.

1

**SUMMARY OF GROUNDS FOR SUMMARY JUDGMENT – SYMANTEC**

2

| Summary Judgment Grounds | Claims |
|---|---|
| Digital Reg has failed to prove direct infringement on the asserted method claims.  Digital Reg admits that Symantec could not perform each step of the asserted claims because each claim requires multiple actors.  *See* Section IV.A. | All Asserted Claims for direct infringement. |
| Digital Reg cannot prove indirect infringement because it has not provided evidence of the requisite underlying direct infringement, has not demonstrated the accused products have no substantial noninfringing use, and has no evidence of specific intent to cause infringement.  *See* Section IV.C. | All Asserted Claims for indirect infringement. |
| Symantec is entitled to summary judgment because the Symantec CLT Products do not deny access to the electronic content until notification information is transmitted, as required by each asserted independent claim.  *See* Section VIII.D. | Case dispositive. |
| Symantec is entitled to summary judgment of noninfringement based upon Defendants' construction of "successive recipient" or "successive computer."  *See* Section VIII.F. | Case dispositive. |
| Symantec is entitled to summary judgment of noninfringement based upon the limitation "based on the result of the attempted transmission."  *See* Section VIII.A. | All claims of the '670 patent. |
| The Court struck Digital Reg's expert report on the asserted independent claim for the accused products.  (Dkt. No. 509.) Under case law, Digital Reg must offer expert opinion of infringement to overcome expert testimony of noninfringement. Digital Reg cannot meet its burden and summary judgment is appropriate.  *See* Section III.A. | All claims of the '059 patent. |

**SUMMARY OF GROUNDS FOR SUMMARY JUDGMENT – UBISOFT**

| Summary Judgment Grounds | Claims |
|---|---|
| Digital Reg has asserted only method claims, which requires that each step of the claim be performed within the United States.  Digital Reg accuses Ubisoft of infringing based upon performance of steps that undisputedly occur outside of the United States.  Digital Reg's allegations fails as a matter of law. *See* Section IV.B. | Case dispositive. |
| Digital Reg's expert, Dr. Devanbu, has offered no evidence of infringement by Ubisoft.  Dr. Devanbu's expert report consists of conclusory statements without factual support or investigation.  This is not evidence of infringement and summary judgment is appropriate.  *See* Section IV.C. | Case dispositive. |
| Digital Reg has failed to prove direct infringement on the asserted method claims.  Digital Reg admits that Ubisoft could not perform each step of the asserted claims because each claim requires multiple actors.  *See* Section IV.A. | All Asserted Claims for direct infringement. |
| Digital Reg cannot prove indirect infringement because it has not provided evidence of the requisite underlying direct infringement and has no evidence of specific intent to cause infringement.  *See* Section IV.C. | All Asserted Claims for indirect infringement. |
| Ubisoft is entitled to summary judgment for all products downloaded using the Steam Platform based upon an agreement between Digital Reg and Valve. *See* Section X. | Sales of Ubisoft's games made by Valve. |
| Ubisoft is entitled to summary judgment of noninfringement based upon the limitation "based on the result of the attempted transmission."  *See* Section VIII.A. | All claims of the '670 patent. |
| Ubisoft is entitled to summary judgment of noninfringement based upon Defendants' construction of "successive recipient" or "successive computer."  *See* Section VIII.F. | All claims of the '670 and '059 patents. |
| Ubisoft is entitled to summary judgment of noninfringement because access is not granted "upon transmission" of an authorized user identifier.  *See* Section VIII.G. | All claims of the '059 patent. |
| Ubisoft is entitled to summary judgment of noninfringement based upon Ubisoft's construction of "based on the results of the attempt to transmit."  *See* Section IX.A | All claims of the '655 and '150 patents. |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Digital Reg has the burden of proving infringement, but has fallen short of meeting this burden on a number of grounds.  Digital Reg has also continued to maintain allegations that fail as a matter of law.

For example, Digital Reg is asserting only method claims against Ubisoft, requiring Digital Reg to show that each step of the claim is performed in the United States.  It is undisputed, however, that the accused functionality is largely and, in some instances, exclusively, performed outside of the United States.  Digital Reg cannot show infringement by Ubisoft as a matter of law. As another example, Digital Reg continues to assert direct infringement of method claims even after its infringement expert expressly conceded that, even under Digital Reg's own infringement theory, Defendants do not practice the requires steps of the asserted claims.  And Digital Reg asserts indirect infringement without even a prima facie showing, let alone evidence sufficient to create a factual dispute, of an underlying direct infringement or as to inducement or intent. Likewise, the Court struck Digital Reg's expert report for the independent claim of the '059 patent as to Symantec, yet Digital Reg improperly maintains its allegations on this patent.  And Digital Reg alleges infringement as to licensed products for which infringement is foreclosed by the doctrine of patent exhaustion, including Adobe products licensed to at least the '541 patent under the Digital Reg/Microsoft license and the approximately 90% of Ubisoft's accused products that are downloaded through the Stream Platform and licensed under the Digital Reg/Valve license.

Digital Reg has also taken unsupportable claim construction positions where a proper construction entitles Defendants to summary judgment.  Digital Reg consistently disregards the plain meaning of the terms, the patent specifications, and clear disclaimers made during prosecution of the patents to overcome prior art.  Instead, Digital Reg advance litigation driven claim constructions and, in an attempt to maintain its infringement theory while also attempting to distinguish prior art cited by Defendants, has offered inconsistent and irreconcilable interpretations of certain claims for infringement and invalidity.

Accordingly, summary judgment is warranted as to each defendant on multiple grounds.

## II.      FACTUAL BACKGROUND

Digital Reg is a non-practicing patent assertion entity based in the Eastern District of Texas.  Digital Reg did not develop the technology claimed in the asserted patents.  Rather, Digital Reg purchased the patents out of bankruptcy and now seeks a windfall thousands of times greater than what it paid for the patents.  A table of the accused products and claims broken down by Defendant is on page viii.

### A.      Adobe Accused Products

Digital Reg has asserted claims against multiple, unrelated Adobe products, which Digital Reg has identified as Adobe's Flash Platform, Digital Publishing Tools, and LiveCycle products, as well as Adobe's Software Delivery, Licensing, and Activation services.   Adobe's expert, Dr. Wicker, provided a description of these products.  Beebe Decl. Ex. 8 at ¶¶ 23-46.

### B.      Symantec Accused Products

Digital Reg has accused Symantec's "CLT Products" of infringing the '670 and '059 patents.  At a high-level, Symantec's CLT Products function as follows:  An end-user may freely download, install, and use Norton software from various third-party websites.  Smith Decl. Ex. 3 at 25:21-26:4.  ███████████████████████████████████████████████████████████

### C.      Ubisoft Accused Products

Uplay PC:  ████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 Ubishop and Uplay Express Shop: ████████████████████████

4 ███████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 Third-Party Channels: ██████████████████████████████████

12 ███████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████

17 █████████████████████████████████████████████████████

18 **III.   DIGITAL REG HAS NO EVIDENCE OF INFRINGEMENT.**

19     **A.   Digital Reg Offered No Expert Opinion for the '059 Patent as to Symantec.**

20     Symantec is entitled to summary judgment of noninfringement of the '059 patent because

21 Digital Reg has no admissible expert opinion regarding Symantec's alleged infringement.  The

22 Court granted Symantec's Motion to Strike portions of Dr. Devanbu's report related to claim 16 of

23 the '059 patent.[1]  *See* Dkt. No. 509 at 2:10-18.  In view of this order, Digital Reg has offered no

24 expert opinion regarding infringement of claim 16.  Additionally, because asserted claims 17 and

25 19 of the '059 patent depend from claim 16, Digital Reg has not offered expert opinion of

26 infringement of these claims either.  Symantec, on the other hand, has submitted the

27 ───────────────────

28     [1] The Court also struck claim 25, but claim 25 is no longer asserted against Symantec.  *See* Election of Asserted Claims (Feb. 27, 2014).

noninfringement opinion of Dr. Stubblebine.  Smith Decl. Ex. 9 ¶¶ 122-178.  Accordingly, Digital

Reg cannot meet its burden and summary judgment is appropriate.

## IV.   DEFENDANTS DO NOT DIRECTLY INFRINGE THE ASSERTED CLAIMS.

There are multiple threshold issues, which, should the court decide in Defendants' favor,

could significantly reduce and potentially eliminate the need for claim construction.  Summary

judgment must be entered if there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Summary judgment is

appropriate in a patent case as in any other.  *Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d

1325, 1332 (Fed. Cir. 1998).  The patentee—Digital Reg—bears the burden of proving

infringement.  *See Under Sea Indus. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987).

