1  EDWARD R. REINES (SBN 135960)
   edward.reines@weil.com
2  SONAL N. MEHTA (SBN 222086)
   sonal.mehta@weil.com
3  BYRON C. BEEBE (SBN 235179)
   byron.beebe@weil.com
4  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
5  Redwood Shores, CA 94065
   Telephone:  650-802-3000
6  Facsimile:  650-802-3100

7  Attorneys for Defendant
   ADOBE SYSTEMS INCORPORATED
8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                           **OAKLAND DIVISION**

12

13   DIGITAL REG OF TEXAS, LLC,              Civil Case No. 12-CV-01971 CW (KAW)

14              Plaintiff,                   **ADOBE BRIEF REGARDING DISPUTED LEGAL ISSUES**

15        vs.
                                             Judge: Hon. Claudia Wilken
16   ADOBE SYSTEMS INCORPORATED, et al.,     Ctrm:  2, 4th floor
                                             Date:  August 25, 2014
17              Defendants.                  Time:  8:30 a.m.

18

19

20                              **REDACTED**

21

22

23

24

25

26

27

28

ADOBE'S BRIEF RE: DISPUTED LEGAL ISSUES                     CIVIL CASE NO. 12-01971 CW

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. DIGITAL REG CANNOT DEMONSTRATE "DIRECTION AND CONTROL" BASED ON SOFTWARE LICENSE AGREEMENTS AND ACCESS CONTROLS ................................................................................................................ 1

III. DIGITAL REG CANNOT PROCEED ON AN INDIRECT INFRINGEMENT CLAIM ......... 4

IV. DIGITAL REG CANNOT PROVE WILLFUL INFRINGEMENT ......................................... 6

V. DAMAGES CALCULATIONS FOR INFRINGING A METHOD CLAIM CANNOT RELY ONLY ON TOTAL SALES NUMBERS .................................................................. 6

VI. DIGITAL REG CANNOT CLAIM A PRIORITY DATE EARLIER THAN THE FILING OF ITS 541 AND 670 PATENTS ........................................................................... 9

VII. DIGITAL REG'S PATENTS ARE OBVIOUS ..................................................................... 10

VIII. LACHES BARS DIGITAL REG'S RECOVERY ................................................................... 11

IX. DIGITAL REG HAS NO EVIDENCE THAT ADOBE INFRINGES .................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) .................................................................................................. 11

*Allergan, Inc. v. Apotex Inc.*,
   ___ F.3d ____, 2014 WL 2579287 (Fed. Cir. 2014) .................................................................... 9

*Aristocrat Techs. Aust. PTY Ltd. v. Int'l Game Tech.*,
   709 F.3d 1348 (Fed. Cir. 2013) .................................................................................................... 2

*Bayer Schering Pharma AG v. Barr Labs., Inc.*,
   575 F.3d 1341 (Fed. Cir. 2009) .................................................................................................. 10

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
   576 F.3d 1348 (Fed. Cir. 2009) .................................................................................................... 7

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011) .................................................................................................... 2

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) .................................................................................................... 2

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) .................................................................................................... 6

*Global-Tech Appliances, Inc. v. Seb S.A.*,
   131 S.Ct. 2060 (2011) ................................................................................................................... 5

*i4i v. Microsoft*,
   598 F.3d 831 (Fed. Cir. 2010) ...................................................................................................... 7

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) .................................................................................................... 6

*KSR Intern. Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ................................................................................................................... 10

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) .................................................................................................... 7

*Mirror Worlds, LLC v. Apple, Inc.*,
   784 F.Supp.2d 703 (E.D. Tex. 2011) ........................................................................................... 7

*Move, Inc. v. Real Estate Alliance Ltd.*,
   709 F.3d 1117 (Fed. Cir. 2013) ............................................................................................... 3, 4

*Powell v. Home Depot U.S.A., Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011) .................................................................................................... 6

*Shu-Hi Chen v. Bouchard*,

    347 F.3d 1299 (Fed. Cir. 2003) .................................................................................. 9

*St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc.*,
    961 F.Supp.2d 610 (D. Del. 2013)............................................................................ 11

