IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIGITAL REG OF TEXAS, LLC,                    No. C 12-1971 CW

        Plaintiff,                            ORDER ON MOTIONS
                                              IN LIMINE (Docket
    v.                                        Nos. 587, 592)

ADOBE SYSTEMS, INC., et al.,

        Defendants.

_____/

    In this patent infringement case, Plaintiff Digital Reg of

Texas, LLC, and Defendant Adobe Systems, Inc., the only remaining

Defendant, are set to go to trial on August 25, 2014.  Before the

Court are the parties' motions in limine; Adobe brings nine and

Digital Reg brings twenty one.  On August 13, 2014, the Court held

a pretrial conference.  Having considered the papers and the

arguments of counsel, the Court rules as follows on the motions in

limine.

A.  Adobe's motions in limine

    1.  Exclude unreliable opinion of Plaintiff's damages
        expert, Robert Parr

    Adobe's motion is GRANTED.

    This is a Daubert[1] motion, which requires the district court

to exercise its gatekeeping function in mandating that any

_____

    [1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589
(1993) ("under the [Federal] Rules [of Evidence] the trial judge
must ensure that any and all scientific testimony or evidence
admitted is not only relevant, but reliable").

testimony grounded in scientific or technical expertise be relevant and reliable.  Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1306 (Fed. Cir. 2011); Fed. R. Evid. 702.  In scrutinizing an expert's principles and methodology, a court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  A court may not, however, "evaluate the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence."  Uniloc USA, Inc., 632 F.3d at 1305-06.

Adobe contends Mr. Parr used incomplete information to calculate the percentage of sales Adobe saved from piracy because of its use of the patented invention.  Mr. Parr arrived at this conclusion by subtracting from software piracy rates across the industry (twenty percent) the piracy rates experienced by Symantec (six to ten percent), which allegedly shows the benefit of using the claimed invention (ten to fourteen percent).  Beebe Decl., Ex. 1 (Parr Depo.) at 84:2-19; Ex. 2 (Parr Rep.) ¶ 174.  Mr. Parr thus did not consider piracy data specific to Adobe.  He instead relied on data spanning the entire software industry, regardless of the type of software or whether the software uses some form of DRM or not, without explaining why this would be proper.  He also relied on Symantec data, even though Symantec settled and was not shown to be infringing.  He did not analyze how differences in the software might affect his calculation.

Digital Reg responds that Mr. Parr used the evidence that was available to him.  Digital Reg contends that Adobe "failed to produce records regarding piracy rates specific to its products or the efficacy of its DRM strategy."  Digital Reg Response at 2. Adobe stated at the hearing that it provided Digital Reg with piracy information, but did not have the statistic Digital Reg sought because it does not track that information.  But even if information tracking Adobe's accused products was not available, data tracking products shown to be sufficiently similar to the accused products would have been more relevant.  Cf. LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 78-79 (Fed. Cir. 2012) (permitting expert to use price information tracking a similar product where price information of the accused product was unavailable).  Different types of software are likely to experience different rates of piracy, depending on the level of demand for the software, the importance of the software's function, the price of the software, and the availability of alternatives, to name a few factors.  Mr. Parr did not use data regarding products that are similar to Adobe's accused products, or attempt to demonstrate that Adobe would experience piracy rates equal to the average of the industry.  Mr. Parr did not even attempt to justify his assumption that Symantec and industry data are an accurate representation of what would occur with Adobe. See Parr Rep. ¶ 174.  He acknowledged in his deposition that Symantec and Adobe's products are different and offer different

United States District Court
For the Northern District of California

3

functionalities.  Parr Depo. at 81:2-9, 82:23-83:9 (remarking that, although the products are different, Adobe and Symantec would experience the same gains from the DRM technology because they are large companies that "sell a large diversified portfolio of products to consumers and enterprises").  Moreover, Mr. Parr did not consider whether other anti-piracy measures are taken by Symantec or the industry, and what effect those measures might have.  Symantec has not even been shown to employ the infringing DRM technology.  In short, there are many uncertainties that Mr. Parr fails to address with his use of industry and Symantec data as a proxy for Adobe data.  Because piracy and the effectiveness of DRM technology may vary widely across the industry, the inputs of Mr. Parr's damages calculation are inherently unreliable.

Adobe also attacks Mr. Parr's methodology for calculating the yield of a hypothetical negotiation between Adobe and Digital Reg. "[T]he classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee." Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 27 (Fed. Cir. 2012).  Adobe takes issue with both the royalty rate and royalty base used in Mr. Parr's report.

In calculating the royalty rate, Mr. Parr assumed the parties would begin their negotiation at an equal fifty-fifty share of saved profits.  Adobe contends this is contrary to established

United States District Court
For the Northern District of California

Federal Circuit case law.  In Uniloc, the Federal Circuit disapproved of arbitrary starting points for negotiations of a reasonable royalty rate.  In that case, the expert used Robert Goldscheider's "25 Percent Rule,"[2] which assumes that the manufacturer would be willing to pay the patentee twenty-five percent of its expected profits for the product that incorporated the intellectual property at issue.  Uniloc USA, Inc., 632 F.3d at 1312.  To arrive at a reasonable royalty rate under the 25 Percent Rule, the profits for the product embodying the invention are divided by the expected net sales yielding a profit rate, which is then multiplied by twenty-five percent to arrive at a running royalty rate.  Id.  Because the rule was "essentially arbitrary" and did "not relate to any issue in the case," the court held that it was "fundamentally flawed" and inadmissible as a matter of law under Daubert.  Id. at 1314.

