IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIGITAL REG OF TEXAS, LLC,

       Plaintiff,

   v.

ADOBE SYSTEMS, INC.,

       Defendant.

_____/

No. C 12-1971 CW

ORDER DENYING
ADOBE'S RENEWED
MOTION TO EXCLUDE
THE EXPERT
TESTIMONY OF MR.
PARR (Docket No.
636, 638, 639)

In this patent infringement case, the Court previously granted Defendant Adobe Systems, Inc.'s motion to exclude the expert opinion of Mr. Parr, Plaintiff Digital Reg of Texas, LLC's damages expert. See Docket No. 632 (Order on MIL's) at 1-11. The Court excluded Mr. Parr's testimony because he: (1) used unreliable industry-wide data to impute piracy savings, (2) used an improper fifty-fifty profit split to determine the royalty rate, and (3) did not apportion the royalty base. Id. The Court permitted Mr. Parr "to submit a revised damages report curing only the problems identified in this order," warning that if he relied "on any additional information on any point," and his report was again deficient, the Court would preclude him from testifying and allow only Adobe's damages expert to testify. Id. Adobe now challenges Mr. Parr's revised report. The Court DENIES Adobe's renewed motion to exclude Mr. Parr's testimony.

Adobe raises three issues with the revised report. First, Adobe contends that Mr. Parr apportioned the royalty base to thirty percent using unreliable data. Mr. Parr relied on data

United States District Court
For the Northern District of California

points from three companies: (1) Apple, which charges thirty percent of sales revenue to distribute and deliver apps to third parties via its App Store, (2) Microsoft, which charges thirty percent of sales revenue to distribute its Windows Store apps, and (3) Valve, which charges thirty percent of sales revenue to distribute and deliver electronic content for third parties via its Steam Store.  Adobe argues that these content delivery fees are distinct from Digital Reg's Digital Rights Management (DRM) software, which prevents unauthorized access to software.  While Adobe's argument may have some merit, Adobe could have raised it much earlier.  In his first report, Mr. Parr noted that Federal Circuit case law requires apportionment if the patented feature does not drive demand and, if so required, he would apportion the revenue base at thirty percent based on Apple, Microsoft, and Valve's data suggesting that thirty percent is the standard rate for game distribution in the industry.  First Parr Rep. ¶ 185-87.  Upon Adobe's original motion, the Court found the alternative analysis improper because Mr. Parr's apportionment was illusory -- although he decreased the royalty base to thirty percent of revenue, he increased the royalty rate by a proportional amount, arriving at the same final damages award.  Order on MIL's at 9.[1]

---

[1] See also First Parr Rep. ¶ 188 ("If the Court for this case requires that a subdivision of revenues be used to more narrowly define a royalty base attributed to the DRM invention, I believe the appropriate revenue base might properly be estimated as 30% . . . a conversion must be applied to equate the royalty percentage of the previous Digital Reg and Adobe agreements which contemplated a royalty based on the entire value of the accused products . . . As a result, a royalty rate of 8.33% (2.5%/.3) must be applied to the $13.23 million to arrive at the appropriate damages of $1,102,500").

In his revised report, Mr. Parr apportioned the royalty base at thirty percent pursuant to the same analysis, but did not increase the royalty rate by a proportional amount.  Revised Parr Rep. ¶ 106.  This resulted in a damages award that is thirty percent of the previous requested amount.  Following the Court's order, Mr. Parr did not insert any additional information into his analysis.  Because Adobe did not challenge the analysis underlying the thirty percent apportionment the first time around, and the Court did not rule on that basis, Digital Reg had no reason or leave amend that analysis.  Accordingly, even if it were a valid reason to exclude Mr. Parr's entire testimony, it would be unfair to do so on this undisclosed basis after the revised report has been served and trial has already begun.  Adobe may question Mr. Parr's analysis on cross-examination.

Second, Adobe takes issue with Mr. Parr's use of the same royalty base as he did in his first report.  The Court granted Adobe's separate motion in limine to exclude evidence of AMT from the case because it was not an accused product.  Adobe alleges that the royalty base still includes revenue from AMT.  Digital Reg disagrees, stating that Adobe never produced AMT financial information, which was the reason for the motion to compel which was denied by Magistrate Judge Westmore.  See Order on MIL's at 12-13.  Moreover, Digital Reg explains that it accused two technologies embedded within Adobe Acrobat Professional: LiveCycle Rights Management and Activation/AMT/ALM.  If the latter theory has been eliminated, the jury could find that Adobe Acrobat Professional infringes through incorporation of LiveCycle Rights Management, which would justify the award of damages on that

product.  Adobe raises other problems with Digital Reg's royalty base (such as the contention that they do not represent Adobe's alleged use of DRM technology) which go to the weight of the Mr. Parr's testimony and not the propriety of his methodology.

