**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIGITAL REG OF TEXAS, LLC,                    No. C 12-1971 CW

      Plaintiff,                             DRAFT FINAL JURY
                                              INSTRUCTIONS
    v.

ADOBE SYSTEMS INCORPORATED,

      Defendant.
═══════════════════════════════/

### DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate. These final instructions control and you should not concern yourselves with any differences between them and the preliminary instructions. You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

the sworn testimony of any witness;

the exhibits which are received into evidence; and

any facts to which the parties have agreed.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence and any facts to which the parties have agreed.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements, in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**United States District Court**
For the Northern District of California

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

### RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

### CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact, or the weight of the evidence as to a fact, does not necessarily depend on the number of witnesses who

testify about it.

In considering the testimony of any witness, you may take into account:

the opportunity and ability of the witness to see or hear or know the things testified to;

the witness's memory;

the witness's manner while testifying;

the witness's interest in the outcome of the case and any bias or prejudice;

whether other evidence contradicted the witness's testimony;

whether the witness gave different testimony on a prior occasion;

the reasonableness of the witness's testimony in light of all the evidence; and

any other factors that bear on believability.

**IMPEACHMENT EVIDENCE**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give the testimony of the witness and for no other purpose.

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

4

**United States District Court**
For the Northern District of California

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as the witness had been present to testify.

**CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature.  You may not communicate about the trial with your family members or your employer, although you may inform them that you have been seated as a juror in the case.  You may not communicate with the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.  You may communicate with your fellow jurors provided that all jurors are present for the discussion and the discussion occurs in the

jury room with the door closed.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, Digital Reg seeks money damages from Adobe for allegedly infringing the '541 patent and '670 patent by making, using, selling, and offering for sale products that Digital Reg argues are covered by its patents. The asserted claims are claims 1, 2, 4, and 13 of the '541 patent, and claims 45 and 52 of the '670 patent.  The accused products are the Adobe Flash Platform, LiveCycle, and Software Activation Services.  Digital Reg argues that Adobe infringed its patents and induced and contributed to infringement by users of these products.  Digital Reg also contends that Adobe's infringement of the '541 and '670 patents was willful.

**United States District Court**
For the Northern District of California

Adobe denies that it has infringed any of the asserted claims of the '541 and '670 patents.  Adobe argues that the asserted claims, along with claim 32 of the '670 patent, are invalid.

Your job is to decide whether the asserted claims of the '541 and '670 patents are valid and have been infringed by Adobe's accused products.

If you decide that any claim of the asserted patents is not invalid and has been infringed, then you will need to decide the money damages to be awarded to Digital Reg to compensate it for the infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.

**INTERPRETATION OF CLAIMS**

As I mentioned earlier, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the '541 and '670 patents.  Attached to these instructions is a document reflecting those meanings.  You must accept those interpretations as correct.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

**INFRINGEMENT - BURDEN OF PROOF**

To prove infringement of any claim, Digital Reg must persuade you that it is more likely than not that Adobe has infringed that claim.

**INFRINGEMENT - CLAIM REQUIREMENTS**

A patent's claims define what is covered by the patent.  You must decide whether Adobe has used within the United States a method covered by a claim of Digital Reg's patents.  If Adobe has done so, it infringes.

You must consider each of the asserted claims of the patent individually, and decide whether Adobe practices every requirement of that claim.  Claim 1 of the '541 patent, and claims 32 and 45 of the '670 patent, are known as independent claims.  Independent claims contain a number of requirements that must be satisfied to show infringement.  Claims 2, 4, and 13 of the '541 patent, and claim 52 of the '670 patent, are known as dependent claims.  A dependent claim includes all of the requirements of the independent claim to which it refers, plus additional requirements of its own.  For example, claim 2 of the '541 patent incorporates every requirement contained in "the method of claim 1," but also contains additional requirements that must be satisfied to find infringement of claim 2.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed as well.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Absent language specifying an order in which the steps must

United States District Court
For the Northern District of California

be performed, the steps need not be performed in sequential order to find infringement.  The fact that Adobe's actions also include other steps will not avoid infringement, as long as Adobe performs every requirement in the patent claim.

Whether or not Adobe knew its products infringed or even knew of the patent does not matter in determining direct infringement. In this case, Digital Reg argues that Adobe infringed its patents both directly and indirectly.

**DIRECT INFRINGEMENT**

To decide whether Adobe literally infringes a claim of Digital Reg's patents, you must compare actions by Adobe with the patent claim and determine whether every requirement of the claim was carried out by Adobe.  If so, Adobe directly infringes that claim.

