EDWARD R. REINES (SBN 135960)
edward.reines@weil.com
SONAL N. MEHTA (SBN 222086)
sonal.mehta@weil.com
BYRON C. BEEBE (SBN 235179)
byron.beebe@weil.com
ANANT N. PRADHAN (SBN 287227)
anant.pradhan@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:  650-802-3000
Facsimile:  650-802-3100

Attorneys for Defendant
ADOBE SYSTEMS INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DIGITAL REG OF TEXAS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ADOBE SYSTEMS INCORPORATED, et al.,<br><br>Defendants. | Civil Case No. 12-CV-01971 CW (KAW)<br><br>**ADOBE SYSTEMS INC'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>**Honorable Claudia Wilken** |

**ADOBE'S JMOL**

# TABLE OF CONTENTS

**Pages**

I.    INTRODUCTION.................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 1

III.  DIGITAL REG HAS NOT MET IT'S BURDEN OF PROVING DIRECT
INFRINGEMENT OF THE PATENTS-IN-SUIT.............................................. 2

    A.    Digital Reg Has Failed To Prove Direct or Literal Infringement of the '541
Patent............................................................................................................... 2

        1.    There Is No Evidence That Adobe Or Its Products Practice The
Steps Of The Asserted Claims Of The '541 Patent........................................ 2

        2.    There Is No Evidence That The Accused Products Contain The
Claimed Token .......................................................................... 2

        3.    There is No Evidence That The Accused Products Generate At The
Client A Permission That Is Locked Uniquely To The Client...................... 3

        4.    The Accused Products Do Not Generate The Required Permission ............. 5

    B.    Digital Reg Has Failed To Prove Direct Infringement Of The '670 Patent............. 5

        1.    There Is No Evidence That Adobe Practices Every Step Of The
Asserted Claims Of The '670 Patent................................................. 5

        2.    There Is No Evidence That The Accused Products Deny Access
Until Notification Information Has Been Successfully Transmitted ............ 5

        3.    There Is No Evidence That The Accused Products Satisfy The
Successive Recipient Requirement ................................................. 6

        4.    Adobe Does Not Create The File Required By Claim 45 ............................ 7

    C.    Digital Reg Has Failed To Introduce Evidence Sufficient To Prove  Joint
Infringement Of The Patents-in-Suit....................................................... 8

IV.  DIGITAL REG HAS NOT MET IT'S BURDEN OF PROVING INDIRECT
INFRINGEMENT OF THE PATENTS-IN-SUIT.............................................. 8

    A.    There Is No Evidence Of Underlying Direct Infringement........................................ 8

    B.    Digital Reg Has Not Offered Sufficient Evidence Of Pre-Suit Knowledge
That Its Conduct Was Infringing............................................................ 9

    C.    Digital Reg Has Not Offered Sufficient Evidence Of A Specific Intent To
Cause Infringement ................................................................. 10

V.    CLAIMS 1, 2, 4, AND 13 OF THE '541 PATENT ARE INVALID AS A
MATTER OF LAW ............................................................................. 10

VI.  CLAIMS 32, 45, AND 52 OF THE '670 PATENT ARE INVALID AS A
MATTER OF LAW ............................................................................. 11

VII. DIGITAL REG'S DAMAGES CASE FAILS TOTALLY................................................. 12

**ADOBE'S JMOL**           i

## TABLE OF CONTENTS
(continued)

**Pages**

A.   Digital Reg Has Offered No Competent Evidence That The Parties Would
Agree To A Running Royalty ................................................................................ 12

B.   Digital Reg Failed to Provide Substantial Evidence To Support Its Proposed
2.5% Royalty Rate .................................................................................................. 13

C.   Digital Reg's Damages Failed to Provide Substantial Evidence Of
Infringement And Actual Use For Each Product Included In Its Damages
Base ........................................................................................................................ 14

D.   Digital Reg Failed to Provide Substantial Evidence That  30% Of Adobe's
Accused Revenue Is A Proper Allocation .............................................................. 16

VIII.   DIGITAL REG HAS NOT PROVEN WILLFULNESS AS A MATTER OF LAW ........ 17

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................................. 2

*Aristocrat Techs. Aust. PTY Ltd. v. Int'l Game Tech.*,
    709 F.3d 1348 (Fed. Cir. 2013) ......................................................................................... 8

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
    576 F.3d 1348 (Fed. Cir. 2009) ....................................................................................... 15

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) ......................................................................................... 8

*Commil USA, LLC v. Cisco Sys., Inc.*,
    720 F.3d 1361 (Fed. Cir. 2013) ....................................................................................... 10

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579 (1993) ......................................................................................................... 12

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) (en banc) ...................................................................... 10

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ......................................................................................................... 12

*Global-Tech Appliances, Inc. v. SEB SA*,
    131 S. Ct. 2060 (2011) ...................................................................................................... 9

*i4i v. Microsoft*,
    598 F.3d 831 (Fed. Cir. 2010) ......................................................................................... 14

*Integra Lifesciences I, Ltd v. Merck KGaA*,
    331 F.3d 860 (Fed. Cir. 2003), vacated on other grounds, 545 U.S. 193 (2005) ................... 13

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ......................................................................................................... 12

*Lakeside-Scott v. Multnomah Cty.*,
    556 F.3d 797 (9th Cir. 2009) ............................................................................................. 1

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. ___ (2014) .......................................................................................................... 8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................................. 15, 16

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Mirror Worlds, LLC v. Apple, Inc.*,
  784 F.Supp.2d 703 (E.D. Tex. 2011) ....................................................... 14

