W. PAUL SCHUCK (Cal. Bar No. 203717)
*pschuck@bzbm.com*
BARTKO, ZANKEL, BUNZEL & MILLER
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

ANDREW G. DINOVO (admitted *pro hac vice*)
*adinovo@dpelaw.com*
ADAM G. PRICE (admitted *pro hac vice*)
*aprice@dpelaw.com*
DINOVO PRICE ELLWANGER & HARDY LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

Attorneys for Plaintiff
DIGITALREG OF TEXAS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DIGITAL REG OF TEXAS, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>ADOBE SYSTEMS INCORPORATED, *et al.*,<br><br>        Defendants. | Case No. 12-CV-01971 CW (KAW)<br><br>**PLAINTIFF DIGITAL REG OF TEXAS, LLC'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(B) OR, IN THE ALTERNATIVE, A NEW TRIAL UNDER FED. R. CIV. P. 50 AND/OR 59 AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Judge:    The Honorable Claudia Wilken<br>Ctrm:    2, 4th floor |

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................1

I.  INTRODUCTION ............................................................................................1

II.  LEGAL STANDARD.......................................................................................2

III.  DIGITAL REG IS ENTITLED TO JMOL ON THE ISSUE OF
     NON-OBVIOUSNESS OF THE '541 PATENT ...............................................3

A.  LEGAL STANDARD.......................................................................................3

B.  THERE IS LEGALLY INSUFFICIENT EVIDENCE REGARDING
    INVALIDITY OF THE '541 PATENT...............................................................4

    1.  Adobe Failed to Offer Any Combination of Prior Art
        Teaching All of the Limitations for Independent
        Claim 1 of the '541 Patent ....................................................................4

    2.  Adobe Failed to Offer Any Combination of Prior Art
        Teaching All of the Claim Limitations for Dependent
        Claims 2, 4, & 13 of the '541 Patent ..........................................................7

    3.  Adobe Failed to Offer Clear and Convincing
        Evidence of the Motivation to Modify for All of the
        Claims of the '541 Patent ....................................................................8

        a.  Adobe's Expert's Conclusory Testimony Is
            Insufficient to Prove Motivation to Modify Prior Art ..................8

        b.  Where a Reference Teaches Doing Something in a
            Different Location than Claimed, It Is Not a Mere
            Matter of "Design Choice" To Do It as Claimed.......................10

C.  THERE IS LEGALLY INSUFFICIENT EVIDENCE OF THE
    REQUIRED CONSIDERATION OF SECONDARY INDICIA OF
    NONOBVIOUSNESS ...................................................................................14

IV.  IN THE ALTERNATIVE, DIGITAL REG IS ENTITLED TO A
     NEW TRIAL...................................................................................................15

A.  THERE IS NO CLEAR AND CONVINCING PROOF OF
    INVALIDITY ...................................................................................................16

B.  EXCLUSION OF THE RPX LICENSE TO THE '541 PATENT
    PRECLUDED CONSIDERATION OF CRITICAL
    NONOBVIOUSNESS EVIDENCE ...............................................................16

BARTKO ZANKEL BUNZEL
BARTKO·ZANKEL·BUNZEL·MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-i-

V.      DIGITAL REG IS ENTITLED TO JMOL ON THE ISSUE OF
        INFRINGEMENT OF THE '541 PATENT ................................................................17

A.      A REASONABLE JURY COULD CONCLUDE ONLY THAT
        END-USERS DIRECTLY INFRINGED THE '541 PATENT.........................................17

        1.      The Accused Products Contain the Claimed Token ...................................18

        2.      The Accused Products Generate a Permission "At the
                Client"...................................................................................................19

        3.      The Accused Products Uniquely Lock the Permission
                to the Client...........................................................................................21

        4.      LiveCycle "Determine[s] Whether the Client Holds a
                Pre-Existing Permission" and "If Not, Request[s]
                Permission from an External Source".......................................................21

B.      A REASONABLE JURY COULD CONCLUDE ONLY THAT
        ADOBE WAS WILLFULLY BLIND TO INFRINGEMENT OF
        THE '541 PATENT ................................................................................................22

VI.     DIGITAL REG IS ENTITLED TO A NEW TRIAL .............................................23

VII.    CONCLUSION.........................................................................................................24

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007) ...............................................................................18

*Ace v. Aetna Life Ins. Co.*,
   139 F.3d 1241 (9th Cir. 1998) .................................................................................17

*ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ..........................................................10, 11, 12, 16

*In re Agric. Research & Tech. Grp., Inc.*,
   916 F.2d 528 (9th Cir. 1990) ...................................................................................25

*Alexsam, Inc. v. IDT Corp.*,
   2013 WL 2150832 (Fed. Cir. May 20, 2013) ...........................................................8

*Ashland Oil, Inc. v. Delta Resins & Refractories*,
   776 F.3d 281 (Fed. Cir. 1985) .......................................................................3, 16, 17

*Baxter Healthcare Corp. v. Sprectramed, Inc.*,
   49 F.3d 1575 (Fed. Cir. 1995) .................................................................................27

*Broadcom Corp. v. Emulex Corp.*,
   732 F.3d 1325 (Fed. Cir. 2013) ..........................................................................4, 24

*Ex parte Brown*,
   2011 WL 3798744 (B.P.A.I. Aug. 25, 2011) ....................................................15, 16

*California v. Altus Fin. S.A.*,
   540 F.3d 992 (9th Cir. 2008) ...................................................................................27

*Calloway Golf Co. v. Acushnet Co.*,
   576 F.3d 1331 (Fed. Cir. 2009) .................................................................................7

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002) ...............................................................................22

*In re Chu*,
   66 F.3d 292 (Fed. Cir. 1995) .......................................................................13, 14, 15

*Crocs, Inc. v. Int'l Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010) .................................................................................7

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009) ....................................................................14

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) (en banc) ...................................................24

*In re Fritch*,
    972 F.2d 1260 (Fed. Cir. 1992) ...............................................................7, 8

*In re Gal*,
    980 F.2d 717 (Fed. Cir. 1992) .............................................................13, 15

*Genzyme Corp. v. Atrium Med. Corp.*,
    315 F. Supp.2d 552 (D. Del. 2004) ..............................................................8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S.ct. 2060 (2011)...................................................................................24

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966)...........................................................................................9

*In re Gurley*,
    27 F.3d 551 (Fed. Cir. 1994) ......................................................................14

*Heyne v. Caruso*,
    69 F.3d 1475 (9th Cir. 1995) ......................................................................18

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ...............................................................26, 27

*Iacurci v. Lummus Co.*,
    387 U.S. 86 (1967).......................................................................................26

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) .............................................................4, 7, 8

*Koito Mfg. Co. v. Turn-Key-Tech*,
    LLC, 381 F.3d 1142 (Fed. Cir. 2004)........................................................9, 10

*In re Kotzab*,
    217 F.3d 1365 (Fed. Cir. 2000) ....................................................................9

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007).......................................................................3, 9, 10, 14

*Landes Constr. Co. v. Royal Bank of Canada*,
    833 F.2d 1365 (9th Cir. 1987) ....................................................................17

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iv-

*Lorillard Tobacco Co. v. A&E Oil, Inc.*,
  503 F.3d 588 (7th Cir. 2007) ...................................................................25

*Lucent Tech., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...............................................................24

*McGinley v. Franklin Sports, Inc.*,
  262 F.3d 1339 (Fed. Cir. 2001) .................................................................2

*Mirror Worlds, LLC v. Apple Inc.*,
  692 F.3d 1351 (Fed. Cir. 2012) ...............................................................24

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ..............................................................3, 17

*Motorola, Inc. v. Interdigital Tech. Corp.*,
  121 F.3d 1461 (Fed. Cir. 1997) .................................................................8

*Murphy v. City of Long Beach*,
  914 F.2d 183 (9th Cir. 1990) ...................................................................18

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ...............................................................22

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008) .................................................................9

*Plantronics, Inc. v. Aliph, Inc.*,
  724 F.3d 1343 (Fed. Cir. 2013) ....................................................... *passim*

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) .................................................................................23

*Rothman v. Target Corp.*,
  556 F.3d 1310 (Fed. Cir. 2009) ...........................................................4, 18

*Ruiz v. A.B. Chance Co.*,
  234 F.3d 654 (Fed. Cir. 2000) ........................................................4, 16, 17

