IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIGITAL REG OF TEXAS, LLC,

     Plaintiff,

  v.

ADOBE SYSTEMS, INC., et al.,

     Defendants.

_____/

No. C 12-1971 CW

ORDER ON POST-
VERDICT MOTIONS
(Docket Nos. 710,
712, 742, 743)

Plaintiff Digital Reg of Texas, LLC, moves for judgment as a matter of law (JMOL) that its claims in dispute with regard to U.S. Patent No. 6,389,541 (the '541 patent) are not invalid, and that Defendant Adobe Systems, Inc., infringed that patent.  In the alternative, Digital Reg moves for a new trial with regard to the '541 patent.  Adobe opposes both motions, and also cross-moves for JMOL that it did not infringe the '541 patent.  For the reasons set forth below, Digital Reg's motions for JMOL and for a new trial are DENIED; and Adobe's motion for JMOL is DENIED.

BACKGROUND

In this patent infringement case, Digital Reg sued Adobe, alleging infringement of the '541 patent and U.S. Patent No. 6,751,670 (the '670 patent).[1]  Adobe denied that it infringed, and argued that the asserted claims were invalid.

//

//

//

---

[1] Neither party seeks relief with regard to the '670 patent.

United States District Court
For the Northern District of California

At trial, the jury made the following findings:

| Direct Infringement | | | |
|---|---|---|---|
| Patent No. | Claim No. | Adobe Product | Jury Finding |
| '670 patent | Claim 45 | Activation | Not infringed |
| '670 patent | Claim 45 | LiveCycle | Not infringed |
| '670 patent | Claim 52 | LiveCycle | Not infringed |
| Indirect Infringement | | | |
| Patent No. | Claim No. | Adobe Product | Jury Finding |
| '541 patent | Claim 1 | Activation | No decision |
| '541 patent | Claim 2 | Activation | No decision |
| '541 patent | Claim 4 | Activation | No decision |
| '541 patent | Claim 13 | Activation | No decision |
| '670 patent | Claim 45 | Activation | Not infringed |
| '541 patent | Claim 1 | Flash | No decision |
| '541 patent | Claim 2 | Flash | No decision |
| '541 patent | Claim 4 | Flash | No decision |
| '541 patent | Claim 13 | Flash | No decision |
| '541 patent | Claim 1 | LiveCycle | Not infringed |
| '541 patent | Claim 2 | LiveCycle | Not infringed |
| '541 patent | Claim 4 | LiveCycle | Not infringed |
| '541 patent | Claim 13 | LiveCycle | Not infringed |
| '670 patent | Claim 45 | LiveCycle | Not infringed |
| '670 patent | Claim 52 | LiveCycle | Not infringed |
| // | | | |
| // | | | |
| // | | | |
| // | | | |

**United States District Court**
For the Northern District of California

| Invalidity - Anticipation | | |
|---|---|---|
| Patent No. | Claim No. | Jury Finding |
| '670 patent | Claim 32 | Not anticipated |
| '670 patent | Claim 45 | Not anticipated |
| '670 patent | Claim 52 | Not anticipated |
| Invalidity - Obviousness | | |
| Patent No. | Claim No. | Jury Finding |
| '541 patent | Claim 1 | Obvious |
| '541 patent | Claim 2 | Obvious |
| '541 patent | Claim 4 | Obvious |
| '541 patent | Claim 13 | Obvious |
| '670 patent | Claim 32 | Obvious |
| '670 patent | Claim 45 | Obvious |
| '670 patent | Claim 52 | Obvious |

Having found each of the disputed patent claims to be obvious, and therefore invalid, the jury awarded Digital Reg no damages.

The parties made their initial motions for JMOL on September 4, 2014, and their renewed motions for JMOL on October 6, 2014. The renewed motions are now fully briefed.

DISCUSSION

I.   Motions for JMOL

A.   Legal Standard

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence.  Fed. R. Civ. P. 50(b).  Judgment as a matter of law after the verdict may be

**United States District Court**
For the Northern District of California

granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict.  Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006).  Where there is sufficient conflicting evidence, or where reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper.  See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).

    C.   Digital Reg's Motions

    Digital Reg moves for JMOL on the grounds that (1) the evidence presented at trial was legally insufficient to support the jury's finding of invalidity of the '541 patent; and (2) a reasonable jury could only have concluded that Adobe indirectly infringed the '541 patent.

        1.   Invalidity

    Under 35 U.S.C. § 103(a), a patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  To avoid being obvious, a patent must be "more than the predictable use of prior art elements according to their established functions."  KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007).  To determine obviousness, "the invention must be considered as a whole and the claims must be considered in their entirety."  Kahn v. General Motors Corp., 135 F.3d 1472, 1479 (Fed. Cir. 1998).