### A.   Defendants Do Not Perform Each Step of the Asserted Claims.

The asserted claims against Symantec and the claims of the '541 and '670 patents and

claim 1 of the '741 patent[2] asserted against Adobe are method claims, each with multiple steps.

To prove that Symantec and Adobe directly infringe, Digital Reg must prove that each Defendant

performs each step within the United States.  *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d

1282, 1318 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1157 (2006).  Digital Reg cannot do so.

As admitted by Digital Reg's expert witness on infringement, there is no evidence that

Symantec itself has performed any of the asserted claims.  Smith Decl. Ex. 8 at 99:4-6.  In fact,

Digital Reg's technical expert conceded that Symantec *could not possibly* perform all the steps of

any asserted claim.  Smith Decl. Ex. 11 at 718:7-13 ███████████████

████████████████████████████████

████████████████████████████; *see also id.* at

13:17-19, 204:11-20 (testifying that Symantec does not perform all of the steps of claim 32 of

the '670 patent); *id.* at 219:7-10 (same regarding claim 45 of the '670 patent); *id.* at 234:22-24

---

[2]   Claim 7 of the'741 patent is a Beauregard claim.  Infringement thus requires proof that a single product performs the claimed method.  *See CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1287 (Fed. Cir. 2013).  As with the method claims, Digital Reg's expert admits that no single software product practices the method claimed.  Beebe Decl. Ex. 13 at 676:4-20 ("The practicing of this claim would require elements on the client side and the server side.  So, to the extent that the client side and server side software are different, it requires different pieces of software.").

1    (same regarding claim 16 of the '059 patent).

2         Similarly, Digital Reg's infringement expert admits that Adobe does not practice each step

3    of the asserted method claims and has cited no evidence supporting a direct infringement claim.

4    Instead, Digital Reg's evidence is that infringement only occurs when steps are taken by an Adobe

5    customer and/or unrelated third-party consumers.  Beebe Decl. Ex. 13 at 665:3--7 ("Q. In the

6    context of Flash, you'll agree with me that the '541 Claim 1 would require both a user at the client

7    site as well as a content owner or distributor; right?   A. Correct."); 665:8-14 (541 Software

8    Delivery); 665:15-20 (541 LiveCycle); 667:20-668:10 ("Q Okay. So, with respect to the Adobe

9    Flash platform, you're not contending that the claim limitations of Claim 32 of the '670 patent are

10   practiced by Adobe; right?   A. It's practiced by anybody who uses Adobe software.   Q. It's

11   practiced by the client side or the user, not Adobe?  A. Yes.  Q. And, with respect to Claim 45 of

12   the '670 patent, your infringement theory is based on Adobe's customers or users, not on Adobe;

13   right?   A. If Adobe were a user, it will be practiced by Adobe.   Q. But you don't have any

14   evidence of that?  A. No."); 669:1-4 (670 LiveCycle); 669:20-24 (670 Digital Publishing); 669:25-

15   670 (670 Software Delivery):17; 675:8-12 (741 patent).

16        With respect to Ubisoft, at his deposition, Dr. Devanbu confirmed that method steps in

17   each of the asserted claims are performed by third-party CDNs or web servers.  *See, e.g.*, Lang

18   Decl., Ex. 7 at 408:18-409:8, 375:3-15, 372:3-16, 372:17-373:21 (admitting "transmitting" and

19   "receiving" steps of claim 16 of the '059 patent are performed by third parties); *id.* at 406:2-407:9,

20   407:18-408:1 (same for claim 1 of the '655 patent steps of "processing" and "transmitting"); *id.* at

21   406:2-407:9, 409:16-410:6 and Lang Decl., Ex. 11 at 6, 8 (same for claim 1 of the '150 patent

22   steps of "processing," "transmitting," and "providing").

23        Accordingly, Defendants cannot—as a matter of law—directly infringe the asserted claims

24   because no single entity performs all the steps.  *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773

25   (Fed. Cir. 1993).

26   **B.    Ubisoft Is Entitled to Summary Judgment Because Digital Reg Accuses
             Method Steps Performed Outside the United States.**

27

28        United States patents, by law, have territorial limits.  *See, e.g.*, *NTP,* 418 F.3d at 1317

DEFENDANTS' MOT. FOR SUMMARY J. &
RESPONSIVE CLAIM CONSTRUCTION BRIEF          - 5 -
Case No. 4:12-cv-01971-CW

1 ("We therefore hold that a process cannot be used 'within' the United States as required by section
2 271(a) unless each of the steps is performed within this country.").  Digital Reg asserts **only**
3 method claims against Ubisoft, and accuses Ubisoft of infringing the method claims by
4 performing steps outside the United States.  Despite black letter law that every method step must
5 be performed in the United States, Digital Reg's insistence on pursuing claims that fail on such a
6 fundamental level is confusing at best.  It is also grounds for resolving this case in its entirety as to
7 Ubisoft at the summary judgment stage.

8     It is undisputed that Ubisoft is not performing **any** accused actions in the United States.
9 █████████████████████████████████████████████
10 █████████████████████████████████████████████
11 █████████████████████████████████████████████
12 █████████████████████████████████████████████
13 █████████████████████████████████████████████
14 ███████████████████████████████████████████.

15     On these undisputed facts, Digital Reg's allegations against Ubisoft must fail as at least
16 one step of every asserted claim is performed outside the United States.  Digital Reg represented
17 to this Court that its claims accuse the "background authentication and authorization mechanisms
18 provided by Uplay," ██████████████████████ Dkt. 504 at 10-11 (Uplay is
19 the accused product); *see also* Lang Decl., Ex. 7 at 390:12-13 (same), 348:15-16, 338:14-20
20 (same).  In fact, for claims such as claim 45 of the '670 patent, **all** of the accused Ubisoft activities
21 occur outside the United States.  Lang Decl., Ex. 12 at 53, 61-62, 71.  Similar problems exist with
22 respect to each of the asserted independent claims that Digital Reg's expert admits are performed
23 by a Ubisoft server.  *See e.g.,* Lang Decl., Ex. 11 at 24; Lang Decl., Ex. 7 at 338:3-339:3, 463:20-
24 464:21; Lang Decl., Ex. 9 at 26, 30, 33-34.

25     While Dr. Devanbu testified that he "was not concerned" with whether the steps of the
26 asserted claims were performed in the United States, (Lang Decl., Ex. 7 at 466:24-468:1), U.S
27 patent law is. The fact that any and all accused Ubisoft activities are performed entirely outside of
28 the United States precludes any finding of infringement as a matter of law, making summary

judgment appropriate.  This resolves the entire case as to Ubisoft.[3]

**C.      To the Extent Digital Reg Relies on Third Party Activities in Accusing Ubisoft of Infringement, It Has Assembled No Evidence.**

In addition to demonstrating that Ubisoft cannot directly infringe, Digital Reg's apparent reliance on third party performance of method steps fails for a complete lack of evidence.  Digital Reg did not seek any third-party discovery in this action and, therefore, it has no evidence of how or where any implicated third parties operate.  It is undisputed that Ubisoft does not provide or operate any "web servers" or CDNs that appear to be implicated by Dr. Devanbu's infringement theories.  For games purchased through the Ubishop or Uplay Express Shop, the third-party web provider is Digital River and the third-party CDN is Limelight Networks.  Lang Decl., Ex. 5 at 20:9-14, 150:18-151:14; Ex. 7 at 370:5-8.  For games purchased through Valve's Steam Platform, any web servers or CDN servers would be operated by Steam and its suppliers, although there is no evidence in the record.  Lang Decl., Ex. 7 at 397:15-398:21.  As to games purchased through Best Buy, GameStop, or EA's Origin, Digital Reg has assembled no evidence regarding the existence or operation of web servers and CDN servers.  Lang Decl., Ex. 7 at 428:25-429:25.  Thus, any "web server" or "CDN" required for infringement is operated by an unrelated third-party that Ubisoft does not control, and there is no evidence in the record to show how or where these third parties operate.  *See, e.g.,* Lang Decl., Ex. 7 at 347:20-352:18.  This alone warrants summary judgment.