*Travel Sentry, Inc. v. Tropp*,
    497 Fed.Appx. 958 (Fed. Cir. 2012)........................................................................... 3

*Voter Verified, Inc. v. Premier Election Solutions*,
    698 F.3d 1374 (Fed. Cir. 2012) .............................................................................. 2, 3

**FEDERAL STATUTES**

35 U.S.C. § 284 ................................................................................................................ 7

Fed. R. Evid. § 702     6

## I. INTRODUCTION[1]

Adobe identifies the following disputed issues of law which, if resolved in Adobe's favor, will preclude or otherwise limit Digital Reg of Texas's ability to proceed at trial:

1. Whether Digital Reg's evidence is sufficient to demonstrate the "direction and control" necessary to prove direct infringement by Adobe;
2. Whether Digital Reg's evidence is sufficient to demonstrate intent to cause the harm of patent infringement;
3. Whether Digital Reg can pursue its willful infringement claims in light of the evidence;
4. Whether Digital Reg can rely on total sales figures for Adobe products to prove its claim for damages;
5. Whether Digital Reg can rely on a June 2006 priority date for the '541 and '670 patents;
6. Whether Digital Reg's patents are obvious under the law;
7. Whether laches bars Digital Reg's recovery in this case;
8. Whether Digital Reg has sufficient evidence to proceed on its infringement claims.

As shown below, Digital Reg's positions with respect to the above issues are directly contrary to law.

## II. DIGITAL REG CANNOT DEMONSTRATE "DIRECTION AND CONTROL" BASED ON SOFTWARE LICENSE AGREEMENTS AND ACCESS CONTROLS

Digital Reg's direct infringement theory in this case relies completely on the claim that Adobe is liable for the conduct of unrelated third-parties because it provides and controls access to software which can allegedly be used to infringe the method claims of Digital Reg's patents. The Federal Circuit has rejected this argument. An arms-length relationship is insufficient to establish direction and control; there is a need to demonstrate an agency relationship such that one actor can

---

[1] A number of the legal issues herein are also addressed in Adobe's *in limine* motions, jury instructions, prior claim construction and summary judgment papers, and pre-trial conference statement sections, all of which Adobe incorporates by reference herein.

1  be held vicariously liable for the acts of another.  Providing and controlling access to software
2  *does not support joint infringement of a method claim*.

3  As this Court has recognized, in "the context of direct infringement of a method claim, all
4  of the claimed steps must be attributable to the same defendant."  Dkt. No. 574 [Order] at 26
5  (citations and internal quotation marks omitted).  Digital Reg has already conceded "that multiple
6  actors are necessary to practice each of the [asserted] method claims" and "confirmed that its
7  theory of direct infringement involve[s] the participation of certain third parties, such as the
8  customers of [Adobe]." *Id.* at 26-27.  Thus, to demonstrate direct infringement, Digital Reg must
9  be able to show that Adobe "exercises control or direction over the entire [allegedly infringing]
10 process such that every step is attributable to [Adobe]." *Id.* at 26 (citations and internal quotation
11 marks omitted).

12 As far back as 2005, the Federal Circuit confirmed that an agency relationship between
13 accused actors was required for liability.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek,*
14 *Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005).  And in its most recent considerations of this issue, the
15 Court routinely rejects joint infringement theories when "[n]either [actor] is the agent of the other,
16 nor can we discern a theory under which one would be vicariously liable for the other's actions."
17 *Aristocrat Techs. Aust. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1363 (Fed. Cir. 2013); *see*
18 *also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir.
19 2011) (no joint infringement liability when defendant "in no way directs its customers to perform
20 nor do its customers act as its agents.").

21 In *Aristocrat*, the defendant offered electronic gambling software used in slot machines
22 that was alleged to infringe certain method claims related to awarding progressive prizes in such
23 devices.  *Aristocrat*, 709 F.3d at 1349-50.  The court was faced with a situation where "no single
24 actor performs all of the steps of the claimed methods" but where it was argued that "the player's
25 entire gaming experience is dictated by [the defendant's] programming of the gaming machine."
26 *Id.* at 1362.  The Federal Circuit left no doubt such a theory was improper, writing ***"[o]ur case law***
27 ***does not recognize the test that Aristocrat proposes*** and we decline to so extend it here" while
28 clarifying that absent an "***agency relationship or joint enterprise***, we have declined to find one

1  party vicariously liable for another's actions." *Id.* at 1363.