A court in this district recently applied Uniloc's holding in a similar case, Dynetix Design Solutions, Inc. v. Synopsys, Inc., 2013 WL 4538210 (N.D. Cal. Aug. 23, 2013).  In Dynetix, the expert began his royalty rate analysis at fifty percent of the gross profit margin of the accused products, adjusting the rate upwards or downwards based on the application of the Georgia-Pacific factors.  Id. at *1.  Because "an arbitrary starting point is

---

[2] This rule was based on Robert Goldscheider's studies of commercial licensing negotiations generally.  Id. at 1313.

impermissible under Uniloc," the court excluded the expert's

damages testimony.  Id. at *4.

Here, Mr. Parr decided to adopt a fifty-percent starting

point based on his vague, undisclosed general experience.  "I

believe that a sharing of the saved profits would result in a 50%

split of the saved profits.  In my career I have seen instances

where inventions that result in a savings to the licensee are

priced at a 50% sharing of the savings." See Parr Report ¶¶ 176-

77.  During his deposition, Mr. Parr admitted that he had not seen

any evidence of either Adobe or Digital Reg commencing

negotiations with a fifty-fifty profit split.  See Parr Depo. at

106:25-107:16.  Mr. Parr's starting point, based only on his

personal experience not limited to the DRM industry, is even more

arbitrary than the rule rejected in Uniloc.  See Dynetix Design

Solutions, Inc., 2013 WL 4538210, at *4.  To ensure damages

figures are not conjectural or speculative,  a starting point

should be tied to case-specific factors grounded in reliable data,

such as the parties' relative bargaining power, the relationship

between the patented invention and the accused product, other

licenses involving the same patent, and analogous licenses in the

industry for patents covering component parts.  See id.

Digital Reg contends that, unlike in Uniloc and Dynetix, Mr.

Parr multiplied his fifty-fifty starting point by the amount of

sales that would be saved from piracy by incorporating the

patented invention in the accused product.  This is not in

substance distinct from Uniloc and Dynetix because, according to his own words, Mr. Parr started with "a 50% split of the saved profits."  This introduces an arbitrary element to the calculation, even if Mr. Parr went on to adjust his initial determination with case-specific factors.  The rate is still tainted by its fifty/fifty starting point which is unsupported by any evidence.  Dynetix Design Solutions, Inc., 2013 WL 4538210, at *4 (an "arbitrary starting point is impermissible under Uniloc.").

Adobe next criticizes Mr. Parr's use of the entire value of the accused products as the royalty base.  It is well-established that a patentee may assess damages based on the entire value of the accused product "only where the patented feature creates the 'basis for customer demand' or 'substantially creates the value of the component parts.'"  Uniloc USA, Inc., 632 F.3d at 1318 (citing Garretson v. Clark, 111 U.S. 120, 121 (1884)).  Otherwise, the patentee must "apportion the defendant's profits . . . between the patented feature and the unpatented feature."  Id.

Digital Reg suggests that it is free to use revenue of the entire product for its royalty base as long as it is "economically justified."  Mondis Tech., Ltd. v. LG Electronics, Inc., 2011 WL 2417367, at *2 (E.D. Tex. June 14, 2011) (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1336 (Fed. Cir. 2009)).  Relying on the Federal Circuit's language in Lucent, the Mondis court found that, because the only relevant prior licensing agreements available were based on the value of the entire

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

product, the patentee was justified in using the entire market value with a correspondingly lower royalty rate. See id.[3]  In focusing on this one Eastern District of Texas case, Digital Reg ignores more recent case law from the Federal Circuit and this district clarifying the same point.  In Uniloc, the Federal Circuit explained that the plaintiff misinterpreted the passage in Lucent that was relied upon by the Mondis court -- that "the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range" -- because it was preceded by the qualification that the entire market value could not be used in that case because there was no evidence that the patented feature was the basis of consumer demand.  Uniloc USA, Inc., 632 F.3d at 1319-20 (quoting Lucent Techs., Inc., 580 F.3d at 1339-39).  After clarifying that Lucent does not stand for the proposition that the entire market value can be used absent evidence that the patented feature drives demand, the Uniloc court went on expressly to disapprove of the plaintiff's use of the entire market value, so long as the royalty rate is "low enough." Id. at 1319.  In 2012 the Federal Circuit again explained that the language in Lucent was misinterpreted, and reaffirmed that "in any

---

[3] The Mondis court held that use of the entire market value was "economically justified" because the previous comparable licenses were calculated based on the entire market value.  Mondis Technology, Ltd., 2011 WL 2417367, at *2.  Digital Reg does not show that much.

case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature." LaserDynamics, Inc., 694 F.3d at 67-68. Because there is no evidence that the patented feature drives demand here,[4] Mr. Parr's use of the entire market value of the products cannot be justified.