Third, Adobe attacks the credibility of Mr. Parr's methodology, which yielded the same royalty rate regardless of the inputs he used.  In his first report, Mr. Parr assumed a fifty-fifty profit split of imputed piracy savings (ten to fourteen percent) along with the application of other factors, to arrive at a 2.5% royalty rate.  At the motions in limine hearing, the Court indicated that it was inclined to exclude Mr. Parr's report, in part because of the fifty-fifty profit split and the unjustified use of industry-wide data to impute the piracy savings of Adobe. Before the Court issued its written order, Digital Reg drafted an unauthorized second report by Mr. Parr, which removed the fifty-fifty profit split analysis and relied instead on licenses by Symantec and EA that had not been introduced previously, again arriving at a 2.5% royalty rate.  See Docket No. 630.  The Court issued its order on the motions in limine, noting the existence of the second report and advising that the amounts of the EA and Symantec settlements could not be used[2] because Digital Reg did not seek leave to amend diligently.  See Order on MIL's at 10 n.6. After the Court's order, Mr. Parr then published a third report, which adopted the thirty percent apportionment of the royalty base present in his earlier report.  Regarding the royalty rate, he

---

[2] The amount of the unexercised option to license granted to DRM/SiteScape also may not be used in the damages calculation.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

removed the fifty-fifty profit analysis, instead relying upon the royalty rates of various licensing agreements: Adobe's plugin agreement and Digital Reg's agreements with Intuit, Macrovision, and RPX, an entity which bundles patent rights and licenses them to members.  Using these distinct data points, Mr. Parr again calculated a 2.5% royalty rate.  Mr. Parr's perpetual conclusion of the same 2.5% royalty rate, regardless of inputs or methodology, is troubling.  Because his prior reports call into question the accuracy of his methodology, Adobe may cross examine Mr. Parr about his prior reports for the limited purpose of impeachment.  See Fed. R. Evid. 613; Wood v. Stihl, Inc., 705 F.2d 1101, 1109 (9th Cir. 1983) (holding that district court should have allowed defendant to impeach expert witness with his prior deposition statement); Wipf v. Kowalski, 519 F.3d 380, 386 (7th Cir. 2008) ("As a general rule, there is certainly nothing problematic about asking an expert about materials he has read that relate to an issue at trial.").

Regarding the RPX Agreement, while the Court found that it was not comparable because it licensed multiple patents to over 120 members,[3] it is relevant because, if any of Digital Reg's licensees were members, it might have depressed the value of those licenses.  According to Digital Reg, the amount of the RPX Agreement was considered only to the extent that it affected

_____

[3] ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010) (the expert "must consider licenses that are commensurate with what the defendant has appropriated.  If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question.").

Intuit's royalty rate because Intuit is a member.  Mr. Parr's revised report is ambiguous on the matter.  He calculates the royalty rate of the $13.35 million RPX Agreement to be 7.85%.  Revised Parr Rep. ¶ 79.  He then states that, although the RPX Agreement demonstrates the patents have high value of over $13 million, the royalty rate is difficult to determine.  Id. ¶¶ 103-04.  The first part of Mr. Parr's revised report suggests that he considered the RPX Agreement royalty rate, while the second part shows he did not.  To be clear, Mr. Parr may not refer to the RPX Agreement for any other reason other than the fact that Intuit was an RPX member.  To do otherwise would violate the Court's order, which forbade any mention of the high dollar amounts associated with the RPX Agreement because it would "skew the jury's perception of a reasonable royalty."  Order on MIL's at 12.  To avoid confusion, the amounts paid under the RPX Agreement are hereby stricken from Mr. Parr's revised report.

In sum, Mr. Parr's revised report cures the threshold problems identified in the Court's order.  Mr. Parr will be permitted to testify.  He may testify that RPX licensed some of the patents-in-suit for an amount larger than the other licenses.  He may opine that Intuit was a member of RPX, which may have affected its royalty rate negotiations with Digital Reg.  He may not, however, mention the actual amounts or royalty rates paid under the RPX Agreement.  Mr. Parr may be questioned about his prior reports to the extent that they impeach his methodology and credibility.

Adobe's corresponding motion to seal (Docket No. 638) and Digital Reg's motion to seal Mr. Parr's revised damages report

(Docket No. 636) are GRANTED because the majority of these

documents reference confidential financial information of Adobe

and third parties.

    IT IS SO ORDERED.

Dated: 8/27/2014



CLAUDIA WILKEN
United States District Judge