Even if Adobe does not itself carry out every requirement in the patent claim, Adobe cannot escape liability for direct infringement if it directed or controlled other parties to carry out the missing requirements.  Adobe does not direct or control another parties' actions merely because Adobe entered into a business relationship with that person.  Instead, Adobe must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to Adobe as the controlling party.

**United States District Court**
For the Northern District of California

### INDIRECT INFRINGEMENT

Digital Reg also alleges that Adobe indirectly infringed and continues to indirectly infringe Digital Reg's patents.  There are two types of indirect infringement: inducing infringement and contributory infringement.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components for use in the patented invention, is called "contributory infringement."

### INDUCING INFRINGEMENT

In order for Adobe to induce infringement, one or more individuals or companies, acting alone or collectively, must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, Adobe must have:

(1) intentionally taken action that actually induced direct infringement by each individual or company;

(2) been aware of the asserted patent;

(3) known that the acts it was causing would be infringing;

(4) not had a good faith belief that the patent was invalid.

If Adobe did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth. It is not enough that Adobe was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor

10

is it enough that Adobe took a risk that was substantial and unjustified.

If you find that Adobe was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, then Adobe cannot be liable for inducing infringement.

**CONTRIBUTORY INFRINGEMENT**

Digital Reg also argues that Adobe indirectly infringed by contributing to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for Adobe to be liable for contributory infringement, someone other than Adobe must directly infringe a claim of Digital Reg's patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed Digital Reg's patents, then contributory infringement exists if:

(1) Adobe supplied an important component of the infringing part of the method;

(2) The component is not a common component suitable for non-infringing use; and **[if disputed]**

(3) Adobe supplied the component with the knowledge of the patent and knowledge that the component was especially made or adapted for use in an infringing manner;

**[If disputed]** A "common component suitable for non-infringing use" is a component that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.  In cases where the

alleged method is embodied in a larger product, you must examine whether the particular components that allegedly practice the patented method have substantial non-infringing uses, and not whether the entire product as a whole has a substantial non-infringing use.

**WILLFUL INFRINGEMENT**

In this case, Digital Reg argues that Adobe willfully infringed its patents.

To prove willful infringement, Digital Reg must first persuade you that Adobe infringed a claim of its patent.

In addition, to prove willful infringement, Digital Reg must persuade you that it is highly probable that Adobe acted with reckless disregard of the patent it infringed.  The state of mind of Adobe is relevant to this inquiry.  To demonstrate such "reckless disregard," Digital Reg must persuade you that Adobe actually knew, or it was so obvious that Adobe should have known, that its actions constituted infringement of a valid patent.

In deciding whether Adobe acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors:

(1) Whether Adobe acted in a manner consistent with the standards of commerce for its industry.

(2) Whether Adobe intentionally copied Digital Reg's patent.

(3) Whether Adobe had a reasonable basis to believe that it did not infringe or had a reasonable defense to infringement.

**United States District Court**
For the Northern District of California

**INVALIDITY - BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Adobe has proven that claims 1, 2, 4, and 13 of the '541 patent and claims 32, 45 and 52 of the '670 patent are invalid.  To prove invalidity of any patent claim, Adobe must persuade you by clear and convincing evidence that the claim is invalid.

During this case, the Adobe has submitted prior art, some of which was and some of which was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '541 and '670 patents.  Adobe contends that this prior art invalidates the claims of the '541 and '670 patents.  In deciding the issue of invalidity, you may take into account whether the prior art was considered by the PTO when it issued the '541 and '670 patents.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Adobe's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

**WRITTEN DESCRIPTION**

A patent claim is invalid if Adobe demonstrates with high probability that the patent does not contain an adequate written description of the claimed invention.  The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed.  The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have

13

recognized that the patent application described the invention as
claimed, even though the description may not use the exact words
found in the claim.  A requirement in a claim need not be
specifically disclosed in the patent application as originally
filed if a person of ordinary skill would understand that the
missing requirement is necessarily implied in the patent
application as originally filed.

Whether the specification in the '541 patent satisfies the
written description requirement is evaluated from the perspective
of one of ordinary skill in the art as of the filing date of
Digital Reg's May 15, 1998 application.  Whether the specification
in the '670 patent satisfies the written description requirement
is evaluated from the perspective of one of ordinary skill in the
art as of the filing date of Digital Reg's November 24, 1998
application.