*Nomos Corp. v. Brainlab USA, Inc.*,
  357 F.3d 1364 (Fed. Cir. 2004) ................................................................. 2

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ............................................................... 17

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................. 14

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ............................................................... 17

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011) ................................................................. 2

*Summit Tech, Inc. v. Nidek Co.*,
  363 F.3d 1219 (Fed. Cir. 2004) ................................................................. 1

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
  2012 WL 4483158 (N.D. Cal Sept. 27, 2012) ........................................... 2

**Statutes**

35 U.S.C. §§ 102 and 103 ............................................................................ 1

35 U.S.C. § 271 ........................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 50(a) ................................................................................... 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 4, 2014, at 8:30 a.m., before the Honorable Claudia Wilken, Adobe Systems Inc. ("Adobe") shall and hereby does move the court for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on the matters set forth below.  This motion is based on the memorandum of points and authorities below, the trial record, all pleadings and papers on file in this action, such matters as are subject to judicial notice, and all other matters or arguments that may be presented in connection with this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rule of Civil Procedure 50(a), Adobe hereby moves the Court for entry of judgment as a matter of law on the claims and issues set forth below, including but not limited to Adobe's claim for patent non-infringement under 35 U.S.C. § 271, invalidity under 35 U.S.C. §§ 102 and 103, and damages.

## I.    INTRODUCTION

Digital Reg asserts that Adobe infringes claims 1, 2, 4, and 13 of U.S. Patent No. 6,389,541 (the "'541 Patent") and claims 45 and 52 of United States Patent No. 6,751,670 (the "'670 Patent") (together, "Patents-in-Suit").   Digital Reg accuses Adobe's Flash Platform, LiveCycle and Software Activation services, in combination with other Adobe Products ("Accused Products") of infringing the '541 patent.  Only LiveCycle and Software Activation are accused of infringing the '670 patent.  Trial began on August 25, 2014, and both parties have rested their cases in chief.

## II.    LEGAL STANDARD

The "grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie."  *Summit Tech, Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004).  Judgment as a matter of law is required where a party fails to present a legally sufficient basis for a reasonable jury to rule in its favor.  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009); *see also* Fed. R. Civ. P. 50(a).  To avoid judgment as a matter of law, the non-moving party must set forth "substantial evidence" on each claim or issue, meaning "relevant

1   evidence that a reasonable mind would accept as adequate to support a conclusion." *Synthes USA,*

2   *LLC v. Spinal Kinetics, Inc.*, 2012 WL 4483158, 1 (N.D. Cal Sept. 27, 2012). The "mere

3   existence of a scintilla of evidence" is insufficient to present a question for the jury. *Anderson v.*

4   *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

5   **III.    DIGITAL REG HAS NOT MET IT'S BURDEN OF PROVING DIRECT
        INFRINGEMENT OF THE PATENTS-IN-SUIT**

6

7   **A.    Digital Reg Has Failed To Prove Direct or Literal Infringement of the '541
        Patent**

8       To prove patent infringement, Digital Reg must show that, in use, each of the Accused

9   Adobe Products meets "each and every" limitation of the asserted claims. *Star Scientific, Inc. v.*

10  *R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011). "[F]ailure to meet a single

11  limitation is sufficient to negate infringement of the claim." *Nomos Corp. v. Brainlab USA, Inc.*,

12  357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004) (citation omitted). Digital Reg has not carried its burden

13  to show that Adobe practices every step of any asserted claim. Indeed, Digital Reg has conceded

14  that it no longer alleges that the use of any Accused Product directly infringes the '541 Patent.

15  Trial Tr. at 780:21-25. Adobe is therefore entitled to a judgment as a matter of law that it has not

16  infringed the '541 Patent.

17              **1.    There Is No Evidence That Adobe Or Its Products Practice The Steps
                    Of The Asserted Claims Of The '541 Patent.**

18

19      Digital Reg's infringement expert, Dr. Devanbu, conceded that, for each of the Accused

20  Products, Adobe does not practice each and every step of the asserted claims of '541 Patent. Trial

21  Tr. at 650:22-24 (Activation); 651:21-652:3 (LiveCycle); 652:10-12 (Flash). And Digital Reg has

22  conceded there is no direct infringement of the '541 patent by agreeing to withdraw that issue

23  from what is presented to the jury. Trial Tr. 780:21-25. There is a wholesale failure of proof on

24  each element for each Adobe product, as demonstrated by the record. The below sections

25  highlight key failures. No reasonable jury could find for Digital Reg.

26              **2.    There Is No Evidence That The Accused Products Contain The
                    Claimed Token**

27      Digital Reg has offered no evidence that any Accused Product includes a file indicating

28  whether a transaction has been approved and access should be granted or a yes/no indication

**ADOBE'S JMOL**                                  2

whether access should be granted, as required by the Court's construction.  Trial Tr. 590:9-16 (curative instruction).  Digital Reg's expert testified that a yes/no indication was not part of the Court's construction, Trial Tr. 493:20-22; 518:1-2, and also said he did not apply this requirement at all.  Trial Tr. 518:22-24.  In contrast, Adobe's expert has confirmed that no token exists in the Accused Products.  Trial Tr.723:24-724:2 (Flash); 725:21-24 (Activation); 730:1-8 (LiveCycle); 832:17-833:3.  While the accused token may implicitly indicate that access was previously granted, Dr. Wicker made clear that this implicit indication is not a yes/no indication, which is expressly required by the Court's construction.  Trial Tr. 763:6-9.  More broadly, there is no competent evidence that the claimed token exists at all, such as evidence of a file indicating whether a transaction has been approved and access should be granted.   No reasonable jury could find for Digital Reg.