*SEC v. Platforms Wireless Int'l Corp.*,
  617 F.3d 1072 (9th Cir. 2010) .................................................................25

*Simmons Fastener Corp. v. Illinois Tool Works, Inc.*,
  739 F.2d 1573 (Fed. Cir. 1984) ...........................................................4, 16

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011) ........................................................4, 16, 18

-v-

*Trimed, Inc. v. Stryker Corp.*,
   608 F.3d 1333 (Fed. Cir. 2010) ...................................................................10, 16

*United States v. One Parcel of Prop.*,
   985 F.2d 70 (2nd Cir. 1993) .................................................................................25

*Vizio, Inc. v. Int'l Trade Comm'n*,
   605 F.3d 1330 (Fed. Cir. 2010) ...........................................................................7

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
   721 F.2d 1540 (Fed. Cir. 1983) ..............................................................4, 16, 17

*WMS Gaming, Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999) ......................................................3, 4, 16, 18

**Statutes**

35 United States Code

   § 103 ..................................................................................................3, 4, 14

   § 271(b)...........................................................................................................18, 24

PLAINTIFF'S RULE 50 & 59 MOTION
Case No. 12-CV-1971 CW (KAW)

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 13, 2014, at 2 p.m., or as soon thereafter as can be heard, before the Honorable Claudia Wilken, Plaintiff Digital Reg of Texas, LLC ("Digital Reg") shall and hereby does move for an order pursuant to Fed. R. Civ. P. 50 granting judgment of validity and indirect infringement of the '541 Patent as a matter of law. Alternatively, Digital Reg moves for a new trial under Fed. R. Civ. P. 50 & 59 on the issues of infringement, validity, damages, and willfulness relating to the '541 Patent. This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the pleadings and other papers on file in this action, the record of trial and the exhibits admitted at trial, and any further papers, evidence and/or argument as may be submitted to the Court in connection with this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After the trial of this matter, the jury found that: the '670 Patent was not infringed; the '541 Patent was not infringed with regard to the accused Adobe LiveCycle products ("LiveCycle"); the '670 Patent was not anticipated; and the asserted claims of the '541 and '670 Patents were obvious. The jury hung on the issue of whether the '541 Patent was infringed with regard to the accused Activation products ("Activation") and accused Flash products ("Flash," and collectively, the "accused products"). As a result, the jury did not reach the issue of damages or willfulness. Dkt. 727.

However, Adobe did not present sufficient evidence upon which a reasonable juror could find in Adobe's favor on the issue of obviousness of the '541 Patent. The testimony of Adobe's expert, Dr. Wicker, was entirely conclusory and insufficient to show obviousness as a matter of law. Adobe did not present any prior art, or combination of prior art, teaching all of the elements of the asserted claims of the '541 Patent; nor did Adobe present any evidentiary basis for a motivation to modify the prior art in the manner taught by the '541 Patent. Furthermore, the differences between the inventions disclosed in the '541 Patent and the prior art would not have been merely a matter of "design choice."

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Additionally, no reasonable juror could have found non-infringement of the '541 Patent with regard to the accused products.  Application of the properly interpreted claim limitations to the largely undisputed facts regarding the structure and operation of the accused products permits only one conclusion—end users of Adobe's accused products directly infringe the asserted claims of the '541 Patent.  Further, the only reasonable conclusion on the record created at trial is that a reasonable juror could only have found Adobe liable for induced infringement of the '541 Patent.

Accordingly, pursuant to FED. R. CIV. P.  50(b), Digital Reg renews its request for entry of judgment of indirect infringement and validity of the '541 Patent as a matter of law.[1]  *See* Dkt. 712.  In the alternative, Digital Reg moves for a new trial under FED. R. CIV. P. 50(b) and/or FED. R. CIV. P. 59 on the issues of infringement, validity, damages, and willfulness relating to the '541 Patent.

## II.   **LEGAL STANDARD**

Rule 50(a)(1) permits judgment as a matter of law ("JMOL") "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1).  To obtain JMOL, a party must show that the jury's findings are "unsupported by substantial evidence or based on incorrect legal standards.*" McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1350 (Fed. Cir. 2001).  Even where the court finds that JMOL is not appropriate, it may order a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).  "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence . . . or that, for other reasons, the trial was not fair to the party moving.'"  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  In contrast to JMOL motions, in determining whether a verdict is contrary to the clear weight of the evidence, the court "has 'the duty . . . to weigh the evidence as [the court] saw it'" and may set

---

[1] To the extent the Court grants JMOL or a new trial, Digital Reg also requests a new trial on the unanswered questions of damages and willfulness.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

aside the verdict even if it is supported by substantial evidence. *Molski*, 481 F.3d at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

**III.    DIGITAL REG IS ENTITLED TO JMOL ON THE ISSUE OF NON-OBVIOUSNESS OF THE '541 PATENT**

**A. LEGAL STANDARD**

Under § 103, a claimed invention may be invalid if the differences between it and the prior art "are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art . . . ." 35 U.S.C. § 103. The ultimate determination of obviousness is a legal conclusion for the Court, based on underlying factual questions addressed by the jury. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 427 (2007) ("The ultimate judgment of obviousness is a legal determination."); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999). Those underlying factual questions include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claims and the prior art; and (4) objective indicia of nonobviousness. *See WMS Gaming*, 184 F.3d at 1355. "Each fact forming the factual foundation upon which the court bases its ultimate conclusion regarding the obviousness of the claimed subject matter as a whole must be established by clear and convincing evidence." *Ashland Oil, Inc. v. Delta Resins & Refractories*, 776 F.3d 281, 292 (Fed. Cir. 1985). In deciding the legal question, the Court accepts as true only those facts implied by the jury's verdict that are supported by substantial evidence. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356–57 (Fed. Cir. 2012); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013). The Court then examines the ultimate legal conclusion of obviousness *de novo* to determine whether it is correct in light of the jury's factual findings. *Id.*

Additionally, all objective evidence of nonobviousness *must* be considered by the fact finder before it is legally permissible to conclude that a claim is obvious under § 103. *Ashland*, 776 F.2d at 306; *WMS Gaming*, 184 F.3d at 1359-60; *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983); *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1574-75 (Fed. Cir. 1984); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667-684 (Fed. Cir. 2000). Excluding any such evidence from the obviousness calculus constitutes an "error as a

BARTKO ZANKEL BUNZEL
BARTKO  ZANKEL  BUNZEL  MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

matter of law." *Ashland*, 776 F.2d at 307. Nonobviousness evidence includes that relating to licensing involving the patents-in-suit. *WMS Gaming*, 184 F.3d at 1359; *Rothman v. Target Corp.*, 556 F.3d 1310, 1321-22 (Fed. Cir. 2009).

### B.   THERE   IS   LEGALLY   INSUFFICIENT   EVIDENCE   REGARDING INVALIDITY OF THE '541 PATENT

Adobe had to show that the prior art taught all of the claim limitations as they were construed by the Court. *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011) (no *prima facie* showing of obviousness where a single claim limitation was not shown to be present in the prior art). In this case, certain key facts are not in dispute:

- the **sole** prior art reference to the '541 Patent raised at trial by Adobe's expert witness was U.S. Patent No. 5,509,070 ("Schull");

- four limitations in the final two elements of independent Claim 1 of the '541 Patent are **not** taught by Schull; and

- the sole elements of dependent Claims 2, 4, and 13 of the '541 Patent are **not** taught by Schull.

At trial, Adobe arm-waved over this failure of proof by asserting in a conclusory manner that some of the missing limitations would have been obvious to one of ordinary skill in the art and/or arguing that some of the missing limitations were simply "design choices."  But Adobe cannot carry its burden of demonstrating invalidity by clear and convincing evidence where, as here, (a) the prior art does not disclose all of the elements claimed in the '541 Patent; (b) there is no teaching to modify or other evidentiary basis of a motive to modify the prior art; (c) there are differences in function between the claimed invention and the prior art; and (d) the sole prior art presented by Adobe—Schull—teaches away from the missing limitations.