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

Although obviousness is a question of law that the Court decides de novo, the Court nonetheless "treats with deference the implied findings of fact made by the jury." Apple, Inc. v. Samsung Elecs. Co., 2014 U.S. Dist. LEXIS 127973, at *97 (N.D. Cal.) (citing Kinetic Concepts, Inc. v. Smith & Nephew, Inc., 688 F.3d 1342, 1360 (Fed. Cir. 2012)).  The underlying factual inquiries are "(1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) evidence of secondary factors, such as commercial success, long-felt need, and failure of others." Retractable Techs., Inc. v. Becton, 653 F.3d 1296, 1310 (Fed. Cir. 2011) (citing Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966)).

Because the jury made no express findings of fact, the Court must "discern the jury's implied factual findings by interpreting the evidence consistently with the verdict and drawing all reasonable inferences in [the non-moving party's] favor." Dystar Textilfarben GmbH v. C.H. Patrick Co., 464 F.3d 1356, 1361 (Fed. Cir. 2006).  In doing so, the Court "presume[s] that the jury resolved the underlying factual disputes in favor of the verdict," and accepts those factual findings "if they are supported by substantial evidence." Kinetic Concepts, 688 F.3d at 1356-57. The Court then considers de novo whether the legal conclusion of obviousness was "correct in light of the presumed jury fact findings." Id. at 1357.

a.   Evidence of Obviousness

Digital Reg argues that there was insufficient evidence at trial for a finding of obviousness because (1) the prior art did

not disclose all of the elements claimed in the '541 patent and, in particular, the prior art did not disclose the "token" requirement;[2] (2) there was no teaching to modify or other evidentiary basis of a motive to modify the prior art; (3) there were differences in function between the claimed invention and the prior art; and (4) the prior art teaches away from the missing limitations.  The Court is not persuaded.

First, the jury was presented with evidence that the prior art disclosed or rendered obvious the "token" requirement. Adobe's expert, Dr. Stephen Wicker, testified that the prior art Schull patent does not disclose a yes/no indicator within the token.  Tr. 1273:9-1274:2.  However, Dr. Wicker also testified that the Schull patent disclosed generating a token after receiving authorization through an independent channel, that such permission could be moved from the server into the client program, and that doing so would result in the use of a token.  Tr. 1241:7-13; 1272:13-1273:5; 1275:5-1276:8; 1281:24-1282:2; 1286:7-12;

---

[2] Claim 1 of the '541 patent requires, among other things, "receiving from the external source a token."  Tr. Ex. 1.022.  The Court construed "token" as: "A file indicating whether the transaction has been approved and access should be granted.  A token does not simply indicate that access should be granted, but also contains a yes/no indicator exhibiting either approval or rejection of the transaction."  Final Jury Instructions at 29 (Docket No. 717).  Claim 1 also requires, "based on the received token, executing an installation process that generates at the client a permission that is locked uniquely to the client and that may be found by a later execution of the access checking process."  Tr. Ex. 1.022.  The Court construed this element as: "Running an installation program that creates a permission locally, which permission is (1) locked uniquely to the client and (2) capable of being found locally by a later execution of the access checking process."  Final Jury Instructions at 30.

**United States District Court**
For the Northern District of California

1330:14-1331:5.  In fact, Dr. Wicker twice expressly said that, in

light of the Schull patent, it would have been obvious that

permission could have been generated at the client:

> Q. So, the, what is your opinion with respect
> to invalidity?
> A. OK.  Well, basically, I think it would have
> been obvious to create a yes/no indication, and
> then send it to the client and have the password
> generated at the client.  In fact, you heard Dr.
> Schull say that just a few moments ago.  There
> are things that are done at the server in his
> invention that can be done at the client."

Tr. 1275:21-1276:2.

> Q. You mentioned a couple of times with
> respect to the receiving the token limitation and
> the based on limitation that it would have been
> obvious.  If you can walk us through in just a
> little bit more detail the analysis that you did
> for that particular conclusion.
> A. Okay.  With regard to obviousness, I noted
> that, first off, Schull does the generation at
> the server.  So, the secret, as he called it, the
> seed, is encrypted at the server and sent to the
> client.  Okay?
> So it's like Adobe.  It is done at the server.
> But the claims require that it be done at the
> client.  So I had to ask myself:
> "Would a person of skill with his or her
> ability, knowledge in reading the Schull patent
> have thought it was obvious to do it at the
> client?"
> Well, I note that Dr. Schull actually talked
> about doing things at the client.  And it would
> have been obvious to transmit that yes/no and let
> the client do the work instead of the server.

Tr. 1281:9-1282:2.  Dr. Wicker further testified that one of

ordinary skill in the art at the relevant time frame "would have

known how to use the software functionality that was in the server

to duplicate that functionality at a client.  It is something that

**United States District Court**
For the Northern District of California

would have been well within their abilities." Tr. 1330:13-1331:5. His testimony as to the obviousness of the token requirement went unrebutted at trial.