Further, Dr. Devanbu admitted that he reached his ultimate conclusion that any Uplay-enabled game would infringe the asserted claims based entirely on an "assumption" that games purchased and downloaded from third-party channels "operated in the same way" as games purchased through the Ubishop and Uplay Express Shop.  *Id*. at 391:6-11, 403:3-9.  He confirmed that neither he nor anyone else associated with Digital Reg attempted to purchase or download a

---

[3] Ubisoft notes that Digital Reg conceded that it will not assert claim 45 of the '670 Patent and claims 1 and 2 of the '150 Patent in its original response to Ubisoft opening claim construction brief and motion for summary judgment because of this extra-territorial issue.  For that reason, Ubisoft will not burden the Court with claim construction of claim 45 of the '670 Patent.  To the extent that Digital Reg takes a different approach in its response to this motion, contrary to this Court's Order (Dkt. No. 555 at 2), Ubisoft reserves the right to raise claim construction arguments related to those withdrawn claims.

game from Steam, Best Buy, or GameStop (*Id.* at 401:8-403:9, 405:8-14, 425:7-12), and that he did not actually know if "Uplay-enabled games" were available through these channels. *Id.* at 426:2-12, 426:13-428:18, 402:12-431:6 (admitting he has no opinions whether games sold through EA's Origin infringe). Thus, Dr. Devanbu's conclusions, formed without any factual support or investigation, are not evidence of infringement. *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact."). Therefore, Ubisoft is entitled to summary judgment as Digital Reg's claims, to the extent they rely on third party activities, are not supported by any admissible evidence.

## V.   DIGITAL REG HAS NO EVIDENCE OF INDIRECT INFRINGEMENT.

As a threshold matter, to establish a claim for indirect—either induced or contributory—infringement, the patentee must first present evidence of direct infringement, which Digital Reg has failed to do. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) (*en banc*). To establish contributory infringement, in addition to proving direct infringement by a third party, the plaintiff must prove that (i) the alleged infringer knew that the accused products were especially made to practice the method claimed by the patent, and (ii) the accused products have no substantial noninfringing uses. *See Joy Techs.*, 6 F.3d at 774. The Federal Circuit has made clear that it is the patentee's burden to prove the lack of substantial noninfringing uses. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *accord, Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362 (Fed. Cir. 2006). To establish induced infringement, the patentee bears the burden of proving (i) direct infringement; (ii) that the alleged infringer intended to cause the acts constituting the direct infringement; (iii) that the alleged infringer knowingly and actively aided and abetted the direct infringement; and (iv) that the alleged infringer possessed specific intent to encourage the direct infringement. *See, e.g., DSU Med. Corp.*, 471 F.3d at 1304; *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012). Mere knowledge of possible infringement is not enough; a plaintiff must show the accused infringer possessed knowledge that the induced acts constitute infringement and

the "specific intent to encourage another's infringement." *Akamai*, 692 F.3d at 1308; *DSU Med. Corp.*, 471 F.3d at 1306.  To possess specific intent, the accused party must "advise[ ], encourage[ ], or otherwise induce[ ] others to engage in infringing conduct." *Akamai*, 692 F.3d at 1307. Digital Reg cannot establish the specific intent to encourage another's infringement necessary for a finding of induced infringement.

Under Digital Reg's infringement theory, the Symantec CLT products do not necessarily infringe because renewal of the subscription before denial of access to any aspect of the CLT products is admittedly noninfringing.[4]  Smith Decl. Ex. 8 at 75:12-20.  Digital Reg must, therefore, "point to specific instances of direct infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313-1314 (Fed. Cir. 2007).  There is no evidence of anyone allowing his or her subscription to expire and subsequently renewing.  Nor has any single actor performed the method steps of any asserted claim of the '670 and '059 patents.  Further, there is no dispute that the Symantec does not have the requisite intent ████████████████████████████ ████████████████████████████   In other words, Symantec encourages its customers to operate their products in an indisputably noninfringing manner.  Accordingly, summary judgment is appropriate.

With respect to Adobe, Digital Reg has identified no actor or entity that has deployed the accused software products in a manner which has been shown to perform the asserted method claims.  Digital Reg's expert has admitted that, at most, he can show only that Adobe's software "may" be used in an infringing manner.  Beebe Decl. Ex. 13 at 662:4-18.  This speculation on infringement is, as a matter of law, insufficient to survive summary judgment.  *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007).  Similarly, Digital Reg has failed to identify any evidence that Adobe specifically intended to cause another to infringe any asserted patent claim.  Indeed, the full scope of evidence identified by Digital Reg to support its claims are its expert's vague allusion to documents he admits are general purpose product manuals.[5]  Beebe

---

[4] Digital Reg is also not able to establish contributory infringement because timely renewal is a substantial noninfringing use of the CLT Products.

[5] Despite the requirements of the Patent Local Rules and contention interrogatories served by
(continued...)

Decl. Ex. 13 at 509:18-510:3.  Such documents are not sufficient as a matter of law to demonstrate a specific intent to cause infringement.  *Mirror World*, 692 F.3d at 1360-61.  Moreover, there is no material dispute that Adobe has a good faith belief that it does not infringe the asserted patents, eviscerating any claim of intent.  Beebe Decl. Ex. 13 at 506:5-12; 507:3-13; *Commill USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 167-68 (Fed. Cir. 2013).

Digital Reg has made only conclusory statements concerning indirect infringement as to Ubisoft.  Further, Dr. Devanbu testified that he undertook no analysis with respect to indirect infringement.  Lang Decl., Ex. 7 at 99:8-19, 503:15-510:2, 664:1-3; *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).  As such, Ubisoft is entitled to summary judgment. Similarly, Digital Reg has offered no evidence that Ubisoft specifically intended to cause another to infringe any asserted patent claim.[6]  Instead, the only reference at all to indirect infringement is the boiler-plate language found on page 1 of Dr. Devanbu's Expert Report: "Plaintiff further accuses Ubisoft of indirectly infringing the '670 Patent through providing, authorizing and instructing … to others, including its customers."  *See e.g.,* Lang, Decl., Ex. 12 at 1.  This fails to show the requisite intent.

Accordingly, Defendants are entitled to summary judgment of no indirect infringement.

## VI.    U.S. PATENT NO. 6,389,541

### A.    Adobe Is Entitled to Summary Judgment of Noninfringement of all Asserted Claims of the '541 Patent Under the <u>Agreed</u> Upon Construction.

| *Claim Term* | *Agreed Construction* |
| --- | --- |
| executing an installation process that generates at the client a permission that is locked uniquely to the client and that may be found by a later execution of the access checking process | running an installation program that creates a permission locally, which permission is (1) locked uniquely to the client and (2) capable of being found locally by a later execution of the access checking process |

---

(...continued from previous page)

Adobe, Digital Reg that has failed to identify any evidence to support its indirect infringement claims.  Adobe raised concerns with Digital Reg's indirect infringement contentions repeatedly throughout the case. Beebe Decl. Ex. 34.  Adobe also propounded interrogatories specifically requesting that Digital Reg identify the factual support for its claims of indirect infringement. Digital Reg's response was that these facts would be disclosed in its expert reports. Beebe Decl. Ex. 26.  Digital Reg is thus bound by its expert's failure to analyze this issue.

[6] Digital Reg is claiming indirect infringement only on the asserted claims of the '670 and '059 patents.  Lang Decl., Ex. 19 at 10-12.

1    "It is axiomatic that claims are construed the same way for both invalidity and

2    infringement."  *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1075 (Fed. Cir.

3    2009).   Yet with respect to "creat[ing] a permission locally," Digital Reg has asserted

4    irreconcilable positions on infringement and validity.  For infringement, Digital Reg admits that

5    the object accused as the permission is created at a remote server and then passed to the local

6    machine.  Beebe Decl. Ex. 13 at 619:4-8.  For validity, Digital Reg specifically distinguished

7    the'541 patent from the prior art on the basis that the permission cannot be created at the remote

8    server and passed to the local machine. Beebe Decl. Ex. 14 ¶¶ 78-81, 95-101, 119-20.

9                    **1.       Digital Reg Relies on a Permission Generated at a Remote Server.**

10    Claim 1 of the'541 patent requires first receiving a token from an external source and then,

11    based on that token, executing an installation process that generates at the client the claimed

12    permission. For each of the accused products, Dr. Devanbu has expressly admitted that the

13    claimed permission he identifies is generated ***at a remote location*** and transmitted to the client.

14    Beebe Decl. Ex. 4 at 14, 16; Ex. 13 at 620:16-22; 621:8-12 ("Is it fair to say that in your

15    application of the '541 to LiveCycle, the information that you claim to be the permission that's

16    extracted and stored locally was received from the server?  A. Yes."[7]); Ex. 3 at 19, 23; Ex. 13 at

17    619:4-8 (same for Flash); Ex. 5 at 13, 14; Ex. 13 at 626:23-627:15; 629:17-24 (same for Software

18    Activation).  This theory is in direct conflict with the parties' agreed construction, which requires

19    the permission to be generated locally, not remotely.