2  Likewise, in *Voter Verified, Inc. v. Premier Election Solutions*, 698 F.3d 1374 (Fed. Cir. 2012), the Federal Circuit considered the claim that a voting software manufacturer directed and controlled the conduct of voters using its system. There the plaintiff argued that "the computer program of the accused system controls all of the voter's actions to complete the process of voting" because "it is axiomatic that all entities who conduct elections must necessarily be in control of their election process." 698 F.3d at 1383 (internal edits and quotation marks omitted). The Federal Circuit rejected this theory, relying on the settled principle that "the fact that an accused infringer controls access to its system and instructs others on its use is not sufficient to incur liability for direct infringement." *Id.* at 1384 (internal edits and quotation marks omitted).

Similarly, in *Travel Sentry, Inc. v. Tropp*, 497 Fed.Appx. 958 (Fed. Cir. 2012), infringement of the asserted patent required cooperation between a manufacturer and the TSA regarding a special lock for luggage, where the patent would be infringed if the TSA used a master key to open the lock to inspect luggage. In that case, the alleged joint actors had entered into a memorandum of understanding whereby the TSA was provided with master keys and training materials in exchange for agreeing to use its best efforts to inspect luggage having the special locks by using the master keys. 497 Fed.Appx. at 960-61. The plaintiff argued that the presence of the contract was sufficient control to find joint infringement. *Id.* at 964. The Federal Circuit disagreed, finding nothing showing "any express or implicit agreement that TSA will act on [the defendant's] behalf or subject to its control, ***as an agency relationship would require***." *Id.* at 966 (emphasis added). The memorandum left the TSA fee to decide whether to use the master keys at all and provided no direction regarding how the TSA should act. *Id.* Thus, the provision of the master keys, instructions on their use, and an agreement that the TSA should use the keys to unlock the special locks, showed "no more than that" the defendant "merely controls access to its system and instructs others on its use," grounds insufficient for direct infringement. *Id.*

Finally, in *Move, Inc. v. Real Estate Alliance Ltd.*, 709 F.3d 1117 (Fed. Cir. 2013), the court was faced with determining whether a website provider directed or controlled the conduct of individuals using the website. When a user entered in a zip code, the system would return a pre-

1 determined map. 709 F.3d at 1121-22. It was, however, the user which took steps to use the
2 defendant's system, not the defendant's own computer which took the relevant step. *Id.* at 1122.
3 Thus, the Federal Circuit concluded that "[a]lthough certain steps of [the] claimed method may be
4 performed by individuals using [the defendant's] system, that does not equate to direct
5 infringement or joint direct infringement because [the defendant] does not exercise direction or
6 control over users of its websites." *Id.* at 1122-23.

7 This case is no different than any of the others where the Federal Circuit has found the
8 evidence insufficient to support a joint infringement theory. Adobe has already shown – and
9 Digital Reg has not contested – that users of its products are provided with wide latitude in
10 implementing their own solutions using Adobe software development kits. Dkt. No. 520-8
11 [Wicker Non-Infringement Report] ¶¶ 23-46. And the only evidence Digital Reg marshalled to
12 survive summary judgment was an uncontroversial admission that licensing software is designed
13 "to prevent unauthorized use and reproduction" of Adobe's products along with boiler-plate
14 language showing users of Adobe's software do so under industry-standard software license
15 agreements. Dkt. No. 574 [Order] at 27. This is nothing more than the inconsequential type of
16 evidence, rejected by the Federal Circuit, showing Adobe "controls access to its system." It falls
17 far short of demonstrating that Adobe directs and controls users of its software to implement
18 specific steps of the asserted method claims. Adobe's users are free to use – or not use – their
19 software, or any feature of their software, at their discretion. There is no agency relationship
20 formed by buying Adobe's software or agreeing to a software license agreement when using an
21 Adobe product. There is nothing that could even begin to form the foundation for a finding that
22 Adobe is vicariously liable for the conduct any user of its products.