Mr. Parr provides an alternative calculation that apportions the royalty base to be thirty percent of the profit. But he increased the rate proportionally to arrive at the same ultimate damages figure. Parr Depo. at 212:20-24, 213:10-18, 214:15-23, 215:11-16. This analysis contravenes Federal Circuit precedent and does not serve the purpose of the rule, which is to award only damages which are fairly attributable to the patented feature. See Lucent Techs., Inc., 580 F.3d at 1338 ("Being precluded from using the computer as the royalty base, he used the price of the software, but inflated the royalty rate accordingly. This cannot be an acceptable way" to conduct the reasonable royalty analysis). Due to the multiple flaws in Mr. Parr's inputs and analysis, his damages testimony must be excluded in full.

---

[4] In fact, Mr. Parr recognizes the opposite: he states, "The patented invention is not a product that consumers seek-out and are only aware of when they wish to begin using the products they have purchased." Parr Rep. ¶ 152.

United States District Court
For the Northern District of California

Because upon a finding of infringement, Digital Reg is entitled to "in no event less than a reasonable royalty for the use made by the invention by the infringer," the Court will permit Mr. Parr to submit a revised damages report[5] curing only the problems identified in this order, to be filed no later than the close of business on August 21, 2014.  He may not include any additional information on any points, and may not rely on additional settlement agreements.[6]  Mr. Parr must be made available for a deposition of up to two hours no later than the close of business on August 28, 2014.  If Mr. Parr's report is again deficient, the Court will preclude him from testifying and only Adobe's damages expert will be permitted to testify.[7]  See ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 523 (Fed. Cir.

---

[5] Although the Court did not ask for additional briefing, both parties submitted "letters" to further argue their points. Dockets Nos. 615, 618.  Although the Court need not consider the substance of these letters, see Civil Local Rule 7-3(d), it notes that Digital Reg offers to remove its profit-sharing analysis included in Georgia-Pacific factor eleven and rely instead on other settlement agreements such as ones involving EA and Symantec to compute a royalty rate.  While this might solve two of the problems raised above, it would not solve the problem of using an improper royalty base.  To be admissible, any revised expert report must address all of the problems identified in this order.

[6] The claims against EA and Symantec were dismissed on December 20, 2013 and July 9, 2014, respectively.  It is presumed that Digital Reg settled its claims with these parties some time before those dates.  If Digital Reg wished to supplement its expert report, it should have sought leave from the Court diligently.

[7] Adobe now confirms its offer at the pretrial conference to have its expert testify.  Docket No. 615 at 1.

United States District Court
For the Northern District of California

2012) (affirming trial court's decision, in its discretion, to preclude the plaintiff from presenting expert testimony on a reasonable royalty because a "last-minute addition" would "disrupt the proceedings and cause unacceptable delay"); Golden Bridge Technology v. Apple Inc., Case No. 12-cv-04882-PSG, Docket No. 494 (N.D. Cal. June 1, 2014), Docket No. 494 (after finding plaintiff's damages expert used an unreliable methodology, permitting him to file an amended report before trial; after finding plaintiff's expert again erred, excluding the expert from trial entirely, allowing only defendant's expert and plaintiff's fact witnesses to testify); NetAirus Technologies, LLC v. Apple, Inc., Case No. 10-cv-03257-JAK, Docket No. 619 (C.D. Cal. Nov. 11, 2013) (after striking plaintiffs' damages expert, allowing plaintiffs to call defendant's expert).

         2.   Exclude the RPX license

         Adobe's motion is DENIED.

         Adobe moves to exclude all evidence of the licensing agreements between Digital Reg and RPX.  RPX is a patent aggregator, or an entity that licenses patents from patentees and then sublicenses those patents to its members.  Around December 12, 2008, RPX took a license from Digital Reg and has since sublicensed it to at least 120 companies.  Because RPX's business model is unique, Adobe argues its license is of limited relevance to Adobe's hypothetical licensing posture and should be excluded.  See Fed. R. Evid. 403.

Digital Reg contends that the license is relevant to calculation of a reasonable royalty here.  Mr. Parr discussed the RPX license in his report, although he did not ultimately factor it in to the royalty rate.  Some of the license agreements Mr. Parr reviewed involved licensees (such as Zynga, Intuit, AVG, and Symantec) that already had a license to the '541 patent through their membership with RPX.  These licensees would have contemplated the effect of their existing license and paid a lower rate to settle claims with Digital Reg.  Ignoring the RPX agreement would leave the jury with the mistaken impression that the license agreements included the '541 patent.  The RPX agreement is therefore relevant to a reasonable royalty.

Adobe argues that even though the RPX license is relevant, its $8.5 million figure will skew the jury's perception of a reasonable royalty, causing unfair prejudice to Adobe. Accordingly, Digital Reg may describe the circumstances of the RPX license, but not the actual amount.

3.   Exclude evidence of Adobe's AMT product

Adobe's motion is GRANTED.