**ANTICIPATION**

A patent claim is invalid if Adobe demonstrates that the
claimed invention is not new.  The claimed invention is not new if
the patent's requirements existed in a single device or method
that predates the claimed invention, or if all of its requirements
were described in a single previous publication or patent that
predates the claimed invention.  In patent law, these previous
devices, methods, publications or patents are called "prior art
references."  If a patent claim is not new we say it is
"anticipated" by a prior art reference.

The description in the written reference does not have to be
in the same words as the claim, but all of the requirements of the
claim must be there, either stated or necessarily implied, so that

United States District Court
For the Northern District of California

14

someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of ways that Adobe can show that a patent claim was not new:

- the claimed invention was already publicly known or publicly used by others in the United States before the date of conception;

- the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- the claimed invention was already described in another United States patent application, or published patent that was based on a patent application filed before the date of conception; or

- the claimed invention was already made by someone else in the United States before the date of conception, [if that other person had not abandoned the invention or kept it secret].

You must determine a date of conception for the claimed invention. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**OBVIOUSNESS**

Not all innovations are patentable. A patent claim is invalid if it is shown by clear and convincing evidence that the

claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions. First, you must decide the level of ordinary skill in the field that someone working in the field would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

Digital Reg contends that the level of ordinary skill in the field would require a person to have a Bachelor of Science degree in Electrical or Computer Engineering or Computer Science or equivalent work experience.  Adobe contends that the level of ordinary skill in the field would require a person to have a Bachelor of Science degree in Electrical or Computer Engineering or Computer Science and two to four years of work or research experience in the field.

Second, you must decide the scope and content of the prior art.  The parties disagree as to whether certain prior art references should be included in the prior art you use to decide

the validity of challenged patent claims.  In order to be
considered as prior art to a particular patent, these references
must be reasonably related to the claimed invention of that
patent.  A reference is reasonably related if it is in the same
field as the claimed invention or is from another field to which a
person of ordinary skill in the field would look to solve a known
problem.

Third, you must decide what differences, if any, existed
between the claimed invention and the prior art.

Finally, you should consider any of the following factors
that you find have been shown by the evidence:

(1) commercial success of a product due to the merits of the
claimed invention; **[if applicable]**

(2) a long felt need for the solution provided by the claimed
invention;

(3) unsuccessful attempts by others to find the solution
provided by the claimed invention;

(4) copying of the claimed invention by others;

(5) unexpected and superior results from the claimed
invention;

(6) acceptance by others of the claimed invention as shown by
praise from others in the field or from the licensing of the
claimed invention; and

(7) any other evidence tending to show nonobviousness;

The presence of any of these factors may be considered by you
as an indication that the claimed invention would not have been
obvious at the time the claimed invention was made.  On the other
hand, independent invention of the claimed invention by others

**United States District Court**
For the Northern District of California

before or at about the same time as the named inventor thought of it may be considered as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them is up to you.

**OBVIOUSNESS - COMBINATION OF ELEMENTS**

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently present in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether Adobe has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made when considering whether the invention would have been obvious.

**DAMAGES - BURDEN OF PROOF**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Adobe infringed any valid and asserted claim of Digital Reg's patents, you must then determine

**United States District Court**
For the Northern District of California

the amount of money damages to be awarded to Digital Reg to compensate it for the infringement.

The amount of those damages must be adequate to compensate Digital Reg for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer. Digital Reg has the burden to persuade you of the amount of its damages.  You should award only those damages that Digital Reg more likely than not suffered.  While Digital Reg is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Digital Reg is not entitled to damages that are remote or speculative.

### DAMAGES - REASONABLE ROYALTY - DEFINITION

In this case, Digital Reg seeks to recover a reasonable royalty based on Adobe's alleged infringement of the asserted claims.  Digital Reg should be awarded at least a reasonable royalty considering the use of Adobe's products to practice the asserted claims.

A royalty is a payment made to a patent holder in exchange for the right to use the claimed invention. This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the use on which Adobe is to pay.  You then need to multiply the revenue Adobe obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.

For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the revenue base would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.  By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.  These numbers are only examples and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $1000 car, the

patented feature is the tires which sell for $50, the base revenue would be $50.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.  Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product.  In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all uses. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed use.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing use.