### 3.  There is No Evidence That The Accused Products Generate At The Client A Permission That Is Locked Uniquely To The Client

Digital Reg's expert conceded that the Adobe products generate a permission at the central server (Trial Tr. 663:3-7 (Flash); 665:9-25 (admitting no analysis for Activation); 666:7-11 (LiveCycle)), but argued that the permissions are purportedly "regenerated" at the client when the permissions are decrypted. Trial Tr. 666:22-667:2 (Flash); 669:6-12 (LiveCycle); 670:23-671:4 (Activation).  Digital Reg's expert, however, further admitted that the permissions are locked to the client computer at the server by encrypting the permissions using a machine ID.  Trial Tr. 663:3-7 (Flash); 666:7-11 (LiveCycle); 665:13-18 (no analysis for Activation).

There is no substantial evidence by which a jury could find that Adobe's products practice this limitation in any way.  Digital Reg's expert provided no evidence that the "regenerated" permission is locked to the client.  Digital Reg's expert argued instead that what locks the permission to the client is the encryption itself.   Trial Tr. 548:2-7; 626:5-10; 695:21-24 (Activation process is unknown).  When that encryption is removed, during Digital Reg's purported creating step, the permission is no longer locked to the client machine.  Digital Reg's expert conceded that if a permission is not encrypted, it can be transferred to another machine and

1   would operate to provide access to the electronic content – *i.e.,* the permission would not be

2   locked uniquely to a client machine. Trial Tr. 627:11-19; 669:10-12.

3           With respect to Activation, Digital Reg's expert admitted that he did not know where the

4   permission is locked.  Trial Tr. 665:9-25 (admitting no analysis for Activation). Put differently,

5   Digital Reg's expert did not know whether the "regenerated" permission is locked, or whether the

6   permission initially generated at the server is locked.

7           Digital Reg's expert was forced to admit that the purportedly "regenerated" permission "is

8   the same key that existed at the server before encryption."  Trial Tr. 699:11-17.  Digital Reg's

9   expert testified that the Court construed "generate" to mean "that there's some information

10  received from the server.   And that information is processed at the client to generate a

11  permission."  Trial Tr. 519:7-12.  This is not the Court's construction.   The parties' agreed

12  construction requires "running an installation program that creates a permission locally, which

13  permission is (1) locked uniquely to the client and (2) capable of being found locally by a later

14  execution of the access checking process."  Dkt. No. 574 at 34.  Digital Reg's expert provided no

15  evidence that any of the Adobe products run an installation program that then creates a permission

16  locally that is locked uniquely to the client.   Digital Reg's expert conceded that the local

17  permission is the same permission generated at the server and is not newly created. Trial Tr.

18  699:11-17.

19          The alleged permission in LiveCycle is not locked to the client machine, but is instead

20  locked to the user.  Trial Tr. 900:22-901:10.  Digital Reg's expert confirmed.  Trial Tr. 596:19-

21  597:7 (". . . The principal key is the key associated with the user."); 547:6-12; 548:4-7.  Likewise,

22  in Flash, Digital Reg concedes the alleged permission may be locked to a domain, not a client.

23  Trial Tr. 663:12-13.  And in Activation, machine name tracking can be turned off.  Trial Tr.

24  714:25-715:2. No reasonable jury can find that the Accused Products create a permission that is

25  uniquely locked to the client because Digital Reg failed to present evidence to meet this

26  requirement in any meaningful way.   665:9-25 (admitting no analysis for Activation).

27

28

**ADOBE'S JMOL**                                          4

1

### 4.     The Accused Products Do Not Generate The Required Permission

2       Claim 1 of the '541 patent requires the creation of a permission which is capable of being

3   found locally by a later execution of the access checking process.  Dkt. No. 574 at 34.  Dr.

4   Devanbu accused the key contained in a LiveCycle voucher of satisfying this requirement of the

5   claim.  Trial Tr. 595:2-3.  But Dr. Devanbu admits, and the evidence uniformly shows, that the

6   key passed in a LiveCycle voucher is not saved locally – it is discarded after use.  Trial Tr.

7   698:20-23 (". . . You actually discard the document key, right?  A. Correct."); 900:2-21 ("Just to

8   be clear, after the document's closed is the key that was used to open that document stored

9   locally?  A. No, it is not.").  Digital Reg has failed to establish that the claimed permission is

10  present in LiveCycle or any of the accused products.

11      ### B.     Digital Reg Has Failed To Prove Direct Infringement Of The '670 Patent

12      Digital Reg has not carried its burden to show that Adobe meets the elements of any

13  asserted claim of the '670 Patent.    There is a wholesale failure of proof.  The below sections

14  highlight key failures.

15      ### 1.     There Is No Evidence That Adobe Practices Every Step Of The Asserted Claims Of The '670 Patent

16

17      Digital Reg's infringement expert, Dr. Devanbu, conceded that his direct infringement

    theory for the '670 patent applied only to Activation, and only when "the License Manager is

18  operated by Adobe."  Trial Tr. 687:18-688:3.