#### 1.   *Adobe Failed to Offer Any Combination of Prior Art Teaching All of the Limitations for Independent Claim 1 of the '541 Patent*

The penultimate element of claim 1 requires "receiving from the external source a token." Trial Exhibit ("TE") 1.022. The Court construed "token" as follows:  "a file indicating whether the transaction has been approved and access should be granted.  A token does not simply indicate that access should be granted, but also contains a yes/no indicator exhibiting either approval or rejection of the transaction."  Dkt. 717 at 29.  The final element of claim 1 discloses "based on the

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

received token, executing an installation process that generates at the client a permission that is locked uniquely to the client and that may be found by a later execution of the access checking process." TE1.022.  The Court construed this element as: "running an installation program that creates a permission locally, which permission is (1) locked uniquely to the client and (2) capable of being found locally by a later execution of the access checking process." Dkt. 717 at 30.

It is undisputed that these final two claim elements are **not** disclosed in Schull (or any other prior art). All three witnesses (two expert and one percipient) who testified—two of whom were called by Adobe—agreed that the sole reference upon which Adobe relied—Schull—does not teach these elements.  Adobe's own invalidity expert, Dr. Wicker, unequivocally testified as follows:

> Q. AND WE MAY HAVE ALREADY RUN THROUGH THIS, BUT YOUR CURRENT TESTIMONY IS THAT *NEITHER CLAIM 2, NOR THE FINAL ELEMENTS, THE FINAL TWO ELEMENTS OF CLAIM 1 ARE PRESENT IN YOUR OPINION IN SCHULL.*
>
> A. THAT'S RIGHT.

Dkt. 723 at 1327:21-25 (emphasis added).  Schull does not disclose the final two elements of claim 1 because it indisputably fails to teach (and, in some instances, teaches against) four separate limitations of the final two elements of claim 1, referred to as Limitations 1-4 for ease of reference:

- Limitation 1 (from the penultimate element):  a "token" that indicates "whether the transaction has been approved and access should be granted, [that] does not simply indicate that access should be granted, but also contains a yes/no indicator exhibiting either approval or rejection of the transaction," again as required by the Court's construction (*see* Dkt. 717) at 29;

- Limitation 2 (from the penultimate element):  a "token" that is a "file," as required by the Court's construction (*see id.*);

- Limitation 3 (from the final element):  generating a permission based on the received token, as required by the express language of the final element of claim 1 (*see* TE1.022); and

- Limitation 4 (from the final element): generating the permission *at the client* (*see id.*).

Dr. Wicker testified that Schull does not disclose a "token," as required by Limitation 1, as "there is no yes/no indication sent from the server to the client that is then used to generate the permission.  Schull doesn't describe that." Dkt. 723 at 1316:4-12; *see also* Dkt. 732-4 at 24.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   Instead, Schull discloses passing a Password.  TE418.006 at 5:64-6:1; *see also* Dkt. 732-4 at 25.

2   Dr. Wicker further conceded that the Password disclosed in Schull could not satisfy the token

3   requirement of the '541 Patent—*i.e.*, does not satisfy Limitation 1 or 2.  *See* Dkt. 723 at 1318:2-4.

4   Likewise, Professor Schull, the named inventor of the Schull patent, who was called to testify as a

5   fact witness by Adobe, agreed that the disclosed Password was not a "file."  Dkt. 723 at 1258:5-21.

6   Professor Scholl's testimony thus further confirms that the Password disclosed in Schull does not

7   satisfy Limitation 2.

8       Additionally, Adobe's own expert, Dr. Wicker, admitted that Limitations 3 and 4 are

9   wholly absent from Schull, testifying that "the last limitation [of claim 1] is not present, either, in

10  Schull." Dkt. 723 at 1316:19-24; *see also* Dkt. 732-4 at 35.  Dr. Wicker also conceded that, in

11  Schull, "there is no permission generated at the server based on the token." Dkt. 723 at 1318:22-

12  25.  Professor Schull further confirmed that the disclosed Password does not result in a permission

13  being generated.  *See id.* at 1251:22-1252:4.  Dr. Wicker also testified that Schull did not disclose

14  that the permission is generated ***at the client*** (as required by Limitation 4).  Instead, as Dr. Wicker

15  described, in Schull, "the same Password that is generated at the server is stored at the client" such

16  that what is received is the same thing that is generated and that is stored.  *Id.* at 1315:25-1316:3.

17      Digital Reg's expert, Dr. Keller, agreed with Dr. Wicker and Professor Schull that both of

18  the last two elements of claim 1 of the '541 Patent—including Limitations 1-4—are absent from

19  Schull.  *See id.* at 1357:22-1358-24, 1359: 6-11.  Therefore, it is undisputed that the prior art does

20  not teach at least two elements of claim 1 of the '541 Patent.  Consequently, "this is not even a

21  case where the inventions at issue are merely composed of elements that were known in the art."

22  *Kinetic*, 688 F.3d at 1369-70 (claims not invalid for obviousness).  A patent is not obvious if only

23  one of its limitations was not taught in the prior art. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598

24  F.3d 1294, 1308-09 (Fed. Cir. 2010); *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1343 (Fed.

25  Cir. 2010).  Without the missing claim limitation (and in light of the lack of any evidence of the

26  motivation to modify Schull, as discussed in more detail below), Adobe failed to meet its burden

27  of providing obviousness of claim 1 of the '541Patent by clear and convincing evidence.

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

### 2.   *Adobe Failed to Offer Any Combination of Prior Art Teaching All of the Claim Limitations for Dependent Claims 2, 4, & 13 of the '541 Patent*

All of the other asserted claims of the '541 Patent depend from claim 1.  *See* TE1.022-23.

Because no reasonable jury could have found claim 1 invalid, no reasonable jury could have found

claims 2, 4, or 13 invalid.  *See Calloway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir.

2009) (error to find dependent claim obvious when independent claim was not); *In re Fritch*, 972

F.2d 1260, 1266 (Fed. Cir. 1992) ("dependent claims are nonobvious if the independent claims

from which they depend are nonobvious").  Therefore, Digital Reg is entitled to JMOL that claims

2, 4, & 13 of the '541 Patent are not invalid.

No reasonable jury could have found the dependent claims obvious for another reason.

Similar to independent claim 1, Adobe failed to identify the claimed features of the dependent

claims in the prior art.  Claim 2 of the '541 Patent provides for "[t]he method of claim 1, wherein

requesting *the permission*, receiving *the token* and selectively granting the resource access are

performed on the client."  TE1.022.  But again, Adobe's expert Dr. Wicker testified that Schull

does not disclose the "token" or "permission" claimed in the '541 Patent, and Adobe did not

present any other prior art for the '541 Patent.  As such, Dr. Wicker expressly conceded that claim

2 of the '541 Patent was not taught by Schull.  *See* Dkt. 723 at 1320:15-16 ("Q:  So in that regard

claim 2 is not taught by Schull?  A:  That's correct . . . ."); *see also id.* at 1283:3-14 (identifying

that the permission and token claimed in claim 2 are absent).

Similarly, Schull does not disclose the sole element of claim 4 or claim 13 of the '541

Patent.  Claim 4 requires that the "**permission** comprises a unique coded key corresponding to the

digital content."  TE1.022.  Similarly, claim 13 requires "requesting the *permission* from the

external source" and that "the *token* received is based on a result of the authorization procedure."

*Id.*  As such, the undisputed evidence demonstrates that claims 4 and 13 of the '541 Patent are not

taught by Schull.  *See* Dkt. 723 at 1285:6-19 (testifying with regard to claim 4 that Schull discloses

a Password, not a permission); 1285:23-1286:12 (testifying with regard to claim 13 that Schull

discloses a Password, not a permission or a token).

The only remedy for Adobe's failure of proof regarding the independent and dependent

asserted claims is JMOL in Digital Reg's favor.  *See Motorola, Inc. v. Interdigital Tech. Corp.*,

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

121 F.3d 1461, 1473 (Fed. Cir. 1997) (reversing a district court's denial of JMOL where, as here, the accused infringer failed to provide prior art combinations that actually taught all of the claim limitations); *see also Genzyme Corp. v. Atrium Med. Corp.*, 315 F. Supp.2d 552, 566-67, 588 (D. Del. 2004) (granting JMOL that claims not invalid because of a "missing claim limitation").

### 3. *Adobe Failed to Offer Clear and Convincing Evidence of the Motivation to Modify for All of the Claims of the '541 Patent*

As demonstrated above, Adobe did not raise any prior art reference that disclosed at least four limitations in claim 1 or all of the limitations in claims 2, 4, and 13 of the '541 Patent. Therefore, Adobe was obligated to clearly and convincingly prove that a person of ordinary skill in the art would have been motivated to modify the prior art in the manner taught by the asserted claims of the '541 Patent. *See Alexsam, Inc. v. IDT Corp.*, 2013 WL 2150832, at *8-9 (Fed. Cir. May 20, 2013); *Kinetic*, 688 F.3d at 1360, 1366-67. Adobe failed to carry this burden. *See id*.