In addition, the jury was presented with evidence of a motive to modify the prior art. Dr. Wicker testified that there would have been an incentive to simplify matters at the server and push certain functions out to the client. Tr. 1330:19-24.

Finally, the Court is not persuaded that the prior art teaches away from the missing limitations. Both Professor Jon Schull, the inventor of the Schull patent and an Adobe witness, and Dr. Wicker testified that, although in the Schull patent the permission is generated at the server and not at the client, it was merely a design choice and permission could just as easily have been generated at the client. Tr. 1241:4-13 (Professor Schull); 1282:18-1283:2 (Dr. Wicker).

For these reasons, the Court finds and concludes that there is sufficient evidence in the record to support the jury's determination of obviousness of the '541 patent's disputed claims.

                    b.    Secondary Indicia of Non-Obviousness

Digital Reg also argues that the jury was precluded from considering secondary indicia of non-obviousness. In particular, Digital Reg argues that the Court's decision to exclude the dollar amount of its license agreement with RPX precluded the jury from considering that agreement as an indicator of non-obviousness. Again, the Court is not persuaded.

In deciding the parties' motions in limine, the Court found that the RPX agreement was relevant to the determination of a reasonable royalty, and on that basis denied Adobe's motion to

exclude entirely any evidence of the RPX license.  Order on Mots.
in Limine at 11-12 (Docket No. 632).  Nevertheless, the Court,
citing circumstances surrounding the RPX agreement that were
vastly different from those of other licensing agreements, found
that evidence of the exact dollar amount of the license would
"skew the jury's perception of a reasonable royalty, causing
unfair prejudice to Adobe."  Id. at 12.  Thus, the Court granted
Adobe's alternative motion and held that "Digital Reg may describe
the circumstances of the RPX license, but not the actual amount."
Id.

　　　　Digital Reg argues that the very fact that it has executed a
multi-million-dollar licensing agreement with RPX demonstrates
that the '541 patent was not obvious.  Digital Reg overstates the
case.  Although the jury was not presented with the precise dollar
amount of the RPX agreement, it heard testimony describing the
agreement, Tr. 325:13-327:4, 409:22-410:21, and specifically
stating that it was "much, much higher" in value than the other
license agreements in evidence.  Tr. 327:1-4.  Digital Reg offers
no reason to believe that the jury failed to consider this
information, and provides no authority that would require
disclosure to the jury of the precise dollar amount of the RPX
agreement.  Although evidence of a multi-million-dollar licensing
agreement may be evidence of non-obviousness, the Federal Circuit
has "often held [that] evidence of secondary considerations does
not always overcome a strong prima facie showing of obviousness."
Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1333
(Fed. Cir. 2009) (quoting Asyst Techs, Inc. v. Emtrak, Inc., 544
F.3d 1310, 1316 (Fed. Cir. 2008) (collecting cases)).  Here, the

United States District Court
For the Northern District of California

Court finds that the jury was allowed appropriately to consider the RPX license.  Nonetheless, the jury heard evidence sufficient to support its finding of obviousness.  Thus, Digital Reg is not entitled to JMOL.

### 2.   Indirect Infringement

Digital Reg argues that it is entitled to JMOL of indirect infringement of the '541 patent because Adobe failed to present evidence sufficient for a finding of non-infringement, and therefore, no reasonable jury could have failed to find that the patent was infringed.  Here again, the Court is not persuaded.

Digital Reg first argues that Adobe's Activation, Flash, and LiveCycle programs all contain the claimed token.  However, the jury heard Dr. Wicker's testimony that each of those products did not use the claimed token.  Tr. 715:23-716:1; 716:21-25; 723:24-724:2; 724:11-14; 730:1-7.  In addition, Digital Reg argues that the accused products generate permission at the client.  Again, Dr. Wicker's testimony contradicts this assertion.  Tr. 720:4-7; 724:15-725:6; 730:15-20.  Although Digital Reg argues that the permission generated at the server in the accused products is merely "regenerated" at the client, Dr. Wicker disputed that characterization.  Tr. 720:5-16.  Digital Reg further argues that the accused products uniquely lock permission to the client.  Again, Dr. Wicker's testimony was that permission was locked at the server, not at the client.  Tr. 720:12-16; 724:23-725:1.  In light of Dr. Wicker's testimony, the Court is not persuaded that the evidence requires a finding of infringement.