20                    **2.       Digital Reg's Validity Analysis Excludes a Permission Generated at a
                     Remote Server.**

21

22    To preserve validity, Digital Reg adopts a position contrary to its infringement theory.

23    Specifically, Digital Reg's expert, Dr. Keller explained that "a person of ordinary skill in the art

24    would understand that the permission that is generated is something other than the token."  Beebe

25    Decl. Ex. 14 ¶¶ 119-120; *see also id.* at ¶¶ 77-81 ("***A token in the context of the '541 patent leads***

26    ***to the generation of a permission.  It is different from the permission itself***. . . . [T]he password

27    ───────────────────────────────

          [7] Dr. Devanbu's assertion against offline access is fundamentally flawed but accepted for the
28    purposes of this motion only.

of Shull [sic] cannot satisfy both the requirement of a pre-existing permission and a token.")[8] 96,

103.  When asked specifically whether the permission could be passed to the client from a remote

server, Dr. Keller steadfastly denied this was permissible.  Beebe Decl. Ex. 15 at 172:19-25 ("Q.

[W]hatever it is that one would point to to be that permission has to have been created at the client

and cannot simply be the thing that was passed from the server to the client.  Is that fair?  A.  It has

to be – correct.  It has to be generated at the client.").  This distinction is the only ground on which

Dr. Keller distinguished the prior art reference Schull.

In light of the conflict noted above, Digital Reg's infringement theory should be rejected as

a matter of law.  In the alternative, Adobe has identified clear and convincing evidence that the

'541 patent is invalid when understood in light of Digital Reg's infringement analysis, based on at

least Schull.  Beebe Decl. Ex. 11 at 74-100.  Applying the agreed-upon construction for this term

and Digital Reg's own proposed constructions for other limitations, the only basis identified by

Dr. Keller supporting the validity '541 patent is his view that the permission must be generated

locally.  Beebe Decl. Ex. 14 ¶¶ 70-85.  If Digital Reg's flawed infringement theory is adopted,

Adobe is entitled to summary judgment of invalidity.

**B.    Adobe Is Entitled to Summary Judgment of Noninfringement of All Asserted '541 Claims Under Its Proposed Construction of "token."**

| Claim Term | Adobe's Construction | Plaintiff's Construction |
|---|---|---|
| Token | a file indicating whether the transaction has been approved | a file indicating whether access should be granted |

Adobe's construction is taken *directly from* the specification:  "The token is a file

indicating whether the transaction has been approved; i.e. whether the object should be installed

and access granted."  Beebe Decl. Ex. 1 at 5:1-3.  Digital Reg argues that Adobe's construction is

limited to a financial transaction.  Not so.  A transaction is simply an interaction between parties.[9]

*Id.* at 4:13-64.  Digital Reg's construction cherry picks language from this definition and omits

language less convenient – "The token is a file indicating whether ~~the transaction has been~~

[8] Emphasis added and internal citations omitted throughout, unless otherwise noted.

[9] This is consistent with Adobe's proposed construction for "authorization procedure."

1   ~~approved; i.e. whether the object should be installed and~~ access granted." *Id.* at 5:1-3.

2       A related dispute between the parties is over the scope what it means to "indicat[e] . . .

3   approval." Adobe contends that the file specifically approves or denies the transaction (i.e., is a

4   yes or no indicator) – the only type of indication disclosed in the specification. *Id.* at 4:65-5:15;

5   10:26-47 (". . . the ***first bit signifies acceptance*** and the following 127 bits are 'dummy' bits

6   utilized for conveying information only when a rejection has occurred."); *see also id.* at 10:41-58.

7   Digital Reg has not been able to provide any evidence to the contrary.

8              **1.    Adobe Is Entitled to Summary Judgment Under Its Construction.**

9       Digital Reg's expert did not opine on infringement under Adobe's proposed construction.

10  Beebe Decl. Ex. 3 at 19; Ex. 4 at 15; Ex. 5 at 13. In contrast, Adobe's expert explained why this

11  limitation is not met for each of the accused products. *Id.* Ex. 8 at ¶¶ 98-101. Under Adobe's

12  proposed construction, there is no material factual dispute and summary judgment is appropriate.

13      **C.    "(an) authorization procedure"**

| Claim Term | Adobe's Construction | Plaintiff's Construction |
|---|---|---|
| authorization procedure | approve or reject a payment transaction or use information | process which determines whether access should be granted |

17      The specification recites, "[t]he payment server directs the external authorization

18  procedure, ***based on the payment/use information received***." It is universal throughout the

19  specification that the authorization procedure is a procedure for approving or rejecting payment

20  and/or use information." Beebe Decl. Ex. 1 at Abstract; 4:13-64; 10:9-26. Moreover, Digital

21  Reg's concession that "it is clear from the specification and claims that either payment or use

22  information can be provided to gain access to content" resolves this issue. Dkt. No. 510 at 9.

23      **D.    Adobe's Accused Products Are Licensed When Used in a Windows
        Environment.**

25      Under Digital Reg's own reading of its license with Microsoft, infringement of the '541

26  patent cannot occur when a Microsoft product performs at least one step of the asserted claims.

27  Thus summary judgment on the asserted '541 patent claims is proper for all uses of Adobe

28

1    products in a Windows environment.[10]

2           The existence of a license is undisputed.  Dkt. No. 438 [9/26/13 Order] 6.  Under Digital

3    Reg's expert's own reading of the license, a user is licensed when a Microsoft product performs a

4    step of the claimed method.  Beebe Decl. Ex. 17 ¶¶ 49-50; Ex. 18 at 169:2-8.  And Digital Reg's

5    infringement expert, Dr. Devanbu, admits that at least three steps of the '541 patent—"requesting

6    permission from an external source for the resource to access the digital content"; "receiving from

7    the external source at token"; and "executing an access checking process"—require the use of

8    Microsoft products in a Windows environment.  Beebe Decl. Ex. 13 at 651:7-17; 651:19-652:7.

9    **VII.    U.S. PATENT NO. 7,421,741**

10          **A.     Adobe Is Entitled to Summary Judgment of Noninfringement or, in the**
               **Alternative, Invalidity Based on Digital Reg's Irreconcilable Positions.**
11

12          Adobe's expert, Dr. Wicker, analyzed Adobe's prior art Digital Commerce system and

13   found that it anticipated the '741 patent under Digital Reg's proposed constructions.  Dkt. No. 540

14   Ex. C(a) at 65-67; Beebe Decl. Ex. 11 648-694; Ex. 24; Ex. 36.  In Digital Reg's rebuttal report,

15   Dr. Keller failed to identify a single claim limitation that was not expressly disclosed under Digital

16   Reg's constructions.  Beebe Decl. Ex. 14 ¶¶ 329-338.  Instead, Dr. Keller distinguished Adobe's

17   Digital Content system by implying there was a new claim construction dispute over the meaning

18   of "container identifier."  *Id.* ¶ 332.    Specifically, Dr. Keller opined that a container identifier

19   must be container specific, not content specific – i.e., each transmission of a container (say, for

20   example, each downloaded copy of a book) must use a unique identifier.  Beebe Decl. Ex. 15 at

21   193:15-20 ("Q.   Okay.   So as I understand that distinction correctly, from your perspective,

22   container identifier has to be container-specific, not content-specific?   A. A container identifier

23   has to be container-specific; that's correct.").   Indeed, Dr. Keller explained that his validity

24   analysis ***would not hold*** if a copy of a book was sent to multiple purchasers without changing the

25   identifier each time.  *Id.* at 195:17-196:13.

26   _____

27       [10] Adobe's current motion focuses on a reading of the license agreement that Digital Reg itself
     advocated when Adobe previously raised this issue (i.e., that the agreement covers, at a minimum,
     the 541 patent) and the subsequent admissions of Digital Reg's own experts.   It thus seeks
28   summary judgment on different grounds than the defendants' prior motion on the license issue.

DEFENDANTS' MOT. FOR SUMMARY J. &
RESPONSIVE CLAIM CONSTRUCTION BRIEF          - 14 -
Case No. 4:12-cv-01971-CW

In analyzing infringement, however, Digital Reg's expert asserted that Adobe's accused products utilize a content-specific identifier, not a container-specific identifier.  Beebe Decl. Ex. 22 at 4; Ex. 13 at 644:23-645:9.  In the specific case of e-books, Dr. Devanbu conceded that the same identifier would apply to all distributed copies of a book.  Beebe Decl. Ex. 21 at 5; Ex. 13 at 642:12-14 ("Q. . . . In Adobe Digital Publishing, every copy of "Moby Dick" would share a single ID; correct?   A. That's my understanding, yes.").

Accordingly, if Dr. Keller's understanding of "container identifier" is accepted, there is no material dispute on noninfringement.  But if Digital Reg's infringement theory is accepted, it has offered no rebuttal to Adobe's showing that all asserted '741 claims are invalid.