23 Accordingly, the evidence Digital Reg desires to present regarding Adobe's alleged
24 direction and control is insufficient as a matter of law to support a finding that Adobe directly
25 infringes the asserted patents.

26 **III. DIGITAL REG CANNOT PROCEED ON AN INDIRECT INFRINGEMENT CLAIM**

27 It appears that Digital Reg intends to assert that Adobe is liable for inducing others to

28

infringe Digital Reg's patents.[2]  Dkt. No. 560 at 9 ("Defendants are liable indirectly for the actions of their customers if they have induced them to perform some of the method steps.").  Digital Reg's inducement theory cannot succeed as a matter of law.

To start, Digital Reg has never attempted to identify any direct infringer other than Adobe, which cannot induce itself to infringe.  Digital Reg's case is one of direct infringement based on Adobe's alleged direction and control of its customers.  This is not a viable theory for indirect infringement.

In addition, Digital Reg cannot demonstrate that Adobe intends to cause the harm of patent infringement.  The Supreme Court has clearly articulated that an alleged infringer must know that their conduct "***constitute[s] patent infringement***."  *Global-Tech Appliances, Inc. v. Seb S.A.*, 131 S.Ct. 2060, 2068 (2011).  "When a person actively induces another to take some action, ***the inducer obviously knows the action that he or she wishes to bring about***."  *Id.* at 2065.  Thus, "the inducer must persuade another to engage in ***conduct that the inducer knows is infringement***."  *Id.* at 2065, 2068.

As a matter of law, the evidence in this case does not support a finding that Adobe acted knowing that the allegedly induced conduct would constitute the legal wrong of patent infringement.  For the same reasons discussed in Adobe's motion in limine number 5, with respect to willfulness evidence, Digital Reg's record bears only on knowledge, not intent.

Moreover, Adobe has litigated this case in good faith and has presented several legitimate arguments both as to why it does not infringe—including through its motion for summary judgment (Dkt. No. 556) and leave to seek reconsideration (Dkt. No. 583)—and why the asserted patents are invalid.  In light of this evidence, Digital Reg's own infringement expert could not

---

[2] It does not appear that Digital Reg is pursuing a contributory infringement claim.  Its expert reports are silent on the elements of contributory infringement and Digital Reg's expert admitted that he performed no analysis of contributory infringement.  Dkt. No. 520-14 [Devanbu Dep.] at 664:1-3.  Indeed, Digital Reg's expert reports are virtually silent on indirect infringement generally – containing only boilerplate allegations related to inducement in the charts appended to the report.  The main report only considers direct infringement.  Dkt. No. 520-2 [Devanbu Report] at 13.  Adobe has moved in limine to exclude Digital Reg's indirect infringement claims and to limit Digital Reg's experts to the evidence in their reports, if either of these motions is granted Digital Reg's claims necessarily fail.

conclude that Adobe believes its conduct is infringing. Dkt. No. 520-14 [Devanbu Dep.] at 506:9-12; 507:3-13. Adobe's good faith belief in non-infringement and invalidity is the only evidence directly bearing on Adobe's intent in this matter—and it is directly contrary to and legally insufficient to support a claim that Adobe engaged in conduct it knew to constitute infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

## IV.  DIGITAL REG CANNOT PROVE WILLFUL INFRINGEMENT

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

"Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011). As noted above, and in Adobe's motion in limine number 5, there is simply no evidence contradicting Adobe's good-faith belief in its defenses. As such, there can be no credible assertion that Adobe has been objectively reckless. Because Digital Reg cannot satisfy the objective prong of *Seagate*, its willful infringement claims fail as a matter of law.

Similarly, Digital Reg also fails the subjective prong of *Seagate*. As discussed above and in Adobe's motion in limine, there is no legally competent evidence supporting the claim that Adobe has acted with the intent to cause infringement of Digital Reg's patents. The only evidence marshalled by Digital Reg relates only to potential knowledge, not intent. And Adobe's alleged knowledge of the asserted patents has not been coupled to any indication that infringement was likely, or even possible.