Adobe seeks to exclude portions of Digital Reg's infringement expert's report which alleges infringement by Adobe's AMT product. See Docket No. 523-10 (Devanbu Report App'x A-3) at 2.  While both parties agree that AMT as a whole is not an accused product, Digital Reg's expert Premkumar Devanbu argues that ALM, which is an accused product, is a component of AMT.

Adobe responds that this is contrary to Magistrate Judge Westmore's ruling on a discovery motion.  Judge Westmore found that while ALM is an accused product, AMT is not, nor is a component of AMT that is similar to ALM.  Docket No. 431 at 7.  In arguing that motion, Digital Reg submitted the same user logs of AMT, which it claims shows continued use of ALM in conjunction with AMT.  Docket No. 371 at 8.  Adobe disagreed, explaining that AMT is composed of entirely new source code.  Adobe further pointed out that Digital Reg's infringement contentions only accused the version of ALM "sold through volume licensing plans." Id. at 9 (citing Digital Reg's Infringement Contentions at 3). Judge Westmore agreed with Adobe, finding that Digital Reg's infringement contentions accused the version of ALM related to Adobe's volume licensing services, and that version of ALM was discontinued.  Docket No. 431 at 7.  Because Digital Reg's infringement contentions failed specifically to accuse AMT and a feature of it that appears similar to ALM but is actually "new code" and a "new system," Digital Reg was not entitled to discovery on that product.  Id.  Digital Reg objected to the order, but the undersigned denied the objection.  Docket No. 452.

Digital Reg now reasserts the same arguments.  But Judge Westmore did not err in finding that Digital Reg's infringement contentions accused only the volume licensing version of ALM.  The Patent Local Rules of this district require the plaintiff to be "as specific as possible" in identifying every accused "product,

United States District Court
For the Northern District of California

13

device, and apparatus," by name if possible.  Patent L.R. 3-1(b).

Digital Reg failed to do so with respect to AMT and its ALM-like

component.  <u>See</u> Digital Reg's Infringement Contentions at 3

("Adobe License Manager is an embedded e-license management system

that enables automated license management . . . It will be

integrated into all of Adobe's best-selling desktop applications

and suites <u>sold through volume licensing plans</u> . . .") (emphasis

added).  <u>See also</u> Docket No. 431 at 6-7.  At that point, Digital

Reg could have sought leave to amend its infringement contentions

to allege with specificity that it sought to accuse AMT, along

with its ALM-like component.  Patent L.R. 3-6.  Because Digital

Reg did not do so, Adobe had no timely notice of a theory accusing

AMT and its ALM-like component and relied upon Judge Westmore's

order.  Accordingly, AMT and its ALM-like component cannot be

inserted into the case at this late stage.

> 4.   Exclude mention of Adobe's total revenues, revenues not
>      tied to accused features, market capitalization, company
>      valuation, or overall financial success

Adobe's motion is GRANTED in part.

Adobe next moves to exclude any mention of global figures

such as its company's total revenues which include products not at

issue, the overall valuation of its company, and its financial

success, because it would be unfairly prejudicial to Adobe.  Fed.

R. Evid. 403.  Digital Reg states that it does not intend to refer

to any of this information, except to the extent that it wishes to

introduce exhibits containing global figures that were used to

United States District Court
For the Northern District of California

calculate gross profit margins. Digital Reg needs to introduce these documents to establish the foundation for its damages calculation. Digital Reg may use these documents, but if practicable should redact any global figures unrelated to the case and may not draw attention to these figures. See Uniloc USA, Inc., 632 F.3d at 1318-20 (finding that presentation of Microsoft's total revenue "cannot help but skew the damages horizon for the jury" and that "the $19 billion cat was never put back into the bag" even though there was "a final instruction that the jury may not award damages based on Microsoft's entire revenue from all the accused products in the case").

    5.    Preclude any reference or evidence regarding willfulness
        Adobe's motion is DENIED.

    Adobe seeks to exclude Digital Reg's willfulness case. Willfulness is a two part inquiry. First, the objective prong requires that a patentee "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." In re Seagate, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Second, the subjective prong concerns whether a patentee can prove that the objectively high risk was either known by the alleged infringer, or so obvious that it should have known of the risk. Id. The objective prong is a threshold legal inquiry that must be satisfied before the subjective prong is considered. Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc., 682

F.3d 1003, 1005-07 (Fed. Cir. 2012) (even where the objective prong is predicated on underlying mixed questions of law and fact, it is nevertheless best decided by the judge because the judge is best positioned to determine which legal defenses are objectively reasonable).  Although some courts ultimately send the entire willfulness question to the jury, it is appropriate for the court to evaluate whether the objective prong is met before allowing the jury to consider the subjective prong.  See Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong.")

There is some debate over the appropriate time for a court to make the objective reasonableness determination.  The summary judgment and judgment as a matter of law (JMOL) stages are equipped with substantive and procedural safeguards that enable the Court to make a well-reasoned decision on objective reasonableness.  By contrast, a motion in limine occurs close to trial and is designed "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  Bowers v. Nat'l Collegiate Athletic Ass'n, 563 F. Supp. 2d 508, 532 (D.N.J. 2008).  A motion in limine is therefore not the "proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense."  Id.; see also

16

Kobie v. Fifthian, 2014 WL 1652421, at *2 (M.D. Fla. Apr. 23, 2014); Graves v. D.C., 850 F. Supp. 2d 6, 11 (D.D.C. 2011).  Thus, even if objective willfulness is purely a legal question, a motion in limine is not the appropriate vehicle to seek a ruling that Digital Reg's willfulness claims are unsupported as a matter of law.