In determining a reasonable royalty, you may consider, but are not limited to, the following factors:

(1) the royalties received by Digital Reg for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

(2) the rates paid by Adobe for the use of other patents comparable to the patents-in-suit;

(3) the nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

(4) Digital Reg's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5) the commercial relationship between Digital Reg and Adobe, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6) the effect of selling the patented specialty in promoting sales of other products of Adobe, the existing value of the invention to Digital Reg as a generator of sales of its nonpatented items, and the extent of such derivative or convoyed sales;

(7) the duration of the patent and the term of the license;

(8) the established profitability of the product made under the patents, its commercial success, and its current popularity;

(9) the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10) the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Digital Reg, and the benefits to those who have used the invention;

(11) the extent to which Adobe has made use of the invention and any evidence probative of the value of that use;

United States District Court
For the Northern District of California

(12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

(13) the portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14) the opinion and testimony of qualified experts;

(15) the amount that Digital Reg and Adobe would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee —- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

You can consider events and circumstances that occurred before and after the time of the hypothetical negotiation between Digital Reg and Adobe to determine a reasonable royalty. It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**CALCULATING DAMAGES IN CASE OF
INDUCEMENT OR CONTRIBUTORY INFRINGEMENT**

If you find that Adobe induced or contributed to infringement, rather than directly infringed, then you must make a number of additional findings before damages may be awarded.

In order to recover damages for induced infringement, Digital Reg must either prove that the methods practiced by Adobe's accused products necessarily infringe at least one of Digital Reg's patents, or prove acts of direct infringement by others that were induced by Adobe. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Digital Reg must further prove the number of direct acts of infringement of at least one of Digital Reg's patents, for example, by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.

In order to recover damages for contributory infringement, Digital Reg must either prove that the methods used by Adobe's accused products infringe at least one of Digital Reg's patents, or prove acts of direct infringement by others to which Adobe made a substantial contribution. Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Digital Reg must further prove the number of direct acts of infringement of the '541 patent and/or '670 patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.

**DUTY TO DELIBERATE**

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

When you begin your deliberations, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, or through the marshal who will be stationed outside your door, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to me.

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached a unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the Court that you are ready to return to the courtroom.

IT IS SO ORDERED.

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

GLOSSARY

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:** A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation:** A situation in which every aspect of a claimed invention is described in an earlier invention.  The claimed invention is therefore not new and is not entitled to be patented.

**Assignment:** A transfer of patent rights to another, called an "assignee," who upon transfer becomes the owner of the rights assigned.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand

27

alone and refers to one or more other claims.  A dependent claim

incorporates whatever the other referenced claim or claims say.

If an independent claim is not infringed, any dependent claims are

not infringed, either.

**Conception:** The complete mental part of the inventive act which

must be capable of proof, as by drawings, disclosure to another,

etc.

**Continuation Application:** A patent application filed during the

examination process of an earlier application which has the same

disclosure as the original application and does not include

anything which would constitute new matter if inserted in the

original application.

**Continuance-in-Part Application:** A patent application filed during

the application process of an earlier application which repeats

some or all of the earlier application and adds matter not

disclosed in the earlier application.

**Drawings:** Visual representations of the claimed invention

contained in a patent application and issued patent, which usually

include several figures illustrating various aspects of the

claimed invention.

**Elements:** The required parts of a device or the required steps of

a method.  A device or method infringes a patent if it contains

each and every requirement of a patent claim.

**Embodiment:** A product or method that contains the claimed invention.

**Examination:** Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:** Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:** Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent. To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

**United States District Court**
For the Northern District of California

**Limitation:** A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:** One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of the invention.

**Office Action:** A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Ordinary Skill in the Art:** The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.

**Patent:** A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  In addition to the Abstract summary of the invention, the patent has three parts, which are a specification, drawings and claims.  The patent

is granted after examination by the U.S. Patent and Trademark Office of a patent application, filed by the inventor, which has these parts, and this examination is called the prosecution history.

**Prosecution History:** The prosecution history is the complete written record of the proceedings in the U.S. Patent and Trademark Office from the initial application to the issued patent.  The prosecution history includes the office actions taken by the U.S. Patent and Trademark Office and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:** A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

INTERPRETATION OF CERTAIN CLAIM TERMS OF THE '541 AND '670 PATENTS

**"Token"**: A file indicating whether the transaction has been approved and access should be granted.  A token does not simply indicate that access should be granted, but also contains a yes/no indicator exhibiting either approval or rejection of the transaction.

**"An authorization procedure":** A process which approves or rejects a payment transaction or use information to determine whether access should be granted.

**"Based on a result of the attempted transmission"**: Based on whether or not notification information was sent.

**"Selectively grants/denies access to the electronic content":** Granting or denying access to the select parts or operations of the electronic content.

**"Recipient"**: A user that receives the electronic content.

**"Successive recipient"**: A user that receives electronic content from a previous recipient.

32