19      With regard to LiveCycle, Digital Reg argued only that operators of LiveCycle Rights

20  Management Systems allegedly infringes.  Trial Tr. 612:17-21.  Yet, Digital Reg did not introduce

21  any evidence showing that any operator of LiveCycle uses the Accused Product in an infringing

22  manner. Thus, there is no evidence that anyone directly infringes the '670 patent by using

23  LiveCycle.  No reasonable jury could find for Digital Reg.

24      ### 2.     There Is No Evidence That The Accused Products Deny Access Until Notification Information Has Been Successfully Transmitted

25

26      Claim 45 of the '670 patent requires that executable instructions deny access to electronic

27  content until notification information has been successfully transmitted.  TE 3.  The Court has held

28  that the '670 patent is "limited to an invention that grants access immediately upon the attempt to

1  transmit the notification, without waiting for a response from the server."  Dkt. No. 574 at 13.
2  Digital Reg has conceded that both of the Accused Products (LiveCycle and Activation) will
3  continue to deny access even after a successful transmission – only granting access once a
4  response is received from a central server.  Trial Tr. 678:1-679:20.  With respect to Activation,
5  Digital Reg also conceded that access is not initially denied until a successful transmission occurs.
6  Trial Tr. 679:21-680:6.  This is because the products include a Try-and-buy feature, where access
7  is not initially denied.  Digital Reg offered no opinion on how often a user would allow their free
8  period of access to lapse such that access would ever be denied.  Trial Tr. 680:7-681:11.  There is
9  thus no basis upon which a reasonable jury could find this requirement met.

### 3.   There Is No Evidence That The Accused Products Satisfy The Successive Recipient Requirement

12  Claim 45 of the '670 patent requires receiving notification information from a successive
13  recipient.  TE 3.  The Court has construed "successive recipient" to be a "user that receives
14  electronic content from a previous recipient."  Dkt. No. 574 at 18.  A "recipient" is defined by the
15  Court as "a user that receives the electronic content."  Dkt. No. 574 at 16.  Thus, to demonstrate
16  infringement, Digital Reg must show that a file was created, sent to a user, and then that the
17  recipient sent the file to a successive user.  Digital Reg has failed to introduce any evidence either
18  that this type of serial file passing has occurred or how frequently it may occur.

19  At trial, Digital Reg's expert applied a different construction, saying a "successive
20  recipient is somebody who receives the content from another user."  Trial Tr. 521:8-10; 611:17-
21  19.  This improperly broadened the scope of the claim because a user is not necessarily a recipient,
22  which is required by the Court's construction.  The first user in Dr. Devanbu's analysis may be the
23  document's creator, and thus not a recipient at all.  Digital Reg has thus failed to offer evidence
24  upon which a reasonably jury could determine that any user of LiveCycle has received notification
25  information from a successive recipient as construed by the Court.

26  With respect to Activation, Digital Reg argues the successive recipient requirement is met
27  because "even if one person were to take the software and transmit that software to another
28  person" the activation process would occur.  Trial Tr. 527:24-528:2.  However, Dr. Devanbu

---

**ADOBE'S JMOL**                              6

1    disclaimed any knowledge of such a transfer occurring after installation of the underlying software

2    and went so far as to say he would not accuse anyone of pirating software in that way.  Trial Tr.

3    677:2-9.  Finally, Dr. Devanbu admitted that there is no DRM protection on the installer file itself

4    – precluding that file from ever transmitting notification information.  Trial Tr. 674:5-9.  No other

5    evidence on this issue was introduced at trial.  Accordingly, no reasonable jury could find for

6    Digital Reg.

7            With respect to LiveCycle, Dr. Devanbu argued only that the LiveCycle Rights

8    Management system protects documents that are passed from one person to another.  Trial Tr.

9    611:22-612:12.  He offered no specific examples of one recipient passing the document to a

10   successive recipient.  Such a transfer is not required by LiveCycle at all.  In fact, the testimony he

11   discusses describes only one transfer of the document – not the two necessary for a successive

12   recipient.  Digital Reg has failed to present evidence sufficient to support a jury verdict on this

13   issue.

14                    **4.        Adobe Does Not Create The File Required By Claim 45**

15           Claim 45 requires the creation of a file that "includes" both "electronic content" and

16   "executable instructions" that cause access to be denied until notification information is

17   successfully transmitted.  TE 3.  The claim further requires "transmitting the file to at least one

18   address."  *Id.*

19           With respect to Activation, Digital Reg accuses the installer file of being the required file.

20   Trial Tr. 673:19-674:4.  But its own expert has admitted that the "installer file doesn't actually

21   have any DRM on it at all," and thus cannot include the necessary executable instructions.  Trial

22   Tr. 674:5-9.  Moreover, Dr. Devanbu admitted that he does not know whether the installer file

23   includes the electronic content or instead includes application instructions that would subsequently

24   get the content.  Trial Tr. 674:10-15.  ("Installer files' content are not known.  It could be

25   anything.").  No reasonable jury could find for Digital Reg on these facts.

26           With respect to LiveCycle, Digital Reg identifies the protected LiveCycle document as the

27   accused "file."  Trial Tr. 609:3-11.  This file does not contain executable instructions for collecting

28   notification information.  Instead, Digital Reg's expert points to code within Acrobat Reader, not

---

**ADOBE'S JMOL**                                 7

1    within the protected document, to serve this purpose.  Trial Tr. 610:12-611:13; 612:9-12.  Because

2    the accused file, the LiveCycle document, does not contain both the content and the executable

3    instructions no reasonable jury could find for Digital Reg.

      **C.**      **Digital Reg Has Failed To Introduce Evidence Sufficient To Prove  Joint**
4                          **Infringement Of The Patents-in-Suit**

5          Digital Reg failed to present a sufficient evidentiary basis for any reasonable jury to find

6    that Adobe jointly infringes the asserted claims of the Patent-in-Suit.   To the contrary, Dr.