Adobe's expert Dr. Wicker testified that although not present in Schull, the asserted claims of the '541 Patent were invalid because the missing limitations were obvious. Dkt. 723 at 1275:21 1276:8; *see also id.* at 1279:22-25; 1281:2-6; 1282:14-1283:2. But, as set forth in more detail below, Dr. Wicker never actually addressed missing Limitation 2 (requiring that the "token" be a file) or Limitation 3 (generating a permission ***based on*** the received token). *See id.* Although Dr. Wicker testified that missing Limitation 1 (regarding a "token" that "contains a yes/no indicator exhibiting either approval or rejection of the transaction") and Limitation 4 would have been obvious, neither he nor Adobe presented any legally sufficient evidentiary or factual basis for his opinion. *See id.* "General and conclusory testimony . . . does not suffice as substantial evidence of invalidity." *Koito Mfg. Co. v. Turn-Key-Tech,* LLC, 381 F.3d 1142, 1152 (Fed. Cir. 2004). Accordingly, Digital Reg is entitled to JMOL in its favor.

### a. *Adobe's Expert's Conclusory Testimony Is Insufficient to Prove Motivation to Modify Prior Art*

The mere fact that a prior art reference could be modified does not render the resultant modification obvious. Even under the "somewhat flexible" obviousness analysis set forth in *KSR*, the legal standard remains that there must be "some ***articulated reasoning*** with some ***rational underpinning***" to support an obviousness argument. *See Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1343, 1354 (Fed. Cir. 2013) (emphasis added); *see also KSR*, 550 U.S. at 418.  To that end, one must identify "an ***apparent reason*** to combine [or modify] the known elements in the fashion claimed by the patent at issue." *KSR*, 550 U.S. at 418 (emphasis added).  The evidence of record must support "particular findings . . . as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed." *In re Kotzab*, 217 F.3d 1365, 1371 (Fed. Cir. 2000).

Additionally, the court must guard against the application of hindsight—that is, using the patent claims themselves as a blueprint to locate and determine the right modification to the prior art.  *KSR*, 550 U.S. at 421 ("A fact finder should be aware, of course, of the distortion caused by the hindsight bias and must be cautious of arguments reliant upon ex post reasoning."); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 36 (1966) (It is error to give into the "temptation to read into the prior art the teachings of the invention in issue."). Identifying an "apparent reason" for modifying the prior art in the manner set forth in the claims of the patent-at-issue "assures that the obviousness test proceeds on the basis of evidence," rather than improper hindsight. *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008).  The "apparent reason" can be shown by identifying some teaching, suggestion, or motivation in the prior art to combine or modify the prior art in the matter identified in the claims (*i.e.*, the "TSM" test). *See KSR*, 550 U.S. at 418-19. Indeed, this "flexible TSM test remains the primary guarantor against a non-statutory hindsight analysis." *Ortho-McNeil*, 520 F.3d at 1364.

Where the "necessary reasoning is absent, [a court] cannot simply assume that an ordinary artisan would be awakened to modify prior art in such a way as to lead to an obviousness rejection." *Plantronics*, 724 F.3d at 1354 (internal citations omitted); *see also TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010) ("Merely saying that an invention is a logical, commonsense solution to a known problem does not make it so."). In other words, an expert who opines that a claim would have been obvious must provide the "factual basis for his assertions." *ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012) (affirming JMOL of non-obviousness because the accused infringer's expert's opinion did not provide "factual basis for his assertions" and was "generic and [bore] no relation to any specific

combination of prior art elements").  Conclusory statements are patently insufficient to sustain

obviousness.  *See KSR*, 550 U.S. at 418 ([O]bviousness [] cannot be sustained by mere conclusory

statements."); *Koito*, 381 F.3d at 1152 ("General and conclusory [expert] testimony . . . does not

suffice as substantial evidence of invalidity. . . . This is so even when the reference has been

submitted into evidence before the jury").

        Here, Dr. Wicker's testimony is conclusory and unsupported by any factual analysis.  With

regard to his opinion with respect to invalidity, Dr. Wicker testified as follows:

> A. OKAY. WELL, BASICALLY, I THINK IT WOULD HAVE BEEN OBVIOUS
> TO CREATE A YES/NO INDICATION, AND THEN SEND IT TO THE CLIENT
> AND HAVE THE PASSWORD GENERATED AT THE CLIENT.
> IN FACT, YOU HEARD DR. SCHULL SAY THAT JUST A FEW MOMENTS
> THERE ARE THINGS THAT ARE DONE AT THE SERVER IN HIS
> INVENTION THAT CAN BE DONE AT THE CLIENT.
> AND SO I'M NOT SAYING THIS IS A TOKEN. THERE IS NO TOKEN.
> BUT I'M SAYING IT WOULD HAVE BEEN OBVIOUS.

Dkt. 723 at 1275:21- 1276:8.  This is the sum and substance of the evidence offered by Adobe that,

although the prior art does not teach Limitation 1 or Limitations 2 and 3 (to the extent

encompassed in his opinion at all), those limitations are obvious.  Dr. Wicker's conclusory

testimony lacks any reasoning or factual underpinning whatsoever, let alone the degree of required

"articulated reasoning with some rational underpinnings," for why it allegedly would have been

obvious to a person of ordinary skill in the art to pluck the missing limitations out of thin air.  *See

Plantronics*, 724 F.3d at 1354.  Conclusory testimony like Dr. Wicker's was specifically rejected

in *ActiveVideo*, and it should be rejected here.  *See* 694 F.3d at 1328.

> **b. Where a Reference Teaches Doing Something in a Different Location
> than Claimed, It Is Not a Mere Matter of "Design Choice" To Do It as
> Claimed**

        Dr. Wicker testified that he concluded the missing Limitation 4 (regarding generating the

permission ***at the client***) would have been obvious to a person of ordinary skill in the art because

Schull "talked about doing things at the client" and thus the location (*i.e.*, the server as taught in

Schull vs. the client as taught in the '541 Patent) was merely a matter of "design choice."  *See* Dkt.

723 at 1279:22-25; 1281:2-6; 1281:9-1282:2; 1282:14-1281:25.  As a preliminary matter,

Dr. Wicker's conclusory statement that it would have been an obvious "design choice" to generate

BARTKO ZANKEL BUNZEL
BARTKO·ZANKEL·BUNZEL·MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

the permission at the client rather than the server does not provide the degree of "articulated reasoning with some rational underpinning" establishing why it would have been an obvious. *See Plantronics*, 724 F.3d at 1354; *ActiveVideo*, 694 F.3d at 1327-28. It therefore suffers the same infirmity as the conclusions regarding Limitations 1-3 set forth above. Furthermore, even if Dr. Wicker's reference to the portion of Schull discussing the "programmer's program" constitutes an attempt to provide some factual support for his conclusion regarding Limitation 4, it is insufficient as a matter of law for two related reasons. First, it cannot be said that performing crucial functions ***at the client***—corresponding to Limitation 4—is a matter of mere design choice. Second, this is particularly true where, as here, Schull actually teaches away from performing functions at the client, as required by Limitation 4.

An "obvious design choice" applies only when a claimed product merely arranges known elements in a configuration recognized as functionally equivalent to a known configuration. *See In re Chu*, 66 F.3d 292, 299 (Fed. Cir. 1995); *In re Gal*, 980 F.2d 717, 719 (Fed. Cir. 1992). In *Chu*, for example, the Federal Circuit held:

> From the totality of the record, we hold that placement of the SCR catalyst within the bag retainer would not have been merely a matter of "design choice." First, there is no teaching or suggestion in the prior art that would lead one of ordinary skill in the art to modify the Szymanski structure to place the SCR catalyst within a bag retainer as opposed to between two filter bags as disclosed in Szymanski. Next, Chu's technical evidence relating to the frailty of fabric filters during pulse-jet cleaning clearly counters the assertion that placement of the catalyst in the baghouse is merely a "design choice."

*Chu*, 66 F.3d at 299. Adobe and its expert failed to satisfy these requirements.