Specifically with regard to LiveCycle, Digital Reg argues that its expert, Dr. Premkumar Devanbu, testified that LiveCycle's

United States District Court
For the Northern District of California

10

United States District Court
For the Northern District of California

source code demonstrates that LiveCycle seeks permission from the client before requesting permission from an outside source, and that Dr. Devanbu's testimony was unrebutted.  However, the record shows that both Dr. Wicker and Adobe employee Jonathan Herbach, testified that LiveCycle seeks permission from an outside source before checking for local permission.  Tr. 727:25-729:18 (Dr. Wicker); Tr. 894:1-897:8, 902:3-7 (Mr. Herbach).  In light of the testimony of Dr. Wicker and Mr. Herbach contradicting that of Dr. Devanbu, the Court is not persuaded that the evidence requires a finding of infringement.

For these reasons, JMOL of infringement is not appropriate, and Digital Reg's motions are DENIED.

B.    Adobe's Motions

Adobe moves for JMOL on the grounds that the evidence presented at trial was legally insufficient to support a finding that its Activation and Flash products infringed the '541 patent. The jury was unable to reach a decision with regard to these products.

Adobe argues (1) that Digital Reg failed to introduce evidence sufficient for a reasonable jury to conclude that Activation and Flash used a "token" as construed by the Court; (2) that Digital Reg failed to introduce evidence sufficient for a reasonable jury to conclude that Activation and Flash generated a "permission" locally at the client; and (3) that Digital Reg failed to introduce evidence sufficient for a reasonable jury to conclude that Adobe intended to infringe the '541 patent.

The Court is not persuaded.  For each of the arguments that Adobe advances, Digital Reg cites to evidence in the record that

11

would be sufficient to support a finding of infringement. Consequently, Adobe's motions are DENIED.

II.   Digital Reg's Alternative Motion for New Trial

    In the alternative, Digital Reg asks the Court to grant a new trial with regard to the '541 patent as to both invalidity and infringement.

    A.   Legal Standard

    A new trial may be granted if the verdict is not supported by the evidence.  There is no easily articulated formula for passing on such motions.  Perhaps the best that can be said is that the Court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

    The Ninth Circuit has found that the existence of substantial evidence does not prevent the court from granting a new trial if the verdict is against the clear weight of the evidence.  Landes, 833 F.2d at 1371.  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  Id. Therefore, the standard for evaluating the sufficiency of the evidence is less stringent than that governing Rule 50(b) motions for judgment as a matter of law after the verdict.

//

//

//

United States District Court
For the Northern District of California

12

B.   Analysis

1.   Validity

Digital Reg argues that it is entitled to a new trial on the question of the obviousness of the '541 patent because (1) the weight of the evidence at trial was contrary to the jury's finding of obviousness; and (2) the Court erred in excluding the amount of the RPX license from trial, thus depriving the jury of critical evidence of non-obviousness.  The Court is not persuaded.

As set forth in Part I.B.1.a, the jury's finding that the asserted claims of the '541 patent were obvious was not contrary to the clear weight of the evidence.  In addition, as set forth in Part I.B.1.b, the jury was not precluded from considering the RPX agreement; rather, it merely was precluded from considering the specific dollar value of the RPX agreement, while still being informed that its value was "much, much higher" than that of other licensing agreements.  Digital Reg has provided no authority for the proposition that excluding the dollar value alone, while admitting other evidence about the RPX agreement, constitutes grounds for a new trial.

2.   Infringement

Digital Reg argues that it is entitled to a new trial on the issue of infringement of the '541 patent because (1) the weight of the evidence at the first trial is contrary to the jury's finding that Adobe LiveCycle did not infringe the patent's disputed claims; and (2) the jury failed to return an infringement verdict with regard to Adobe Activation and Adobe Flash.

Here again, the Court is not persuaded that the jury committed a mistake by finding that LiveCycle did not infringe the

United States District Court
For the Northern District of California

'541 patent.  As demonstrated in Part I.A.2, there was sufficient evidence for the jury to reach that decision.  Nor need the Court order a new trial because the jury failed to reach a decision on the question of whether Activation and Flash infringe the '541 patent.  The jury found the asserted claims of those patents to be invalid, which is "a complete defense to infringement."  <u>Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.</u>, 709 F.3d 1124, 1132 (Fed. Cir. 2013) (quoting <u>Typeright Keyboard Corp. v. Microsoft Corp.</u>, 374 F.3d 1151, 1157 (Fed. Cir. 2004)).  Further, the Court finds above that Adobe did not infringe these claims as a matter of law.

For these reasons, Digital Reg's alternative motion for a new trial is DENIED.

CONCLUSION

For the reasons set forth above, Digital Reg's motions for judgment as a matter of law and for a new trial (Docket Nos. 712, 743) are DENIED.  In addition, Adobe's motions for judgment as a matter of law (Docket Nos. 710, 742) are DENIED.  Judgment will enter separately.  Adobe may recover its costs from Digital Reg.

IT IS SO ORDERED.

Dated:  November 17, 2014

_____
CLAUDIA WILKEN
United States District Judge