**B.    Adobe Is Entitled to Summary Judgment of Noninfringement of All Asserted 741 Claims Under Its Construction of "encrypting a header."**

| Claim Term | Adobe's Construction | Plaintiff's Construction |
|---|---|---|
| encrypting a header | encrypting the beginning of a block of data | encrypting control information including at least a key associated with a data block |

In common parlance, a header implies the beginning of an object—such as header to a document.  This same understanding is employed by the '741 patent when describing the header of a block data. Figure 2, for example, depicts secure digital container ("SDC") 120.  The header 230A of the SDC, not surprisingly, is at the beginning of the first data block.  Similarly, Figure 6 depicts the header 605 at the head of the permission token structure.  Digital Reg, on the other hand, seeks a construction that reads out any positional requirement.  Indeed, it is Digital Reg's position, argued by its expert to demonstrate infringement, that a file header can be entirely separate from the file altogether.  That is, the header can be in a completely different file from the file for which it is a header.

Digital Reg's construction is counterintuitive and has no support in the specification.  First, "control information" appears nowhere in the '741 patent.  Second, the '741 patent expressly states that the "header [is] associated with a first data block of the electronic content" – not any data block, but the ***first data block of the electronic content***.  Beebe Decl. Ex. 19 at 3:15-18, 27-35.  Digital Reg's construction disembodies the header from the data it is intended to be "associated with."

Furthermore, the patentee expressly disclaimed systems that send the decryption key in a license separate from the content during prosecution.  Beebe Decl. Ex. 20 at ADOBE-DR0063813 (discussing the Downs reference).   This disclaimed subject matter cannot be re-claimed now. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307-08 (Fed. Cir. 2007); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).

Finally, Digital Reg's proposal conflicts with its own expert's understanding of header. When discussing the '515 patent, Dr. Devanbu explained that "every packet [of an HTTP transmission] is composed of a header and payload."  Beebe Decl. Ex. 35 at 14-15.  Dr. Devanbu thus recognized that headers are the start of a data packet, not simply disembodied information "associated with" a data block.   Adobe's expert also agrees that a header is "the leading data blocks for a specific file, object, or data."  Beebe Decl. Ex. 8 at ¶ 382.

### 1. Adobe Is Entitled to Summary Judgment Under Its Construction.

Dr. Devanbu has offered no infringement opinion under Adobe's proposed construction. Beebe Decl. Ex. 22 at 14; Ex. 21 at 11, 13; 23.   Thus, summary judgment is appropriate under Adobe's proposed construction.

### C. Adobe Is Entitled to Summary Judgment of Noninfringement of All Asserted 741 Claims Under Its Proposed Construction of "re-keying the header."

| *Claim Term* | *Adobe's Construction* | *Plaintiff's Construction* |
|---|---|---|
| re-keying the header | re-encrypting the header using a different encryption key | re-encrypting the key |

The '741 patent explains, and the parties agree, that re-keying means re-encrypting.  Beebe Decl. Ex. 19 ['741 patent] at 4:49-54.   The parties dispute whether the re-encryption is of the header (Adobe's position) or only of the key hidden within it (Digital Reg's position).

The plain language of the term resolves this issue – "re-keying the ***header***."   The patent repeatedly explains that the header is re-encrypted.  *Id.* at 2:18-21, 40-44; 2:67-3:4; 3:12-24, 35-36, 52-53; 11:64-67; 14:4-7.   This necessarily encrypts the key (the key is included in the header), but the key is not header.  Indeed, this difference is recognized by Digital Reg's construction for "header," which is "control information including at least a key."

1        **1.      Adobe Is Entitled to Summary Judgment Under Its Construction.**

2        Digital Reg's expert, Dr. Devanbu, does not analyze the accused products under Adobe's

3    construction.   Beebe Decl. Ex. 21 at 17; Ex. 22 at 16.   Thus, summary judgment of non-

4    infringement is appropriate for all products.

5        **D.     "header associated with a first data block of the electronic content"**

6

| *Claim Term* | *Adobe's Construction* | *Plaintiff's Construction* |
|---|---|---|
| header associated with a first data block of the electronic content | data at the beginning of the first block of the electronic content | No construction necessary |

7

8

9        This term is intertwined with the previous term "encrypting a header." The header is data

10   at the beginning of a block of data and a header associated with a first data block is the header of

11   the first data block.  *See, e.g.*, Figure 2.   Digital Reg's application of the term reads out

12   embodiments where the header is associated with blocks other than the first data block.  Beebe

13   Decl. Ex. 19 at 7:50-56.

14   **VIII.   U.S. PATENT NOS. 6,751,670 and 7,673,059**

15       The '670 patent, entitled "Tracking Electronic Component," describes and claims a method

16   of tracking electronic content.  Smith Decl. Ex. 1.  The '059 patent, entitled "Tracking Electronic

17   Content," is a continuation of the '670 patent.  Smith Decl. Ex. 2.  As such, the '670 and '059

18   patents share an identical specification and figures.

19       **A.     Defendants Are Entitled to Summary Judgment of Noninfringement Based on
20                the "based on a result of the attempted transmission" Limitation.**

21

| *Claim Term* | *Defendants' Construction* | *Plaintiff's Construction* |
|---|---|---|
| based on a result of the attempted transmission | based on whether or not notification information is sent | No construction necessary |

22

23       The parties dispute whether access is granted based on whether or not information is sent

24   (Defendants' position) or whether a response is received (Digital Reg's position).   The plain

25   language of the claim term dictates Defendants' construction.  The claims recite "transmission",

26   not "receipt."  Indeed, the patentee and Digital Reg's validity expert Dr. Arthur Keller both agree

27   with Defendants that these claims require granting or denying access based on the act of trying to

28   transmit notification information, whether successful or not, which is separate and distinct from

DEFENDANTS' MOT. FOR SUMMARY J. &
RESPONSIVE CLAIM CONSTRUCTION BRIEF        - 17 -
Case No. 4:12-cv-01971-CW

granting access upon receiving an access granting message (*i.e.*, server authorization).[11]  The patent claims themselves clearly distinguish between granting access "based on the results of an attempt to transmit" (*see, e.g.,* Lang Decl., Ex. 1 at claim 32), which can be "successful" or "unsuccessful" (*see, e.g. id*. at claim 33), versus the entirely separate concept of "receiving an access granting message."  *Id.* at claim 34; *see also id*. at 8:16-20 (noting that a "network acknowledgment message" may indicate successful transmission).  Indeed, the patentee described an "attempt to transmit" as "the act of trying" (Lang Decl., Ex. 14  at 20-21), and further stated that "the invention as claimed grants access immediately upon transmission of the notification, without waiting for a response from the server to grant access.  In other words, the transmission of the notification is the triggering event for granting access, not an authorization from the server."  Lang Decl., Ex. 15; Ex. 16.

### 1.  Ubisoft Is Entitled to Summary Judgment of Noninfringement Based on the Opinions of Digital Reg's Experts.

The only person who disagrees with this interpretation is Digital Reg's infringement expert, Dr. Devanbu, who is forced to take an opposite position not because the patents require it, but because his infringement theory, at least against Ubisoft, is predicated on server log-in authorization, which he admits is an "application layer message being sent."  Lang Decl., Ex. 7 at 462:1-464:21 (testifying that "user authentication at a server" meets the "attempting to transmit" limitation).  Given that Digital Reg's own experts disagree on what the claim term means, Digital Reg's "no construction" position rings hollow.  In light of the claims, the specification, and the prosecution history of the patents-in-suit, Ubisoft's construction should be adopted.  Digital Reg

---

[11] Digital Reg's validity expert – in trying to distinguish the prior art – explained the difference as follows:

has offered no opinion and there is no evidence to support a finding of infringement under
Defendants' construction and, therefore, Ubisoft is entitled to summary judgment.

### 2. Adobe Is Entitled to Summary Judgment of Noninfringement Based on the Opinions of Digital Reg's Experts.

Here, Digital Reg has again pitted its experts against each other with respect to validity and infringement.  For validity, Digital Reg's expert Dr. Keller construed the term "granting access based on the results of the attempted transmission" to mean "whether or not the transmission itself succeeded on *a network level*," which to Dr. Keller "is distinct from the granting access based on an application-level return of a password."  Beebe Decl. Ex. 15 at 160:2-25; Ex. 14 ¶¶ 145, 147. Digital Reg's infringement expert, however, "contend[s] that the attempted transmission here is interpretable as an <u>application layer</u> message being sent."[12]  Ex. 13 at 463:17-19.