## V.  DAMAGES CALCULATIONS FOR INFRINGING A METHOD CLAIM CANNOT RELY ONLY ON TOTAL SALES NUMBERS

Digital Reg has demanded at least $48 million dollars in damages under a theory that

1    includes within the damages base all sales of several Adobe products it claims are used to infringe
2    the patents asserted in this case.  In its parallel motion in limine number 1, Adobe has moved to
3    exclude Digital Reg's damages expert under Federal Rule of Evidence 702 based on several
4    serious flaws in Dr. Parr's methodology.  However, Digital Reg's damages theory is further
5    flawed under the law given that this case involves ***only method claims*** and, therefore, Digital Reg
6    damages theory must, but fails to, take into account actual use of the products to practice the
7    asserted method claims.

8         Damages in a patent case are defined by statute to "compensate for the infringement, but in
9    no event [be] less than a reasonable royalty *for the use made of the invention by the infringer*."
10   35 U.S.C. § 284.  With respect to method claims, the law is well settled that the sale of software,
11   "without more," does not infringe a method claim; "[d]irect infringement occurs only when
12   someone performs the claimed method."  *i4i v. Microsoft*, 598 F.3d 831, 850 (Fed. Cir. 2010)
13   (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).
14   Accordingly, because Digital Reg blindly includes each and every sale of an Adobe product in its
15   damages theory it has no chance of success.  *See e.g.*, *Mirror Worlds, LLC v. Apple, Inc.*, 784
16   F.Supp.2d 703, 724-25 (E.D. Tex. 2011) ("[A] sale or offer for sale is insufficient to prove direct
17   infringement of a method claim—sale of the apparatus is not the sale of the method—and thereby
18   irrelevant in calculating liability for direct infringement.").

19        Evidence of use of the allegedly patented feature is essential to calculating a reasonable
20   royalty, and a damages theory which does not account for such use should be rejected.  *Cardiac*
21   *Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1358-59 (Fed. Cir. 2009) (confirming
22   that damages on asserted method claims are limited to "those devices that actually performed the
23   patented method during the relevant infringement period"); *Lucent*, 580 F.3d at 1334 (finding that
24   the "damages award ought to be correlated, in some respect, to the extent the infringing method is
25   used by consumers.  This is so because this is what the parties to the hypothetical negotiation
26   would have considered.").  In this case Digital Reg has made no attempt to show how frequently
27   Adobe products are used to infringe Digital Reg's asserted method claims.   As the Court has
28   recognized, and Digital Reg has conceded, Digital Reg's infringement theories rely on the conduct

ADOBE'S BRIEF RE: DISPUTED LEGAL ISSUES      7      CIVIL CASE NO. 12-01971 CW

1  of third-parties. Dkt. No. 574 at 27. However, Adobe's products are all capable of being used
2  without infringing Digital Reg's patents. In fact, several are software development kits, which are
3  designed to be modified and utilized by third-parties as they see fit. Dkt. No. 520-8 [Wicker Non-
4  Infringement Report] ¶¶ 24-39. Moreover, Dr. Parr admits that the accused functionality does not
5  drive demand for any of the relevant products. Beebe Decl., Ex. 1 [Parr Dep.] at 76:4-10 ("Q.
6  Okay. So just so that I have your analysis straight, is it fair for me to say that for – let's just take
7  the Acrobat Pro software, because you use that. For Acrobat Pro, you agree with me that
8  consumers don't buy it for the DRM functionality. Right? A. I didn't. I don't know of anybody
9  else that would."). Digital Reg itself concedes that not every third-party infringes but claims "that
10 it has provided sufficient evidence to show that at least some customers allowed a license to
11 expire," and thereby infringed its patents. Dkt. No. 574 at 29.