The substance of Adobe's motion further demonstrates this principle.  Adobe first argues that the non-infringement and invalidity defenses contained in its summary judgment motions foreclose any finding of objective recklessness.  Adobe's MILs at 18.  The Court denied Adobe's motions for summary judgment of invalidity and non-infringement regarding a substantial portion of the patent claims asserted against Adobe, including the ones that are to be tried.  Adobe has not established that its defenses are objectively reasonable as a matter of law.

Adobe next claims that Digital Reg lacks sufficient evidence to prove the subjective prong.  Adobe again attacks the sufficiency of Digital Reg's evidence, which is inappropriate at this juncture.  Even if it were not procedurally improper, Adobe's argument lacks merit.  Digital Reg contends (and Adobe does not dispute) that Digital Reg has disclosed at least seven occasions where Adobe was made aware of the existence of the patents-in-suit or the potential infringement, starting with meetings in 2004.  See Docket No. 607, Ex. N.  Yet Adobe did not seek the advice of counsel until at least 2011.  Where the defendant "made little-to-

no effort to assess whether it infringed or whether the patent was invalid after receiving notice of the patent," a reasonable factfinder could reasonably conclude that the defendant was willful. <u>Golden Blount, Inc. v. Robert H. Peterson Co.</u>, 438 F.3d 1354, 1369 (Fed. Cir. 2006). Accordingly, both the objective and subjective prong will be sent to the jury. After the jury verdict, the Court will first consider "based on the record ultimately made in the infringement proceedings, whether a reasonable litigant could reasonably expect those defenses to succeed." <u>Bard Peripheral Vascular, Inc.</u>, 682 F.3d at 1008. If the Court determines that the asserted defenses were not reasonable, "only then can the jury's subjective willfulness finding be reviewed for substantial evidence." <u>Id.</u>

> 6.    Preclude certain infringement theories not timely disclosed in discovery

Adobe's motion is DENIED.

Adobe moves to exclude Digital Reg's joint infringement and indirect infringement theories on the premise that they were not properly disclosed during discovery. <u>See</u> Fed. R. Civ. P. 26(e) and 37(c)(1). Of course, neither side should discuss infringement theories not properly disclosed. <u>Id.</u> But Digital Reg's joint infringement and indirect infringement theories were properly disclosed in its complaint and October 28, 2011 infringement contentions. Docket No. 607, Ex. U, S. Further, the theories were discussed at length at summary judgment, showing that Adobe

United States District Court
For the Northern District of California

was aware of Digital Reg's theory that Adobe's user agreements and software direct and maintain control over users.  Any objections to Digital Reg's initial disclosure were either waived or were substantially harmless.  See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) ("Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless").

> 7.   Preclude Digital Reg's experts from offering opinions
>      not disclosed during expert discovery

Adobe's motion is GRANTED.

Adobe is correct in asserting that Digital Reg's experts cannot offer opinions not presented in their expert reports. Adobe points out that in at least some instances, Digital Reg's experts did not opine on infringement under the claim construction ultimately adopted by the Court.  For these constructions, Digital Reg may offer the disclosed opinions of its experts, but not their discussion of now-defunct claim construction proposals, and argue that the underlying opinions show infringement under the Court's claim construction.  This approach may be successful if Digital Reg can persuade the jury that the differences between its proposed claim construction and the Court's claim construction are not significant for purposes of its infringement analysis.  As for scienter and noninfringing alternatives, Digital Reg has pointed to portions of its expert's report addressing these issues, which

may be presented to the jury.  Again, neither side may offer
evidence regarding these theories that has not been disclosed.

        8.    Preclude any suggestion or argument relating to alleged
             discovery deficiencies

Adobe's motion is GRANTED.

Adobe requests that Digital Reg be precluded from arguing or
suggesting that Adobe failed to produce evidence, because it is
irrelevant and would be highly prejudicial.  Fed. R. Evid. 402,
403.  Digital Reg responds that it should be allowed to explain to
the jury why, in compiling its damages report, it relied upon
public documents such as SEC filings rather than Adobe's internal
documents.  Digital Reg may explain that internal information is
unavailable, but may not blame Adobe.  Neither may Adobe allude to
any discovery deficiencies on Digital Reg's part.

        9.    Preclude allegations of copying

Adobe's motion is DENIED.

Adobe urges the Court to prevent Digital Reg from presenting
evidence showing that Adobe copied Digital Reg's patent because
there is no evidence that Adobe did so.  Digital Reg contends that
it has evidence that the allegedly infringing products were
released and/or modified after Adobe learned of the patent, which
tends to show copying.  While the issue of copying is not relevant
to the question of whether Adobe infringed the claims of the
patent, this evidence is relevant to whether Adobe knew or should
have that it infringed, i.e., the subjective prong of the

United States District Court
For the Northern District of California

willfulness inquiry.  DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1336 (Fed. Cir. 2009).  Evidence supporting an inference of copying may also be relevant to proving induced infringement, enhanced damages, and nonobviousness.  Adobe has not shown that any of the claimed copying evidence has prejudicial effect that would substantially outweigh its probative value.