7    Devanbu conceded that he was not offering an opinion "on multiple parties working together to

8    infringe" the asserted patents.  Trial Tr. 653:9-24.  Dr. Devanbu confirmed repeatedly there was

9    no claim of joint infringement.  Trial Tr. at 653:9-24.  And, although Dr. Devanbu noted that there

10   are multiple different actors that perform the steps of claim 45 of the '670 patent, Trial Tr. 672:6-

11   10, Digital Reg has not offered any evidence that there is any relationship greater than

12   customer/seller between any of the different actors as required for joint infringement. *Aristocrat*

13   *Techs. Aust. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1363 (Fed. Cir. 2013); *see also*

14   *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011).

15   Digital Reg has not offered any evidence of an agency relationship, or any other relationship,

16   between any individuals or entities.

**IV.**    **DIGITAL REG HAS NOT MET IT'S BURDEN OF PROVING INDIRECT**
17         **INFRINGEMENT OF THE PATENTS-IN-SUIT**
18

19         **A.**      **There Is No Evidence Of Underlying Direct Infringement**

20         Adobe is entitled to judgment as a matter of law on Digital Reg's indirect infringement

21   claims because there is no evidence upon which a reasonable jury could find instances of

22   underlying direct infringement.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. ___ at

23   *7 (2014) ("Similarly, in this case, performance of all the claimed steps cannot be attributed to a

24   single person, so direct infringement never occurred. Limelight cannot be liable for inducing

25   infringement that never came to pass.").  For each of the products discussed at trial, Digital Reg's

26   own expert has conceded that configurations exist which do not infringe.  Tr. Tx. 661:4-15; 663:8-

27   19 (Flash); 684:20-685:10 (LiveCycle); 680:1-23 (Activation).  Digital Reg bears the burden to

28   prove not just that Adobe's products have been used but that they have been used in the manner

1   required by the claims.  Digital Reg has provided no evidence that any Adobe customer has used

2   the accused products in an infringing manner.  The undisputed testimony shows that all the

3   accused products can be configured by Adobe's customers in multiple non-infringing ways.  Trial

4   Tr.  723:16-724:10  (Flash);  727:10-24  (LiveCycle);  714:15-715:5;  745:7-17  (Activation).

5   Accordingly, the evidence is not sufficient for a reasonable jury to find for Digital Reg.

6       To wit, for LiveCycle, accused under both the '541 and '670 patents, Digital Reg

7   introduced no evidence describing how any customer has implemented a Rights Management

8   system in an infringing manner.  Digital Reg also failed to introduce any evidence that Activation

9   was ever configured or operated by an Adobe customer in an infringing manner.  With respect to

10  the Flash Platform, accused only under the '541 patent, Digital Reg introduced only circumstantial

11  evidence that Vudu utilizes the Flash Platform to check for a local license before requesting one

12  from a remote server.  JJ038 40:19-21.  However, no evidence was introduced showing whether or

13  not Vudu configures their proprietary product in an allegedly infringing manner.  For example,

14  there was no discussion whether or not Vudu utilizes domain locking or pre-delivered licenses,

15  both of which are admitted to be non-infringing uses of Flash Access.  *Id.*

16      Finally, there can be no underlying direct infringement for all the reasons discussed

17  regarding Digital Reg's failure to show the products discussed can actually infringe the asserted

18  method claims.

19      **B.      Digital Reg Has Not Offered Sufficient Evidence Of Pre-Suit Knowledge That
              Its Conduct Was Infringing**

20

21      Inducement requires a showing that the alleged infringer either knows that their conduct

22  causes infringement of a patent or is willfully blind – a standard surpassing recklessness and

    negligence – to that fact.  *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068, 2070

23  (2011).  Digital Reg has not met its burden of establishing that Adobe had knowledge that its

24  conduct causes infringement of either of the Patents-in-Suit or that it was willfully blind to that

25  fact.  For example, no Digital Reg's witnesses alleged that they ever told Adobe it could be

26  infringing the asserted patents before filing this case.  Trial Tr. 463:25-464:9.

27

28

---

**ADOBE'S JMOL**                                        9

### C.   Digital Reg Has Not Offered Sufficient Evidence Of A Specific Intent To Cause Infringement

Digital Reg show has not shown that Adobe acted with the specific intent to cause infringement.   Mere "knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven."   *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).   Digital Reg has failed to offer sufficient evidence that Adobe specifically intended to cause the harm of patent infringement. Adobe has presented evidence that development and productization of the LiveCycle product occurred before any of the asserted patents issued.   Trial Tr. 870:15-871:23.   Adobe has shown that Activation was discontinued in 2006, after only two and a half months on the market – well before infringement was alleged.   Trial Tr. 712:17-20.   Even if evidence had been offered, Adobe's good-faith belief that it does not infringe the Patents-in-Suit, including through presentation at trial of legitimate arguments of non-infringement, and its good-faith belief the patents are invalid, "negates the specific intent to encourage another's infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013).[1]

## V.   CLAIMS 1, 2, 4, AND 13 OF THE '541 PATENT ARE INVALID AS A MATTER OF LAW

There is no dispute that U.S. Patent No. 5,509,070 is prior art for the '541 patent.   As set forth in TE 418, and in the testimony of Professor Schull and Dr. Wicker, Adobe proved that U.S. Patent No. 5,509,070 renders obvious claims 1, 2, 4, and 13 of the '541 patent.   *See also* Attachment A.   The only disagreement raised by Digital Reg's expert is whether the prior art 070 patent discloses a separate token and permission.   9/3/14 Rough 157:7-15.   Dr. Wicker explained that the '070 patent discloses a token in the form of an encrypted password.   9/3/14 Rough Trial Tr. 53:1-9. Dr. Wicker explained that this token is decrypted to generate a permission.   9/3/14 Rough Trial Tr. 53:10-13. Moreover, Dr. Wicker opined that these elements were obvious to one of ordinary skill in the art.   9/3/14 Rough Trial Tr. 54:16-18.   Dr. Wicker explained that the '070 patent shows that sending a token and generating a permission at the client was within the level of