Here, as in *Chu*, there is "no teaching or suggestion in the prior art that would lead one of ordinary skill in the art to modify" Schull to generate a permission at the client as opposed to at the server as disclosed in Schull. Claim 1 of the '541 Patent recites "receiving from the external source a token; and based on the received token, executing an installation process that generates ***at the client*** a permission . . ." TE1.022 (emphasis added). In stark contrast, the Schull Password is generated ***at the server***, transmitted to the client, and stored in precisely the same form at the client. TE418.006 ("Upon receipt of the password that Programmer's program unlocks the advanced features of the program just as in Step 50 and also installs the Password in storage

1   location 40"). This is shown in Fig. 1 of Schull, where 93 is identified as the server and 100 is

2   identified as the client.  *See* TE418.002; *see also* Dkt. 732-4 at 8.  As taught in Schull, the actual

3   Password is then passed from the server to the client and stored in the same format at the client,

4   with no decryption.  TE418.002, TE418.009 at 11:35-41.  At trial, Professor Schull confirmed that

5   the Softlock system worked differently from the '541 Patent in this regard.  *See* Dkt. 723 at

6   1260:18-1261:9.  He testified that "[t]he point of the system was to say that the Passwords have to

7   come on from the server and so we saw to it that the client . . . couldn't generate valid passwords

8   on its own."  *Id.* at 1260:25-1261:3.

9       Beyond just functioning differently, Schull actually teaches ***against*** the client-centric

10  approach taught by the '541 Patent and calls it a "shortcoming." TE418.008 at 9:5-9.  In *DePuy*

11  *Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009), the Federal Circuit

12  held that "[a]n inference of nonobviousness is especially strong where the prior art's teachings

13  undermine the very reason being proffered as to why a person of ordinary skill would have

14  combined the known elements."  *Id.* at 1326.  Likewise, in *In re Gurley,* 27 F.3d 551 (Fed. Cir.

15  1994), the Federal Circuit explained that a reference teaches away "when a person of ordinary

16  skill, upon reading the reference . . . would be led in a direction divergent from the path that was

17  taken by the applicant."  *Id.* at 553.  Here, a skilled artisan would not have seen the benefit of

18  modifying, or otherwise been motivated to modify Schull to perform the generation at the client

19  rather than at the server to arrive at the claimed invention of the '541 Patent.  *See KSR*, 500 U.S. at

20  417 ("If a person of ordinary skill in the art can implement a predictable variation, ***and would see***

21  ***the benefit of doing so***, § 103 likely bars its patentability.") (emphasis added).

22      Furthermore, as in *Chu*, the benefits of generation at the client rather than at the server

23  "clearly counters the assertion" that the location of generation is merely a "design choice."  *See*

24  *Chu*, 66 F.3d at 299.  At trial, the "client-centric" nature of the claimed invention of the '541

25  Patent was repeatedly emphasized.  Indeed, the trial record reflects that the client-centric nature of

26  Limitation 4, for example, was key to the functionality of the invention.  For example, the '541

27  Patent stresses the advantages of generation of the permission at the client:

28

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> ***The installation process allows the object to be executed, or "published," locally, at that particular client computer, as opposed to occurring across a network***, and "locks" the installed object to that particular machine. The object can be copied and is 60 freely transmissable between computers, but the authorization process will be executed again if access is attempted at a different computer.

TE1.018 at 3:55-63 (emphasis added).  Additionally, the trial record is replete with testimony about the importance of the "client-centric" nature of the claimed invention of the '541 Patent. *See, e.g.*, Dkt. 678 at 216:19-217:17 (Venters testimony regarding the client-centric nature of the claimed invention); Dkt. 679 at 456:15-21 (Venters testimony that the technology claimed in the '541 Patent stood "in contrast to server-based security systems"); Dkt. 678 at 219:17-23 (inventor Patterson's testimony that "the actual controlling process that protected the content was performed at the client.").

Adobe offered no contradictory testimony.  Instead, in offering his infringement opinion, Adobe's expert, Dr. Wicker, admitted that there are reasons why it would be important to generate a permission at the client rather than the server, including the risk of interception.  Dkt. 680 at 718:16-719:4; *see also id.* at 710:23-711:10 (testifying that "by generating at the client we prevent hijacking. . . . So it's this basic idea that, you know, if we generate it locally and never send it out, no one can intercept it."); *see also* Dkt. 723 at 1331:17-21 (identifying the unique benefits of the client-centric system disclosed in the '541 Patent).

The difference in function between the inventions in the asserted claims of the '541 Patent and the approach described in Schull are manifest and "militates against a conclusion" that generation at the client rather than the server is merely a "design choice."  *See Chu*, 66 F.3d at 299; *see also Gal*, 980 F.2d at 719) (holding that a different structure to achieve a different purpose was not an obvious design choice).  Similar to *Chu* and *Gal,* in a recent case before the Board of Patent Appeals and Interferences, a comparable factual scenario involving ***the claimed location*** of a feature was considered, and the "matter of design choice" rationale found inapplicable.  *See Ex parte Brown*, 2011 WL 3798744, *2 (Board of Patent Appeals and Interferences August 25, 2011). In rejecting claims to a fireplace accessory as obvious, the Examiner found that the claimed placement of a hinged door was a "matter of design choice" and that "it would be obvious to place the hinged cover ***in any convenient location***, including the rear of the fireplace tray."  *Id.* (internal

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  quotations omitted).  The Board disagreed with the Examiner's "any convenient location"

2  rationale, explaining that the reference taught placing the door in a specific location, different than

3  what was claimed.  *See id.* at *2.

4      In short, the prior art presented by Adobe does not teach all of the limitations of the

5  asserted claims of the '541 Patent.  There is no clear and convincing evidence of any motivation to

6  modify the prior art in the manner taught by Limitations 1-4 in claim 1 of the '541 Patent (or the

7  limitations in claims 2, 4, and 13).  Dr. Wicker's arm-waving over the missing elements as mere

8  "design choice" is legally insufficient.  *See Chu*, 66 F.3d at 299; *Gal*, 980 F.2d at 719; *Brown*,

9  2011 WL 3798744, at *2; *Plantronics,* 724 F.3d at 1354; *ActiveVideo*, 694 F.3d at 1327-28;

10  *TriMed*, 608 F.3d at 1341.  Accordingly, Digital Reg is entitled to JMOL that the asserted claims

11  of the '541 Patent are non-obvious and thus not invalid.

### C. THERE IS LEGALLY INSUFFICIENT EVIDENCE OF THE REQUIRED CONSIDERATION OF SECONDARY INDICIA OF NONOBVIOUSNESS

13      Even assuming *arguendo* that the Court is inclined to find that Adobe made out a *prima*

14  *facie* case of obviousness on one or more of the asserted claims (and Adobe did not), the objective

15  evidence of nonobviousness requires JMOL in Digital Reg's favor.

16      The Federal Circuit has repeatedly explained that objective evidence, also referred to as

17  "secondary considerations," can "often be the most probative and cogent evidence" relating to the

18  obviousness inquiry. *Ruiz*, 234 F.3d at 667 (internal quotations omitted); *Star*, 655 F.3d at 1375;

19  *W.L. Gore*, 721 F.2d at 1555 ("objective evidence of nonobviousness . . . may be the most

20  pertinent, probative, and revealing evidence available"). Indeed, such evidence can be "entitled to

21  such weight that it may be decisive." *Ashland*, 776 F.2d at 306. And again, the law requires that

22  the fact finder take ***all such evidence*** into account. *Id.*; *Simmons*, 739 F.2d at 1575; *Ruiz*, 234 F.3d

23  at 667. Further, the Federal Circuit has made clear that patent licenses worth millions of dollars are

24  highly probative of nonobviousness. In *WMS Gaming*, the court found that licenses worth "over $2

25  million" were a "strong indicia that the patent is not obvious." 184 F.3d at 1360. And in *Star*, the

26  court found that licenses "which cost millions of dollars" supported the entrance of JMOL

27  overturning a jury verdict on obviousness. 655 F.3d at 1376.