For all accused products under the '670 patent, Dr. Devanbu's infringement analysis relies wholly on the return of an application-level response, which is directly contrary to the construction used by Digital Reg's validity expert.  Beebe Decl. Ex. 30 at 4, 16 (Digital Publishing); Ex. 31 at 2, 23 (Flash); Ex. 13 at 574:15-576:3 ("So, in this case, I read the attempt to transmit in this, as discussed earlier, that it's an attempt to transmit at the application layer."), 576:14-20; Ex. 32 at 19, 23 (LiveCycle); Ex. 13 at 575:7-14 (And it's based on that receipt of that information from the server that access is granted; correct?  A. Yes."); Ex. 33 at 10, 19-20 (Software Delivery).  Dr. Devanbu offers no evidence or opinion that the accused products provide a network level response.[13]

### B. "selectively grants or denies access"

| Claim Term | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| selectively grants or denies access | granting and/or denying access to select parts of the electronic content | No construction necessary |

[12] Digital Reg's internal argument between a "network level" response and an "application level" response, none of which is reflected in either party's construction, highlights the desperate measures being taken try to prove infringement.

[13] While the specific limitation at issue relates only to Claim 32, as shown above Digital Reg relies on the same analysis and claim interpretation to support its infringement analysis for Claim 45's requirement that access be "denied until notification information . . . has been successfully transmitted.  Adobe is thus entitled to summary judgment on both claims.

1       This term is found in the '541, '670, and '515 patents.  Defendants' construction matches

2  exactly with how the patentee described the invention when overcoming a patentability rejection

3  under 35 U.S.C. § 101.   Beebe Decl. Ex. 29 at ADOBE-DR0059314-15.   Selectively

4  granting/denying means allowing or denying access to only select parts or operations of the

5  electronic content.  Digital Reg's apparent understanding reads out the term "selectively."

6       **C.**    **Dr. Keller's Opinion on the Meaning of "notification information" Warrants**

7              **Partial Summary Judgment for Adobe.**

8       All asserted claims of the '670 patent require the collection of "notification information."

9  Neither side proposed this term for construction.  In distinguishing the prior art asserted against

10  the '670 patent, Dr. Keller formed a new opinion that "'notification information' as used by the

11  '670 patent is information "to identify and track the recipient."  Beebe Decl. Ex. 14 ¶ 140.  Digital

12  Reg has failed to support this construction and it should be rejected.  If adopted, Adobe is entitled

13  to summary judgment with respect to the Digital Publishing Tools, Flash, and its Software

14  Delivery, Licensing, and Activation services because Digital Reg has identified no infringement

15  theory or evidence that the alleged "notification information" is intended or used to track the use

16  of content in the accused products.  Beebe Decl. Exs. 30-32.  Put differently, summary judgment is

17  appropriate because Digital Reg applied one construction to preserve the validity of the claims, but

18  did not apply that same construction to demonstrate infringement.

19       **D.**    **The Symantec CLT Products Do Not Deny Access to the Electronic Content**

20              **Until Notification Information is Transmitted.**

21       Claim 32 of the '670 patent requires the step of "deny[ing] access to the electronic content

22  *until* the notification information is transmitted."  Smith Decl. Ex. 1 at 13:21-23.  Similarly, claim

23  45 of the '670 patent requires a "file that includes electronic content and causes access to the

24  electronic content to be denied *until* notification information collected by executable instructions

25  has been successfully transmitted."  *Id.* at 13:6-8.  In other words, for both claims, access to the

26  electronic content is denied at least until after notification information is transmitted.  Similarly,

27  claim 16 of the '059 patent requires the step of "upon transmission of an authorized user

28  identifier . . . *access is granted* to at least a portion of the electronic data."  Smith Decl. Ex. 2 at

DEFENDANTS' MOT. FOR SUMMARY J. &
RESPONSIVE CLAIM CONSTRUCTION BRIEF     - 20 -
Case No. 4:12-cv-01971-CW

12:32-35.   In other words, access to the electronic data is initially denied.   Only "upon transmission of an authorized user identifier" is access granted.

In contrast, it is undisputed that the Symantec CLT products provide access to the electronic content *before* the alleged notification information is transmitted.  *See* Smith Decl. Ex. 8 at 77:11-15.  More specifically, Digital Reg alleges that the Symantec CLT products transmit "notification information" in connection with software activation.  *Id.* at 83:11-15 ("when the license on the client side is being activated, notification is sent").

Dr. Devanbu, however, conceded in his deposition that the software activation does not, however, occur until *after* "the end-user is provided with full access to all features within Symantec products."   Smith Decl. Ex. 8 204:22-205:12.   In other words, Symantec's CLT products initially grant access to the electronic content and only subsequently deny access if, and when, the product expires.  Dr. Devanbu made similar concessions for claim 45 of the '670 patent and claim 16 of the '059 patent.  Smith Decl. Ex. 8 205:25-206:7, 206:21-207:4 with respect to claim 45 and 234:4-9, 22-24 with respect to claim 16.

Because it is undisputed that the Symantec CLT products do not deny access to the electronic content until notification information is sent, the Court should grant summary judgment of noninfringement as to claims 32 and 45 of the '670 patent and claim 16 of the '059 patent.

**E.   "recipient"**

| Claim Term | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| recipient | user that receives the electronic content | no construction necessary |

The parties' dispute turns on whether a "recipient" must be a "user" (Defendants' position) or whether a "recipient" is anyone or anything that receives the electronic content (Digital Reg's apparent position).  Defendants' proposed construction is fully supported by the intrinsic evidence.

Indeed, Defendants' proposed construction comports with the '670 patent's only embodiment.  The specification teaches that "a *user* sending e-mail often cannot be sure the intended *recipient* ever read or received the e-mail."  Smith Decl. Ex. 1 at 1:15-17.  The specification goes on to state that "[m]any e-mail software packages enable a *user* receiving an e-mail attachment to

1   easily forward received attachments to ***other recipients***." *Id.* at 1:31-33.  A "recipient" is therefore

2   a "user" according to the '670 patent's specification.

3       The prosecution history of the '670 patent further confirms that a "recipient" is a "user."

4   In an office action dated June 5, 2002, the PTO rejected the application for the '670 patent as

5   obvious in light of several prior art references.  Smith Decl. Ex. 4.  In its December 2002 response

6   to the office action, Digital Reg argued that the cited prior art was based on the purportedly novel

7   "successive recipient" feature.  In doing so, Digital Reg equated the claim term "recipients" with

8   "users."   Smith Decl. Ex. 5 at 9 ("the executable instructions allows [sic] for the collection of

9   notification information . . . for successive ***recipients (i.e., users)***.").  Within that same response,

10  Digital Reg used "successive recipient" and "successive user" interchangeably, again indicating

11  that the patentee understood that the claimed "recipient" was a "user."   Smith Decl. Ex. 5 at 10

12  ("[The prior art] indicates a pre-determined addressing scheme wherein the ***recipients*** are pre-

13  targeted . . . .   It is clearly not the dynamic ***successive user*** identification of the present

14  invention.").  The intrinsic record therefore makes clear that the "recipient" refers to a "user."

15  Indeed, Digital Reg is bound to such construction in view of the file history.  *Phillips*, 415 F.3d at

16  1317.  The Court should therefore adopt Defendants' proposed construction.

17      Digital Reg provides no guidance as to how this term should be understood by the Court

18  under plain and ordinary meaning.  It cannot be that anyone or anything that handles the electronic

19  data is a recipient.  The logical conclusion from such a sweeping construction is that any

20  intermediary is then a recipient.  For example, if a letter is sent from party A in New York to party

21  B in San Francisco, the mailbox is a recipient, the mailman is a recipient, the sorting office is a

22  recipient, the truck and airplane are recipients, and so on and so forth until the letter is received by

23  party B.  This is an absurd conclusion and inconsistent with the specification.

24      Moreover, The '670 patent makes clear that a "recipient" cannot be a distribution server.

25  In fact, the '670 patent specifically describes multiple digital distribution mechanisms including e-

26  mail, FTP, and HTTP, each of which require an intermediary server through which electronic

27  content is temporarily stored prior to a recipient downloading the content.  *See, e.g.,* Lang Decl.,

28  Ex. 1 at 4:2-6; claim 46.  Yet, throughout the claims, specification, and file history, these

intermediary servers are **never** identified as a "recipient." By proposing no construction at all, Digital Reg is attempting to read out claim requirements, including those added to obtain issuance of the asserted patent.

      **F.**      **Symantec and Ubisoft Are Entitled to Summary Judgment Based Upon Defendants' Construction of "successive recipient" / "successive computer."**

| Claim Term | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| successive recipient | user that receives electronic content from a previous recipient | no construction necessary |
| successive computer | user's computer that receives electronic content from a previous user's computer | no construction necessary |

      The parties' dispute on this term relates to whether or not a "successive recipient" must receive the electronic content from a previous recipient or whether a "successive recipient" can include a user that receives electronic content from a server later in time from some other user, as Digital Reg attempts to quietly capture through its "no construction" approach. As explained below, Defendants' proposed construction is compelled based on both the intrinsic evidence and prosecution history disclaimer as to "successive recipient" and "successive computer."