12 Yet Digital Reg's damages expert admits that his damages calculation is "based on
13 determining a reasonable royalty rate and applying it to the relevant portion of the sales of accused
14 products that Defendants have made, used, offered for sale or sold in the United States or imported
15 into the United States since infringement began." Beebe Decl., Ex. 2 [Parr Report] ¶ 11. In other
16 words, Dr. Parr determined a royalty rate and applied it to all sales, regardless of use. Beebe
17 Decl., Ex. 1 [Parr Dep.] at 43:6-10 ("Q. . . . [I]s it fair to say that in calculating damages, you
18 applied the royalty rate that you opined is appropriate to all sales revenue for the accused
19 products? A. That's my goal, and that's what I did, yes."); 67:17-25 ("Q. My question was: In
20 forming your opinions and conclusions, you didn't undertake any analysis to determine what
21 proportion of all of the features, functionality, value to customers, value to users, Acrobat Pro
22 provides with regard to the patents-in-suit, if any. Right? You didn't look at that question.
23 Correct? A. Correct. I'm assuming that the whole sale is infringement."). At no point does Dr.
24 Parr consider the rate of allegedly infringing use of the relevant Adobe products or otherwise
25 attempt to account for the fact that only method claims are asserted in this case. As a matter of
26 law, then, Dr. Parr's infringement theory is flawed. It is simply improper to rely on total sales
27 figures for damages tied to an asserted method claim without also considering the frequency with
28 which the relevant products are actually used to practice the asserted claims. Since both parties

1 recognize that infringement does not occur in all uses of the relevant products, Dr. Parr's analysis,
2 if ultimately admitted, cannot support an award greater than nominal damages.

## VI. DIGITAL REG CANNOT CLAIM A PRIORITY DATE EARLIER THAN THE FILING OF ITS 541 AND 670 PATENTS

Digital Reg's 541 patent was filed on May 15, 1998, and its 670 patent was filed on November 24, 1998. Yet Digital Reg asserts that it is entitled to a priority date of at least June 2006 for both patents. Beebe Decl., Ex. 3 [Digital Reg's Third Amended Responses to Adobe's First Set Of Common Interrogatories] at 3. Digital Reg's position is unsupported by any evidence and cannot be corroborated. The Court should conclude that Digital Reg is not entitled a priority dater any earlier than the filing of its patents.

"The issue of the conception date of an invention is a legal conclusion based on underlying factual findings." *Allergan, Inc. v. Apotex Inc.*, ___ F.3d ____, 2014 WL 2579287 at *11 (Fed. Cir. 2014). In this case, there are no facts supporting conception prior to the filing of the 541 and 670 patents. The inventor of both patents, Mr. Patterson, has testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Beebe Decl., Ex. 8 [Patterson Dep., Case No. 6:07-cv-467-LED (DTX677)] at DIGREG-10874. Mr. Patterson has also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. at DIGREG-10900. Accordingly, there is no evidence of conception in June 1996.

Even if Digital Reg could muster testimony from Mr. Patterson supporting a June 1996 conception date, there is no evidence to corroborate his testimony. "It is well established that when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that testimony." *Allergan*, ___ F.3d ___, 2014 WL 2579287 at *12 (citing *Shu-Hi Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003)). Digital Reg has alleged corroboration through Mr. Michael Farley, Mr. Carl Venters, and seven e-mails from Mr. Patterson. But Mr. Farley has testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ███ and was unable to testify whether the 541 patent was embodied in any product made by Mr.

2    Patterson's company.  Beebe Decl., Ex. 5 [Farley Dep.] at 149:21-150:15 ████████████

3    ██████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████  Ex. 9 [Farley

5    Dep., Case No. 6:07-cv-468-LED (DTX678)] at DIGREG-10789, 10796.  Likewise, Mr. Venters

6    was unable to provide any corroboration regarding conception.  Beebe Decl., Ex. 6 [Venters Dep.]

7    at 93:25-94:8 ██████████████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████████████████████████████████

10   ███████████████████████████████  And Mr. Patterson was unable to provide any testimony at all

11   regarding the date of the allegedly corroborating emails.  Beebe Decl., Ex. 18 [Patterson Dep.] at

12   193-198 (disclaiming knowledge of key documents).  Indeed, even Digital Reg's validity expert

13   failed to opine on an earlier priority date, noting instead that "I have assumed the actual filing date

14   except in cases of continuations and divisional [sic], in which case I have considered the parent

15   filing date."  Dkt. No. 520-15 [Keller Report] ¶ 55.

16        For these reasons, Digital Reg has no evidence of conception prior to the filing of the 670

17   and 541 patents and, even if such evidence was provided by inventor testimony, no corroboration

18   of that testimony.  Adobe is entitled to a priority date as of the filing of the 541 and 670 patents.