B.    Digital Reg's motions in limine

1.    Exclude evidence or testimony from prior art inventors regarding printed references

Digital Reg's motion is GRANTED in part.

Digital Reg argues that Jonathan Schull, inventor of the Softlock system and related patents, should not be allowed to testify.  Although Mr. Schull has not submitted an expert report, Adobe intends to call him to discuss the Softlock system as a prior art reference demonstrating invalidity of the '541 and '670 patents.  Because he is not a properly disclosed expert witness, he may not opine on what a hypothetical person skilled in the art would know or what is disclosed by the claims of the patent. Those opinions fall within the purview of expert testimony, which must be disclosed by a qualified expert in an expert report, subject to review and expert discovery by Digital Reg. Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1375 (Fed. Cir. 2008) (affirming district court's decision to exclude a prior art inventor who did not provide an expert report because "any

information he might have to offer beyond the words of the Cha PCT application would be irrelevant to the issue before the jury" of whether the prior art reference disclosed a certain element). However, as Adobe points out, Mr. Schull can speak to topics within his personal knowledge, such as the process of obtaining the Softlock patents, research of which he was personally aware, and the authenticity, if disputed, of documents related to the Softlock system.   His testimony as to the bounds of the Softlock system as a device is also admissible.

        2.     Exclude all prior art references and invalidity defenses not included in Adobe's designated three prior art reference combinations for each asserted claim

Digital Reg's motion is GRANTED in part.

Digital Reg contends that Adobe should not be allowed to present the prior art references included in Adobe's trial exhibits which were not chosen in Adobe's election of prior art references.   Previously, the Court required Defendants to limit their prior art references to "three references or combinations per patent claim with respect to the invalidity contentions of Defendants."   Docket No. 587-6 at 6.   On May 16, 2013, Adobe served its "Disclosure of Prior Art References and Prior Art Reference Combinations," choosing the prior art upon which it intended to rely.   See Docket No. 587-3 (Prior Art Election).

Digital Reg complains that Adobe improperly included in its trial exhibits at least forty patents, thirteen applications or publications, and forty-two articles or other related documents.

United States District Court
For the Northern District of California

Adobe argues that "background and development" of the systems, "contemporaneous articles, inventor testimony, and corroborating documents" should be allowed.  Adobe's Response to MILs at 5.  The Court agrees.  To the extent that these documents are supporting documents to explain further how the chosen prior art references disclose required limitations, they will be allowed.  But Adobe also asks to present additional documents which disclose other required limitations not covered by the chosen prior art references.  For example, Adobe argues that because "the Softlock system does not disclose local creation of a permission," Adobe's expert could include an additional document to show that one of the ordinary skill in the art would have recognized the local creation of a permission as an obvious design choice.  Id.  Adobe contends this is appropriate because the document shows "the scope of the prior art generally and the knowledge held by one of ordinary skill in the art."  Id.  But such a document, demonstrating a separate limitation is disclosed in the prior art, constitutes another prior art reference that should have been disclosed in its Prior Art Election.  There is no such exception to the Court-mandated Prior Art Election; holding otherwise would allow Adobe to completely circumvent the limits of that Election and add unlimited extra references.  This would defeat the purpose of limiting the number of prior art references that each side must review.

United States District Court
For the Northern District of California

Digital Reg additionally argues that Adobe should not be allowed to argue anticipation because that theory was not disclosed in the Prior Art Election.  Although Adobe did not claim anticipation regarding the '670 patent, it stated, "depending on the court's claim construction, Defendants reserve the right to rely on a subset of the references disclosed in combinations." Docket No. 587-3 at 2-4.  Because Adobe argues that the Court's claim construction permits Adobe to rely on the disclosed Griswold reference standing alone, rather than in conjunction with the Softlock system, Adobe may do so.  Digital Reg will not be prejudiced, because the Griswold system was properly disclosed.

3.    Exclude untimely designated witnesses or untimely produced documents

Digital Reg's motion is DENIED.

Digital Reg complains that, on March 29, 2013, the last day of fact discovery, Adobe produced 89,838 pages of documents.  Two weeks earlier, on March 12, 2013, Adobe identified seven new witnesses that it had not previously disclosed.  Digital Reg argues that, although these disclosures occurred before the cut-off of fact discovery, they were unduly prejudicial because they were timed so late as to prevent Digital Reg from properly investigating them.

This complaint should have been raised at the time the productions occurred, not now.  Digital Reg could have requested additional time to review the documents and to depose the later-

disclosed witnesses, but instead chose to wait until over a year later, when any wrong could not be remedied, to ask the Court to exclude Adobe's evidence entirely.  While neither side may use truly untimely disclosed evidence, this motion is denied.

> 4.    Exclude evidence of Plaintiff's fee arrangement with counsel

Digital Reg's motion is GRANTED.