---

[1] Digital Reg abandoned its contributory infringement theory, but the above arguments apply to that theory too.

ordinary skill in the art and would be nothing more than a design choice with no effect on performance. 9/3/14 Rough Trial Tr. 58:16-19; 61:8-16. Dr. Keller offered no opinion on this issue and there is no dispute that one of ordinary skill in the art could modify the '070 patent to satisfy the claims. Likewise, Dr. Wicker explained that there were no secondary indicia of non-obviousness. 9/3/14 Rough Trial Tr. 85:15-88:25. Again, Dr. Keller offered no opinion on this subject and there was no such meaningful evidence in the record. Under these facts, no reasonable jury could find for Digital Reg.

## VI.   CLAIMS 32, 45, AND 52 OF THE '670 PATENT ARE INVALID AS A MATTER OF LAW

There is no dispute that U.S. Patent No. 5,509,070 is prior art for the '670 patent. As set forth in TE 418, and in the testimony of Professor Schull and Dr. Wicker, Adobe proved that U.S. Patent No. 5,509,070 anticipates claims 32, 45, and 52 of the '670 patent. *See also* Attachment B. Dr. Keller did not offer sufficient evidence to rebut Dr. Wicker's showing of anticipation. 9/3/14 Rough Trial Tr. 144:7-10 ("We are only talking about Dr. Wicker's invalidity contentions involving contentions involving SoftLock, if you will, of Schull and Griswold").

There is no dispute that U.S. Patent Number 5,940,504 to Griswold is also prior art for the '670 patent. As set forth in TE 418, and as described further by Professor Schull and Dr. Wicker, U.S. Patent No. 5,509,070 in combination with Griswold, as set forth in TE 421, renders obvious claims 32, 45, and 52 of the '670 patent. *See also* Attachment C. Only two disputes were raised, whether notification information is transmitted and whether access is denied until that transmission occurs. Dr. Keller offered no opinion sufficient to rebut Dr. Wicker's showing on these elements and offered opinions contrary to the Court's claim construction order. Dr. Wicker explained that one of ordinary skill in the art would be motivated to combine the '070 patent and the '504 patent based on similarities between the art. 9/3/14 Rough Trial Tr. 72:21-73:24. Dr. Keller offered no competing opinion. Likewise, Dr. Wicker explained that there were no secondary indicia of non-obviousness. 9/3/14 Rough Trial Tr. 85:15-88:25. Again, Dr. Keller offered no opinion on this subject. Under these facts, no reasonable jury could find for Digital Reg.

## VII. DIGITAL REG'S DAMAGES CASE FAILS TOTALLY

Digital Reg has failed to offer competent evidence to support its improper damages claim.[2] The evidence at trial falls so far short that this failure permeates the record. An expert's testimony must be excluded by the District Court if there is an "analytical gap" or lack of "fit" between the expert's conclusion and the facts of the case. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). For example, during trial, Mr. Parr stated that he performed a *Georgia-Pacific* analysis to determine that the parties would agree to: 1) a running royalty; 2) of 2.5%; 3) applied to a damages base without considering infringement or actual use, and; 4) apportioned based on an alleged industry standard. Trial Tr. at 972:11-973:12. Digital Reg failed to introduce evidence or law sufficient to support any of these contentions, and as such Mr. Parr's opinion is unreliable and should be rejected. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Because Digital Reg has proffered no alternative, it has failed to meet its burden on damages.

### A. Digital Reg Has Offered No Competent Evidence That The Parties Would Agree To A Running Royalty

Digital Reg's Corporate Representative, Mr. Farley, made clear that although he would have tried to obtain a running royalty, "I doubt we would have gotten it." Trial Tr. at 324:9-15. In fact, Mr. Farley argued that "normally you don't get a running royalty, at least from what I've experienced to date." Trial Tr. at 323:21-25. This testimony finds substantial support in the record given that not one of the license agreements Digital Reg has entered to date has a running royalty. Trial Tr. at 324:1-3; 1009:16-22. Additionally, Mr. Parr had not conducted any analysis as to the parties' preferences one way or the other. Trial Tr. 1010:22-1011:5. Yet, he suggested that because Adobe as a licensor sought a running royalty for a software plug-in from potential licensees, it would be willing to enter a running royalty. Trial Tr. 336:1-5. This does not support that Adobe, as a licensee, however, would be willing to enter a running royalty. Because Digital

---

[2] Adobe has addressed the inadequacy of Digital Reg's damages theory and evidence repeatedly including in the motions in limine and its motions to exclude Mr. Parr's testimony. Those positions are incorporated by reference for efficiency.

Reg has failed to offer any evidence that the parties would agree to a running royalty, and its only theory of damages is a running royalty, Digital Reg cannot meet its burden on damages.

### B.   Digital Reg Failed to Provide Substantial Evidence To Support Its Proposed 2.5% Royalty Rate.

Digital Reg has not offered any evidence except the unreliable testimony of Mr. Parr to support a royalty rate of 2.5% for Adobe's alleged use of the Patents-in-Suit.  Mr. Parr's royalty rate is unsupported by the evidence.