1    The millions of dollars in licensing revenue generated by the '541 Patent is highly relevant

2 objective evidence of nonobviousness that the jury never had an opportunity to fully consider

3 because the Court precluded presentation to the jury of the amount of consideration pursuant to

4 TE43, TE44, and TE45 (collectively, the "RPX License").  *See* Dkt. 632 at 12; *see also* Dkt. 701

5 (Digital Reg's offer of proof regarding the RPX License).  The RPX License is worth far more

6 than those in *WMS Gaming* and *Star*. *See* Dkt 701 & TEs 43, 44, & 45.  Furthermore, the RPX

7 License covers only the '541 Patent.  *See* TE43.001 & 43.013.  RPX paid millions of dollars to

8 obtain a license to the '541 Patent to sublicense its sole member Apple (who unquestionably held a

9 significantly larger market share than Digital Reg and a substantially stronger market position),

10 plus the right to offer additional sublicenses for a one year period.  *See* TE43.003-43.005.  Given

11 these facts, there is a sufficient "nexus" between the RPX License and the secondary consideration

12 of licensing, such that this evidence should have been presented to the jury.  *See, WMS Gaming*,

13 184 F.3d at 1360; *Star*, 655 F.3d at 1376.  Because this highly probative evidence was excluded,

14 the jury was precluded—as a matter of law—from making a legally supportable determination that

15 the asserted claims were obvious.  *See Ashland*, 776 F.2d at 306-07; *W.L. Gore*, 721 F.2d at 1555;

16 *Ruiz*, 234 F.3d at 667.

17    In light of the testimony, the nature of the art, the secondary indicia of non-obviousness

18 and the onerous burden of proof that must be met to establish obviousness, no rational jury could

19 have found the asserted claims of the '541 Patent obvious. Therefore, Digital Reg is entitled to

20 JMOL that the asserted claims of the '541 Patent are not invalid.

21 **IV.    IN THE ALTERNATIVE, DIGITAL REG IS ENTITLED TO A NEW TRIAL**

22    The standard for a new trial is lower than that for JMOL because a verdict can be against

23 the "great weight of the evidence," and thus justify a new trial, even if there is substantial evidence

24 to support it.  *See, e.g.*, *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1248 (9th Cir. 1998); *Landes*

25 *Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  Furthermore, in

26 deciding to grant a new trial, the Court need not view the evidence in a light most favorable to the

27 non-moving party, but rather may weigh the evidence and assess the credibility of the witnesses.

28 *Landes*, 833 F.2d at 1371; *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728-29 (9th Cir. 2007).  The

Court's inquiry is whether, giving full respect to the jury's findings and considering all of the evidence, the Court is left with "the definite and firm conviction that a mistake has been committed." *Landes*, 833 F.2da 1371.  Therefore, to the extent the Court does not grant JMOL of non-obviousness, the Court should grant a new trial, for at least two reasons: (1) there is no clear and convincing proof of invalidity; and (2) exclusion of the RPX License precluded consideration of critical nonobviousness evidence.  *See* FED. R. CIV. P. 50(c) & 59(a).

### A.  THERE IS NO CLEAR AND CONVINCING PROOF OF INVALIDITY

For all the reasons set forth above, the great weight of the evidence does not clearly and convincingly demonstrate (1) that any prior art could be combined in such a way as to render the asserted claims of the '541 Patent invalid; or (2) the motivation to modify any prior art in such a way as to render the asserted claims of the '541 Patent invalid.  Accordingly, Digital Reg is entitled to a new trial on the issue of obviousness of the asserted claims of the '541 Patent.

### B.  EXCLUSION OF THE RPX LICENSE TO THE '541 PATENT PRECLUDED CONSIDERATION OF CRITICAL NONOBVIOUSNESS EVIDENCE

The Court's exclusion of the RPX License constitutes another reason to grant a new trial. Here, even assuming *arguendo* that the RPX license could have some prejudicial effect in the context of questions involving damages, any such effect is not substantially outweighed by the probative value of this critical evidence.  *See WMS Gaming*, 184 F.3d at 1359-60; *Star*, 655 F.3d at 1375; *Rothman*, 556 F.3d at 1322.  Additionally, any prejudice could have been cured with a limiting instruction to the jury regarding its admissibility and relevance.  *See, e.g.*, *Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995).  The secondary-considerations case law cited above makes clear that the RPX License and amount are critical evidence.  *See WMS Gaming*, 184 F.3d at 1360; *Star*, 655 F.3d at 1375; *Rothman*, 556 F.3d at 1322.  Without this evidence, Adobe was thus permitted to incorrectly characterize the licensing evidence as minimal, amount to only cost-of-defense only.  *See, e.g.* 732-6 at 3 (characterizing the licensing as "nuisance settlements").  The Court should grant a new trial in which the fact finder will be able to consider all of the objective evidence of nonobviousness.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## V.    DIGITAL REG IS ENTITLED TO JMOL ON THE ISSUE OF INFRINGEMENT OF THE '541 PATENT

A claim for inducement under 35 U.S.C. § 271(b) requires: (1) an underlying direct infringement; (2) action to encourage the direct infringement; and (3) specific intent to encourage the infringement. *See ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007).  Digital Reg presented substantial evidence of each of these elements, and Adobe failed to present legally sufficient evidence of noninfringement.  Accordingly, no reasonable juror could find no infringement of the '541 Patent with regard to the accused products, and Digital Reg is entitled to judgment as a matter of law on the issue of infringement of the '541 Patent.

### A.    A REASONABLE JURY COULD CONCLUDE ONLY THAT END-USERS DIRECTLY INFRINGED THE '541 PATENT

No reasonable jury could find that end-users of Activation, LiveCycle, and Flash did not perform all steps of the methods found in the asserted claims.  Relying on unrebutted source code, documents, and admissions from Adobe's engineers, Digital Reg's expert Dr. Devanbu demonstrated the structure and operation of the accused products.  As summarized in the attached Appendix A, Digital Reg presented substantial evidence of direct infringement of the asserted claims of the '541 Patent by users of Adobe's software for the accused products.[2]

Digital Reg's expert Dr. Devanbu was the only expert to actually read the source code for the accused products.  Dkt. 721 at 803:1-11; *see also* Dkt. 679 at 495:20-23, 497:17-20.  Adobe's expert Dr. Wicker asserted he read only those portions of the code cited by Dr. Devanbu, and agreed in all respects with Dr. Devanbu's analysis with respect to his interpretation of the functionality of the source code.  Dkt. 680 at 764:6-9, 764:14-19; Dkt. 721 at 802:22-25.  Consequently, at trial, there was little factual dispute as to the structure and operation of the accused Adobe products.  Instead, relying almost exclusively on claim construction arguments, Adobe contested only two claim limitations from claim 1 of the '541 Patent with regard to Activation and Flash (*see, e.g.* Dkt. 608 at 720:18-721:3 (regarding Activation) & 725:18-726:2 (regarding Flash)), and contested only four claim limitations from claim 1 of the '541 Patent with

---

[2] At trial, Adobe did not present any evidence of non-infringement of claims 2, 4, & 13 of the '541 Patent, which depend from claim 1, and instead relied exclusively on its position that claim 1 of the '541 Patent is not infringed.  Dkt. 680 at 754:11-755:2.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

regard to LiveCycle (Dkt. 680 at 732:22-733:4).  *See also* Dkt. 732-2 at 51 (conceding that

Activation embodies the preamble and first two elements of claim 1); *id.* at 67 (same with regard

to Flash); *id*. at 91 (contesting all four elements of claim 1 with regard LiveCycle).  But

application of the properly interpreted claim limitations to the undisputed facts regarding the

structure and operation of the accused products permits only one conclusion—end users of

Adobe's accused products directly infringe claim 1 of the '541 Patent, as well as claims 2, 4, and

13.

**1.   *The Accused Products Contain the Claimed Token***

With regard to Activation, Dr. Devanbu testified at trial that a "license" is "received from

the ALM server" and that license "contains information that allows the client to decide ***whether to***

***grant access or not***."  Dkt. 679 at 509:5-8 & 510:17-19.  With regard to Flash, Dr. Devanbu

testified that a "license" is received from the external "license server."  Dkt. 680 at 622:12-623:3

& 624:4-22; TE67.  With regard to LiveCycle, Dr. Devanbu testified that a "voucher" is received

"from the server to the client."  Dkt. 680 at 591:20-593:5.  He further identified the Activation

license, Flash license, and LiveCycle voucher are files capable of indicating "whether or not"

access should be granted.  *See, e.g.* Dkt. 679 at 510:17-19 (testifying that the license token

contains information that allows the client to decide "whether or not to grant access"); 546:19-21

(testifying that the voucher contains information indicating "whether or not access should be

granted"); *see also* Dkt. 718-2-1at 14-16, 718-2-3 at 24-26, 718-2-4 at 17-19 (and source code

cited therein).  In other words, the servers constitute the claimed "external source," and the

Activation "license," Flash "voucher," and LiveCycle "voucher" constitute the claimed "token," as

construed by the Court.