      Starting with the specification, Figure 2B of the '670 patent shows a second "successive" recipient receiving the electronic content from an initial recipient. The '670 patent explains that "after transmission to a recipient 125, the envelope 100 remains a convenient way to transmit electronic content 105 included in the envelope 100 to others. Thus, ***a recipient 125 can easily re-transmit the received electronic content 105 to one or more new recipients*** 135 by forwarding the received envelope 100 in a new e-mail message 115b." Smith Decl. Ex. 1 at 5:14-21. In other words, the specification teaches that the "successive recipient" receives the electronic content from a previous recipient. There is no discussion whatsoever in the specification or claims to suggest that a user who receives electronic content later in time than some other user from the same server would fall within the plain meaning of "successive recipient."

      Further, in addition to these teachings from the specification, Digital Reg disclaimed what is now its litigation-induced "successive in time" theory. Digital Reg limited the term "successive recipient" to a user that received electronic content from a prior recipient. Indeed, in response to a

July 2001 office action rejecting all claims as obvious over prior art, Digital Reg amended the independent claims to include "transmitting, notification information from successive recipients to an address other than that of the immediate sender of the electronic content."  Smith Decl. Ex. 6 at 4.  In doing so, Digital Reg explained that the term "successive recipients" referred to "those who receive the electronic content *from an intended recipient* (i.e., when an e-mail is forwarded to other recipients)."  *Id.*  The applicant's definitional explanation of "successive recipient" focuses unequivocally on the idea that a successive recipient receives electronic content from a previous, intended recipient.  It is not a recipient that simply receives electronic content from a server later in time than some other random recipient.

The PTO again rejected the claims of the '670 patent as obvious over the Venkatraman prior art reference.  Digital Reg responded by again focusing on the allegedly non-obvious "successive recipient" limitation.  In doing so, Digital Reg confirmed that "[t]he *present invention* is directed, in general, to a method of tracking electronic content through successive recipients" and that "[t]he envelope may be re-transmitted by an *initial recipient* to *successive recipients*."  Smith Decl. Ex. 5 at 6-7.  Digital Reg then distinguished the claims of the '670 patent over the Venkatraman prior art reference on the ground that "[n]owhere [within Venkatraman] is there an indication that the *initial recipient* is capable or even permitted to re-transmit the initial e-mail onward to *other (successive) recipients*."  *Id.* at 10.  By stating that the missing element in Venkatraman was the capability of the initial recipient to re-transmit the initial e-mail onward to other (successive) recipients, the applicant restricted the '670 claims to a system where the initial recipient re-transmits electronic content to other (successive) recipients.  A server that merely sends the same electronic content to recipients at different points in time does not satisfy this limitation.  Yet, Digital Reg is now trying to recapture exactly what it gave up to avoid Venkatraman.  If given the "later in time" meaning Digital Reg attributes to the term "successive," the prior art, Venkatraman, can no longer be distinguished.  It is not credible to say that Venkatraman does not teach sending an email from a server to more than one recipient —Digital Reg would have to argue that Venkatraman discloses sending one email, and only one email, in

the entire life of the system.[14]  The law dictates that clear and unambiguous disavowal of claim scope during prosecution—which is the case here—informs the claim construction analysis by "narrow[ing] the ordinary meaning of the claim congruent with the scope of the surrender." *Omega*, 334 F.3d at 1324.  Digital Reg cannot ignore the intrinsic record in an effort to recapture subject matter surrendered during prosecution.

Similarly, to obtain allowance of the '059 patent, Digital Reg made clear that the "successive computer" received electronic content from a previous user's computer.  For example, in a June 2006 response to an office action, Digital Reg argued that "the term 'successive' has a specific meaning which includes 'consecutive,' for example."  Smith Decl. Ex. 7 at 10.  In other words, Digital Reg again emphasized that its invention required successive computers (or successive recipients) that receive electronic content serially from one another.  Additionally, Digital Reg's technical expert agrees that a "successive computer" is the computer operated by a "successive recipient."  Smith Decl. Ex. 8 at 173:21-24.

In summary, the intrinsic record, and the prosecution disclaimers made therein, confirm that the claimed "successive recipient" or "successive computer" receives electronic content from a previous recipient or previous user's computer.  Further, by proposing no construction at all, Digital Reg is attempting to eliminate claim requirements, including those added to obtain issuance of the asserted patent.  The Court should therefore construe "successive recipient" as a "user that receives electronic content from a previous recipient" and "successive computer" as a "user's computer that receives electronic content from a previous user's computer."

### 1.  Symantec Does Not Infringe Under Defendants' Proposed Construction.

The first step of claim 32 of the '670 patent requires "collecting notification information from a recipient and ***successive recipients*** of the electronic content . . . ."  Smith Decl. Ex. 1 at 13:9-10 .  The final step of claim 45 requires "receiving notification information from a ***successive recipient*** . . . ."  *Id.* at 14:10-11.   The second step of claim 16 of the '059 patent requires

---

[14] Digital Reg also argues that claim 74 of the '670 patent somehow contradicts Defendants' proposed construction.  To the contrary, claim 74 explicitly requires "transmitting the envelope from the first recipient to one or more successive recipients."  Smith Decl. Ex. 1 at 16:30-31. Defendants' proposed construction of "successive recipient" is consistent with claim 74.

"transmitting the received electronic data and executable instructions to one or more **successive computers**." Smith Decl. Ex. 2 at 12:28-29. At his deposition, Dr. Devanbu confirmed that he treated "successive recipient" and "successive computer" synonymously. Smith Decl. Ex. 8 at 173:21-24. For purposes of claim construction, Digital Reg also treated the terms identically.

Digital Reg concedes noninfringement under Defendants' proposed construction of "successive recipient." Indeed, Digital Reg alleges that the "recipient" would be a first end-user who downloads the accused CLT software from Symantec and that a "successive recipient" would be any subsequent end-user who downloads that same CLT software from Symantec. Dr. Devanbu, confirmed Digital Reg's infringement theory at his deposition. Smith Decl. Ex. 8 at 176:9-18 (discussing a scenario where John Doe downloads software from Symantec and then Jane Doe downloads software from Symantec). In this scenario, Jane Doe would not be a "successive recipient" under Defendants' proposed construction because Jane Doe did not receive the Symantec software from the recipient John Doe. At his deposition, Dr. Devanbu confirmed that he had not considered Defendants' proposed construction of "successive recipient." Smith Decl. Ex. 8 at 167:10-14. Further, there is no evidence of an end-user (John Doe) transferring the accused CLT software to another end-user (Jane Doe). *Id.* at 230:8-22.

In contrast, Symantec's technical expert, Dr. Stubblebine, considered Defendants' proposed construction of "successive recipient" and "successive computer" and concluded that the accused CLT software does not infringe under that construction. Smith Decl. Ex. 9 at ¶¶ 64-70, 166. In cases like this one, the Federal Circuit holds that a patentee must offer **expert** opinion of infringement or it cannot overcome the expert testimony of noninfringement. *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004).

Thus, if the Court adopts Defendants' proposed claim constructions Digital Reg cannot show that Symantec infringes claims 32 and 45 of the '670 patent or claim 16 of the '059 patent. Summary judgment of no infringement is therefore warranted.

### 2. Ubisoft Does Not Infringe Under Defendants' Proposed Construction.

Digital Reg advances a "no construction necessary" approach to this term so that it can simultaneously attempt to pursue multiple conflicting infringement theories. Digital Reg's expert,

1   Dr. Devanbu, testified that the term "successive recipient" can mean different things in different

2   claims, and could have a different construction "depending on the context in which you're being

3   asked to offer an opinion on infringement."  Lang Decl., Ex. 7 at 459:19-461:21, 175:21-177:24.

4       For Ubisoft, Digital Reg claims that infringement of claim 32 of the '670 patent occurs

5   when a user downloads the same game from a CDN server to two different computers.  Lang

6   Decl., Ex. 12 at 15.  Under Digital Reg's theory, the user is a "recipient" first time the user

7   downloads the game, and the second time the same user downloads the same game from a

8   different computer they are the "successive recipient."  This theory does not contemplate digital

9   content being sent from one "recipient" to a "successive recipient" – in fact, to the contrary, in

10  both situations the user is downloading the content from the same CDN server.[15]  Wicker Decl.,

11  Ex. A at 25.

12      For claim 45 of the '670 patent and claim 16 of the '059 patent, Digital Reg claims that

13  when a game is uploaded by Ubisoft to a CDN distribution server, there is no "first recipient," but

14  every user that receives the game from the distribution server is a "successive recipient" (claim 45

15  of the '670 patent) or "successive computer" (claim 16 of the '059).  Lang Decl., Ex. 12 at 67-68;

16  Ex. 9 at 20; Ex. 7 at 460:7-19.  This theory is also at odds with the claims, specification, and file

17  history of the '670 and '059 patents, as a first user to receive electronic content from a distribution

18  server cannot be the "successive recipient" or "successive computer."  Digital Reg has offered no

19  opinion, and there is no evidence to support a finding of infringement, under Defendants'

20  proposed construction.  In fact, Dr. Devanbu admitted that he was not aware of any circumstance

21  in which one user transmitted a Ubisoft video game to another user.  *Id.* at 456:21-457:23 ("I don't

22  play games, so I don't know . . . .").  Accordingly, Ubisoft is entitled to summary judgment.