19                     **VII.  DIGITAL REG'S PATENTS ARE OBVIOUS**

20        The parties dispute whether the 541, 670, and 741 patents are obvious in light of the prior

21   art.  The ultimate question of obviousness is a matter of law and asks whether "the differences

22   between the subject matter sought to be patented and the prior art are such that the subject matter

23   as a whole would have been obvious at the time the invention was made to a person having

24   ordinary skill in the art."  *Bayer Schering Pharma AG v. Barr Labs., Inc.*, 575 F.3d 1341, 1346

25   (Fed. Cir. 2009).  This legal conclusion is supported by underlying issues of fact including "the

26   scope and content of the prior art, the differences between the prior art and the claims at issue, and

27   the level of ordinary skill in the pertinent art."  *Id.* at 1347.  It is also supported by objective

28   indicia of non-obviousness.  *Id.*  In this case, the underlying facts will support Adobe's position

1    that the asserted patents are obvious, in part because the elements of the asserted patents were all
2    well known in the art at the time of their alleged invention and their use was within the bounds of
3    ordinary skill in the art. *See KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 at 417-18 (2007).

### VIII.  LACHES BARS DIGITAL REG'S RECOVERY

5    The defense of laches requires a two part showing:  first, that "the patentee's delay in
6    bringing suit was unreasonable and inexcusable;" and second, that "the alleged infringer suffered
7    material prejudice attributable to the delay." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960
8    F.2d 1020, 1028, 1045 (Fed. Cir. 1992).  Laches will be presumed when a patentee fails to bring
9    suit within six years of having actual or constructive knowledge of infringing activity. *St. Clair*
10   *Intellectual Prop. Consultants, Inc. v. Acer, Inc.*, 961 F.Supp.2d 610, 614 (D. Del. 2013).  Despite
11   knowledge of infringement as early as 2002, Digital Reg did not bring the current lawsuit until
12   2011.  Adobe is thus entitled to the protections of laches as a matter of law.

13   The facts will show that Digital Reg's delay in bringing suit was both unreasonable and
14   inexcusable.  Eugene Phillips testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19   ▮▮▮▮  And Carl Venters, Digital Reg's 30(b)(6) witness and a prior employee of Deskgate,
20   testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Digital Reg itself has admitted that it believed Adobe was infringing as early as 2007. Beebe Decl., Ex. 3 [Digital Reg's Third Amended Responses to Adobe's First Set Of Common Interrogatories] at 21.

In addition, the facts will show that Adobe has been materially prejudiced by Digital Reg's delay. Mr. Patterson, the inventor of the 541 and 670 patents, has stated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Beebe Decl., Ex. 4 [Patterson Dep.] at 390:14-391:11. Adobe was thus been unable to gather evidence supporting its defenses that would have been available had a lawsuit been filed when Adobe was first believed to infringe.

### IX. DIGITAL REG HAS NO EVIDENCE THAT ADOBE INFRINGES

Adobe has moved for leave to seek reconsideration of the Court's decision to deny summary judgment of non-infringement on the 541 and 670 patents. Dkt. No. 583. Adobe's arguments in support of its legal claim to summary judgment of non-infringement are contained in the briefing on its original request for summary judgment and its request for leave to seek reconsideration. Dkt. Nos. 556, 560, 583. In summary, Digital Reg has no evidence supporting the claim that Adobe's products operate in a manner that could infringe the properly construed claims of the 541 and 670 patents. Relatedly, Adobe has noted the legally improper conflict between Digital Reg's experts regarding the proper interpretation and application of claim terms in this case. These conflicts support Adobe's claim that Digital Reg's patents are invalid. In light of the evidence Digital Reg has brought forth, Adobe is legally entitled to a finding of non-infringement and/or invalidity.

Dated: July 30, 2014　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Edward R. Reines
　　　　　　　　　　　　　　　　　　　Edward R. Reines
　　　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　　　201 Redwood Shores Parkway
　　　　　　　　　　　　　　　　　　　Redwood Shores, CA 94065
　　　　　　　　　　　　　　　　　　　Telephone: (650) 802-3000
　　　　　　　　　　　　　　　　　　　Facsimile: (650) 802-3100

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　*Adobe Systems Incorporated*