Digital Reg requests that Adobe refrain from introducing evidence of Digital Reg's fee arrangement with counsel.  Adobe agrees not to raise the issue, so long as Digital Reg does not open the door.  Adobe must seek a ruling from the Court before doing so.  This prohibition applies to both sides.

> 5.    Preclude mention of Digital Reg's decision to drop claims and streamline litigation

Digital Reg's motion is GRANTED.

Digital Reg's decision to drop claims during litigation is not relevant to the issues to be tried.  Contrary to Adobe's assertion, Digital Reg's decision to drop claims is not probative of Adobe's state of mind with respect to its alleged willful or indirect infringement of the separate claims that remain.

> 6.    Preclude mention of Digital Reg's decision to file in Eastern District of Texas

Digital Reg's motion is GRANTED.

This fact is not relevant to the issues to be tried.  Adobe asserts that it intends to present evidence that this case was originally filed in the Eastern District of Texas to provide

"background" and to show Digital Reg is an "entity that does not compete with Adobe in the marketplace." The facts that Digital Reg is from Texas and does not compete in the product market are admissible, but that is not the subject of Digital Reg's motion. Adobe may not insinuate that Digital Reg is engaged in "forum shopping."

       7.   Preclude negative or derogatory comments about the USPTO

       Digital Reg's motion is GRANTED.

Neither party may discuss the quality of the USPTO's examination process, which is irrelevant and may be unfairly prejudicial or distracting from the relevant standard. See Applied Material, Inc. v. Advanced Semiconductor Materials Am., Inc., 1995 WL 261507, at *3 (N.D. Cal. Apr. 25, 1995) (finding irrelevant and inappropriate testimony about "overwork, quotas, awards or promotions at the Patent Office . . . or insinuat[ions] that the Patent Office does not do its job properly"). The law mandates that patents are presumed valid, but may be found invalid if proved by clear and convincing evidence. 35 U.S.C. § 282; Newell Cos., Inc. v. Kenney Mfg. Co., 864 F.2d 757, 782 (Fed. Cir. 1988). The parties have agreed to show the Federal Judicial Center's video about the process of obtaining a patent, which will give the jury the necessary background.

       8.   Exclude comparisons of the accused devices to prior art or to an alleged commercial embodiment of the invention

       Digital Reg's motion is GRANTED in part.

Digital Reg seeks to prevent Adobe from comparing the accused products to the prior art.  It would be improper for Adobe to argue that the accused product does not infringe merely because it practices the prior art.  Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1366 (Fed. Cir. 2002) (no "practicing the prior art" defense to literal infringement).  Comparisons of the prior art and the accused products for purposes of infringement are thus inapposite.  However, Adobe is correct that the same claim scope must be applied to infringement and invalidity.  See id. at 1367 (noting that if "an accused infringer is clearly practicing only that which was in the prior art, and nothing more, and the patentee's proffered construction reads on the accused device, meeting this burden of proof should not prove difficult.").  Id.  Accordingly, Adobe may argue that the same claim scope ought to be applied to the patent for infringement and invalidity.  Adobe may also analyze the similarities between the prior art and the accused products to show that Digital Reg's patents describe obvious modifications to the prior art, so long as that evidence is otherwise admissible and relevant.

Digital Reg additionally requests that Adobe be prohibited from comparing the accused product to an alleged commercial embodiment of the patented invention.  Adobe responds that it is not aware of any commercial embodiments of Digital Reg's invention.  This part of the motion is therefore denied as moot.

9.   Exclude opinions of counsel regarding non-infringement or invalidity

Digital Reg's motion is DENIED as moot.

Adobe has stipulated that it will not rely on any opinion letter regarding non-infringement or invalidity.  Docket No. 593 at 12.

10.  Exclude opinion testimony from individuals not designated as experts

Digital Reg's motion is GRANTED.

Digital Reg seeks to preclude Adobe from offering expert opinion testimony by percipient fact witnesses.  Federal Rule of Evidence 701 prohibits opinion testimony by lay witnesses if it is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Adobe does not oppose this motion, but notes that percipient witnesses may testify as to their personal knowledge.  For prior art inventors, the line between expert and fact testimony may be thin.  As discussed above, they may testify about the process of developing their invention and the context in which they invented it, but not the legal scope of their invention.

11.  Preclude suggestion that damages awards may drive up the price of products, put any manufacturers out of business, or cause jobs to be lost

Digital Reg's motion is DENIED as moot.

Adobe has stipulated that it will not suggest that a damages award would drive up product prices, put Adobe out of business, or cause jobs to be lost.  Docket No. 593 at 12.

United States District Court
For the Northern District of California

12.   Exclude personal characteristics and financial status of counsel and their firms

Digital Reg's motion is GRANTED.

Neither party will address the personal characteristics and financial status of counsel or their firms.  Such evidence would be irrelevant and unfairly prejudicial.

13.   Exclude evidence of any legal proceedings involving either party other than the present suit

Digital Reg's motion is GRANTED in part.