First, Mr. Parr's analysis of the relevant licenses in general was such that his opinion is legally defective.  For example, he entirely ignored seven of nine lump sum settlement agreements, which would considerably reduce the value of the hypothetical license, for no reason other than he claims he did not have accused revenues for these agreements. Trial Tr. 936:13-23. This approach should be rejected.  *See Integra Lifesciences I, Ltd v. Merck  KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), vacated on other grounds, 545 U.S. 193 (2005) (reversing JMOL on reasonably royalty because the royalty "does not appear to take into account numerous factors that would considerably reduce the value of the hypothetical license.").  These license agreements not only support that the parties would not have entered a running royalty, but that any reasonably royalty would have been necessarily small.  TE 695.

Instead, Mr. Parr relied on two license agreements to suggest that the parties would have agreed to an inflated running royalty of 2.5%.  Trial Tr. at 937:4-13.  Although the Macrovision license agreement suggests an effective royalty rate of 1%, Mr. Parr conceded that this rate would actually have been much lower because it also licenses future use.  Trial Tr. 939:1-9; 1014:11-18.  Additionally, Mr. Farley testified that he wasn't even aware of the 1%, and that the rate was "just lawyer stuff."  Trial Tr. 386:2-6; 387:14-18.  The other agreement Mr. Parr relied upon, Intuit, does not have any evidentiary support to calculate a royalty rate.  TE 100.  Yet, Mr. Parr calculated a 2.5% effective royalty rate for the Intuit agreement based on accused revenues he claims he received from Mr. Farley.  Trial Tr. at 940:22-941:6.  Mr. Farley testified unequivocally at trial that he did not know what percent of the sales underlie the agreement Digital Reg reached

1    with Intuit.   Trial Tr. 331:13-18.   Together, the settlement license agreements cannot support a

2    running royalty of any rate, let alone 2.5%.

3            Mr. Parr relied on a software plugin advertisement where Adobe offers to license software

4    compatibility for a 5.5% running royalty.   Trial Tr. at 965:8-14.   Because this advertisement has

5    no "discernable link to the claimed technology" and isn't even a license agreement, but was relied

6    upon to achieve a 5.5% royalty rate, the 2.5% rate should be rejected.   *ResQNet.com, Inc. v.*

7    *Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010).   Mr. Parr knew nothing more about the Adobe

8    plug-in advertisement than what was writing in a one-page document consisting of a website FAQ.

9    Trial Tr. 1039:5-10; TE 95.   Indeed, there is no evidence that any party ever actually entered an

10   agreement with these terms.   Trial Tr. 983:5-10l 907:2-5.   There is no evidence that the plug-in

11   involved any patents.   Trial Tr. 1039:20-23; 1040:1-5.   There is no evidence suggesting that the

12   plug-in is in anyway comparable to the Patents-in-Suit.   Trial Tr. 983:20-984:4.   Instead, Mr. Parr

13   relies on this agreement purely to artificially inflate his royalty.   On these facts, Mr. Parr's reliance

14   on the Adobe software plug-in "agreement" is fundamentally flawed.

15           Mr. Parr also ignored the existence of non-infringing alternatives which would have had a

16   significant downward effect on any reasonably royalty.   Trial Tr. 1072:23-1073:2. Dr. Wicker

17   testified extensively to the existence of available non-infringing alternatives.   Trial Tr. at 750:8-

18   752:22.   Dr. Devanbu never considered these alternatives.   Trial Tr. at 649:11-20.   And, Mr. Parr

19   concedes that this would be important to his analysis.   Trial Tr. 1073:3-8.   As such, by Mr. Parr's

20   own admission, his analysis is unreliable.

21           **C.     Digital Reg's Damages Failed to Provide Substantial Evidence Of
                        Infringement And Actual Use For Each Product Included In Its Damages Base**

22

23           With respect to method claims, the law is well settled that the sale of software, "without

24   more," does not infringe a method claim; "[d]irect infringement occurs only when someone

25   performs the claimed method."   *i4i v. Microsoft*, 598 F.3d 831, 850 (Fed. Cir. 2010) (*citing Lucent*

26   *Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).   Accordingly, because

27   Digital Reg blindly included each and every sale of an Adobe product in its damages theory it has

28   no chance of success.   *See e.g., Mirror Worlds, LLC v. Apple, Inc.*, 784 F.Supp.2d 703, 724-25

---

1   (E.D. Tex. 2011) ("[A] sale or offer for sale is insufficient to prove direct infringement of a

2   method claim—sale of the apparatus is not the sale of the method—and thereby irrelevant in

3   calculating liability for direct infringement.").

4          Evidence of use of the allegedly patented feature is essential to calculating a reasonable

5   royalty, and a damages theory which does not account for such use should be rejected. *Cardiac*

6   *Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1358-59 (Fed. Cir. 2009) (confirming

7   that damages on asserted method claims are limited to "those devices that actually performed the

8   patented method during the relevant infringement period"); *Lucent*, 580 F.3d at 1334 (finding that

9   the "damages award ought to be correlated, in some respect, to the extent the infringing method is

10  used by consumers. This is so because this is what the parties to the hypothetical negotiation

11  would have considered."). In this case Digital Reg has made no attempt to show whether the

12  accused products are enabled to perform the accused method or even how frequently Adobe

13  products are used to infringe Digital Reg's asserted method claims when they are enabled to do so.

14  Trial Tr. 1057:22-25; 1050:20-1051:11. This error permeates the analysis and affects all the

15  accused products. This is a total failure, a product by product failure, and a unit-by-unit failure.