Adobe does not dispute that the external servers pass the licenses and vouchers that

Dr. Devanbu identified as the token in the accused products.  *See, e.g.* Dkt. 732-2 at 39, 57-58, 79.

Nor does Adobe dispute that the source code functions as Dr. Devanbu describes.  *See, e.g.* Dkt.

721 at 803:1-7.  Instead, in rebuttal at trial, Adobe contended that the accused products do not

satisfy the claimed "token" because the Activation license, Flash voucher, and LiveCycle voucher

do not contain a "'yes' or 'no' indication" and contended that Dr. Devanbu never identified a

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   "yes" or "no" response."  *See, e.g.* Dkt. 680 at 717:1-4; Dkt. 732-2 at 58.  But Adobe's rebuttal is

2   fatally flawed.

3          The Court's construction of token does not require a literal "yes" or "no" indication in the

4   response provided from the external source.  Indeed, the Court specifically defined what it meant

5   by a "yes/no indication" in both its Motion for Summary Judgment Order and its Order Denying

6   Adobe's Request for Reconsideration.  Noting that the Court's construction of "token" "does not

7   indicate simply that access should be granted, but also contains a yes/no indication. . . . The[]

8   specification passages demonstrate that the token indicates either approval or rejections, not

9   always that access should be granted."  Dkt. 574 at 6-7.  Likewise, in its Reconsideration Order,

10  the Court reiterated that:

        The Court noted that 'a token does not indicate simply that access should be
        granted, but also contains a yes/no indicator.'  ***Put a different way, the token must
        be capable of indicating either approval or rejection***."

11  Dkt. 602 at 3 (quoting MSJ Order at 6) (internal citation omitted; emphasis added); *see also* Dkt.

12  717 at 29 (instructing the jury that "[a] token does not simply indicate that access should be

13  granted, but also contains a yes/no indicator exhibiting either approval or rejection of the

14  transaction.").  Accordingly, the "yes/no indicator" requirement is satisfied if the "token" is

15  "capable of indicating either approval or rejection" rather than simply "that access should be

16  granted."  *See* Dkt. 602 at 3; Dkt. 574 at 6-7; Dkt. 717 at 2.

17         Here, Dr. Devanbu testified that the source code reflects that the Activation license, the

18  Flash voucher, and the LiveCycle voucher do not indicate simply that access should be granted.

19  Instead, the license and the vouchers indicate "whether or not" access should be granted—*i.e.*,

20  whether access should be approved or whether access should be rejected.  *See, e.g.* Dkt. 679 at

21  510:17-19; *see also* Dkt. 718-2-1at 14-16, 718-2-3 at 24-26, 718-2-4 at 17-19 (and source code

22  cited therein).  Adobe did not dispute the evidence about the accused products' structure and

23  operation and did not contradict or impeach, *in any way*, the source code showing how the accused

24  products work.  As such, the established facts applied to the *properly* construed claims

25  demonstrate as a matter of law that the accused products embody the "token" limitation of claim 1.

26         **2.   *The Accused Products Generate a Permission "At the Client"***

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1       Dr. Devanbu testified that the source code for Activation reflects that, after receiving the

2 "token" from the server, programs operating on the client side create a permission locally, as

3 required by the final element of claim 1. *See, e.g.* Dkt. 679 at 507:3-509:24; *see also* Dkt. 718-2 at

4 24-25; *see also* Dkt. 721 at 815:25-816:15 (Dr. Wicker testimony acknowledging that "encryption

5 [of the Activation license] has to be taken off or decrypted ***at the client*** in order to be useful to the

6 client."). Likewise, Dr. Devanbu testified that within LiveCycle, "once a voucher is received, then

7 based on the voucher some information is extracted from the voucher and decoded ***to produce*** the

8 permission to access the resource.") Dkt. 680 at 594:20-595:3; 596:4-18. And within Flash, once

9 the token is received and the license validated, the permission is generated from the token based on

10 processes that occur on the client side. Dkt. 680 at 625:11-626:4; 627:11-628:11; 688:7-691:18.

11       In rebuttal, Adobe argued at trial, first, that the Activation license, Flash voucher, and

12 LiveCycle voucher are generated at the server and then passed to the client. Dkt. 732-6 at 29-35.

13 But Adobe's argument conflates the claimed "token" and the "permission." As claimed, the token

14 must be received from an external source. And it is. It is undisputed that the Activation license,

15 Flash voucher, and LiveCycle voucher (*i.e.*, the "token") are sent to the client from the server (*i.e.*,

16 an external source), as discussed above. Adobe also does not dispute the source code indicating

17 that an installation program decrypts and extracts the permissions contained within the "token"

18 sent from the server to the client.

19       Instead, Adobe argues that this process cannot constitute generating a permission at the

20 client because the permissions contained within the Activation license, Flash voucher, and

21 LiveCycle voucher exist at the server before they are encrypted and sent to the client. *See* Dkt.

22 680 at 719:23-720:7. In other words, Adobe's noninfringement position boils down to the

23 following argument: the permission is generated at the server and *ipso facto* cannot be generated

24 at the client as required by claim 1. But again, Adobe's position is fatally flawed.

25       The Federal Circuit has made it clear that importing a negative limitation into a claim

26 construction is improper absent "express disclaimer or independent lexicography in the written

27 description that would justify adding that negative limitation." *Omega Eng'g, Inc. v. Raytek Corp.*,

28 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d

BARTKO ZANKEL BUNZEL
A LAW CORPORATION • ATTORNEYS AT LAW
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1359, 1366-67 (Fed. Cir. 2002). No such express disclaimer or independent lexicography exists here; nor did Adobe seek or obtain such a negative limitation from this Court. As set forth above and in Attachment A, the undisputed source code reflects that the permission is generated at the client (albeit based on data generated at the server as required by the "based on the received [from an external source] token" limitations), as required by the final element of claim 1. The fact that the permission is not "newly" generated is irrelevant. *See Omega,* 334 F.3d at 1323.

### 3. *The Accused Products Uniquely Lock the Permission to the Client*

Adobe's position at trial was that there is no evidence in the record that the accused products lock the permission to the client. On the contrary, each of the accused products does so, and Dr. Devanbu provided unrebutted testimony (that was corroborated by Dr. Wicker) regarding the operation of the Adobe source code to accomplish this claimed objective in Activation (*see* Dkt. 679 at 507:8-509:3, 519:4-6; Dkt. 718-2 at 24-25), in Flash (*see* Dkt. 680 at 624:23-625:10; 662:15-663:2; Dkt. 718-2 at 116-123; Jones Dep. Tran. 28:4-30:14; 33:6-12, 58:9-16; Dkt. 680 at 769:5-9), and in LiveCycle (*see* Dkt. 680 at 666:7-11; 689:2-19; Dkt. 718-2 at 82-86).

### 4. *LiveCycle "Determine[s] Whether the Client Holds a Pre-Existing Permission" and "If Not, Request[s] Permission from an External Source"*

The Supreme Court has specifically instructed that, when considering a motion for JMOL, the court should give credence not only to the evidence favoring the nonmovant, but also to "that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (internal quotations omitted). Here, Digital Reg's expert Dr. Devanbu testified that the source code demonstrates that LiveCycle "determine[s] whether the client holds a pre-existing permission" and "if not, request[s] permission from an external source." *See* Dkt. 679 at 540:6-11, 540:19-544:25; Dkt. 680 at 586:10-587:20, 588:9-21, 595:4-8, 598:25-599:3; *see also* DKT. 718-2-3 at 12-17; TE175b; TE21c.007-TE21c.009; TE52. This evidence is uncontroverted and unimpeached.