23          **G.     The Ubisoft Products Do Not Infringe the '059 Patent as Access Is Not
                    Granted "Upon Transmission" of an Authorized User Identifier.**

24

25      Digital Reg's infringement theory is directly contrary to the plain and ordinary language of

26  claim 16 of the '059 patent, which requires the following:  "***upon transmission*** of an authorized

27  _____

28      [15] For games downloaded through the UbiShop and Uplay Express Shop, the CDN server is a
    Limelight server; for all other distribution channels there is no evidence in the record.

DEFENDANTS' MOT. FOR SUMMARY J. &
RESPONSIVE CLAIM CONSTRUCTION BRIEF          - 27 -
Case No. 4:12-cv-01971-CW

user identifier … access is granted to at least a portion of the electronic content."[16] Lang Decl.,
Ex. 2 at cl. 16. Digital Reg claims that logging in to a Ubisoft server meets the "upon
transmission" requirement, as is evidenced by the report of Dr. Devanbu: "Once the authorized
user identifier has been *transmitted **and** processed successfully*, a user is granted access to game
content." Lang Decl., Ex. 9 at 34-35; *see also* Lang Decl., Ex. 7 at 453:21-454:2 ("upon receiving
authorization"). Digital Reg must pursue this theory, as it is accusing the Uplay PC login process

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████.

The plain language of the claim is "upon transmission," which is expressly distinguished
from "server authorization" in the claims of the '059 patent. Wicker Decl., Ex. A at 14.[17]
Moreover, the claims of the '059 patent expressly distinguish between granting access "upon
transmission" and server authorization. Dependent claim 26, which depends directly from claim
16 and is not asserted, recites: "The method of claim 16, *further comprising* the step of *receiving
an access granting message* at the one or more successive computers." The '059 specification
confirms that a "transmission" is an entirely different concept from "receiving an access granting

---

[16] Claim 16 of the '059 patent recites, in part, "upon transmission of an ***authorized user
identifier*** to a network address other than a network address of the sending computer, access is
granted to at least a portion of the electronic data." Digital Reg contends that the claimed
"authorized user identifier" is the same as the claimed "notification information." However, the
patent claims distinguish between the two. *Compare* claim 27 *with* claim 16. Given that claim 27
contemplates granting access ***both*** (1) "upon transmission of an authorized user identifier," ***and***
(2) "also based in part on the result of a transmission of notification information," the "authorized
user identifier" cannot be synonymous with "notification information" as Digital Reg claims.

Instead, the '059 specification explains that an "identifier" of an "authorized user" is
information used to verify that the sender is authorized to create electronic data. Lang Decl., Ex. 2
['059 patent] at 2:42-45; *see also id.* at 6:26-31 (referring to "identifiers corresponding to
authorized envelope creators"). Thus, the term "authorized user identifier" should be construed as
"information used to verify that the sender is authorized to create electronic data." Digital Reg has
offered no opinion, and there is no evidence to support a finding of infringement under Ubisoft's
proposed construction, and summary judgment is warranted in favor of Ubisoft.

[17] Digital Reg's validity expert, Dr. Arthur Keller, agreed that granting access "upon
transmission" does not mean granting access based on "***receipt of a reply***" (*i.e.*, server
authorization). Lang Decl., Ex. 13 at p. 64 (emphasis original).

message": "If, however, the attempted transmission succeeds (225) <u>or</u> an access granting message 136 is received, the notification instructions 110 can store (230) data indicating successful access." Lang Decl., Ex. 2 at 8:52-55; *see also id.* at 7:59-64, 6:13-23.

Because granting access "upon transmission" means exactly what is says – and expressly does not mean granting access after server authorization as is required for Digital Reg's infringement theory – Ubisoft is entitled to summary judgment.

**IX.    U.S. PATENT NOS. 7,127,515, 7,272,655, and 7,562,150**

**A.    "based on the results of the attempt to transmit"**

| Claim Term | Ubisoft's Construction | Plaintiff's Construction |
|---|---|---|
| "based on the results of the attempt to transmit" ('655 claim 1, '150 claim 1) | based on whether or not notification information is sent | No construction necessary |

As described above in Section VIII.A, Defendants' construction should be adopted in view of the claims, specification and prosecution history. Digital Reg has offered no opinion and there is no evidence to support a finding of infringement of the '655 or '150 Patents by Ubisoft under Defendants' proposed construction. Accordingly, Ubisoft is entitled to summary judgment.

**X.    DIGITAL REG'S CLAIMS AGAINST UBISOFT FOR SALES MADE BY VALVE ARE BARRED.**

Sales of Ubisoft games made by Valve through its Steam Platform are expressly licensed pursuant to a Settlement Agreement between Digital Reg and Valve, previously a defendant in this action. Ninety percent (90%) of Ubisoft's accused games sales are through the Steam Platform.

1  ██████████████████████████████████████████████████████

2  ██████████████████████████████████  Furthermore, from a factual standpoint, the

3  conclusion that sales through the Steam Platform are made "using" the Steam Platform is both

4  tautological and uncontrovertable – a game cannot be sold through the Steam Platform without

5  "using" the Steam Platform.  As a consequence, all such sales through the Steam Platform,

6  including sales of Ubisoft games, are licensed and immune from suit. [18]  Accordingly, summary

7  judgment should be granted to Ubisoft as to sales made through Steam as those claims are already

8  settled, licensed, and released.

9  **XI.   CONCLUSION**

10       For the foregoing reasons, Defendants Adobe, Symantec, and Ubisoft respectfully request

11  that the Court grant summary judgment of noninfringement for all Asserted Claims of the asserted

12  patents their favor.

13  Dated:  April 21, 2014                         Respectfully submitted,

14                                                 WILSON SONSINI GOODRICH & ROSATI
                                                   Professional Corporation
15

16
                                                   By:_____/s/ *Ryan R. Smith*_____
17                                                                Ryan R. Smith

18                                                 Attorneys for Defendant
                                                   SYMANTEC CORPORATION
19

20  Dated:  April 21, 2014                         WEIL, GOTSHAL & MANGES LLP

21

22                                                 By:_____/s/ *Edward R. Reines*_____
                                                                Edward R. Reines
23

24                                                 Attorneys for Defendant
                                                   ADOBE SYSTEMS INCORPORATED
25
_____
26       [18] In addition to the plain application of the Digital Reg/Valve agreement, Digital Reg's effort
    to recover from both Valve and Ubisoft for the same game sales is fundamentally unfair and, not
27  surprisingly, is foreclosed by the doctrine of patent exhaustion.  *See, e.g.*, *PNY Technologies, Inc.*
    *v. SanDisk Corp.*, C-11-04689 YGR, 2012 WL 1380271, at *5 (N.D. Cal. Apr. 20, 2012); *see also*
28  *Freescale Semiconductor, Inc. v. ChipMOS Tech., Inc.*, 5:09-CV-3689-JF, 2011 WL 4014466, at
    *3 (N.D. Cal. Sept. 8, 2011).

1    Dated:  April 21, 2014                    ERISE IP, P.A.

2

3                                              By:_____/s/ *Michelle L. Marriott*_____
                                                          Michelle L. Marriott
4
                                               Attorneys for Defendant
5                                              UBISOFT, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION**

2

I, Ryan R. Smith, am the ECF User whose identification and password are being used to

3

file Defendants' Motion for Summary Judgment and Responsive Claim Construction.    In

4

compliance with General Order No. 45, section X(B), and Local Rule 5.1(i)(3), I hereby attest that

5

Edward R. Reines of Weil, Gotshal & Manges LLP, on behalf of Adobe Systems Incorporated and

6

Michelle L. Marriott of Erise IP, P.A., on behalf of Ubisoft, Inc., have concurred in this filing.

7

8

Dated:  April 21, 2014                                  Respectfully submitted,

9

                                                                   WILSON SONSINI GOODRICH & ROSATI

10

                                                                   Professional Corporation

11

                                                                   By:_____/s/ *Ryan R. Smith*_____

12

                                                                                              Ryan R. Smith

13

                                                                   Attorneys for Defendant

14

                                                                   SYMANTEC CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28