Digital Reg seeks to exclude mention of all other lawsuits involving either party.  Adobe wishes to present (1) Digital Reg's prior lawsuit asserting the '541 patent involving Microsoft, Sony, Apple, and others; and (2) Digital Reg's prior patent litigation lawsuits that are the subject of the settlement agreements considered by the parties' damages experts.  The '541 patent lawsuit is not relevant.  However, the patent litigation lawsuits underlying the settlement agreements provide relevant context to the settlement amounts.  Accordingly, Adobe may present evidence of those lawsuits, but not others.

14.   Exclude interpretations or application of claim limitations contrary to this Court's claims construction order

Digital Reg's motion is DENIED as moot.

The parties stipulated not to offer any evidence or argument suggesting claim constructions or applying claim limitations in a way that would be contrary to the Court's Order Regarding Claim

29

Construction and Motions for Summary Judgment.  Docket No. 593 at 12.

15.   Preclude derogatory, disparaging, and/or pejorative references to Digital Reg

Digital Reg's motion is GRANTED in part.

Digital Reg seeks to prevent Adobe from using a wide array of terms to describe Digital Reg's status.  Adobe may not use pejorative terms, such as "patent troll," "pirate," "bounty hunter," "paper patent," "playing the lawsuit lottery," and "shell corporation," which have negative connotations.  Adobe may, however, describe the nature of Digital Reg's business with neutral, strictly factual terms, such as "patent assertion entity," a "company that does not make anything," a "company that does not sell anything," or "licensing entity."  Digital Reg's status as a non-practicing entity is relevant to damages and the Georgia-Pacific factors.  A neutral description of Digital Reg's status is thus permitted.  See HTC Corp. v. Tech. Props. Ltd., 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013) (allowing terms such as "non-practicing entity," "patent assertion entity," and related terms).

16.   Preclude Dr. Wicker from testifying about source code to prove non-infringement

Digital Reg's motion is GRANTED in part.

Digital Reg asserts that Adobe's expert witness, Dr. Wicker, admitted he did not review source code to reach his conclusions of non-infringement regarding Adobe's accused products, and thus

United States District Court
For the Northern District of California

should not be allowed to discuss source code.  Adobe agrees that Dr. Wicker did not cite to source code in his affirmative report, but points out that in his rebuttal expert report, Dr. Wicker considered and cited to certain portions of Adobe's source code. Docket No. 523-15 at ¶¶ 45, 85.  Both parties' experts may testify only to the source code they actually reviewed and cited in their respective reports.

> 17.  Preclude discussion of lease on a townhome rented by, for, or behalf of Deskgate, Inc. and/or Patrick Patterson

Digital Reg's motion is GRANTED.

Digital Reg moves to exclude evidence related to a collateral controversy about a townhouse lease agreement for Deskgate, Inc. The Court fails to see the relevancy of this information, the introduction of which would spawn time-consuming satellite disputes.

> 18.  Exclude marking as an affirmative defense or limitation on damages

Digital Reg's motion is DENIED as moot.

Adobe stipulated not to assert a marking defense.  Docket No. 593 at 13.

> 19.  Exclude evidence of parallel or related patent prosecution in foreign countries of the invention disclosed in the '541 patent and '670 patent

Digital Reg's motion is GRANTED.

Adobe seeks to introduce evidence of statements made by Digital Reg when it attempted to extend its rights under the '541

patent before the European Union Patent Office.  Adobe asserts that the European Patent Office rejected Digital Reg's attempt to assert that a "token" and a "permission" are the same structure. See Docket No. 604-9.  This evidence would only be probative of claim scope, which was resolved at the claim construction stage. Allowing Adobe to present this evidence at trial would be unnecessarily confusing, cumulative, and potentially prejudicial.

20.  Exclude mention of the Court's prior rulings

Digital Reg's motion is GRANTED in part.

Digital Reg seeks to exclude as potentially prejudicial any of the Court's rulings on dispositive, evidentiary, or procedural motions, except to disclose the Court's claim construction rulings.  While Adobe is not barred from presenting pre-suit communications between the parties that mention claims no longer in the case, Adobe should not discuss the reasons why the claims are now absent.  Again, evidence of previously asserted claims that are no longer in the case is not relevant to Adobe's alleged willful and induced infringement of the separate claims that are still in the case.

At the hearing, Adobe expressed that it wished to present passages of the Court's claim construction order to rebut some of Digital Reg's infringement arguments.  This would confuse the jury; one object of claim construction is to simplify the definitions of these terms for the jury.  At the same time, Digital Reg may not present interpretations of the claim

constructions that would clearly be contrary to the reasoning of the Court's order.  If it does, the Court's construction will be explained in the jury instructions.

      21.  Exclude mention to connections to California (or lack thereof)

Digital Reg's motion is DENIED.

The parties are permitted to provide the jury with basic background facts, such as that Adobe is located in California and Digital Reg is located in Texas.  Digital Reg has not shown that this basic background information presents a risk of unfair prejudice or bias that substantially outweighs its probative value.  Fed. R. Evid. 403.  Adobe has nevertheless agreed it will not suggest that the parties' connections to California, or lack thereof, are somehow probative of the merits of the parties' dispute.

      IT IS SO ORDERED.

Dated:  8/19/2014

CLAUDIA WILKEN
United States District Judge