16         For example, Digital Reg broadly includes Adobe Acrobat Professional products in its

17  revenue base despite undisputed testimony that Acrobat Pro is almost never enabled to be used in

18  conjunction with LiveCycle. In fact, LiveCycle was not enabled in Acrobat Professional by

19  default. Trial Tr. 886:8-15. Trial Tr. at 1048:18-23. But only that combination is alleged to

20  infringe. 651:21-652:3. Uncontroverted evidence shows that use of Acrobat Pro with LiveCycle

21  was "super tiny." 889:2-17.

22         Digital Reg also included all Adobe Flash Professional starting in 2005. despite testimony

23  that the product could only infringe when used with Flash Access. Trial Tr. at 614:15-22. Flash

24  Access was not launched until 2008. Trial Tr. 1175:2-4. Digital Reg also included LiveCycle

25  Reader Extensions in the base although there was no evidence whatsoever regarding the product.

26  Trial Tr. 1059:25-1060:10.Finally, Digital Reg failed to account for the numerous ways that the

27  Accused Products could be used without ever infringing the Patents-in-Suit, including, through the

28  implementation of non-infringing alternatives.

At no point does Dr. Parr consider the rate of allegedly infringing use of the relevant Adobe products or otherwise attempt to account for the fact that only method claims are asserted in this case. As a matter of law, then, Dr. Parr's infringement theory is flawed. It is improper to rely on total sales figures for damages tied to an asserted method claim without also considering the frequency with which the relevant products are actually used to practice the asserted claims. Since both parties recognize that infringement does not occur in all uses of the relevant products, Dr. Parr's analysis, if ultimately admitted, cannot support an award greater than nominal damages.

### D. Digital Reg Failed to Provide Substantial Evidence That 30% Of Adobe's Accused Revenue Is A Proper Allocation

The patentee "must in every case give evidence tending to separate or apportion the **defendant's** profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884). (emphasis added). The Court previously rejected Mr. Parr's analysis based on this rule. Yet, Mr. Parr's revised analysis suffers from the same fatality. To wit, Mr. Parr failed to provide any evidence or analysis of apportionment related to Adobe. In an attempt to rehabilitate this analysis, Digital Reg suggests that there is an industry standard of attributing 30% of revenue to distribution and delivery. As such, Digital Reg suggests that this would be the smallest saleable unit. Yet, Digital Reg offers no evidence that the distribution services of Apple's App Store, Microsoft's App delivery or Valve's game delivery systems are in any way comparable to Adobe's method of content delivery. In fact, Mr. Parr conceded that he is not even aware if any of those services offer DRM whatsoever. On these facts, any use of the 30% apportionment is unreliable.

In Mr. Parr's initial report, he did not consider a standalone 30% apportionment. Instead, Mr. Parr applied a 30% apportionment and simultaneously increased the royalty rate by that amount. Adobe directly criticized this approach in its initial MIL. In his August 31, 2014 report, Mr. Parr, for the first time, applied a 30% apportionment to the damages base—without the

1   simultaneous increase in royalty rate.  Adobe responded to this new theory, the next day, raising

2   the same objections made here.  Accordingly, any suggestion of waiver is baseless.

3   **VIII. DIGITAL REG HAS NOT PROVEN WILLFULNESS AS A MATTER OF LAW**

4          "[T]o establish willful infringement, a patentee must show by clear and convincing

5   evidence that the infringer acted despite an objectively high likelihood that its actions constituted

6   infringement of a valid patent."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

7   "If this threshold objective standard is satisfied, the patentee must also demonstrate that this

8   objectively-defined risk (determined by the record developed in the infringement proceeding) was

9   either known or so obvious that it should have been known to the accused infringer." *Id*.  The

10  record here is so strong for Adobe that this objective standard cannot be met.  There was no notice

11  of infringement and the merits are very strong.

12         "Should the court determine that the infringer's reliance on a defense was not objectively

13  reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is

14  a predicate to consideration of the subjective prong."  *Powell v. Home Depot U.S.A., Inc.*, 663

15  F.3d 1221, 1236 (Fed. Cir. 2011).  As noted above, there is simply no evidence contradicting

16  Adobe's good-faith belief in its defenses.  As such, there can be no credible assertion that Adobe

17  has been objectively reckless. Because Digital Reg cannot satisfy the objective prong of *Seagate*,

18  its willful infringement claims fail as a matter of law.

19         Similarly, Digital Reg has failed to present evidence upon which a reasonable jury could

20  find the subjective prong of Seagate has been met.  There is no legally competent evidence

21  supporting the claim that Adobe has acted with the intent to cause infringement of Digital Reg's

22  patents.  The only evidence marshalled by Digital Reg relates only to potential knowledge by

23  individuals who do not work in product development, not the intent of Adobe.  Trial Tr. 453:19-

24  23; 463:25-464:9; 871:12-16; 881:2-885:19.  And, Adobe's alleged knowledge of the asserted

25  patents has not been coupled to any indication that infringement was likely, or even possible.  No

26  reasonable juror could find that Adobe lacked a reasonable basis for its actions objectively or

27  subjectively.  For these reasons, no reasonable jury could conclude Adobe wilfully infringed.

28

1  Dated:  September 4, 2014                    Respectfully submitted,

2

3                                               By: /s/ Edward R. Reines

4                                               Edward R. Reines
                                                edward.reines@weil.com
5                                               WEIL, GOTSHAL & MANGES LLP
                                                201 Redwood Shores Parkway
6                                               Redwood Shores, CA 94065
                                                Telephone: (650) 802-3000
7                                               Facsimile: (650) 802-3100
                                                *Attorney for Defendant*
8                                               *Adobe Systems Incorporated*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28