Importantly, Adobe's own expert and the engineer responsible for LiveCycle (Jonathan Herbach) testified that the most accurate reflection of the accused technology is the source code— not an engineer's belief in or intent regarding how the software operates nor software design

1    documents. Dkt. 721 at 802:18-25.  Indeed, Adobe's expert Dr. Wicker testified that "the source

2    code describes exactly how the product works and what the computer is intended to do." Dkt. 721

3    at 803:8-11.  Further, he testified that he agreed with Digital Reg's expert's analysis of the source

4    code. *Id.* at 803:4-7.  As such, Mr. Herbach's testimony regarding the alleged intended design for

5    LiveCycle (*see, e.g.* Dkt. 721 at 896:19-897:8) does not undermine the substantial evidence that

6    users of LiveCycle practice the first two elements of claim 1. [3]

### B. A REASONABLE JURY COULD CONCLUDE ONLY THAT ADOBE WAS WILLFULLY BLIND TO INFRINGEMENT OF THE '541 PATENT

8           Liability for induced infringement requires that Adobe was aware of the patent and knew

9    the acts it was causing would be infringing. 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v.*

10   *SEB S.A*., 131 S.Ct. 2060 (2011); *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1304-06 (Fed. Cir.

11   2006) (en banc).  The "knowledge" and "awareness" requirements can be satisfied by showing that

12   Adobe demonstrated deliberate disregard or was willfully blind.  Willful blindness is demonstrated

13   when a defendant who believes there is a high probability of infringement deliberately acts "to

14   avoid learning of that fact."  *Global-Tech,* 131 S.Ct. at 2068. The requisite mental state can be

15   proven by circumstantial evidence.  *DSU,* 471 F.3d at 1306.  Additionally, as a general principle,

16   courts "are not constrained to accept denials supported by a mere scintilla of evidence. Such bare

17   denials--for example, where the defendant's alleged ignorance amounts to willful blindness, or

18   where the owner's claims of ignorance are 'inconsistent with the uncontested facts'--are

19   insufficient to create a genuine triable fact." *Lorillard Tobacco Co. v. A&E Oil, Inc*., 503 F.3d 588,

20   594 (7th Cir. 2007). *See also  SEC v. Platforms Wireless Int'l Corp*., 617 F.3d 1072, 1093-94 (9th

21   Cir. 2010); *In re  Agric. Research & Tech. Grp., Inc.,* 916 F.2d 528, 540 (9th Cir. 1990); *United*

22   *States v. One Parcel of Prop*., 985 F.2d 70, 73 (2nd Cir. 1993).

23

24   [3] Adobe's witnesses testified that the accused Adobe products could be configured in different
     ways.  *See, e.g.*, Dkt. 680 at 727:10-18.  Under well-established precedent, however, Digital Reg
25   was required to prove only a single infringing use (*Mirror Worlds, LLC v. Apple Inc*., 692 F.3d
     1351, 1359 (Fed. Cir. 2012)), and was permitted to prove that use by circumstantial evidence (*see*
26   *Lucen*t *Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009)).  Digital Reg's
     presented substantial evidence of direct infringement by end-users, including evidence that users
27   of the accused products practice the claimed methods at least some of the time.  *See* Dkt. 679 at
     510:25-511:14; Dkt. 679 at 516:15-517:6; TE16.007; Dkt. 680 at 770:6-771:3; Dkt. 721 at 911:7-
28   919:9; TE178; TE179; Dkt. 721 at 856:11-19; 858:7-17; 858:24-859:13.

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    Here, the evidence of Adobe's mental state admits to only one reasonable conclusion—that

2    Adobe knew or was willfully blind to the fact that its accused products infringed the asserted

3    claims of the '541 Patent.  Adobe intentionally took action that actually induced infringement by

4    its customers—Adobe specifically instructed users of its accused products to use the software in a

5    manner that practiced the methods claimed in the asserted claims.  *See* Dkt. 721 at 804:21-24; *see*

6    *also* Dkt. 679 at 516:15-517:6, 532:11-534:16; Dkt. 721 at 856:7- 859:5; TE16.007; TE21c.007-

7    21.009; TE55-56; TE65; TE67; TE182.  Furthermore, there is substantial evidence that Adobe

8    knew about the '541 Patent and knew that the acts it was causing would be infringing or there was

9    a high likelihood of infringement.  *See* TE6-13, TE696.

10    Nevertheless, Adobe was remained willfully blind.  And no reasonable jury could find that

11    Adobe had a good faith belief pre-suit that users of its accused products did not practice the

12    methods claimed in the '541 Patent or that the '541 Patent was invalid.  To the contrary, the trial

13    record is devoid of any evidence of such good faith belief.  Adobe did not proffer any legal

14    opinion as to whether use of the accused products infringe the asserted claims or whether those

15    claims were valid; nor did Adobe present any documentation of any pre-suit technical analysis as

16    to whether use of the accused products infringed the asserted claims. Because there is substantial

17    evidence that Adobe was aware of the '541 Patents, encouraged its customers to infringe the

18    patents, and did not have a good faith belief of invalidity, Digital Reg is entitled to JMOL.

19    **VI.    DIGITAL REG IS ENTITLED TO A NEW TRIAL**

20    In the alternative, the Court should grant a new trial on the issues of infringement,

21    damages, and willful relating to the '541 Patent.  A new trial is warranted because the great weight

22    of the evidence is contrary to the jury's verdict of noninfringement of the '541 Patent with regard

23    LiveCycle, for all the reasons set forth above.  Additionally, a new trial is warranted because the

24    jury hung on the issue of infringement of the '541 Patent with regard to Activation and Flash.  A

25    quintessential reason for granting a new trial is that the jury was hung on an issue.  *See Iacurci v.*

26    *Lummus Co.*, 387 U.S. 86, 87-88 (1967).  Digital Reg has a Seventh Amendment constitutional

27    right to have the issue of infringement determined by a jury. *See i4i Ltd. P'ship v. Microsoft Corp.*,

28    598 F.3d 831, 849 (Fed. Cir. 2010).  As the Ninth Circuit explained long ago, the failure of the

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

jury to answer a question "[leaves] a gaping hole in the special verdict," and to "do other than send the case back for a new trial when decision on a vital issue by the jury is missing would deprive the parties of the jury trial to which they are entitled constitutionally." *Union Pac*. R.R. v. *Bridal Veil Lumber Co*., 219 F.2d 825, 831-32 (9th Cir. 1955); *see also California v. Altus Fin. S.A.,* 540 F.3d 992, 1009 (9th Cir. 2008).

The exception to retrial of hung issues if the jury's answers to other questions resolve the unanswered questions (*see Altus Fin.*, 540 F.3d at 1004-5; *Baxter Healthcare Corp. v. Sprectramed, Inc.*, 49 F.3d 1575, 1581 (Fed. Cir. 1995)) does not apply here.  Specifically, the issue of whether Adobe infringed with regard to LiveCycle is separate from the issues of whether Adobe infringed with regard to Activation and Flash.  Accordingly, the jury's partial verdict is not dispositive of the remaining "no decision" issues, and a new trial on the hung issues is warranted.

Additionally, there is sufficient evidence from which a reasonable juror could have found infringement of the '541 Patent.  Indeed, this Court has already held on three occasions that there is sufficient evidence from which a reasonable jury could find infringement: once on summary judgment; once on reconsideration; and once under Fed. R. Civ. P. 50(a).  Dkts. 574 & 602.  Nothing has changed since those three rulings, other than the jury's deadlock, and the question of infringement is still one for the jury.  *See i4i*, 598 F.3d at 849.  As appellate courts have recognized, where, as here, there are unanswered question, it is "error . . . for the trial court to thereafter 'go it alone' and dispose of the case."  *Union Pac.*, 219 F.2d 831-32.

VII.   **CONCLUSION**

Digital Reg requests judgment as a matter of law that Adobe infringed the asserted claims of the '541 Patent and that the asserted claims of the '541 Patent are not invalid as obvious, and thus requests a new trial on the unanswered issues of damages and willfulness.

In the alternative, Digital Reg requests that the Court grant a new trial on the issues of whether the '541 Patent is infringed and whether the asserted claims of the '541 Patent are obvious, and on the issues of damages and willfulness.

DATED:  October 6, 2014                    DINOVO PRICE ELLWANGER & HARDY LLP


                                            By:      /s/ Andrew G. DiNovo
                                                     Andrew G. DiNovo

                                            Attorneys for Plaintiff
                                            DIGITAL REG OF TEXAS, LLC

                        **ATTESTATION OF E-FILER**

        Pursuant to Local Rule 5-1(i), the undersigned ECF user whose login and password are

being used in filing this document, hereby attests that the signatory has concurred in the filing of

this document.


Dated:  October 6, 2014                              /s/ W. Paul Schuck
                                                     W. Paul Schuck